David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
Melissa E. O'Boyle (MO-9845)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendants Amaranth Advisors L.L.C.*
*and Amaranth Advisors (Calgary) ULC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** | : |
| **Plaintiff,** | : |
| **v.** | :    **07 Civ. 6682 (DC)** |
| **AMARANTH ADVISORS L.L.C., AMARANTH ADVISORS (CALGARY) ULC and BRIAN HUNTER,** | : |
| **Defendants.** | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS
AMARANTH ADVISORS L.L.C. AND AMARANTH ADVISORS (CALGARY) ULC
FOR A PRELIMINARY INJUNCTION AGAINST THE FEDERAL ENERGY
REGULATORY COMMISSION**

**Winston & Strawn LLP**
**200 Park Avenue**
**New York, NY 10166**
**(212) 294-6700**

## TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................... iii

Preliminary Statement .................................................................................. 1

Statement of Facts ....................................................................................... 5

    A. Overview Of Amaranth Advisors ......................................................... 5

    B. Amaranth Advisors Traded In Natural Gas Futures
    And Never Purchased Or Sold Physical Natural Gas ............................ 5

        1. Overview Of Futures Contracts ...................................................... 6

        2. Overview Of The Physical Natural Gas Market ............................. 6

    C. Investigations Of Amaranth Advisors' Natural Gas
    Futures Trading ..................................................................................... 7

Argument ..................................................................................................... 9

I. Amaranth Advisors Is Entitled To A Preliminary Injunction ..................... 9

    A. Amaranth Advisors Is Likely To Succeed On The Merits .................... 10

        1. The CFTC Has Exclusive Jurisdiction Over Any Alleged
        Manipulation Of Futures Traded Or Cleared On NYMEX ............. 10

            a. Congress Preempted Any Other Federal Or State
            Authority From Any Jurisdiction Over Futures Trading
            Including In Natural Gas Futures Contracts ........................... 11

            b. The Energy Policy Act Does Not Alter The CFTC's
            Exclusive Jurisdiction Over Natural Gas Futures
            Trading .................................................................................. 12

            c. The FERC Has Conceded That It Lacks Jurisdiction
            Over Futures Trading ............................................................. 13

            d. Any Indirect Effect On Physical Natural Gas Prices
            From Amaranth Advisors' Futures Trading Is
            Insufficient To Give The FERC Jurisdiction ........................... 15

**TABLE OF CONTENTS**
(Continued)

Page

2. The CFTC Has Primary Jurisdiction Over The FERC To Bring An Enforcement Action Based On Trading Of Natural Gas Futures ........... 19

    a.   NYMEX Trading Lies At The Heart Of The CFTC's Exclusive Authority ............................................................. 21

    b.   The CFTC Has Expertise And Specialized Knowledge ................... 21

    c.   Congress Has Mandated Uniformity ................................................ 22

    d.   The Case Is Complex And Factual In Nature ................................... 23

    e.   The CFTC's Action Will "Materially Aid" The FERC's Action .............................................................................. 23

    f.   A Delay Will Not Adversely Impact The FERC ............................... 23

B. Absent A Stay Amaranth Advisors Will Suffer Irreparable Harm ....................... 24

C. A Stay Will Not Harm The FERC's Legitimate Interests ................................... 27

D. A Stay Would Serve The Public Interest .............................................................. 27

II. This Court Has The Power To Stay The FERC's Proceeding ...................... 28

A. The Court Has The Inherent Power To Protect Its Jurisdiction ........................... 28

B. The Court Can Stay The FERC Action To Protect The CFTC's Exclusive Jurisdiction .................................................................................... 29

Conclusion ................................................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Altamont Gas Transmission Co. v. FERC*, 92 F.3d 1239 (D.C. Cir. 1996) ............... 17-19

*Am. Agriculture Movement, Inc. v. Board of Trade of City of Chicago,*
   977 F.2d 1147 (7th Cir. 1992).................................................................... 12

*Amoco Prod Co. v. Heiman*, 904 F.2d 1405 (10th Cir. 1990) ............................... 26

*Ayers v. SEC*, 482 F. Supp. 747 (D. Mont. 1980) ...................................... 24

*B & D Land & Livestock Co. v. Veneman*, 231 F. Supp. 2d 895 (N.D. Iowa 2002)......... 26

*Board of Trade v. SEC*, 187 F.3d 713 (7th Cir. 1999) .................................. 16

*Bonneville Power Admin. v. FERC*, 422 F.3d 908 (9th Cir. 2005)........................ 18

*Branstad v. Veneman*, 145 F. Supp. 2d 1011 (N.D. Iowa 2001) ........................... 26

*Capital Service v. N.L.R.B.*, 347 U.S. 501 (1954)..................................... 29

*CFTC v. Zelner*, 373 F.3d 861 (7th Cir. 2004) ....................................... 13

*Chicago Board of Trade v. SEC*, 677 F.2d 1137 (7th Cir. 1982),
   *vacated on other grounds*, 459 U.S. 106 (1982).................................. 16-17

*Chic. Mercantile Exch. v. SEC*, 883 F.2d 537 (7th Cir. 1989) ..................... 11, 16

*Chic. Mercantile Exch. v. Deaktor*, 414 U.S. 113 (1973) ........................ 20, 21

*Commodity Futures Trading Com'n v. Chilcott Portfolio Mngmnt., Inc.*
   713 F.2d 1477 (10 Cir. 1983)................................................... 29

*Conoco, Inc. v. FERC*, 90 F.3d 536 (D.C. Cir. 1996),
   *cert. denied*, 519 U.S. 1142 (1997) ......................................... 18-19

*Ellis v. Tribune TV Co.*, 443 F.3d 71 (2nd Cir. 2006)................................ 20

*Energy Development Corp. v. St. Martin,*
   Civ. No. 98-3395, 2005 U.S. Dist. LEXIS 994 (E.D. La. Jan. 24, 2005)................ 25

*Far East Conf. v. U.S.*, 342 U.S. 570 (1952) ........................................ 20

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Federal Trade Commission v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2002) ........ 11-12

*Haustechnik v. U.S.*, 34 Fed. Cl. 740 (1996) ......................................................... 25

*Hydrocarbon Trading and Transport Co. v. Exxon Corp.*,
  89 F.R.D. 650 (S.D.N.Y. 1981) ........................................................................ 19

*In re Diet Drugs Products Liability Litigation*, 282 F.3d 220 (3d Cir. 2002) ............... 28

*Kramer v. O.C. Jenkins*, 803 F.3d 896 (7th Cir. 1986) .................................... 25-26

*Landis v. North American Co.*, 299 U.S. 248 (1936) .......................................... 28

*Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229 (S.D.N.Y. 2006),
  *aff'd*, 216 Fed. Appx. 14 (2d Cir. 2007) ...................................................... 16

*MCI Comms. Corp. v. Am. Tel. & Tel. Co.*, 496 F.2d 214 (3rd Cir. 1974) ............. 20

*N.L.R.B. v. Denver Building & Const. Trades Council*, 341 U.S. 675 (1951) ............. 10

*Northern States Power Co. v. FERC*, 176 F.3d 1090 (8th Cir. 1999) ..................... 18

*Northrop Corp. v. U. S.*, 27 Fed. Cl. 795 (1993) ............................................... 25

*Orange & Rockland Utilities, Inc. v. Howard Oil Co.*,
  416 F. Supp. 460 (S.D.N.Y. 1974) ................................................................ 20

*Peck v. U.S.*, 522 F. Supp. 245 (S.D.N.Y. 1987) ............................................... 28

*Public Utilities Com. v. United Fuel Gas Co.*, 317 U.S. 456 (1943) .................. 28, 29

*Reuters Ltd. v. United Pres. Int'l., Inc.*, 903 F.2d 904 (2d Cir. 1990) ..................... 9

*SEC v. Zandford*, 535 U.S. 813 (2002) ........................................................ 15-16

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*
  190 F. Supp.2d 577 (S.D.N.Y. 2002) ............................................................... 9

*Superintendent of Insurance of N.Y. v. Bankers Life & Casualty Co.*,
  404 U.S. 6 (1971) ........................................................................................ 16

iv

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Trans World Airlines, Inc. v. Mattox*, 712 F. Supp. 99 (W.D. Tex. 1989), *aff'd*, 897 F.2d 773 (5th Cir. 1990), *cert. denied*, 498 U.S. 926 (1990), *cert. granted sub nom. Morales v. Trans World Airlines, Inc.*, 502 U.S. 976 (1991), *aff'd in part, rev'd in part*, 504 U.S. 374 (1992) ..................24

