UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,

v.

AMARANTH ADVISORS L.L.C., et al.,

                              Defendants.

07 Civ. 6682 (DC)

ECF CASE

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION
STAYING THE FEDERAL ENERGY REGULATORY COMMISSION

COMMODITY FUTURES TRADING
COMMISSION
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9733
Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION .........................................................................................................1

BACKGROUND ...........................................................................................................1

I.  CFTC Sues Amaranth and Hunter In This Court. ..............................................1

II.  The Other Relevant Proceedings. .....................................................................2

POINTS OF LAW .........................................................................................................3

I.  The Extraordinary Relief Sought by Amaranth Is Neither Necessary nor Proper. .............3

    A.  The Extraordinary Relief of a Stay Should Not be Issued Merely to Avoid Possible Issue Preclusion. ...........................................................................6

    B.  Amaranth's Request for Relief from This Court Is Not Proper. ...................6

    C.  Amaranth's Motion Improperly Interferes with the Rights of Non-Parties. ................8

II.  The Exclusive Jurisdiction Over Futures Trading Granted by Congress to CFTC. ............9

    A.  Congress has outlined clearly the scope of the CFTC's exclusive jurisdiction in CEA Section 2(a)(1)(A). .........................................................10

        1. The legislative history of the CEA reinforces the scope of the CFTC's authority regarding futures trading on designated contract markets. ...................12

        2. Courts have consistently recognized the CFTC's exclusive jurisdiction over futures trading on designated contract markets. ...................14

    B.  FERC's anti-manipulation authority. .......................................................17

    C.  The Energy Policy Act does not affect Section 2(a)(1)(A) of the CEA. ......18

    D.  FERC's Proceeding. ...............................................................................19

CONCLUSION ...........................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alemite Manufacturing Corp. v. Staff,*
    42 F.2d 832 (2d Cir. 1930) ...................................................................................3

*American Agriculture Movement, Inc. v. Board of Trade of City of Chicago,*
    977 F.2d 1147 (7th Cir. 1992) ...........................................................................17

*Bartels v. International Commodities Corp.,*
    435 F. Supp. 865 (D. Conn. 1977)......................................................................16

*Board of Trade of the City of Chicago v. SEC,*
    677 F.2d 1137 (7th Cir. 1982),
    *vacated as moot on other grounds,* 459 U.S. 1026 (1982)...............................15, 19

*Branch v. Smith,*
    538 U.S. 254 (2003) ...........................................................................................18

*Brown v. General Services Administration,*
    425 U.S. 820 (1976) ...........................................................................................19

*CFTC v. Atha,*
    420 F. Supp. 2d 1373 (N.D. Ga. 2006)...............................................................16

*CFTC v. Bradley,*
    408 F. Supp. 2d 1214 (N.D.Okla. 2005).............................................................16

*CFTC v. Johnson,*
    408 F. Supp. 2d 259 (S.D. Tex. 2005).................................................................16

*CFTC v. Reed,*
    481 F. Supp. 2d 1190 (D. Colo. 2007) ...............................................................16

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ...............................................................................................4

*Chicago Mercantile Exchange v. SEC,*
    883 F.2d 537 (7th Cir. 1989) .........................................................................15, 19

*In re Diet Drugs Products Liability Litigation,*
    282 F.3d 220 (3d Cir. 2002) .................................................................................5

*E.F. Hutton & Co., Inc. v. Schank,*
    456 F. Supp. 507 (D. Utah 1976) .......................................................................16

*FDIC v. Meyer,*
   510 U.S. 471 (1994) ...................................................................................................11

*FTC v. Ken Roberts Co.,*
   276 F.3d 583 (D.C. Cir. 2002) ..............................................................................15, 16

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co., Ltd.,*
   470 F. Supp. 610 (S.D.N.Y. 1979) ...........................................................................16

*Gompers v. Buck's Stove & Range Co.,*
   221 U.S. 418 (1911) ......................................................................................................4

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ......................................................................................................1

*Landis v. North Amer. Co.,*
   299 U.S. 248 (1936) ......................................................................................................5

*Mallen v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
   605 F. Supp. 1105 (N.D. Ga. 1985).............................................................16, 16-17, 19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,*
   456 U.S. 353 (1982) ....................................................................................................10

*Morton v. Mancari,*
   417 U.S. 535 (1974) ....................................................................................................18

*Peck v. United States,*
   522 F. Supp. 245 (S.D.N.Y. 1981) ...............................................................................5

*Retirement Systems of Ala. v. J.P. Morgan Chase & Co.,*
   386 F.3d 419 (2d Cir. 2004) .........................................................................................6

*Rodriguez v. United States,*
   480 U.S. 522 (1987) ....................................................................................................18

*SEC v. American Commodity Exchange,*
   546 F.2d 1361 (10th Cir. 1976) .............................................................................14, 15

*SEC v. Univest, Inc.,*
   405 F. Supp. 1057 (N.D. Ill. 1975),
   *remanded without op.,* 556 F.2d 584 (7th Cir. 1977) (table decision) ...............14, 19

*United States v. 43.47 Acres of Land,*
   45 F. Supp. 2d 187 (D. Conn. 1999)..............................................................................5

*United States v. Fausto,*
   484 U.S. 439 (1988) ....................................................................................................18

*United States v. Reliant Energy Services, Inc.*,
420 F. Supp. 2d 1043 (S.D. Cal. 2006) ...................................................................17

*Venture Mortgage Fund, L.P. v. Schmutz*,
282 F.3d 185 (2d Cir. 2002) ...................................................................................11

*Vernitron Corp. v. Benjamin*,
440 F.2d 105 (2d Cir. 1971) .....................................................................................6

*Volmar Distributions, Inc. v. New York Post Co.*,
152 F.R.D. 36 (S.D.N.Y. 1993) ................................................................................5

