**EXHIBIT H**

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 3    U.S. COMMODITY FUTURES TRADING
      COMMISSION,
 4
                 Plaintiff,
 5
            v.              07 Civ. 06682 (DC)
 6
      AMARANTH ADVISORS, LLC,
 7    AMARANTH ADVISORS (CALGARY)
      ULC, BRIAN HUNTER,
 8
                 Defendants.
 9
      ------------------------------x
10                             New York, N.Y.
                               August 16, 2007
11                             10:10 a.m.
12    Before:
13              HON. DENNY CHIN,
14                       District Judge
15                    APPEARANCES
16    COMMODITY FUTURES TRADING COMMISSION,
         Attorneys for Plaintiff
17    BY: DAVID MAC GREGOR,
      BY: MANAL SULTAN
18
      WINSTON & STRAWN LLP
19       Attorneys for Defendants
      BY: DAVID E. MOLLON,
20    BY: STEVEN M. SCHWARTZ
21
      FEDERAL ENERGY REGULATORY COMMISSION,
22
      BY: TODD MULLINS,
23    BY: LEE ANN WATSON
24
25
```

1    (In open court; case called)

2    THE COURT:: All right, we were presented with this

3    application for an order to show cause the other day. It does

4    not request a temporary restraining order, but I prefer to have

5    a conference when I get these applications anyway, because lots

6    of times we can agree on things.

7    And so, first, we do have someone here from the

8    Federal Energy Regulatory Commission.

9    MR. MULLINS: Yes, your Honor, Todd Mullins from

10   Federal Energy Regulatory Commission.

11   THE COURT: I took a quick look at the papers, and I

12   guess at first glance I do have questions as to why two federal

13   agencies would be pursuing regulatory actions against the same

14   defendants, apparently based on the same conduct, seeking the

15   same or similar relief.

16   And I guess it strikes me as not being an efficient

17   way to proceed.

18   I don't know what CFTC thinks.

19   And I guess my question is, why is there a need for a

20   parallel proceeding, number one? And, number two, would the

21   Federal Energy Regulatory Commission consent to a stay of its

22   administrative proceeding pending the outcome of this case?

23   Anyone? I will hear from anyone who wants to speak

24   MR. MAC GREGOR: Your Honor, for the plaintiff U.S.

25   Commodity Futures Trading Commission, David MacGregor. And my

| | |
|---|---|
| 1 | colleague Manal Sultan. |
| 2 | Your Honor, just preliminarily. I am not a member of |
| 3 | the bar of this court. I do have a pro hac application which I |
| 4 | could bring up, or we could submit later. |
| 5 | THE COURT: You could submit it later. For now you |
| 6 | are admitted for purposes of this conference. |
| 7 | MR. MAC GREGOR: Thank you, your Honor. |
| 8 | We appreciate your Honor letting us come in and not |
| 9 | entering the ex parte application that was sought. |
| 10 | Just a couple of quick observations. |
| 11 | There is obviously no relief sought against the |
| 12 | plaintiff CFTC. Although procedurally we have some questions |
| 13 | about the appropriateness of this application. |
| 14 | THE COURT: Well, my first question to Mr. Schwartz, |
| 15 | when he was in my chambers the other day, was, do I have |
| 16 | jurisdiction over the Federal Energy Regulatory Commission as |
| 17 | it is not a party. I assume that we will talk about that |
| 18 | today. Yes, that's an issue. |
| 19 | MR. MAC GREGOR: So we have that. And I, frankly, |
| 20 | don't see how they can be a party because their action can't be |
| 21 | adjudicated before your Honor's administrative action. |
| 22 | THE COURT: To the extent that it could interfere with |
| 23 | my jurisdiction, I guess is part of the thinking. |
| 24 | MR. MAC GREGOR: That's an argument. |
| 25 | THE COURT:: Could a ruling or a result or relief in |

1   the FERC administrative proceeding somehow affect my

2   jurisdiction in this case?

3       MR. MAC GREGOR: I am sure it is conceivable that

4   could be.

5       THE COURT: But why are there two federal agencies --

6   first of all, are the defendants correct when they say it is

7   two federal agencies going after the same parties based on the

8   same conduct seeking essentially the same relief? Is that a

9   true statement?

10      MR. MAC GREGOR: The conduct is, for the most part,

11  similar. There are certain actions that are the basis of our

12  complaint or the basis of their action that are not in ours.

13  The FERC is proceeding under its statute, the statute under

14  which they have power. We are proceeding under our statute,

15  the commodity exchange action, two separate actions.

16      I don't want to speak for FERC and what they are

17  pursuing, but we are pursuing actions under two separate

18  statutes.

