**EXHIBIT I**

93D CONGRESS 2d Session } HOUSE OF REPRESENTATIVES { REPORT No. 93-975

# COMMODITY FUTURES TRADING COMMISSION ACT OF 1974

---

## REPORT

Together With

MINORITY VIEWS AND ADDITIONAL MINORITY VIEWS

ON

H.R. 13113

A BILL TO AMEND THE COMMODITY EXCHANGE ACT TO STRENGTHEN THE REGULATION OF FUTURES TRADING, TO BRING ALL AGRICULTURAL AND OTHER COMMODITIES TRADED ON EXCHANGES UNDER REGULATION, AND FOR OTHER PURPOSES



APRIL 4, 1974.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

30-443

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1974

35

validity of agency mandated conduct can be challenged is by seeking judicial review of the *agency's* action. Thus, there is no need for a legislative antitrust exemption for exchange rules or conduct mandated by the Commodity Exchange Commission.

"Under existing law, activities of regulated exchanges approved, as distinguished from mandated, by regulatory agency, are also exempt from the antitrust laws if they are 'necessary to make the . . . (regulatory act) work' and no more restrictive than necessary. *Silver* v. *New York Stock Exchange*, 373 U.S. 341, 357 (1963)."

In light of this authoritative description of antitrust considerations of regulation, and the possible limiting effect of an amended stated exemption then being considered by the Committee, the Committee deleted the proposed new section 17(a).

In retaining 17(b) (now section 106 of the bill) the Committee intends that the new Commission consider antitrust policy when considering the issuance of any order, or adopting any Commission rule or regulation, or reviewing, approving (or disapproving), or requiring rules, regulations and bylaws. Section 106 will assure that the public interest reflected in the antitrust laws will be weighed against the public interest protected through regulation of the futures trading industry.

The present Commodity Exchange Act contains no such express mandate. As the Supreme Court recently noted:

> "(T)he area of administrative authority (under the present Commodity Exchange Act) does not appear to be particularly focused on competitive consideration; there is no express provision in the Act directing administrative officials to consider the policies of the antitrust laws in carrying out their duties . . ." (*Ricci* v. *Chicago Merchantile Exchange*, 409 U.S. 289, 303, at n. 13 (1973); see also 409 U.S. at 317–18.)

*Regulated Commodities (Section 201)*

Although the expanded definition of "commodity" contained in Section 201(B) may include rights and interests which are securities as defined in the federal securities laws, except in the area of transactions involving a contract market, the jurisdiction of the Commodity Futures Trading Commission ("CFTC") over any such rights and interest is intended to exist concurrently with the jurisdiction vested in the Securities and Exchange Commission. Accordingly, the first proviso of the Section 201(B) indicates that the CFTC's jurisdiction shall be exclusive with respect to transactions involving contracts of sale of a commodity for future delivery which are traded or executed on a contract market that has been designated pursuant to Section 5 of the Commodity Exchange Act (the "CEA") (7 U.S.C. 7) and which, in accordance with Section 4a of the CEA (7 U.S.C. 6), may not lawfully be executed or consummated otherwise than through a member of a contract market, and the second proviso of Section 201(B) indicates that, except as to transactions covered by the first proviso, the expanded definition of commodity is not intended to derrogate from the jurisdiction of the Securities and Exchange Commission (the "SEC").