*U.S. Commodities Futures Trading Commission v. Reed*, 481 F. Supp. 2d 1190 (D. Colo. 2007) .............12-13

*U.S. v. 43.47 Acres of Land*, 45 F. Supp. 2d 187 (D. Conn. 1999) ......... 20, 21, 27

*U.S. v. Gilbert*, 668 F.2d 94 (2d Cir. 1981) ............ 16

*U.S. v. O'Hagan*, 521 U.S. 642 (1997) ............ 16

*U.S. v. Rural Electric Convenience Cooperative Co.*, 922 F.2d 429 (7th Cir. 1991) ............ 25

*U.S. v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966) ............ 25

*U.S. v. W. Pac. R.R.*, 325 U.S. 59 (1956) ............ 20

*Volmar Distributings v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) ............ 28

*Wharf Holdings Ltd. v. United International Holdings, Inc.*, 532 U.S. 588 (2001) ......... 16

## STATUTES AND RULES

7 U.S.C. § 1a(19) ............ 6

7 U.S.C. § 2(a)(1)(A) ............ 2, 11

15 U.S.C. § 717 c-1 ............ *passim*

15 U.S.C. § 717t-2(c)(2) ............ 12

Prohibition of Energy Market Manipulation," 18 C.F.R. § 1c.1, issued in Order No. 670, 114 F.E.R.C. 61,047 (Jan. 19, 2006) ............ *passim*

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**LEGISLATIVE HISTORY**

120 Cong. Rec. H34,736 (Oct. 9, 1974) ................................ ................................ ......... 12

H. Conf. Rep. No. 93-1383, 93rd Cong., 2d Sess. (1974), 1974 U.S.C.C.A.N.,
     p.5897 ................................ ................................ ................................ ..................... 11

Sen. Rep. No. 93-1131, 93rd Cong., 2d Sess., (1974) 1974 U.S.C.C.A.N. p. 5848 ........ 11

**MISCELLANEOUS**

A Review of Recent Hedge Fund Participation in NYMEX Natural Gas and
     Crude Oil Futures Markets (NYMEX March 1, 2005) (available at
     http://www.nymex.com/media/hedgedoc.pdf) ................................ ........................... 6

CFTC, *Energy Markets Enforcement Actions, December 2002 – July 2007,*
     available at  http://www.cftc.gov/files/enf/enfenergyenforcementactions.pdf ..... 21-22

Federal Energy Regulatory Commission, Strategic Plan for Fiscal years 2006-
     2011, at p. 4 (Sept. 2006) available at http://www.ferc.gov/about/strat-
     docs/FY-06-11-strat-plan-print.pdf ................................ ................................ ........... 7

Philip F. Johnson, *The Commodity Futures Trading Commission Act: Preemption
     as Public Policy,* 29 Vand. L. Rev. 1 (1976) ................................ ............................ 11

*Memorandum of Understanding Between FERC and CFTC Regarding
     Information Sharing And Treatment Of Proprietary Trading And Other
     Information* dated October 12, 2005 ................................ ................................ . *passim*

Tina Seeley, *Amaranth Tried to Manipulate Gas Prices, CFTC Says,* July 25,
     2007, available at http://www.bloomberg.com/apps/news. ................................ ...... 22

*Statement of Senator Carl Levin Before the Permanent Subcommittee on
     Investigations on Excessive Speculation in Natural Gas Prices,* July 9, 2007 .......... 21

Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC (collectively, "Amaranth Advisors"), respectfully submit this memorandum of law in support of their motion for an order staying the enforcement action commenced by the Federal Energy Regulatory Commission (the "FERC"), pending the outcome of the instant action brought by the Commodity Futures Trading Commission (the "CFTC").

## PRELIMINARY STATEMENT

In order to protect this Court's jurisdiction and the integrity of the findings and conclusions of this Court, it is essential that the FERC proceeding against Amaranth Advisors, described below in more detail, not proceed until this action has concluded. Absent such relief, judicial and administrative resources will be wasted, inconsistent determinations by this Court and the FERC based upon the same set of facts, regarding the same conduct are likely, and the undisputed exclusive jurisdiction of the CFTC over commodity futures trading will be usurped. Conversely, the FERC – which, after all, is but another arm of the same federal government of which the CFTC is part – will not be prejudiced in the least by such a stay, and indeed may very well benefit. Accordingly, for the reasons set forth below, Amaranth Advisors respectfully requests that the Court stay the FERC proceeding until the instant action is concluded.

Two federal agencies, after lengthy, coordinated investigations, examining the same conduct, have brought two separate actions for market manipulation against Amaranth Advisors, in two separate jurisdictions, relating to the same trading of natural gas futures contracts. The CTFC, which commenced an action in this Court, has exclusive jurisdiction to regulate commodity futures trading on commodity futures exchanges and has done so for over thirty years. The FERC has jurisdiction over wholesale interstate physical natural gas markets in which Amaranth Advisors never traded. The FERC's action interferes with this Court's

jurisdiction over the CFTC action, and there exists a substantial risk that it will result in inconsistent findings regarding Amaranth Advisors' conduct. Indeed, the conclusions of the two agencies are already at odds because the CFTC found, based on the exact same documents and testimony as before the FERC, that the evidence does not support a claim that prices of natural gas futures were artificial (*i.e.* manipulated), but the FERC alleges that those prices were artificial. The disorder posed by these potential inconsistencies, which directly impact this Court's case, is exacerbated by the fact that the CFTC has exclusive jurisdiction to bring an enforcement action against Amaranth Advisors based on its natural gas futures trading.

On July 25, 2007, the CFTC filed a Complaint alleging that Amaranth Advisors attempted to artificially depress the settlement price of natural gas futures traded on the New York Mercantile Exchange ("NYMEX").[1] The CFTC has *exclusive* jurisdiction over futures trading on NYMEX. *See* 7 U.S.C. § 2(a)(1)(A). In a press release announcing the action, the CFTC noted its "unwavering determination to ensure that the futures markets operate in an open and competitive manner" and stated that "the CFTC stands ready to enforce the provisions of the Commodity Exchange Act against those who attempt to manipulate U.S. futures and commodity prices."[2] The CFTC further thanked the FERC for its assistance in the investigation "per the agencies' Memorandum of Understanding," which was signed by both agencies and provides that:

> [t]he CFTC *has exclusive jurisdiction* with respect to accounts, agreements, and *transactions involving contracts of sale of a commodity for future delivery, including, but not limited to, natural gas*, electricity, or any other energy product, traded or executed on or subject to the rules of a designated contract market, registered derivatives transaction execution facility, or any other

---

[1] A copy of the Complaint filed by the CFTC is annexed hereto as Exhibit A.

[2] A copy of the press release is annexed hereto as Exhibit B.

board of trade, exchange, or market as described in section
2(a)(1)(A) of the CEA, 7 U.S.C. § 2(a)(1)(A).

*Memorandum of Understanding Between FERC and CFTC Regarding Information Sharing And*

*Treatment Of Proprietary Trading And Other Information* dated October 12, 2005

("Memorandum of Understanding") at 2 (emphasis added).[3]

The next day, the FERC initiated its own proceeding against Amaranth Advisors,

the first of its kind under a recently enacted statute. In its Order to Show Cause and Notice of

Proposed Penalties ("Show Cause Order"), the FERC acknowledged that the "CFTC has

exclusive jurisdiction over the operation of exchanges such as the NYMEX."[4] The FERC

nonetheless seeks massive penalties and disgorgement (totaling at least $278 million) against

Amaranth Advisors for trading natural gas futures on the NYMEX, which is exclusively

regulated by the CFTC. The Show Cause Order gave Amaranth Advisors 30 days to respond

with detailed legal arguments and factual and expert evidence. Amaranth Advisors requested

and received a 30-day extension.[5]

As a result of the FERC stepping well beyond the jurisdictional bounds imposed

by Congress, Amaranth Advisors faces irreparable harm. First, Amaranth Advisors faces

extensive parallel litigations, with two separate agencies, in two separate forums, seeking to hold

Amaranth Advisors liable for the exact same conduct. Moreover, two parallel proceedings – one

under an untested legal regimen – expose Amaranth Advisors to a significant risk of inconsistent

determinations by the FERC and this Court. Finally, the simultaneous filings have set the stage

for the CFTC and the FERC to race to judgment, virtually ensuring that one of these proceedings

---

[3] A copy of the Memorandum of Understanding is annexed hereto as Exhibit C.

[4] *See* Show Cause Order, annexed hereto as Exhibit D, at ¶ 55.