*Messer v. E.F. Hutton & Co.*,
847 F.2d 673 (11th Cir. 1988) ................................................................................16

*Westlake v. Abrams*,
504 F. Supp. 337 (N.D. Ga. 1980)...........................................................................16

*Xiao Xing Ni v. Gonzales*,
494 F.3d 260 (2d Cir. 2007) .....................................................................................4


## FEDERAL STATUTES, RULES AND REGULATIONS

Commodity Exchange Act § 2(a)(1)(A), 7 U.S.C. § 2(a)(1)(A) ..............................*passim*

Commodity Exchange Act § 9(a)(2), 7 U.S.C. § 13(a)(2).............................................17

Commodity Exchange Act § 2(g), 7 U.S.C. § 2(g) ......................................................16

Commodity Exchange Act § 9(a)(4), 7 U.S.C. § 13(a)(4)...............................................1

Commodity Exchange Act § 12(e)(1), 7 U.S.C. § 16(e)(1)...........................................13

15 U.S.C. § 717(b) ....................................................................................................18

15 U.S.C. § 717r(b) ...........................................................................................8, 9, 18

15 U.S.C. § 717c-1 ......................................................................................2, 9, 17, 18

15 U.S.C. §§ 791a-828c.............................................................................................17

28 U.S.C. § 1294 .........................................................................................................8

28 U.S.C. § 1651 .........................................................................................................4

Fed. R. Civ. P. 65(d)..................................................................................................3-4

Prohibition of Energy Market Manipulation, 71 Fed. Reg. 4244 ¶20 (January 26, 2006)............18

FERC Rule 1c.1, 18 C.F.R. § 1c.1 ("Rule 1c.1") .....................................................................*passim*

18 C.F.R. § 385.209.................................................................................................................7

H. Rep. No. 93-975, 93d Cong., 2d Sess. (1974) ................................................................12-13

S. Rep. No. 93-1131 (1974),
   *as reprinted in* 1974 U.S.C.C.A.N. 5843 ......................................................................12, 13

S. Rep. No. 97-384, 97th Cong., 2d Sess. 28 (1982)...................................................................13

## OTHER AUTHORITIES

Black's Law Dictionary (8th Ed.)..................................................................................................11

Merriam-Webster's Third New International Dictionary.............................................................11

## INTRODUCTION

Plaintiff Commodity Futures Trading Commission ("CFTC") respectfully submits this memorandum of law in opposition to the motion of Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC (together, "Amaranth") for an order pursuant to this Court's inherent powers staying the non-party Federal Energy Regulatory Commission ("FERC") from proceeding with its administrative adjudication against Amaranth and other entities and persons not parties to this action. The Court should deny Amaranth's motion because the extraordinary relief sought is neither necessary nor proper.

## BACKGROUND

### I.    The CFTC Sues Amaranth and Hunter In This Court.

On Wednesday, July 25, 2007, the CFTC brought this action against Amaranth and their chief natural gas trader, Brian Hunter. *See* Ex. A. In its Complaint, the CFTC alleges that Amaranth and Hunter attempted to manipulate the price of the March 2006 and May 2006 natural gas futures contracts (the "NYMEX NG contracts") during the last half hour of the last day of trading of those contracts on the New York Mercantile Exchange ("NYMEX"). The Complaint also alleges that Amaranth violated Section 9(a)(4) of the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 13(a)(4), by making false statements to NYMEX in response to NYMEX's inquiry regarding Amaranth's trading of the May 2006 NYMEX NG contract.[1]

---

[1]    Amaranth has emphasized that the CFTC has charged attempted manipulation, not perfected (*i.e.*, successful) manipulation. Although the Complaint alleges that Defendants intended to manipulate the NG market and took overt acts to do so, nowhere in the complaint does the CFTC allege that Defendants were unsuccessful in manipulating the market. Nor does the CFTC expect to introduce evidence that the manipulation was not successful. The decision by the CFTC to charge certain acts or violations but not others should never be read to mean that the CFTC has concluded that no such violation thus occurred. *Cf. Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion").

## II.    The Other Relevant Proceedings.

On or about Thursday, July 19, 2007, FERC notified Brian Hunter, Amaranth and others that, in connection with an anticipated enforcement filing in no less than five days, it would publicly release certain information that had been provided to FERC during the course of its investigation.  On Monday, July 23, 2007, Hunter brought a declaratory judgment action against FERC before the District Court for the District of Columbia essentially claiming that FERC's proposed enforcement action was *ultra vires* because FERC lacked jurisdiction to institute the proceeding.  *See* Ex. B.  Hunter also sought a temporary restraining order and preliminary injunction against FERC's enforcement action.  *See* Ex. C.  On July 24, District Judge Richard Leon denied the TRO (*see* Ex. D, at 35:19-20), and on August 7, Judge Leon heard oral arguments on the preliminary injunction motion.

On July 26, 2007, FERC filed an administrative proceeding charging the defendants in this case, as well as another trader named Matthew Donohoe, two other entities related to Amaranth, and the master and feeder investment pools advised by Amaranth, with engaging in a manipulative scheme related to the settlement price of the March, April, and May 2006 NYMEX NG contracts.  In its Order to Show Cause ("OSC") that instituted these charges (*see* Ex. E), FERC alleges that Amaranth's trading violated FERC's anti-manipulation rule, 18 C.F.R. § 1c.1 ("Rule 1c.1"), promulgated under Section 4A of the Natural Gas Act ("NGA"), 15 U.S.C. § 717c-1.