19      But another, I think, important point --

20      THE COURT: But is it essentially the same conduct?

21      MR. MAC GREGOR: It is essentially the same conduct.

22      THE COURT: Is it essentially the same relief?

23      MR. MAC GREGOR: The relief is different.

24      THE COURT: Money? Penalties? Disgorgement?

25      MR. MAC GREGOR: There are those things.

1   THE COURT: And that would be the same for both?

2   MR. MAC GREGOR: We have certain trading

3   prohibitions --

4   THE COURT: What happens if there is a finding, no

5   disgorgement in this case and a finding of disgorgement in the

6   other case? It seems to be almost administrative double

7   jeopardy. It strikes me as raising a host of questions.

8   MR. MAC GREGOR: I would also point out, this issue is

9   being adjudicated currently in the District Court in the

10  District of Columbia, where the FERC is a party, where

11  Amaranth, as indicated in its brief, it intends to interplead

12  to become a party.

13  These issues, whether the FERC can proceed, is being

14  adjudicated and has been the subject of a hearing. And I think

15  the FERC can give you more information on that. But a hearing

16  is under the Court's consideration down there, the issue of

17  whether the FERC can proceed in that case.

18  THE COURT: Putting aside all the legalities, why is

19  the federal government proceeding on two fronts in this way?

20  It seems there could be a better way to expend resources.

21  MR. MAC GREGOR: As I said, your Honor, we are

22  pursuing claims -- the action before your Honor is under the

23  Commodity Exchange Act based on futures at the --

24  THE COURT: -- I am just trying to get a practical

25  answer to my question.

1    Why is there a need for two proceedings? I know the

2    theories are a little bit different, the statutes are a little

3    bit different, but we are talking essentially about the same

4    conduct. Some of the relief is overlapping. Why do we need

5    two proceedings?

6    MR. MAC GREGOR: Let the FERC address why they are

7    proceeding. Because we are proceeding under our statute in

8    front of your Honor.

9    MR. MULLINS: Thank you, your Honor, Todd Mullins from

10   FERC --

11   THE COURT:: -- are you admitted?

12   MR. MULLINS: I am not, your Honor. I didn't quite

13   know how to deal with that issue. We could file it if --

14   THE COURT: -- but in any event, you are hereby

15   granted permission to speak today.

16   MR. MULLINS: Thank you, your Honor.

17   THE COURT: That's really so there is no issue.

18   MR. MULLINS: And thank you for inviting us to be here

19   today.

20   It is required by statute that there be, under FERC's

21   law prohibiting energy market manipulation, an administrative

22   proceeding at the commission. And the commission, a

23   five-member body, must make a determination with respect to any

24   such violations.

25   The CFTC, as I understand it, is required by its

1   statute to proceed in District Court.

2   THE COURT:: So the short answer is that the

3   commission believes that it is required by law to proceed with

4   the regulatory —

5   MR. MULLINS: — yes, your Honor. And there are other

6   reasons which I can elaborate on.

7   THE COURT: Okay, well, it seems to me we ought to set

8   a schedule, a briefing schedule and have argument. Unless

9   there is some argument that is being made that I can't

10  entertain this. Is there such an argument that I don't have

11  jurisdiction to entertain this? An application by the

12  defendants?

13  MR. MULLINS: I don't know if it is a question of

14  jurisdiction as much as it is a question of comity with respect

15  to the Federal District Court in Washington, Judge Leon before

16  whom I was last Tuesday arguing a preliminary injunction motion

17  which raises the same issues, and whether FERC has jurisdiction

18  as opposed to the CFTC, to proceed against another defendant,

19  in this case, Mr. Hunter. A TRO was sought, the Court, Judge

20  Leon, indicated he will rule with a written opinion. It is

21  forthcoming later this month or in September.

22  THE COURT: And Mr. Hunter is a party in this case,

23  but Amaranth is not yet a party in that case, but Amaranth is

24  going to try to get into that case.

25  MR. MULLINS: That's our understanding. At some point

1  they plan to intervene. But they are not yet a party.

2  THE COURT: Is Amaranth interested in letting the

3  Court down there deal with this?

4  MR. MOLLON: We certainly have no power over the Court

5  in DC. And we understand, these two proceedings, these two

6  motions are completely different. We are not asking for the

7  same relief from your Honor that Mr. Hunter is seeking from

8  Judge Leon.

9  THE COURT: What is he seeking down there?

10  MR. MOLLON: As we understand it, Mr. Hunter had

11  sought a preliminary injunction of the commencement of the

12  administrative proceeding, as that's now been proceeding, and

13  now they are asking for it to be stayed while Judge Leon

14  decides the underlying jurisdictional decision.

15  We have not presented it to your Honor. We don't

16  intend to present that issue to your Honor. The only reason we

17  intend to intervene in DC is not with respect to the

18  preliminary injunction, but with respect to, if there is a

19  decision on the jurisdiction with FERC in our cause, we would

20  like to be part of that determination, if there is to be a

21  determination on the merits. But whether or not the FERC has

22  the jurisdiction, we believe the FERC's action should be

23  stayed.