[5] Amaranth Advisors asked the FERC staff if it would support a 60-day extension. The staff refused, stating it would only recommend a 30-day extension. As a result, Amaranth Advisors' formal request to the FERC was for an additional 30 days, which was granted.

will be a complete waste of resources, not only those of Amaranth Advisors, but also the taxpayer-funded resources of the two agencies and this Court. This is particularly troubling when serious questions exist regarding the FERC's authority to conduct an enforcement proceeding in this matter at all.[6]

> To prevent the FERC from interfering with this Court's jurisdiction over the CFTC action and to avoid inconsistent rulings and the waste of governmental and judicial resources, Amaranth Advisors respectfully requests that this Court stay the FERC's proceeding until the resolution of the pending CFTC action. As explained below, Amaranth Advisors respectfully submits that the CFTC has exclusive jurisdiction over enforcement actions arising out of futures trading on NYMEX, and that therefore, the FERC is acting beyond the scope of its statutory authority. At the very least, the CFTC has primary jurisdiction over an enforcement proceeding involving Amaranth Advisors, and the FERC should be ordered to defer to the CFTC's expertise in matters involving commodity futures trading. Thus, this Court should enjoin the FERC from proceeding until this Court issues a final judgment in the CFTC action.

---

[6] Amaranth Advisors is not asking this Court to determine whether the FERC has jurisdiction to proceed with its enforcement action. Brian Hunter, an individual defendant in the CFTC's civil action and the FERC's enforcement action, brought a declaratory judgment action in the District Court for the District of Columbia to determine the issue of whether the FERC has jurisdiction to proceed with its enforcement action. The FERC is trying to avoid judicial review of the scope of its jurisdiction by asserting in that action, among other things, that it should be allowed to complete its enforcement action before any Court decides whether it even had the right to commence such action. *See* 07 Civ. 1307 (RJL). Mr. Hunter also requested a temporary restraining order and a preliminary injunction. The former was denied and the latter is *sub judice*. Amaranth Advisors is not currently a party to that action, but Amaranth Advisors intends to intervene in that action with respect to the ultimate issue of the FERC's jurisdiction. Here, Amaranth Advisors simply is seeking to stay the FERC's enforcement action pending the CFTC's action because of the clear likelihood that the CFTC has exclusive jurisdiction, because of the CFTC's substantial expertise regulating futures trading, to prevent inconsistent judgments, and most importantly to protect the jurisdiction of this Court over the CFTC action. This Court does not need to address the ultimate issue of whether the FERC has jurisdiction to proceed with its enforcement action, because even if it does, under the circumstances described herein, a stay of the FERC proceeding is warranted.

## STATEMENT OF FACTS

### A.    Overview Of Amaranth Advisors

Defendants are both investment advisors to Amaranth LLC, an investment fund organized under the laws of the Cayman Islands. Amaranth Advisors was an active trader in the natural gas futures and swaps markets until September 2006 when Amaranth LLC suffered substantial losses. After meeting with representatives of investors, Amaranth Advisors determined that it was in the best interest, and indeed the desire, of investors to proceed with an orderly sale of Amaranth LLC's investment assets and to make a series of *pro rata* distributions of remaining capital to its shareholders and ultimately, to their respective investors. As a result, since September 2006, Amaranth Advisors has distributed billions of dollars to investors.

### B.    Amaranth Advisors Traded In Natural Gas Futures And Never Purchased Or Sold Physical Natural Gas

The distinction between the natural gas futures market (which the CFTC has exclusive jurisdiction to regulate) and the market for physical natural gas (which the FERC regulates) is crucial. Amaranth Advisors traded in the natural gas futures market. It did not, and could not, own, buy, or sell physical natural gas. (Maounis Dec. ¶ 4). Because Amaranth Advisors did not have the capacity to make or take physical delivery of natural gas underlying a NYMEX natural gas futures contract, it always had to offset its NYMEX natural gas futures contracts prior to expiration. Accordingly, and of critical importance, the supposedly manipulative trading alleged by the FERC, and the unsuccessful attempts to manipulate the same contracts on the same dates alleged by the CFTC, all took place exclusively in the NYMEX futures market. Not one single physical natural gas transaction is even mentioned by the FERC. *See* Ex. D. Moreover, the damages claimed by the FERC are all calculated based on NYMEX trades, and not on any activities in furtherance of the purchase or sale of physical natural gas.

5

1.      **Overview of Futures Contracts**

Under the Commodity Exchange Act ("CEA"), futures contracts traded on a futures exchange are fully regulated by the CFTC, while other agreements, contracts and transactions between eligible counterparties may be traded both on trading facilities and in bilateral transactions. A NYMEX natural gas futures contract is a standardized contract, which takes the form of an obligation of the buyer to accept and a seller to deliver a specified quantity of natural gas at a specified place and time in the future for a price specified at the time the contract is entered. However, natural gas futures contracts rarely result in the physical delivery of natural gas. Before the time for delivery arrives, buyers and sellers virtually always negate their obligations by entering into an offsetting obligation. As NYMEX has concluded, "only a small fraction of contracts executed on futures exchanges will result in physical delivery...."[7] The primary purpose of futures contracts is not to provide for actual delivery of natural gas, but rather, to allow market participants to hedge against future price changes. In addition, speculators buy and sell futures contracts to profit from price changes.

2.      **Overview Of The Physical Natural Gas Market**

By contrast, the physical natural gas market involves the actual purchase, sale, and transfer of physical quantities of natural gas. Wholesale natural gas users, such as industrial users or local distribution companies, purchase natural gas for immediate delivery or for a fixed amount of gas to be delivered each day of the specified month or months. Such commercial contracts designed to provide deferred, actual delivery are expressly differentiated on that basis in the CEA from futures contracts. 7 U.S.C. § 1a(19) ("term 'future delivery' does not include any sale of any cash commodity for deferred shipment or delivery").

---

[7] *See* A Review of Recent Hedge Fund Participation in NYMEX Natural Gas and Crude Oil Futures Markets (NYMEX March 1, 2005) (available at http://www.nymex.com/media/hedgedoc.pdf).

The FERC is the federal agency responsible for regulating the wholesale, interstate physical natural gas market. The FERC has exclusive jurisdiction over, among other things, "the transportation of natural gas in interstate commerce and certain sales in interstate commerce of natural gas for resale." *See* Ex. C at 2. The FERC regulates the construction of natural gas pipelines and related facilities, and the rates, terms and conditions of sales for resale, or wholesale, and transportation of natural gas in interstate commerce.[8] In 2005, the FERC was given authority to assert claims of manipulation "in connection with the purchase or sale of natural gas…subject to the jurisdiction of the [FERC]." 15 U.S.C. § 717 c-1.

C.    **Investigations of Amaranth Advisors' Natural Gas Futures Trading**

The CFTC and the FERC both conducted non-public investigations into Amaranth Advisors' trading in natural gas futures. As the FERC recognized in its Show Cause Order, its staff's investigation "was heavily coordinated with an investigation opened subsequently by the CFTC, the exclusive direct regulator of the NYMEX." Ex. D at ¶ 55. Amaranth Advisors cooperated with these dual investigations, producing over a million pages of documents, making its current and former employees available for questioning by the regulatory agencies, and having its counsel attend numerous meetings with the regulatory agencies.

On April 12, 2007, the CFTC issued a "Wells Notice" to Amaranth Advisors regarding a possible enforcement action by the CFTC against Amaranth Advisors for alleged manipulation of the price of the NYMEX May 2006 natural gas futures contract during the last half-hour of the last trading day in the May contract, April 26, 2006. Amaranth Advisors responded on the merits but did not contest the CFTC's jurisdiction to bring such action.

---

[8] Regulation of the production and gathering of natural gas, however, as well as retail sales and local distribution of natural gas, are matters left to the states. Federal Energy Regulatory Commission, Strategic Plan for Fiscal years 2006-2011, at p. 4 (Sept. 2006) *available at* http://www.ferc.gov/about/strat-docs/FY-06-11-strat-plan-print.pdf citing the Natural Gas Act, 15 U.S.C. § 717 *et. seq.* (2005).

Notwithstanding the determination of the CFTC staff to recommend an enforcement action against Amaranth Advisors (as reflected in the Wells Notice), on May 16, 2007, the FERC staff determined it too has jurisdiction over natural gas futures contracts, and informed Amaranth Advisors by e-mail dated June 7, 2007, and letter dated June 13, 2007, that a "recommendation *may* be made" (emphasis in original) to bring an enforcement proceeding against Amaranth Advisors regarding manipulation of the NYMEX natural gas futures markets. Amaranth Advisors responded, arguing, among other things, that the FERC lacked jurisdiction to commence an action because futures trading is within the exclusive domain of the CFTC.