The OSC alleges that Amaranth manipulated the settlement prices for the February, March, and April 2006 NYMEX NG contracts by trading NYMEX NG contracts on three specific days.  *See* Ex. E ¶¶1, 5.  Because the settlement price of NYMEX NG contracts serves as a benchmark for setting the price of physical natural gas contracts, FERC alleges that the charged manipulation of the NG contracts fraudulently affected natural gas prices in violation

2

of FERC Rule 1c.1. *See id.*, ¶6. Specifically, FERC alleges that Amaranth violated Rule 1c.1's prohibitions against using "any device, scheme, or artifice to defraud" and against engaging "in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any entity." *See id.*, ¶44.

On August 27, 2007, Amaranth (and two of its related entities) moved FERC for expedited rehearing of the decision to issue the OSC on the grounds that FERC lacks jurisdiction over the acts set forth in the OSC. *See* Ex. F. To the CFTC's knowledge, this motion has not been as yet joined by the master or feeder pools, or by the individual respondents.

## POINTS OF LAW

### I.    The Extraordinary Relief Sought by Amaranth Is Neither Necessary nor Proper.

Amaranth here moves this court for an order preventing multiple non-parties to this action from obtaining timely resolution of FERC's allegations – namely, FERC, the Amaranth funds, and Donohoe. Yet the operative rule for any court is that its orders generally are limited to the parties before it. As Judge Learned Hand stated for the court of appeals over 75 years ago, "no court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law . . .." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930). This traditional rule is expressly incorporated into Rule 65(d) of the Federal Rules of Civil Procedure:

> Every order granting an injunction and every restraining order . . .
> is binding only upon the parties to the action, their officers, agents,
> servants, employees, and attorneys, and upon those persons in
> active concert or participation with them who receive actual notice
> of the order by personal service or otherwise.

Fed. R. Civ. P. 65(d) (2007). (Indeed, Amaranth originally sought this stay pursuant to Rule 65

by seeking an order to show cause (*see* Ex. G) that was served but never formally filed with the

clerk. Thus, the very rule upon which Amaranth initially moved precludes the relief sought.)

In the filed notice of motion,[2] Amaranth apparently recognized that relief against

a non-party cannot be granted pursuant to the Federal Rules of Civil Procedure. Yet, Amaranth

does not identify *any* rule or statute that justifies the extraordinary relief it seeks against a non-

party to this action. Although in its memorandum of law Amaranth appears to invoke the

"inherent powers" of the courts to support the stay, Amaranth does so without acknowledging

the extraordinary basis of such a request. The inherent powers of courts "to protect themselves,

and their members, from being disturbed in the exercise of their functions is long established."

*Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 267, (2d Cir. 2007) (internal quotations and citations

omitted). "This inherent power generally extends only to a court's management of its own

affairs: to impose decorum, to maintain order, to control admission to the bar, to discipline

attorneys, to punish for contempt, and to vacate its own judgments if tainted by fraud." *Id.*

(internal quotations and citations omitted). "'Because of their very potency, inherent powers

must be exercised with restraint and discretion.'" *Id.* at 270 (quoting *Chambers v. NASCO, Inc.*,

501 U.S. 32, 44 (1991)). "[T]he amplitude of the power is a warning to use it with discretion,

and a command never to exert it where it is not necessary or proper." *Gompers v. Buck's Stove*

*& Range Co.*, 221 U.S. 418, 451 (1911).[3]

---

[2] After the status conference with this Court on August 16, 2007, Amaranth re-served its papers with a notice of motion.

[3] The All Writs Act, also not cited in Amaranth's memorandum of law, sets forth similar conditions on the exercise of this judicial power: "all courts established by Act of Congress may issue all writs *necessary or appropriate* in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis supplied).

Finally, none of the cases cited by Amaranth support the specific relief it seeks here – namely, the intrusion by the judicial branch into the timing of an executive agency's administrative enforcement proceeding. The only case cited by Amaranth that involves a federal court staying a state court proceeding is *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220 (3d Cir. 2002) – a case involving the power of a court, in the context of approving the settlement of a mass tort class action consolidated under multi-district litigation rules, to enjoin parallel state court actions against parties to the settlement. *See id.* at 236-37 ("Any state court action that might interfere with the District Court's oversight of the settlement at that time, given the careful balancing it embodied, was a serious threat to the District Court's ability to manage the final stages of this complex litigation.") Such global settlement concerns are not at issue here.

In fact, most of the cases cited by Amaranth stand for a wholly different proposition – namely, the propriety of a federal court staying a case on its own docket while awaiting the outcome of a case before another federal court[4] or before an agency.[5] The notion that a court (or an agency) has the discretion to stay its own proceeding is a far cry from the proposition that a court should stay a parallel administrative action barring some extraordinary showing that the administrative proceeding will significantly interfere with the court's jurisdiction over the matter before it.

---

[4]    *See, e.g., Landis v. North Amer. Co.*, 299 U.S. 248 (1936) (affirming power of a district court to stay actions before it challenging implementation of new law pending resolution of a similar challenge before a different district court); *Peck v. United States*, 522 F. Supp. 245 (S.D.N.Y. 1981) (acknowledging power to stay the case on its own docket pending resolution of a related appeal but declining to do so); *Volmar Distributions, Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) (entering stay of discovery in the case before the court pending resolution of related criminal actions).

[5]    *See, e.g., U.S. v. 43.47 Acres of Land*, 45 F. Supp. 2d 187, 191 (D. Conn. 1999) (staying its case pending resolution of related agency proceeding) (cited in Amaranth Mem. at 20).

A.    **The Extraordinary Relief of a Stay Should Not be Issued Merely to Avoid Possible Issue Preclusion.**

Amaranth complains of a theoretical risk of a "race" to judgment in which one forum must give preclusive effect to the findings in the other forum. *See* Amaranth Mem. at 3-4. However, the illusory fears raised by Amaranth are not a legitimate basis for staying another proceeding. As the Second Circuit has held, "a federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest – no interest that can be vindicated by the exercise of the federal injunction power – in being the *first* court to hold a trial on the merits." *Retirement Systems of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004) (emphasis in original). As the Second Circuit has similarly stated in the context of reviewing an injunction of state court proceedings issued on the basis of avoiding problems like collateral estoppel: "'The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is *a result which should be welcomed* to avoid the task of reconsidering issues which have already been settled by another competent tribunal.'" *Id.* (quoting *Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir. 1971)) (emphasis added).