24  THE COURT: I think we should set a briefing schedule.

25  FERC can make whatever arguments it wants, including that I

1   should defer to the District Court in DC whatever other

2   jurisdictional arguments you might have.

3       I don't know whether the CFTC wants to weigh in, it

4   can if it wants to.

5       Was Mr. Hunter's lawyers given notice of this

6   conference, by the way?

7       MR. MOLLON: Yes, your Honor, we gave them notice.

8       MR. MAC GREGOR: I think, your Honor, our issues will

9   be procedural in nature, that this is kind of a diversion in

10  our case to have this application here while it is being

11  adjudicated in DC. Since we are not briefing the

12  jurisdictional issues since that is not before your Honor.

13      THE COURT: The briefing should include whatever

14  issues the parties want to raise. If anyone -- I mean

15  obviously if anyone thinks -- you don't think I have

16  jurisdiction, you ought to tell me that.

17      Yes, I think whatever issues you think are relevant,

18  jurisdiction is always something that I have to consider. I

19  mean, if we are talking subject matter jurisdiction

20      MR. MAC GREGOR: My reference was to the question of

21  whether FERC has jurisdiction under its statute, which they are

22  not raising. That's before the Court in DC, your Honor.

23      THE COURT: Are the defendants raising that?

24      MR. MOLLON: No, your Honor, we are not asking your

25  Honor to decide that question.

1  THE COURT: Then you don't need to address it.

2  MR. MULLINS: Your Honor, may I offer a suggestion?

3  The basis for the preliminary injunction are, as I understand

4  it, with respect to the prong as to success on the merits or

5  the legal issue, is the question of whether we have

6  jurisdiction. But I read your Honor as to when we should

7  address that.

8  THE COURT: Actually that's a fair point. I think the

9  argument is the CFTC has exclusive jurisdiction over matters

10 involving futures contracts. And, therefore, FERC shouldn't be

11 involved.

12 MR. MOLLON: Yes, your Honor, we have argued that.

13 All I was saying is, we are not asking your Honor to decide

14 that issue and rule whether or not the FERC has jurisdiction.

15 You may have to consider the FERC's jurisdiction or the

16 overlapping nature of the jurisdiction, but our point is

17 irrespective.

18 THE COURT: Don't you have to show likelihood of

19 success on that? Argue like --

20 MR. MOLLON: -- there are a number of matters we

21 raised with respect to likelihood of success. One of them was

22 the fact that CFTC has exclusive jurisdiction.

23 THE COURT: And FERC disagrees with that?

24 MR. MULLINS: Yes, as we do in the District Court in

25 DC.

1       THE COURT: It seems to me that is an issue that's

2  before me, whether FERC is precluded from pursuing this matter

3  administratively because the CFTC has exclusive jurisdiction.

4  I think that issue is before me and should be addressed.

5       MR. MULLINS: On the schedule my suggestion was going

6  to be that because that precise issue is before Judge Leon, if

7  we were able to set the briefing schedule so with respect to

8  any papers filed by FERC, they would likely be due to your

9  Honor in a time frame that would more likely be after he has

10 ruled. So we can -- would that be possible?

11      THE COURT: I guess my question is, is FERC planning

12 on doing anything in the administrative proceeding in the

13 meantime? Because if the answer is no, I am happy to wait

14 until learning of the Court down there.

15      MR. MULLINS: Let me address that. The procedure

16 we're involved in is called an order to show cause, it is

17 preliminary. And the respondents, Amaranth and other parties,

18 have been given until September 28 to respond to the order to

19 show cause. And barring any action, we would expect those

20 actions to be filed.

21      And I would urge your Honor would better inform the

22 issue before your Honor, because I think it would flush out

23 whether there are issues of overlap or not. Because there may

24 very well be a number of issues that don't end up becoming

25 disputed or otherwise dealt with by that response.

1    THE COURT:: The response is in the nature of an

2    answer or something more elaborate than an answer?

3    MR. MULLINS: It is more elaborate than a District

4    Court answer, your Honor. It does require substantive

5    discussion of the issues. And it can include and will include

6    the argument to the agency that it lacks jurisdiction which,

7    just not to inject too many points, one of the arguments that

8    we have advanced, the primary argument we have advanced in the

9    district court is, there is a lack of jurisdiction because it

10   is not final agency action. And because appeals on reviews of

11   FERC's orders are exclusively within the Court of Appeals.

12       So back to the schedule issue. I would urge that the

13   issue will be more crystallized for briefing when we are aware

14   of the ruling from Judge Leon, and when the order to show cause

15   responses have been filed, which I believe the defendants --

16   respondents asked for an extension. I assume they are working

17   on them. I believe those would flush out the issues of what is

18   going on between the two cases and how has Judge Leon ruled on

19   the issues.