On July 25, 2007, the CFTC commenced this action asserting that, on February 24, 2006 and April 26, 2006, Amaranth Advisors unsuccessfully attempted to manipulate the settlement price of NYMEX natural gas futures contracts. The very next day, the FERC commenced its administrative proceeding. The FERC alleges that Amaranth Advisors successfully manipulated the settlement prices of the same natural gas futures contracts on the same days cited by the CFTC.[9] The FERC seeks $219 million in penalties ($1 million for each trade allegedly made on behalf of Amaranth Advisors in the NYMEX trading pit), plus disgorgement of at least $59 million in alleged "profits" from trading NYMEX futures contracts and swaps. As a result, Amaranth Advisors now faces two enforcement actions, by two separate agencies, in two separate jurisdictions, based on the exact same conduct. The two proceedings are already based on the two agencies' diametrically opposed conclusions regarding such conduct, and create the real specter of inconsistent final determinations directly impacting this Court's adjudication of the CFTC action. These federal agencies seek to punish Amaranth Advisors twice for the exact same conduct. Under these extraordinary circumstances, Amaranth

---

[9] The FERC adds one additional day in which it charges manipulation of the settlement of NYMEX futures contracts, March 29, 2006. The CFTC apparently concluded that Amaranth Advisors' futures trading on that date does not even support a claim for attempted manipulation.

Advisors respectfully requests that this Court stay the FERC enforcement action until this Court enters a final judgment in the CFTC action.

## ARGUMENT

### I.    Amaranth Advisors Is Entitled To A Preliminary Injunction

In order to obtain a preliminary injunction, movant must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *See Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (citations omitted). The moving party must demonstrate that irreparable harm is imminent, not merely speculative, and that the alleged injury is one not capable of remedy by monetary damages. *See Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

As discussed below, Amaranth Advisors is likely to succeed on the merits, and certainly raises serious questions on the merits. First, and foremost, the FERC is unlawfully encroaching upon the CFTC's exclusive authority to regulate futures trading, and the CFTC is the agency with expertise in the area of futures trading. Even if the FERC shared jurisdiction over the commodity futures market, however, a stay of its action pending conclusion of the CFTC action would be appropriate because the FERC action improperly interferes with this Court's jurisdiction over the CFTC action. There exists a substantial danger of inconsistent judgments, duplicative penalties for identical conduct and the potential preclusive effect of final agency determinations. Amaranth Advisors thus faces irreparable harm if the two agencies' respective actions are allowed to proceed simultaneously. Moreover, it is in all parties' best interests – and the interests of the United States taxpayers – not to waste governmental and

9

judicial resources with duplicative enforcement actions.  In short, this Court should enjoin the FERC's enforcement action until the resolution of the CFTC's civil action pending in this Court.

### A.     Amaranth Advisors Is Likely To Succeed On The Merits

#### 1.     The CFTC Has Exclusive Jurisdiction Over Any Alleged Manipulation Of Futures Traded Or Cleared On NYMEX

It is the CFTC, which filed its action in this Court before the FERC commenced its administrative proceeding, and which has exclusive jurisdiction over futures trading, that should have the first opportunity to litigate whether Amaranth Advisors attempted to manipulate the settlement price of natural gas futures on the NYMEX.[10]  The jurisdiction of federal agencies is limited, and dependent entirely upon the validity and the terms of the congressional statutes reposing power in the particular agency.  *See N.L.R.B. v. Denver Bldg. & Const. Trades Council,* 341 U.S. 675 (1951).  Federal agencies cannot confer jurisdiction on themselves.  *Id.*  This Court should not permit the FERC – which is encroaching upon the CFTC's exclusive regulatory authority as mandated by Congress – to preempt the CFTC's civil enforcement action.  The FERC's enforcement action is based solely on Amaranth Advisors' natural gas futures trading on NYMEX.  To support its case, the FERC will have to rely on complex factual data involving the trading of natural gas futures contracts on NYMEX.  Perhaps the most stark evidence of how the FERC's action seeks to usurp the jurisdiction of the CFTC is that the *only* damages sought by the FERC are based on trading of natural gas futures.  Indeed, the FERC provides no calculation of damages based on prices of, or transactions in, physical natural gas.  *See* Ex. D at ¶¶ 25, 116-18.

---

[10] Obviously, if this Court finds that Amaranth Advisors did not attempt to manipulate NYMEX natural gas futures contracts, the FERC action would become moot.

a.    **Congress Preempted Any Other Federal Or State**
**Authority From Any Jurisdiction Over Futures**
**Trading Including In Natural Gas Futures Contracts**

When it enacted the CEA, Congress specifically directed that the CFTC have

"*exclusive* jurisdiction…with respect to accounts, agreements and transactions involving

contracts of sale of a commodity for future delivery." 7 U.S.C. § 2(a)(1)(A) (emphasis added);

*see Chic. Mercantile Exch. v. SEC,* 883 F.2d 537, 550 (7th Cir. 1989) (dismissing Securities and

Exchange Commission's petition for review for lack of jurisdiction because the CFTC had

exclusive jurisdiction over futures contracts). The legislative history is clear that Congress

intended the CEA to preempt any other federal or state authority regulating commodity futures

trading.[11] In providing the CFTC with exclusive jurisdiction, Congress charged a single agency

with responsibility for the buying and selling of all futures: "(a) the Commission's jurisdiction

over futures contract markets or other exchanges is exclusive and includes the regulation of

commodity accounts, commodity trading agreements, and commodity options; (b) the

Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies . . . ."

Sen. Rep. No. 93-1131, 93rd Cong., 2d Sess., (1974), 1974 U.S.C.C.A.N. p. 5848. Stated

alternatively, "[u]nder the exclusive grant of jurisdiction to the Commission, the authority in the

Commodity Exchange Act . . . would preempt the field insofar as futures regulation is

concerned." H. Conf. Rep. No. 93-1383, 93rd Cong., 2d Sess. (1974), 1974 U.S.C.C.A.N.,

p.5897; *see Fed. Trade Comm'n v. Ken Roberts Co.,* 276 F.3d 583, 590 (D.C. Cir. 2002) ("[A]ll

of the categories delineated . . . describe business deals that involve the buying and selling of

futures, which comports with Congress's goal of conferring the CFTC with sole regulatory

---

[11] *See* Philip F. Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy,* 29 Vand. L. Rev. 1, 18 (1976) (describing legislative history of CEA and noting that "it is clear that the conferees intended the CFTC to be the sole regulatory authority for the futures industry"). A copy of this article is annexed hereto as Exhibit E.

authority over 'futures contracts, markets or other exchanges.'"). Congress specifically

mandated that the goal of the CFTC's exclusive jurisdiction over the futures markets was to

"avoid unnecessary, overlapping and duplicative regulation." 120 Cong. Rec. H34,736 (Oct. 9,

1974). As the Seventh Circuit noted, the goal of the CEA was to bring the futures markets

"under a uniform set of regulations." *Am. Agric. Movement, Inc. v. Bd. of Trade of City of*

*Chicago,* 977 F.2d 1147, 1155-57 (7th Cir. 1992).

> **b.    The Energy Policy Act Does Not Alter The CFTC's Exclusive Jurisdiction Over Natural Gas Futures Trading**

Although the FERC points to the Energy Policy Act of 2005 ("EPAct") as the

basis for its purported authority to determine whether Amaranth Advisors manipulated the price

of NYMEX natural gas futures trading, that statute specifically preserved the CFTC's exclusive

authority over futures markets. The EPAct bestows the FERC with the jurisdiction to sanction

manipulation of the ***physical*** natural gas markets. However, the EPAct specifically did not limit

or affect in any way the CFTC's exclusive jurisdiction over trading in natural gas futures or

expand the FERC's jurisdiction beyond its traditional jurisdiction over wholesale interstate

transactions in physical natural gas. Indeed, Congress explicitly stated in the EPAct that:

"Nothing in this Section may be construed to limit or affect the exclusive jurisdiction of the

[CFTC] under the [CEA]." 15 U.S.C. § 717t-2(c)(2). The FERC's jurisdiction is thus limited to

sanctioning manipulation of the ***physical*** natural gas markets. Specifically, the EPAct prohibits:

> any entity, directly or indirectly, ***to use or employ, in connection with the purchase or sale of natural gas*** or the purchase or sale of transportation services ***subject to the jurisdiction of the Commission,*** any manipulative or deceptive device or contrivance . . .