Thus, the extraordinary relief of a stay must not be based upon the theoretical "risk" of issue preclusion or any other issue that may merely inconvenience the parties. *See Retirement Systems*, 386 F.3d at 430. Amaranth, however, has not identified any specific dangers. Nor has Amaranth articulated any reason why application of traditional rules of issue preclusion will cause it harm. Any injunction based on such unarticulated fears would fly in the face of the Second Circuit's pronouncements on the propriety of such injunctions.

B.    **Amaranth's Request for Relief from This Court Is Not Proper.**

As noted above, the question of FERC's jurisdiction is already squarely before FERC and, separately, the U.S. District Court for the District of Columbia. FERC's

administrative process will provide Amaranth with an opportunity to address the fundamental question of whether its trading activity falls within FERC's jurisdiction. The very nature of FERC's OSC is that any assertions therein, including the "statement of the authority under which [FERC] is acting" is "tentative." 18 C.F.R. § 385.209(b) (2007).

The Court should allow FERC, in the first instance, to analyze the jurisdictional issues as a matter of appropriate deference to Congress's decision to empower FERC to adjudicate its enforcement actions. Indeed, recognizing that FERC is the appropriate forum in which to raise the jurisdictional issue, on August 27, 2007 Amaranth moved FERC for an expedited rehearing on the very issue raised here. *See* Ex. F. Thus, the issue is now squarely before FERC.

Even if a federal court would be the proper place to raise the question of FERC's jurisdiction, that should be done through a separate declaratory judgment action against FERC. In fact, that has occurred. After extensive coordination between Hunter and Amaranth (*see* Ex. D at 7:12-16), Hunter filed a declaratory judgment in federal district court in the District of Columbia seeking exactly that determination. Moreover, Amaranth has represented to this Court on multiple occasions that it intends to intervene in that action alongside Hunter. *See* Amaranth Mem. at 4, n. 6; Ex. H at 8:16-21.[6]

Further, Amaranth's motion is not proper because this request is merely a thinly-veiled attempt to forum shop for a favorable ruling on the jurisdictional issue. As noted above, Amaranth, Hunter and FERC are already parties to actions where the stay can be properly litigated: Hunter's declaratory action *and* FERC's administrative hearing itself. Although

---

[6] Even if Amaranth were inclined to file a separate declaratory judgment action in this Court (and assuming it would be related to this action under Rule 15 of the Division of Business Rules), under the first to file rule such an action should be transferred to the District of Columbia District Court. By Hunter's own admission, Amaranth and Hunter are coordinating their defense closely, and filing multiple declaratory judgment actions would be nothing more than forum shopping, just like this motion.

Amaranth has sought rehearing of the OSC, it did not ask FERC to stay its own action pending the conclusion of this case, nor has Amaranth expressed any intention to do so.

A decision in either the declaratory judgment action (pending in the District Court for the District of Columbia) or FERC's administrative action likely could be appealed only to the Court of Appeals for the District of Columbia. *See* 28 U.S.C. § 1294(1) (governing taking of appeals from district courts); 15 U.S.C. § 717r(b) (governing appellate review of FERC orders).[7] Instead, Amaranth inserts the same issue (already squarely in front of the D.C. District Court and FERC itself) into this wholly separate civil action in a different district and circuit. Amaranth's action is nothing more than improper forum shopping for multiple bites at the jurisdiction apple.

C.    **Amaranth's Motion Improperly Interferes with the Rights of Non-Parties.**

The problematic nature of issuing a stay involving non-parties to this action is made more apparent given that FERC's administrative proceeding includes a number of other entities that are not parties to this action. These respondents include the master and feeder funds themselves (as distinguished from the fund advisors that are defendants here), as well as another individual named Matthew Donohoe who, to the CFTC's understanding, no longer works for Amaranth or any of its related entities nor for Hunter.

While it is *conceivable* that these non-parties would also prefer that the FERC action be stayed, the Court should not assume that they desire a stay absent affirmative evidence to that effect. This is especially true given that the funds in the exercise of their fiduciary duties to their remaining investors, and an individual in Donohoe's position, might prefer to resolve

---

[7]    Specifically, 15 U.S.C. § 717r(b) states that review can be sought in either the Court of Appeals for the D.C. Circuit or the court of appeals for the circuit where "the natural gas company to which the order relates is located or has its principal place of business." Because FERC's OSC does not relate to any specific natural gas company, it appears that the only available review will be from the D.C. Circuit.

quickly any administrative charges in order to be able fully to liquidate or to move on professionally without the distraction of the FERC proceeding.

## II.    The Exclusive Jurisdiction Over Futures Trading Granted by Congress to the CFTC.

For the reasons discussed above, FERC should be permitted to determine in the first instance the scope of its new anti-manipulation authority under Section 4A of the NGA, 15 U.S.C. § 717c-1, and FERC Rule 1c.1, in light of the pre-existing statutory grant of exclusive jurisdiction over futures trading to the CFTC in the CEA, 7 U.S.C. § 2(a)(1)(A). If FERC's determination is adverse to the respondents in that action (which include all of the defendants here), they will have an opportunity to petition for review of that decision by the U.S. Court of Appeals for the District of Columbia. *See* 15 U.S.C. § 717r(b). The CFTC respectfully submits that this Court should refrain from ruling prematurely on the jurisdictional argument presented by Amaranth so that normal administrative processes – including development of a factual record, the application of the law to those facts by the agency, and judicial review of those processes – can be permitted to work as Congress intended. The Court should not render the administrative process nugatory at its inception, especially because Amaranth has recently presented to FERC the same jurisdictional argument it has made to this Court. *See* Ex. F. Rather, the Court should deny Amaranth's motion based on its numerous procedural deficiencies.