20       THE COURT: You are proposing a response date when?

21       MR. MULLINS: Mid-October.

22       THE COURT: All right, how do the defendants feel

23   about that?

24       MR. MOLLON: If the FERC can agree to exclude the time

25   between now and the time they file their papers here, from our

1  time to answer, then I don't think we have any grounds to

2  object.

3      I don't believe that Mr. Mullins standing here today

4  has the power to agree to that. But if he does and he can bind

5  the commission, I don't have a problem with that schedule.

6      THE COURT: Are you willing to?

7      MR. MULLINS: Mr. Mollon states the case correctly, I

8  do not have the power to do that. The commission would have to

9  make an order to alter that schedule.

10     I guess our point is, amongst the other reasons, the

11 filing of the response to the order to show cause would inform

12 the dispute before your Honor, so that's what we are seeking.

13     MR. MOLLON: If I can describe, I don't think Mr.

14 Mullins completely described the process.

15     The response that we have to put in is a substantive

16 response on the merits that requires us to not only join issue,

17 but to assert facts and evidence in opposition. And it is

18 entirely possible under the FERC's procedures that this will be

19 the entirety of the due process that we receive before the

20 FERC --

21     THE COURT: I am convinced. Let's have opposition to

22 the order to show cause by September 7, 2007. Reply papers by

23 September 17, 2007. And let's have a hearing or argument on, I

24 am starting a trial in September -- well, I am starting a trial

25 and so I am kind of limited. I could do Friday the 14th in the

1  early afternoon. But we would have to back up the briefing a

2  little. The 21st is Yom Kippur. Or I could do the 28th. I

3  don't know if that's too late.

4      MR. MOLLON: We are willing to take less time to reply

5  if we can be heard on the 14th, Judge.

6      THE COURT: That would be fine.

7      MR. MOLLON: And I assume a day or two in advance of

8  the hearing would be sufficient for the other side.

9      MR. MAC GREGOR: Actually, I am out that week, and we

10 have some other issues in terms of vacation schedules in terms

11 of briefings. But the schedule you indicated initially would

12 work well.

13     THE COURT: The 21st, the calendar says Yom Kippur

14 begins at sundown, I could do it in the morning. I don't know

15 if that would affect them.

16     MR. MAC GREGOR: I am out that week.

17     THE COURT: Well, the other option is, if there is a

18 real time constraint, we do it September -- if we can do it

19 September 4 any time, or September 7, I will find some time on

20 the 7th. Or we have to wait until September 28. I am starting

21 my trial on September 5.

22     MR. MULLINS: Your Honor, may I be heard?

23     THE COURT:: Yes.

24     MR. MULLINS: For a variety of reasons, I would urge

25 the 28th just so we have additional time to brief up additional

1   issues.

2       THE COURT: Their response is due on the 28th. I do

3   think it defeats the purpose of the whole thing in light of

4   what I heard if they have to respond before I can consider

5   this.

6       MR. MULLINS: We are available on Yom Kippur, your

7   Honor, that's not a problem.

8       THE COURT:: The CFTC? Can Ms. Sultan cover?

9       MR. MOLLON: Is the CFTC even filing anything?

10      THE COURT: It is a party, I think it is entitled to

11  be here.

12      MR. MAC GREGOR: I am a little confused as to choices.

13      THE COURT: My suggestion would be Friday, September

14  14.

15      MR. MAC GREGOR: And what would that do to the

16  briefing schedule?

17      THE COURT: Well, we could leave it for the 7th and

18  the reply papers by close of business on the 12th.

19      MS. SULTAN: That would work for us, your Honor.

20      THE COURT: So let's have the hearing on the 14th at

21  11:30. 9-14 at 11:30. This isn't the kind of thing we are

22  going to need witnesses, so it is just argument on the 14th at

23  11:30, and the reply papers will be due by close of business on

24  September 12.

25      Let's make sure they are served electronically or by

1   hand by the 7th.

2        MR. MOLLON: That's fine. I am sure we will be able

3   to do that.

4        Can we just make it the 12th and we will try to make

5   it by the close of business?

6        THE COURT: The 12th is fine.

7        MR. MAC GREGOR: September 7 for the --

8        THE COURT: -- opposition papers by the 7th.

9        MR. MAC GREGOR: Thank you, your Honor.

10       THE COURT: That takes into account whatever vacation

11  plans are left in August. And if you reach some kind of an

12  agreement, and the pressure is off, and you extend the

13  September 28 date, and you want to make an adjustment, that's

14  fine with me.

15       Anything else today?

16       MR. MOLLON: No, your Honor.

17       THE COURT: Okay, thank you. Thank you for coming on

18  short notice.

19

20                  oOo

21

22

23

24

25