15 U.S.C. § 717c-1 (emphasis added).

As one court recently stated, after the enactment of EPAct, "the CEA is

recognized as establishing a 'comprehensive system for regulating futures contracts and

options.'" *U.S. Commodities Futures Trading Comm'n v. Reed*, 481 F. Supp. 2d 1190, 1194 (D. Colo. 2007) (citation omitted). Pursuant to the CEA, "the CFTC has exclusive jurisdiction over what are referred to as 'futures contracts'." *Id.* at 1195 (citing *CFTC v. Zelener*, 373 F. 3d 861, 865 (7th Cir. 2004)).

### c.    The FERC Has Conceded That It Lacks Jurisdiction Over Futures Trading

The FERC has in fact acknowledged the limitation on its enforcement power to wholesale energy markets and not futures markets in its promulgation of its Final Rule setting forth its "Prohibition of Energy Market Manipulation," 18 C.F.R. § 1c.1, issued in Order No. 670, 114 FERC 61,047 (Jan. 19, 2006) ("Order 670"). [12] In Order 670, the FERC states that the purpose of the Final Rule is to "deter or punish fraud in *wholesale* energy markets." *Id.* at ¶ 5 (emphasis added). Order 670 further provides: "As an initial matter, this Final Rule does not, and is not intended to, expand the types of transactions subject to [the FERC's] jurisdiction" and its "jurisdiction is limited to certain wholesale transactions that remain within the ambit of the NGA, [Natural Gas Policy Act of 1978], and FPA [Federal Power Act]." *See id.* at ¶¶ 16, 22.

The FERC concedes in Order 670 that "the most reasonable interpretation of the EPAct is that Congress did not expand the Commission's traditional NGA and FPA subject matter jurisdiction...." As the FERC itself states, if Congress had intended to expand the scope of transactions under the Commission's traditional jurisdiction via the EPAct, "it would have done so explicitly." *Id.* at ¶ 20. Further, the FERC, in the promulgation of its own rule under the EPAct, admits that its enforcement jurisdiction is specifically limited to transactions in the wholesale energy markets. For this reason, Order 670 declares "[w]e do not intend to construe

---

[12] A copy of Order 670 is annexed hereto as Exhibit F.

the Final Rule so broadly as to convert every common-law fraud that happens to touch a

jurisdictional transaction as a violation of the Final Rule." *See* Order 670 at ¶ 22.

  Moreover, in the Memorandum of Understanding, the FERC specifically

acknowledged the CFTC's exclusive jurisdiction with respect to futures contracts:

> the CFTC has ***exclusive jurisdiction*** with respect to accounts,
> agreements, and transactions involving contracts of sale of a
> commodity for future delivery, including, but not limited to,
> ***natural gas***, electricity, or any other energy product, traded or
> executed on or subject to the rules of a designated contract market,
> registered derivatives transaction execution facility, or any other
> board of trade, exchange, or market . . . .

Ex. C at 2 (emphasis added). By contrast, that same Memorandum of Understanding provides

that, "the FERC has exclusive jurisdiction over, among other things, the transportation of natural

gas in interstate commerce and certain sales in interstate commerce of natural gas for resale [and]

certain other transportation and sales of natural gas." *Id.* Indeed, in its Show Cause Order, the

FERC again recognized the limitations of its own jurisdiction and the CFTC's exclusive

province to regulate futures trading on the NYMEX. *See* Ex. D at ¶ 48 (noting that the "CFTC

has jurisdiction over trading on its regulated exchanges"); *id.* at ¶ 55 (explaining that "CFTC has

exclusive jurisdiction over the operation of exchanges such as NYMEX").

  Despite its recognition that the CFTC has exclusive jurisdiction over the

NYMEX, and transactions in contracts traded on NYMEX, the FERC filed an enforcement

action based solely on Amaranth Advisors' futures trading on NYMEX. In doing so, the FERC

contradicts its own previous pronouncements, and most importantly, oversteps Congress' grant

of limited jurisdiction of the FERC to punish manipulation of the wholesale energy market.

         **d.**     **Any Indirect Effect On Physical Natural Gas Prices**
                     **From Amaranth Advisors' Futures Trading Is**
                     **Insufficient To Give The FERC Jurisdiction**

       The FERC now asserts that notwithstanding Congress' express intent that only one regulator govern natural gas futures trading, the FERC can bring an action against Amaranth Advisors if its futures trading had an ***indirect and unquantifiable effect*** on the price of any transaction involving physical natural gas. Under the FERC's logic, it has the right to usurp the CFTC's exclusive jurisdiction to address Amaranth Advisors' conduct on NYMEX, if the trades in natural gas futures market somehow affected the price of some unspecified physical natural gas transaction, even though Amaranth Advisors never traded the physical natural gas, and did not have the ability to benefit from price changes of physical natural gas. This position blatantly ignores the statutory requirement that Amaranth Advisors use or employ a manipulative device ***"in connection with*** the purchase or sale of natural gas." 15 U.S.C. § 717c-1 (emphasis added).

       Congress expressly instructed the FERC in the statute itself to interpret the specific terms of the anti-manipulation provisions of the EPAct "as those terms are used in Section 10(b) of the Securities Exchange Act of 1934." *Id.*. FERC modeled Order 670 after the SEC's Rule 10b-5 and stated that the case law interpreting Section 10(b) and Rule 10b-5 would apply to the interpretation of the FERC's anti-manipulation authority. *See* Ex. F at ¶ 30. The 10b-5 case law expressly rejects the FERC's reading of the phrase "in connection with" the purchase or sale of natural gas to allow jurisdiction based solely on an act merely "affecting" the price of natural gas. In interpreting the "in connection with" requirement of Section 10(b), the Supreme Court has held that to be deemed "in connection with" a jurisdictional transaction, the alleged fraud must be found to have "coincided with the sales themselves." *SEC v. Zandford*, 535 U.S 813, 820 (2002). Indeed, fraud that is merely incidental and unattached to any particular

purchase or sale of securities would not satisfy the "in connection with" element. *Id.* at 825. Critically, the Supreme Court requires that securities transactions have been undertaken or induced as part and parcel ***and in furtherance*** of the fraudulent scheme. *Id.* at 820 (emphasis added). Specifically, in Section 10(b) manipulation cases, the alleged manipulators were always direct participants in the markets they were accused of manipulating.[13]  By contrast, Amaranth Advisors did not, and could not, engage in transactions in the physical natural gas market.

In an analogous case, the SEC's attempt to regulate stock index futures contracts (over which it has no jurisdiction) because of a perceived impact on stock prices (over which it does have jurisdiction) was rejected by the Seventh Circuit Court of Appeals. In *Chicago Mercantile Exch. v. SEC,* 883 F.3d 537 (7th Cir. 1989), the Seventh Circuit struck down the SEC's attempts to invade the CFTC's exclusive jurisdiction by regulating index participations ("IPs").  Emphasizing that the CFTC's exclusivity clause created a "zero-sum game," the Court analyzed whether IPs are more akin to stock or futures contracts because, if they are futures contracts, then "the CFTC's jurisdiction is exclusive." *Id.* at 545-47.  The Court ultimately concluded that the CFTC has exclusive jurisdiction to regulate IPs – and the SEC had no jurisdiction to regulate IPs – because IPs are more appropriately characterized as a futures contracts than stock. *Id.*; *see also Chicago Board of Trade v. SEC,* 677 F.2d 1137 (7th Cir. 1982), *vacated as moot on other grounds,* 459 U.S. 1026 (1982) (concluding that although

---

[13] *See, e.g., U.S. v. Gilbert,* 668 F.2d 94, 95 (2d Cir. 1981) (the scheme engineered by the defendant to manipulate the market price of shares of a small electronics company involved an elaborate series of wash sales and matched orders of those shares.); *Leykin v. AT&T Corp.,* 423 F. Supp. 2d 229, 241 (S.D.N.Y. 2006), *aff'd,* 216 Fed. Appx. 14 (2d Cir. 2007) ("Not all conduct that negatively affects a company's stock price is actionable as a federal securities fraud.  The scheme to defraud must coincide with the sale of securities.") (citation omitted); *Wharf Holdings Ltd. v. United Int'l Holdings, Inc.,* 532 U.S. 588, 597 (2001) (finding that the fraud coincided with a securities transaction where the defendant sold a security option while intending not to honor the option); *U.S. v. O'Hagan,* 521 U.S. 642, 655-56 (1997) (holding that a fraud was "in connection" with a securities transaction when a defendant misappropriated confidential information for the purpose of trading securities); *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 10 (1971) (holding a cognizable connection under a 10(b) claim where a company was injured as an investor through a deception where it was deprived of any compensation for the sale of its valuable block of securities.").