Nevertheless, the Court stated at the August 16, 2007 status conference that the exclusive jurisdiction issue "should be addressed" by the parties. *See* Ex. H at 11:4. Pursuant to the Court's instruction, the CFTC sets forth its views below regarding the exclusive jurisdiction provisions of the CEA, based solely on the FERC OSC.

A.    **Congress has outlined clearly the scope of the CFTC's exclusive jurisdiction in CEA Section 2(a)(1)(A).**

In 1974, Congress amended the CEA and created the CFTC. *See generally* 7

U.S.C. §§ 1-27(f). *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353,

357-67 (1982) (discussing the legislative history of 1974 CEA amendments). In Section

2(a)(1)(A) of the CEA, Congress granted the CFTC "exclusive jurisdiction" over futures trading

on "designated contract markets" (the statutory term in the CEA for futures exchanges) such as

NYMEX. Section 2(a)(1)(A) provides:

> The Commission shall have exclusive jurisdiction . . . with respect
> to accounts, agreements . . . and transactions involving contracts of
> sale of a commodity for future delivery, traded or executed on a
> contract market designated or derivatives transaction execution
> facility registered pursuant to section 7 or 7a of this title or any
> other board of trade, exchange, or market, and transactions subject
> to regulation by the Commission pursuant to section 23 of this title.
> *Except as hereinabove provided*, nothing contained in this section
> shall (I) supersede or limit the jurisdiction at any time conferred on
> the Securities and Exchange Commission or other regulatory
> authorities under the laws of the United States or of any State, or
> (II) restrict the Securities and Exchange Commission and such
> other authorities from carrying out their duties and responsibilities
> in accordance with such laws. Nothing in this section shall
> supersede or limit the jurisdiction conferred on courts of the United
> States or any State.[8]

7 U.S.C. § 2(a)(1)(A) (emphasis added).

The first sentence of Section 2(a)(1)(A) states that accounts, agreements and

transactions involving futures contracts traded on designated contract markets are within the

CFTC's exclusive jurisdiction. The second sentence of Section 2(a)(1)(A) then goes on to

provide that with respect to such accounts, agreements, and transactions where the CFTC's

---

[8] Section 2(a)(1)(A) contains exceptions from CFTC exclusive jurisdiction for certain types of transactions such as security futures products as well as off-exchange transactions in foreign currency and statutorily defined "excluded" and "exempt" commodities. None of these exceptions is relevant to this case, which involves trading in natural gas futures contracts on NYMEX.

jurisdiction is exclusive, other federal and state regulatory authorities are without jurisdiction. It states that "[e]xcept as hereinabove provided" (*i.e.*, except as provided in the first sentence), the jurisdiction of other federal and state regulatory authorities is not superseded or limited by the grant of exclusive jurisdiction to the CFTC. This leads unavoidably to the conclusion that the jurisdiction of other federal and state regulatory authorities is superseded or limited with respect to the accounts, agreements and transactions as to which the CFTC possesses exclusive jurisdiction.

Because the CEA does not define the term "jurisdiction," the term should be given its generally accepted meaning. *FDIC v. Meyer,* 510 U.S. 471, 476 (1994). According to *Black's Law Dictionary* (8th Ed.), the term "jurisdiction" means, with respect to an agency's jurisdiction, "[t]he regulatory or adjudicative power of a government administrative agency over a subject matter or matters." The *Merriam-Webster's Third New International Dictionary* defines "jurisdiction" as "the power, right, or authority to interpret and apply the law" or "the power or right to exercise authority."[9] Accordingly, the plain language of Section 2(a)(1)(A) vests the CFTC with sole power and authority among federal regulatory agencies to adjudicate the lawfulness of futures trading on designated contract markets such as the NYMEX. *See Venture Mortgage Fund, L.P. v. Schmutz,* 282 F.3d 185, 188 (2d Cir. 2002) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms.")[10]

---

[9]    Available online at http://mwu.eb.com/mwu/print?queryword=jurisdiction&searchtype=va [Accessed September 5, 2007].

[10]   This grant of authority to the CFTC does not affect the powers of the federal courts, as the final sentence of CEA Section 2(a)(1)(A) makes clear.

1.    **The legislative history of the CEA reinforces the scope of the CFTC's authority regarding futures trading on designated contract markets.**

Even if the language of Section 2(a)(1)(A) were not as clear as it is, the legislative history of the provision is in accord. Before the 1974 amendments to the CEA, questions had arisen regarding the authority of the SEC and state securities administrators to assert jurisdiction with respect to futures-related accounts and futures transactions. Section 2(a)(1)(A) was meant to address these claims of overlapping jurisdiction and to make plain that the CFTC's jurisdiction is exclusive with respect to futures trading on designated contract markets. This is confirmed through reading the committee reports and floor statements. For example, the Report of the Senate Committee on Agriculture, Nutrition and Forestry on the 1974 CEA amendments states:

> While the Committee did wish the jurisdiction of the Commodity Futures Trading Commission to be exclusive with regard to the trading of futures on organized contract markets, it did not wish to infringe on the jurisdiction of the Securities and Exchange Commission or other government agencies. Therefore, the Committee adopted clarifying amendments to the House bill. *The Committee wished to make clear that where the jurisdiction of the Commodity Futures Trading Commission is applicable, it supersedes State as well as Federal agencies.*

*See* S. Rep. No. 93-1131, at 23 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5843, 5863 (1974) (emphasis added). The Report of the House Agriculture Committee is to the same effect:

> Although the expanded definition of "commodity" . . . may include rights and interests which are securities as defined in the federal securities laws, *except in the area of transactions involving a contract market*, the jurisdiction of the Commodity Futures Trading Commission ... over any such rights and interest is intended to exist concurrently with the jurisdiction vested in the Securities and Exchange Commission. *Accordingly, . . . the*

> *CFTC's jurisdiction shall be exclusive with respect to transactions*
> *involving contracts of sale of a commodity for future delivery*
> *which are traded or executed on a contract market . . . .*

*See* H. Rep. No. 93-975, 93d Cong., 2d Sess., at 28, (1974) (emphasis added).[11]

> In a similar vein, the Conference Report on the 1974 CEA amendments states:

> The House bill provides for exclusive jurisdiction of the
> Commission over all futures transactions. However, it is provided
> that such exclusive jurisdiction would not supersede or limit the
> jurisdiction of the Securities and Exchange Commission or other
> regulatory authorities.