Government National Mortgage Association mortgage-backed-pass-through certificates ("GNMAs") are both securities and futures, the CFTC had exclusive authority to regulate GNMAs and the SEC had no authority to regulate such instruments).

Just as courts have prevented the SEC from encroaching upon the CFTC's exclusive jurisdiction, this Court should prevent the FERC from usurping the CFTC's exclusive authority to regulate natural gas futures – at least during the pendency of the CFTC's own enforcement action. The FERC has not identified a single purchase or sale of natural gas that coincides with any transactions engaged in by Amaranth Advisors. There simply was no purchase or sale of physical natural gas by Amaranth Advisors and none of Amaranth Advisors' transactions associated with the alleged manipulation were made "in connection with" physical natural gas. Therefore, Amaranth Advisors' trading is outside of the FERC's jurisdictional realm.

Moreover, applying the Natural Gas Act, courts have prevented the FERC from abusing its jurisdictional authority to do exactly what it is attempting to do here—to regulate indirectly activity that it lacks the authority to regulate directly and that Congress specifically has delegated to another agency. For example, in *Altamont Gas Transmission Co. v. FERC,* 92 F.3d 1239 (D.C. Cir. 1996), the California Public Utilities Commission ("CPUC"), Pacific Gas Transmission Company ("PGT"), a natural gas pipeline developer, and PGT's parent company, Pacific Gas & Electric Company ("PG&E") asked the court to conclude the FERC had exceeded its jurisdictional authority by conditioning its order permitting PGT to expand its natural gas pipeline on PG&E's acceptance of a rate of return adjustment. *Id.* at 1242-43. Specifically, the petitioners asserted that the FERC used its jurisdictional authority to approve pipeline expansions to infringe upon the CPUC's exclusive authority to set PG&E's intrastate rates. *Id.* at 1246-48. The FERC admitted that it could not lawfully regulate PG&E's intrastate rates, but argued that it

nevertheless could move indirectly to "induc[e] a change to a policy beyond [its] jurisdictional purview by attaching a rate of return condition to PGT's certificate." The court rejected the FERC's position.

Articulating the pivotal issue, the D.C. Circuit stated that that the main question was whether the FERC could "exercise its power over an interstate pipeline in a manner intended to influence a state agency's regulation of" intrastate rates. The Court concluded that the FERC could not abuse its jurisdictional right to approve pipeline expansions to encroach upon the CPUC's exclusive authority to set intrastate rates:

> The Commission lowered PGT's return on equity specifically and only 'to induc[e] a change to a policy beyond [its] jurisdictional purview,' *i.e.* to pressure the CPUC to regulate PG&E as the Commission desired but could not itself require. Under the circumstances, the Commission was indeed attempting to do indirectly what it could not do directly, that is, intercede in a matter that the Congress reserved to the State.

*Id.* at 1248. Ultimately, the D.C. Circuit held that the "the Commission did indeed overstep its jurisdictional bounds, interfering in an area that the Congress has expressly reserved to the states." *Id.* at 1242; *see also Bonneville Power Admin. v. FERC*, 422 F.3d 908, 914-23 (9th Cir. 2005) (concluding that the FERC had acted beyond its statutory authority when it ordered non-public utility sellers to issue refunds because Congress specifically limited its jurisdiction to public utilities); *Northern States Power Co. v. FERC*, 176 F.3d 1090, 1096 (8th Cir. 1999) (concluding that the FERC "transgressed its Congressional authority" by using its jurisdiction to regulate the wholesale electricity market to regulate indirectly the retail market which Congress expressly delegated to the states).; *Conoco, Inc. v. FERC*, 90 F.3d 536, 552-53 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1142 (1997) (rejecting FERC's interpretation of statute because "in

connection with" language in Natural Gas Act cannot be used to expand the FERC's power to regulate nonjurisdictional activities).

       In this case, the FERC seeks to use its jurisdictional authority to regulate indirectly an activity that it lacks the authority to regulate directly and that Congress has delegated exclusively to the CFTC. The FERC has the authority to regulate directly alleged manipulation in the physical natural gas markets, but not to regulate the natural gas futures markets because Congress delegated to the CFTC the *exclusive authority* to regulate natural gas futures trading on NYMEX. Like the FERC's attempt to utilize its authority over pipeline extensions to encroach on the CPUC's exclusive authority to set intrastate natural gas rates in *Altamont*, and like the FERC's attempt to use the "in connection with" language to justify regulation of nonjurisdictional activity in *Conoco*, here, the FERC is utilizing its authority to regulate the physical natural gas market to usurp the CFTC's exclusive authority over trading in the natural gas futures market. Just as in *Altamont* and *Conoco*, the FERC is overstepping its jurisdictional bounds and interfering in an area that Congress exclusively has delegated to another agency. The Court should not tolerate or condone this unlawful expansion of jurisdiction, particularly where it interferes with a case pending before this Court.

    2.    **The CFTC Has Primary Jurisdiction Over The FERC To Bring An Enforcement Action Based On Trading Of Natural Gas Futures**

       Even if Congress had granted the FERC concurrent jurisdiction over the NYMEX trading, the CFTC has primary jurisdiction and the FERC should be required to defer to the CFTC's enforcement action based on natural gas futures trading. The doctrine of primary jurisdiction provides that "agencies created by Congress for regulating the subject matter should not be passed over " when their technical expertise is relevant to the issues to be decided. *Hydrocarbon Trading and Transport Co. v. Exxon Corp.*, 89 F.R.D. 650, 652 (S.D.N.Y. 1981)

(quoting *Far East Conf. v. U.S.,* 342 U.S. 570 (1952)). The doctrine of primary jurisdiction generally comes into play to stay a court proceeding where "enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *U.S. v. 43.47 Acres of Land,* 45 F. Supp. 2d 187, 191 (D. Conn. 1999) (quoting *U.S. v. W. Pac. R.R.,* 325 U.S. 59, 64 (1956)). Those concepts are equally pertinent here, where two federal agencies are pursuing enforcement actions based on the exact same conduct. Where, as here, the CFTC has specialized expertise regarding trading in natural gas futures and the FERC – by its own admission -- has no such experience,[14] the FERC should be required to defer to the CFTC's primary jurisdiction. *See, e.g., Chic. Mercantile Exch. v. Deaktor,* 414 U.S. 113, 114-15 (1973) (deferring to the Commodities Exchange Commission's primary jurisdiction). Thus, the FERC's enforcement action should be stayed pending a final judgment in the CFTC action.[15]

Courts typically balance six factors in analyzing whether to stay an action under the primary jurisdiction doctrine: (a) does the agency determination lay at the heart of the task assigned the agency by Congress; (b) would the case benefit from the application of the agency's expert or specialized knowledge; (c) is there a need for uniform agency action; (d) is the dispute

---

[14] *See* Exhibit D at ¶ 48.

[15] The doctrine of primary jurisdiction has been used as a basis to stay proceedings to allow administrative agencies to exercise their expertise in the first instance. *See U. S. v. W. Pac. R.R. Co.,* 352 U.S. 59, 63-64 (1956) (holding that issues of transportation policy ought to be considered by the Interstate Commerce Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by statutes); *Ellis v. Tribune TV Co.,* 443 F.3d 71, 82 (2nd Cir. 2006) (primary jurisdiction applied because: (1) the issue involved considerations clearly within the FCC's particular field of expertise that were best addressed in the first instance by that agency; (2) the question at request and the FCC's order was particularly within the agency's discretion under statute; (3) and a substantial danger of inconsistent rulings existed); *MCI Comms. Corp. v. Am. Tel. & Tel. Co.,* 496 F.2d 214, 224 (3rd Cir. 1974) (vacating and remanding with directions to stay the proceedings in the district court until the appropriate administrative agency had opportunity to consider the dispute); *Orange & Rockland Utils., Inc. v. Howard Oil Co.,* 416 F. Supp. 460, 463 (S.D.N.Y. 1974) (applying doctrine of primary jurisdiction and deferring to Federal Energy Administration to examine pricing and accounting practices for several oil contracts).

complex and factual in nature; (e) will the agency's determination "materially aid" the court's

action; and (f) will a delay impact the litigation. *See 43.47 Acres, See* 45 F. Supp. 2d at 192-95.