> The Committee amendment retains the provision of the House bill
> but adds three clarifying amendments. *The clarifying amendments*
> *make clear that (a) the Commission's jurisdiction over futures*
> *contract markets or other exchanges is exclusive and includes the*
> *regulation of commodity accounts, commodity trading agreements,*
> *and commodity options; (b) the Commission's jurisdiction, where*
> *applicable, supersedes State as well as Federal agencies . . . .*

*See* S. Rep. No. 93-1131, at 6, *as reprinted in* 1974 U.S.C.C.A.N. 5843, 5848 (1974) (emphasis

added). The Conference Committee amendments were included in the final legislation. The

legislative history thus confirms that Congress intended to vest in the CFTC exclusive

jurisdiction over futures trading on designated contract markets, and, further, that Congress

intended for other federal agencies not to exercise jurisdiction in that administrative sphere.[12]

---

[11]   The relevant pages of the House Agriculture Committee Report are included as Exhibit I.

[12]   The legislative history associated with Section 12(e)(1) of the CEA, 7 U.S.C. § 16(e)(1), enacted in 1982, further demonstrates Congressional intent to confer upon the CFTC exclusive jurisdiction over futures trading on designated contract markets. In the Report of the Senate Committee on Agriculture, Nutrition and Forestry on the 1982 CEA amendments, eight years after granting exclusive jurisdiction, the Committee stated that Section 12(e) created an "open season" on off-exchange conduct by permitting multiple federal and state law actions based on futures trading on unregulated entities, but added that:

> Activities that are subject to the comprehensive regulatory powers of the
> Commission, including exchange-traded futures, foreign futures (except as
> otherwise specified by the Commission), authorized commodity options, and
> regulated leverage transactions will remain within the Commission's exclusive
> jurisdiction.

*See* S. Rep. No. 97-384, 97th Cong., 2d Sess., at 27 (1982) (relevant portion included as Exhibit J).

**2.     Courts have consistently recognized the CFTC's exclusive jurisdiction over futures trading on designated contract markets.**

Consistent with the text and legislative history of Section 2(a)(1)(A), courts have repeatedly acknowledged the CFTC's exclusive jurisdiction with respect to futures trading on designated contract markets vis-à-vis other federal agencies. The courts have likewise dismissed private civil actions brought under statutes other than the CEA when those actions relate to futures trading on designated contract markets. Relying on the "[e]xcept as hereinabove provided" clause that introduces the savings clause, courts have uniformly rejected the notion that the second sentence of Section 2(a)(1)(A) permits concurrent regulatory jurisdiction regarding the accounts, agreements and transactions described in the prior sentence. One court characterized this argument as "simply invalid." *SEC v. Univest, Inc.,* 405 F. Supp. 1057, 1058 (N.D. Ill. 1975), *remanded without op.,* 556 F.2d 584 (7th Cir. 1977) (table decision). In *Univest,* the SEC brought an enforcement action in federal district court alleging violations of securities laws based in part on the defendant's trading in options on futures contracts. *Id.* Relying on Section 2(a)(1)(A), the district court dismissed the claims involving the options on futures. As the court explained:

> The key phrase in this [savings clause] proviso is the introductory one; I must assume that it means exactly what it says. The fact is that the statements "hereinabove provided" do limit the jurisdiction of the S. E. C. with regard to commodity futures trading. In effect, those statements transfer jurisdiction from the S. E. C. to the new Commodity Futures Trading Commission.

*Id.* at 1058.

Around the same time, in *SEC v. American Commodity Exchange,* 546 F.2d 1361 (10th Cir. 1976), the Tenth Circuit considered whether to dismiss an SEC enforcement action based on trades executed before the enactment of Section 2(a)(1)(A). The SEC charged violations of the securities laws and SEC Rule 10(b). *Id.* at 1363. Relying on the text of Section

14

2(a)(1)(A), the court found the CFTC's jurisdiction exclusive with respect to futures trading that occurred after the 1974 CEA amendments. *Id.* at 1368.[13]

The Seventh Circuit continued this trend supporting the CFTC's exclusive jurisdiction in a series of cases in the 1980s. In *Board of Trade of the City of Chicago v. SEC*, 677 F.2d 1137, 1145-46 (7th Cir. 1982), *vacated as moot on other grounds*, 459 U.S. 1026 (1982) (appeal mooted because Congress amended CEA to exempt transactions that were at issue), a case involving exchange-traded options on exempt securities, the court held that the "[e]xcept as hereinabove provided" clause did not authorize the SEC's assertion of regulatory jurisdiction over certain financial instruments that had characteristics of futures contracts. Similarly, in *Chicago Mercantile Exchange v. SEC*, 883 F. 2d 537 (7th Cir. 1989), the court held that the SEC lacked jurisdiction to approve trading of futures contracts, regardless of any positive effects that might flow from the SEC's exercise of jurisdiction. *See id.* at 550.