### a.    NYMEX Trading Lies At The Heart Of The CFTC's Exclusive Authority

As discussed at length above, the ***sole*** basis for the FERC's action is Amaranth

Advisors' futures trading on NYMEX.  Futures trading on NYMEX lies "at the heart" of the

CFTC's exclusive authority.  Indeed, the FERC bases its calculation of civil penalties and

disgorgement exclusively on these transactions. *See* Ex. D at ¶ 118.  Accordingly, this factor

alone supports the CFTC's primary jurisdiction, and justifies staying the FERC's enforcement

proceeding. *Cf. Chic. Mercantile Exch. v. Deaktor,* 414 U.S. 113, 115 (1973).

### b.    The CFTC Has Expertise And Specialized Knowledge

The CFTC's expertise and specialized knowledge governing commodity futures

trading weighs heavily in favor of its primary jurisdiction.  As Senator Carl Levin recently noted,

"the [CFTC] is the key cop on the beat charged with policing U.S. commodity markets to stop

price manipulation and excessive speculation." *Statement of Senator Carl Levin Before the*

*Permanent Subcommittee on Investigations on Excessive Speculation in Natural Gas Prices,*

July 9, 2007.  Specifically, the CFTC has had substantial success identifying, investigating and

prosecuting alleged manipulative conduct in the energy futures trading market.  Beginning

December 2002 through July 2007, the CFTC has commenced a total of 35 enforcement actions

against a total of 55 respondents/defendants (31 companies and 24 individuals). *See* CFTC,

*Energy Markets Enforcement Actions, December 2002 – July 2007, available at*

http://www.cftc.gov/files/enf/enfenergyenforcementactions.pdf.    The CFTC has obtained

$307,198,500 in civil monetary penalties in settlement of these enforcement actions. *Id.*  The

CFTC has brought charges against a long list of energy traders including Enserco Energy Inc.,

21

Mirant Americas Energy Marketing, Cinergy Corp., Duke Energy Trading and Marketing, CMS Field Services Inc., Coral Energy Resources and Concord Energy. *Id.* Currently, the CFTC has no less than five pending energy market-related enforcement actions. *Id.* In stark contrast to the CFTC's vast expertise, the FERC has no prior experience regulating the natural gas futures market, and its action against Amaranth Advisors is its first attempt to apply its anti-manipulation authority to the futures market. *See* Ex. D at ¶ 44 ("This case presents the first exercise of [the FERC's] new anti-manipulation authority.").

### c.    Congress Has Mandated Uniformity

The need for uniformity in judgments is substantial because, as detailed above, the very purpose of granting exclusive jurisdiction to the CFTC was to ensure uniformity in the regulation of the futures market. Not only is uniformity legislatively mandated, but there exists a substantial risk that the two enforcement proceedings will result in inconsistent judgments. As the papers underlying the enforcement actions demonstrate, the CFTC and the FERC already disagree regarding whether the evidence supports a claim that Amaranth Advisors' trading did, in fact, result in artificially low prices on NYMEX. *Compare* Ex. A at ¶ 2 (alleging that Amaranth Advisors "attempted to manipulate" the price of natural gas futures contracts on NYMEX) *with* Ex. D at ¶ 5 (charging that Amaranth Advisors's trading "was designed to produce, and in fact produced, artificial 'settlement prices'"). [16] It makes no sense that two federal agencies examining the same trading records and market prices reached opposite conclusions concerning the impact of Amaranth Advisors' trading on the NYMEX natural gas

---

[16] At the press conference announcing the action, Gregory Mocek, the CFTC's Director of Enforcement noted that the CFTC was unable to determine that Amaranth Advisors actually affected prices. *See* Tina Seeley, *Amaranth Tried to Manipulate Gas Prices, CFTC Says,* July 25, 2007, available at http://www.bloomberg.com/apps/news. A copy of the article is annexed hereto as Exhibit G.

futures prices. In light of this outcome, however, it should be the agency with expertise in futures trading, the CFTC, that should be the one to proceed with its action in the first instance.

### d.     The Case Is Complex And Factual In Nature

The enforcement actions against Amaranth Advisors certainly will involve substantial factual questions of a highly complex nature. As the CFTC's civil complaint and the FERC's Show Cause Order demonstrate, natural gas futures trading is incredibly complex and highly sophisticated. Both enforcement actions will involve analyzing and developing the exact same set of complex facts, and only the CFTC has experience litigating such enforcement actions involving futures trading. *See* Ex. D at ¶¶ 44, 48. This case does not involve in any way, shape or form the FERC's typical regulatory domain involving the purchase and sale of physical natural gas.

### e.     The CFTC's Action Will "Materially Aid" The FERC's Action

The CFTC's civil action will "materially aid" the FERC's action by adjudicating major factual questions underlying the FERC's enforcement case. Because the CFTC and the FERC enforcement actions are based on the exact same set of complicated events, the CFTC's adjudication will "materially aid" any FERC enforcement action by resolving key factual disputes. Where, as here, the CFTC's enforcement action will adjudicate the major factual issues in an Article III Court, such factual determinations should be given preclusive effect in a subsequent FERC enforcement action, if and when such action proceeds.

### f.     A Delay Will Not Adversely Impact The FERC

Finally, a delay in the *FERC's* administrative proceeding will not adversely impact the FERC and, in fact, will preserve substantial governmental resources and could even assist the FERC. For example, if the CFTC prevails on its claims, a factual finding on intent to

manipulate could help the FERC's case.  It is a waste of governmental resources for two

agencies to adjudicate the same exact enforcement action at the same time in two different

jurisdictions.  There simply is no need for the taxpayers to pay twice to adjudicate Amaranth

Advisors' conduct or for scarce judicial and governmental resources to be consumed through

simultaneous litigation over the same conduct.

       In sum, all six factors weigh heavily in support of concluding that:  (a) the CFTC

is the expert agency with primary jurisdiction over Amaranth Advisors' futures trading; and (b)

the FERC's enforcement action should be stayed pending the resolution of the CFTC's action.

**B.**    **Absent A Stay Amaranth Advisors Will Suffer Irreparable Harm**

       Amaranth Advisors will be irreparably harmed if this Court does not grant

injunctive relief for several reasons.  As a matter of law, a party suffers immediate irreparable

injury if an agency without authority to do so is permitted to bring an enforcement proceeding

against it.  *See Trans World Airlines, Inc. v. Mattox*, 712 F. Supp. 99, 107 (W.D. Tex. 1989),

*aff'd*, 897 F.2d 773 (5th Cir. 1990), *cert. denied*, 498 U.S. 926 (1990), *cert. granted sub nom.*

*Morales v. Trans World Airlines, Inc.*, 502 U.S. 976 (1991), *aff'd in part, rev'd in part*, 504 U.S.

374 (1992); *see also Ayers v. SEC*, 482 F. Supp. 747, 751-52 (D. Mont. 1980).  Under such a

scenario, the plaintiff is entitled to a preliminary, and even a permanent, injunction preventing

the enforcement proceeding from being brought.  *Id.*  For example, in *Ayers* the court noted that

federal courts have jurisdiction to enjoin SEC investigations where the SEC either plainly

exceeded its statutory authority or threatened irreparable injury in clear violation of an

individual's rights.  *Ayers*, 482 F.Supp. at 751-52.  Likewise, for the reasons detailed above,

Amaranth Advisors is likely to prevail on its assertion that the FERC has no statutory authority

to regulate Amaranth Advisors' natural gas futures trading or to prosecute an enforcement action

regarding Amaranth Advisors' alleged manipulation of the NYMEX natural gas futures contract.

Further, Amaranth Advisors faces the realistic threat of inconsistent judgments

from litigations involving the exact same facts, but in two different venues with distinct

procedural and evidentiary rules and standards. The potential for such conflicting judgments will

cause Amaranth Advisors irreparable harm. *See Energy Dev. Corp. v. St. Martin*, Civ. No. 98-

3395, 2005 U.S. Dist. LEXIS 994 at *26 (E.D. La. Jan. 24, 2005) (finding irreparable harm

would occur from potentially conflicting state and federal judgments); *see also U.S. v. Rural

Elec. Convenience Coop. Co.*, 922 F.2d 429, 438 (7th Cir. 1991) (finding irreparable harm

because of the risk of inconsistent judgments). Judicial concern about duplicative litigation due

to jurisdictional conflicts has been repeatedly illustrated in federal decisions. *See Northrop

Corp. v. U. S.,* 27 Fed. Cl. 795, 801-802 (1993) (granting a stay because the stay promoted

judicial economy and comity, which requires that a stay may depend on the threat of inconsistent

decisions); *see also Haustechnik v. U.S.,* 34 Fed. Cl. 740, 745 (1996) (staying proceedings for

reasons of judicial economy and to avoid the possibility of inconsistent decisions).