In the most recent case construing the CEA exclusivity provision, the D.C. Circuit addressed the permissibility under Section 2(a)(1)(A) of a Federal Trade Commission investigation into whether "investor-education" advertisements constituted deceptive trade practices. *FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2002). The court in *Ken Roberts* held that the CFTC's exclusive jurisdiction over futures trading did not bar the FTC from issuing a civil investigative demand to look into marketing practices that were separate from actual futures trading. *Id.* at 584, 592. In the course of reaching this conclusion, the court analyzed the text and legislative history of Section 2(a)(1)(A) to determine what falls within, and outside of, the exclusive jurisdiction provision. The court's decision makes clear that while the marketing activities there at issue fell outside the scope of Section 2(a)(1)(A), the trading of futures

---

[13] Guided by the legislative history of the 1974 CEA amendments, though, the court ruled that SEC possessed concurrent jurisdiction over trading that occurred before the 1974 amendments, even if the SEC enforcement action was not filed until after the amendments became effective. *Id.* at 1368.

contracts on designated contract markets falls squarely within that provision. *Id.* at 590-91.[14] As

the *Ken Roberts* court stated, the legislative history of the CEA "repeatedly emphasizes that the

CFTC's jurisdiction was to be exclusive with regard to the trading of futures *on organized*

*contract markets.*" *Id.* at 591 (internal quotation omitted; emphasis in original).

        In cases not involving federal regulators, courts have determined that Section

2(a)(1)(A) is a jurisdictional bar to non-CEA claims relating to futures trading. For example, in

*Mallen v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 605 F. Supp. 1105, 1107 (N.D. Ga. 1985),

the plaintiff alleged that defendants engaged in futures trades in violation of federal securities

laws including SEC Rule 10b-5. *Id.* The district court dismissed the securities claims reasoning

that the savings clause in Section 2(a)(1)(A) barred the court from applying securities laws to

claims based on futures contracts. *Id.* at 1113-1114.[15] The Eleventh Circuit reached a similar

conclusion in *Messer v. E.F. Hutton & Co.,* 847 F.2d 673 (11th Cir. 1988), holding that Section

2(a)(1)(A) barred claims that futures trades were made in violation of Section 10(b) of the

Securities Exchange Act of 1934 and SEC Rule 10b-5. The court added that a "different result

would 'defeat[] the fundamental congressional design in revamping the Commodity Exchange

Act in 1974 and granting exclusive jurisdiction to the new CFTC – to avoid a duplicative or

---

[14]  *Ken Roberts* is consistent with CFTC enforcement actions involving false reporting of off-exchange energy transactions. In those cases, the off-exchange trading was excluded from the CEA's jurisdiction under Section 2(g) of the CEA, 7 U.S.C. § 2(g), whose language ("agreement, contract or transaction") is similar to Section 2(a)(1)(A) of the CEA. As the courts recognized in those cases, the focal point of the CFTC's claims was not the trading activity, but rather the separate conduct of false reporting. Courts have repeatedly held that false reporting activity falls outside the scope of a Section 2(g) "agreement, contract or transaction." *See CFTC v. Reed,* 481 F. Supp. 2d 1190, 1198 (D. Colo. 2007); *CFTC v. Atha,* 420 F. Supp. 2d 1373, 1379 (N.D. Ga. 2006); *CFTC v. Johnson,* 408 F. Supp. 2d 259, 272 (S.D. Tex. 2005); *CFTC v. Bradley,* 408 F. Supp. 2d 1214, 1219 (N.D.Okla. 2005).

[15]  Four other district courts also have rejected claims based on securities laws or rules for lack of jurisdiction. *See Westlake v. Abrams,* 504 F. Supp. 337, 345 (N.D. Ga. 1980); *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co., Ltd.,* 470 F. Supp. 610, 614 (S.D.N.Y. 1979); *Bartels v. International Commodities Corp.,* 435 F. Supp. 865, 869 (D. Conn. 1977); and *E.F. Hutton & Co., Inc. v. Schank,* 456 F. Supp. 507, 512-513 (D. Utah 1976).

contradictory regulatory structure.'" *Id.* at 676 (citing *Mallen*, 605 F. Supp. at 1114).[16] Indeed, the exclusive jurisdiction provision was adopted to further one of the principal goals of Congress in enacting the CEA, and creating the CFTC – to bring uniformity to the regulation of the futures markets. *American Agriculture Movement, Inc. v. Board of Trade of City of Chicago*, 977 F.2d 1147, 1155-57 (7th Cir. 1992).

* * *

It is against this backdrop of statutory text, legislative history, and case law regarding the CEA's exclusive jurisdiction provision that the scope of the authority granted to FERC under the Energy Policy Act of 2005 must be evaluated.

### B.    FERC's anti-manipulation authority.

Section 315 of the Energy Policy Act of 2005 added a new § 4A to the Natural Gas Act, 15 U.S.C. § 717c-1, which states that:

> It shall be unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, any manipulative or deceptive device or contrivance (as those terms are used in section 78j(b) of this title) in contravention of such rules and regulations as the Commission may prescribe as necessary in the public interest or for the protection of natural gas ratepayers. Nothing in this section shall be construed to create a private right of action.

15 U.S.C. § 717c-1. In January 2006, FERC adopted Rule 1c.1, which states in part that:

> (a) It shall be unlawful for any entity, directly or indirectly, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the

---

[16] The case of *United States v. Reliant Energy Services, Inc.*, 420 F. Supp. 2d 1043, 1045 (S.D. Cal. 2006), is not to the contrary. The *Reliant* court concluded that FERC's jurisdiction under the Federal Power Act ("FPA") over electricity transactions did not preempt the CEA's anti-manipulation jurisdiction. *See* OSC ¶48. *Reliant* is factually distinguishable from this case. First, unlike the CEA, the Federal Power Act does not include an express statutory grant of exclusive jurisdiction to FERC. *See* 15 U.S.C. §§ 791a-828c. *See Reliant Energy*, 420 F. Supp. 2d at 1064 (Congress has not revealed "an intent to keep electricity wholesales outside the reach of the CEA's anti-manipulation provisions"). Moreover, the charged violations were based on CEA Section 9(a)(2), 7 U.S.C. § 13(a)(2), which expressly applies to cash transactions as well as futures trades. *Id.* at 1065.