Moreover, as the two litigations are based on the same conduct and charges of

alleged manipulation of the same market, the unforgiving common-law doctrines of collateral

estoppel (as to issues) and *res judicata* (as to claims) may bind the parties. *U.S.* v. *Utah Constr.

& Mining Co.*, 384 U.S. 394, 422 (1966) ("when an administrative agency is acting in a judicial

capacity and resolves disputed issues of fact properly before it which the parties have had an

adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce

repose.") (citations omitted). Courts consistently apply *res judicata* principles to facts

determined through administrative proceedings. *See Kramer v. O.C. Jenkins,* 803 F.3d 896, 907

(7th Cir. 1986) ("Once one agency of the government makes a finding, the Constitution does not require that the finding be subject to collateral attack in another agency. Quite the contrary, principles of administrative preclusion may bind agencies.") (citation omitted); *Amoco Prod Co. v. Heiman,* 904 F.2d 1405, 1414 (10th Cir. 1990) ("When an agency's function resembles that of a trial court, the agency adjudication is entitled to preclusive effect.") (citation omitted).

The distinct possibility exists that the FERC, the agency without the true expertise in the sophisticated arena of futures and commodity trading, could bind the CFTC and, more importantly, this Court, in the independent action against Amaranth Advisors pending in this Court. It is simply incomprehensible that Congress envisioned such a result when it gave the CFTC exclusive jurisdiction as to futures markets and gave the FERC anti-manipulation powers only with respect to the physical natural gas market, but not the futures market.

Additionally, if this Court does not grant Amaranth Advisors injunctive relief, Amaranth Advisors will not be fully compensated by monetary damages. *See B & D Land & Livestock Co. v. Veneman,* 231 F. Supp. 2d 895 (N.D. Iowa 2002); *Branstad v. Veneman,* 145 F. Supp. 2d 1011 (N.D. Iowa 2001). In *B & D Land* and *Branstad,* the plaintiffs argued they faced a threat of irreparable harm from an enforcement action by the USDA, in the form of a demand for repayment of *past* farm program benefits and decertification of eligibility for *future* benefits, which could put the plaintiffs out of business. *Branstad,* 145 F. Supp. 2d at 1024; *B & D,* 231 F. Supp. 2d at 910. The court noted that the plaintiff could not be fully compensated monetarily "by damages for the loss of the intangible value of its farming operation and the intangible costs of its possible bankruptcy as a result of such disgorgement of past benefits or loss of future benefits." *B & D,* 231 F. Supp. 2d at 911; *Branstad,* 145 F. Supp. 2d at 1024.

The Amaranth funds are in the process of liquidating their investments and making distributions to investors. The more funds Amaranth Advisors is forced to spend in these legal proceedings, the less the investors, who have already lost billions of dollars, will receive. This is true because the funds themselves have been named as respondents in the FERC action and because they have indemnification obligations to Amaranth Advisors. Moreover, there is an obvious waste of resources, both administrative and judicial, by having two actions challenging the very same conduct being litigated at the same time in two different locations, and a substantial risk of inconsistent determinations. The allegations asserted in both the CFTC's action and the FERC's Show Cause Order are not common, simple claims. They involve sophisticated legal and economic theories with complex data and market principles. Both prosecution and defense of such claims will be intensive and will involve the use of economic and market experts. And Amaranth Advisors has to do it all twice. (Maounis Dec. ¶¶ 9-10).

C.    **A Stay Will Not Harm the FERC's Legitimate Interests**

A stay will not harm the FERC. Amaranth Advisors is not requesting a permanent injunction of the FERC's enforcement action. Amaranth Advisors would still be subject to enforcement proceedings by the CFTC. The stay would last only as long as the CFTC action, which Amaranth Advisors is prepared to litigate before this Court.

D.    **A Stay Would Serve The Public Interest**

Far from harming the public interest, a court order staying the FERC from pursuing its enforcement action will promote the public interest. First, a stay will promote uniformity within government agencies, and prevent the unfair and inequitable occurrence of inconsistent judgments. *See U.S. v. 43.47 Acres of Land,* 45 F. Supp. 2d 187, 191 (D. Conn. 1999). Further, the CFTC's adjudication of its enforcement action could negate the basis for the

FERC's enforcement case thereby preserving the FERC's resources to focus on matters within its jurisdiction, and sparing U.S. taxpayers from paying for a useless, duplicative enforcement action brought by an agency with no expertise in commodity futures trading. It could also save the FERC time and money if a finding is made of intent to manipulate.

## II.    This Court Has The Power To Stay The FERC's Proceeding

### A.    The Court Has The Inherent Power To Protect Its Jurisdiction

It is a well-settled principle of law that a federal court has the inherent power to stay or enjoin other proceedings to protect its jurisdiction. *See, e.g., Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (rejecting the argument that a court's authority to stay proceedings before it in favor of proceedings in another court is limited to those instances when the parties and issues in the several cases are identical). Federal courts have stayed or enjoined both other federal and state courts, as well as state agencies. *See, e.g., Public Utilities Com. v. United Fuel Gas Co.*, 317 U.S. 456 (1943) (affirming a district court's injunction of a state regulatory agency in favor of another federal regulatory agency). There is no reason why that same power would not support a stay of a federal agency proceeding.

Specifically, federal courts can enter stays or enjoin other proceedings in the following scenarios: (1) when another federal action interferes with the proceeding before it, *see, e.g., Peck v. U.S.*, 522 F. Supp. 245 (S.D.N.Y. 1987); (2) when a state court action interferes with the proceeding before it, *see, e.g., In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002); (3) when a state court agency's action exceeds its authority; (4) when a civil proceeding will interfere with a pending criminal proceeding, *see, e.g., Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993); and (5) when a private litigant's civil action will

interfere with an agency's enforcement action, *see, e.g., Commodity Futures Trading Com'n* v. *Chilcott Portfolio Mngmnt., Inc.*, 713 F.2d 1477 (10 Cir. 1983).

The FERC's unlawful enforcement action against Amaranth Advisors is such a situation – the agency's actions are completely unprecedented. We are unaware of any other instance in which an administrative agency: (1) disregarded the exclusive jurisdiction of another administrative agency who, (2) has already instituted enforcement proceedings against a party, (3) to bring its own enforcement proceeding against that same party, (4) when it has no jurisdiction to do so, and (5) force the party to submit to *two* jurisdictions at the same time with *two* different procedures and evidentiary standards, and face the enormous expense of defending both proceedings. FERC's actions will cause chaos in the regulatory framework and create unacceptable uncertainty amongst those market participants that would become subject to duplicative and inconsistent regulatory regimes.

**B.    The Court Can Stay The FERC Action To Protect The CFTC's Exclusive Jurisdiction**

The Court has the power to stay the FERC enforcement action to protect the CFTC's exclusive jurisdiction to regulate natural gas futures trading. In *Capital Service v. N.L.R.B.,* 347 U.S. 501, 504-05(1954), the Supreme Court analyzed whether a federal court had the authority to enjoin a state court action that was encroaching upon the National Labor Relations Board's exclusive jurisdiction over allegedly unfair labor practices. Affirming the district court's order staying the state action, the Supreme Court emphasized that "where Congress . . . has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in conflict of functions, the federal court may enjoin the state proceeding in order to preserve the federal right." *Id.* at 504-05; *cf. Public Utilities Comm of Oh. v. United Fuel Gas Co.,* 317 U.S. 456, 468-70 (enjoining the enforcement of the Public Utilities

Commission of Ohio's orders because they usurped the Federal Power Commission's exclusive authority). Amaranth Advisors requests the same relief here. In an extraordinary and unwarranted grab for power, the FERC is encroaching upon the CFTC's exclusive jurisdiction to regulate commodity futures contracts by bringing an enforcement action based solely on Amaranth Advisors' alleged manipulation of natural gas futures contracts.

### CONCLUSION

For the foregoing reasons, Amaranth Advisors respectfully requests that the Court stay the FERC from prosecuting its action against Amaranth Advisors pending the outcome of the CFTC's action, and grant such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          August 13, 2007

Respectfully submitted,

**WINSTON & STRAWN LLP**

By:   /s/ David E. Mollón
      David E. Mollón (DM-5624)
      Steven M. Schwartz (SS-4216)
      Melissa E. O'Boyle (MO-9845)

200 Park Avenue
New York, NY 10166
(212) 294-6700

Stephen J. Senderowitz
Matthias A. Lydon
Kristen V. Grisius

35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Defendants Amaranth
Advisors L.L.C. and Amaranth Advisors
(Calgary) ULC*

NY:1126427.8