17

> Commission, (1) To use or employ any device, scheme, or artifice
> to defraud, (2) To make any untrue statement of a material fact or
> to omit to state a material fact necessary in order to make the
> statements made, in the light of the circumstances under which
> they were made, not misleading, or (3) To engage in any act,
> practice, or course of business that operates or would operate as a
> fraud or deceit upon any entity.

18 C.F.R. § 1c.1 (2007).

### C.    The Energy Policy Act does not affect Section 2(a)(1)(A) of the CEA.

The Energy Policy Act did nothing to affect the scope of the CFTC's exclusive

jurisdiction.  Nor did it change the scope of FERC's jurisdiction over natural gas transactions as

set forth in 15 U.S.C. § 717(b).  *See* Prohibition of Energy Market Manipulation, 71 Fed. Reg.

4244 ¶20 (January 26, 2006).  Had Congress intended in the Energy Policy Act to reverse 30

years of unbroken precedent regarding the application of Section 2(a)(1)(A) of the CEA to

futures trading on designated contract markets, it would have done so clearly and

unambiguously.  Because nothing in the Energy Policy Act *explicitly* repeals any provision of the

CEA, the question arises whether Congress's grant of authority to FERC in 15 U.S.C. § 717c-1

implies an intention to do so.  But as the Supreme Court has stated: "[It] can be strongly

presumed that Congress will specifically address language on the statute books that it wishes to

change."  *United States v. Fausto*, 484 U.S. 439, 453 (1988).  Repeals by implication are not

favored in law, and they will not be found unless a congressional intent to repeal "is clear and

manifest."  *See Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (citations omitted); *see also*

*Morton v. Mancari*, 417 U.S. 535, 550-51 (1974).  The Supreme Court rarely has found a repeal

by implication.  *See Branch v. Smith*, 538 U.S. 254, 293 (2003).

Further, a settled canon of statutory construction dictates that "a precisely drawn,

detailed statute pre-empts more general remedies."  *Brown v. General Services Administration*,

425 U.S. 820, 834 (1976).  The general authority provided to FERC in the Energy Policy Act to

combat the effects of manipulative behavior on FERC jurisdictional markets is insufficient to carve out an implicit exception to the exclusive jurisdiction that the CEA adopted as part of a carefully-crafted statutory regime to specifically govern futures trading on designated contract markets.

In short, nothing in the text or legislative history of the Energy Policy Act evinces a Congressional intention to change the long settled law in this area. We respectfully submit that this Court should not, in an effort to "harmonize" the CEA and the Natural Gas Act, effectively read the exclusive jurisdiction provision out of the CEA with respect to natural gas absent a clear indication that this is what Congress intended to do.

### D.    FERC's Proceeding.

FERC's OSC against Amaranth and related parties alleges that the respondents manipulated natural gas prices in violation of FERC Rule 1c.1 by engaging in certain futures trading practices on NYMEX which are alleged to have had downstream effects on prices for cash settled natural gas contracts. OSC ¶¶1, 5. As we understand it, there is no dispute that the transactions at the core of the scheme were futures trades on NYMEX. Moreover, FERC charges the respondents with violating a FERC rule that is substantively different from the manipulation standards applicable under the CEA and therefore could impose different standards of conduct on persons engaging in futures trading on designated contract markets. Based on its OSC, FERC's administrative action is analogous to the SEC actions that the courts dismissed in the *Univest, Board of Trade of the City of Chicago,* and *Chicago Mercantile Exchange* cases discussed above. *See supra.* Moreover, the courts have made clear that it is impermissible to apply non-CEA laws or rules to conduct that falls within the scope of Section 2(a)(1)(A). *See, e.g., Mallen,* 605 F. Supp. at 1113-14 (and cases discussed in n. 15, above).

While Section 2(a)(1)(A), its legislative history, and applicable case law establish that the CFTC's jurisdiction is exclusive, this has little to do with the propriety of the relief that Amaranth seeks now.  As discussed earlier, this Court should set aside Amaranth's jurisdictional argument and issue a ruling based on the procedural infirmities of Amaranth's motion. Amaranth has already asserted its arguments to FERC in the administrative process.  FERC should now have the opportunity to interpret the new mandate that Congress has given it, and to determine how to apply its new Rule 1c.1 in light of the exclusive jurisdiction that Congress granted in CEA Section 2(a)(1)(A) with respect to futures trading on NYMEX.

## CONCLUSION

Plaintiff CFTC respectfully requests that the Court take into account the foregoing

considerations raised and deny Amaranth's motion for a stay of FERC's order to show cause

proceedings.

Dated:  New York, New York
        September 28, 2007

                        Respectfully submitted,

                        COMMODITY FUTURES TRADING
                        COMMISSION
                        Terry S. Arbit
                          General Counsel
                        Bradford M. Berry
                          (admission *pro hac vice* pending)
                          Deputy General Counsel
                        Gloria P. Clement,
                          Assistant General Counsel
                        Office of the General Counsel
                        Three Lafayette Centre
                        1155 21st Street, NW
                        Washington, DC 20581


                        Stephen J. Obie
                          Regional Counsel/Associate Director
                        Manal Sultan
                          Chief Trial Attorney
                        David W. MacGregor (admitted *pro hac vice*)
                          Chief Trial Attorney
                        Division of Enforcement
                        140 Broadway, 19th Floor
                        New York, NY 10005
                        (646) 746-9733
                        Attorneys for Plaintiff