105 FERC ¶ 61,282
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Pat Wood, III, Chairman;
                       Nora Mead Brownell, Joseph T. Kelliher,
                       and Suedeen G. Kelly.

| | |
|---|---|
| Price Discovery in Natural Gas and Electric Markets | Docket No. PL03-3-001 |

ORDER ON CLARIFICATION OF POLICY STATEMENT ON
NATURAL GAS AND ELECTRIC PRICE INDICES

(Issued December 12, 2003)

1.   On July 24, 2003, the Commission issued its *Policy Statement on Natural Gas and Electric Price Indices* in which the Commission identified minimum practices for both price index developers and data providers (market participants that report transaction data to price index developers).  The Policy Statement also provided a "safe harbor":  for data providers that can demonstrate they have adopted and follow the Commission-established practices for trade data reporting, the Commission will presume they report transaction data accurately and in good faith, and will not penalize such parties for inadvertent errors in reporting.

2.   The Commission has received comments and/or requests for clarification of certain aspects of the Policy Statement from the National Association of State Utility Consumer Advocates (NASUCA),[1] the American Gas Association (AGA), the Electric Power Supply Association (ESPA), and the Committee of Chief Risk Officers (CCRO). In addition, following issuance of the Policy Statement, the Commission undertook a

---

[1] NASUCA also titled its filing as a request for rehearing.  Policy statements generally are not subject to rehearing.  See, e.g., *Certification of New Interstate Natural Gas Pipeline Facilities*, 92 FERC ¶ 61,094 (2000) (Commission declines to act on rehearing because policy statements are not directly reviewable; rather, review is available when policy is applied in specific case), *citing American Gas Assoc. v. FERC*, 888 F.2d 136, 151-52 (D.C. Cir. 1989) (policies are not ripe for review until applied in specific cases).  NASUCA's filing will be treated as a request for clarification.

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC    Document 32-6    Filed 09/28/2007    Page 2 of 8

Docket No. PL03-3-001                                                                                          - 2 -

survey of many industry participants to determine what practices were followed with respect to reporting prices from energy transactions both before and after issuance of the Policy Statement. Many of the respondents to the survey provided narrative statements which included comments on or questions about specific provisions in the Policy Statement.

3.      On November 17, 2003, the Commission issued two orders adopting behavior rules for market participants. In Docket No. EL01-118-000 and -001 the Commission issued its *Order Amending Market-Based Rate Tariffs and Authorizations*, 105 FERC ¶ 61,218, and in Docket No. RM03-10-000 the Commission issued Order No. 644, *Amendment to Blanket Sales Certificates*, 105 FERC ¶ 61,217. Both of these orders adopt a behavior rule requiring that, to the extent affected parties to natural gas or electricity sales report transactions to entities that develop and publish price indices, they must report such transactions in accordance with the Policy Statement. The rules also require all market-based rate sellers (electric) and blanket certificate holders (natural gas) to notify the Commission whether or not they report transaction data to price index developers. The rules applicable to electric transactions are effective December 17, 2003, and the rules applicable to gas transactions are effective December 26, 2003.

4.      The Policy Statement practices, then, must be followed by any reporting party subject to the new behavior rules issued in Docket Nos. EL01-118 and RM03-10, and are necessary to obtaining the benefit of the safe harbor presumption of accurate, good faith reporting. Moreover, the Policy Statement is an important tool in encouraging market participants to report transaction data. In light of the importance of the issues addressed in the Policy Statement, the Commission hereby provides clarifications on certain of the matters set forth in the Policy Statement.

5.      Three requests for clarification relate to the standard for data providers set out in Paragraph 34.3 of the Policy Statement:

> <u>Data reported</u>. Subject to an appropriate confidentiality agreement with the index developer, a data provider should report each bilateral, arm's-length transaction between non-affiliated companies in the physical (cash) markets at all trading locations. Physical (cash) market reporting shall not include financial hedges, financial transactions, or swaps or exchanges of gas or electricity. Data should be provided for each transaction separately. For each transaction, the following information should be provided: (a) price; (b) volume; (c) buy/sell indicator; (d) delivery/receipt location; (e) transaction date and time; and (f) term (next day or next month).

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC    Document 32-6    Filed 09/28/2007    Page 3 of 8

Docket No. PL03-3-001                                                                    - 3 -

### Reporting the time of a transaction

6. AGA and CCRO, along with a number of survey respondents, comment that many companies do not have the capability to record and report the time of a transaction. AGA comments that implementing time reporting "would be a difficult and costly proposition." CCRO says some of its members "have stated that the 'time requirement' will prevent them from participating in the reporting process." Numerous survey respondents also informed the Commission they report the date of a transaction but do not record or report the time of the transaction, and to do so would be burdensome.

7. The Commission originally included time as part of the information to be reported to assist index developers in matching and verifying transactions, particularly as counterparty data was not required.[2] It was not the Commission's intent, however, to create a barrier to voluntary reporting or to impose a costly or difficult change in the way companies maintain records of their transactions or in the protocols by which energy trade data is submitted to price index developers. While time data may be helpful, on balance it appears that requiring time data could result in a decrease in reported transactions and thus would be detrimental to the development of more robust indices.[3] As a result, the Commission clarifies that the time of a transaction is an optional data item in reporting energy trade data. The date must be reported.

### Reporting at all trading locations

8. A second question concerns reporting transactions "at all trading locations" and providing data for "each transaction separately." EPSA, for instance, posed several questions about the meaning of trading locations. EPSA asked whether reporting can be

---

[2] Providing counterparty identity would be the most direct and reliable means of matching transactions. Many parties, however, consider counterparty information to be highly confidential, or state that they have entered into confidentiality agreements which prevent counterparty information from being reported to price index developers. The Commission refrained from making counterparty data part of the reporting practices, but urged participants to amend their agreements and to provide counterparty information where possible. Policy Statement ¶ 35-36. The need to have significant improvement in the level of counterparty data provision is heightened in light of our elimination of the time of the transaction as a required data element.

[3] The Commission notes that in comments filed in Docket No. AD03-7-002, Platts stated that many companies lack the capability of reporting the time of transactions, and that "Platts does not consider it to be critical." *Comments by Platts Following Staff Workshop on Market Activity and Price Indicators*, filed December 1, 2003, at 2.

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC    Document 32-6    Filed 09/28/2007    Page 4 of 8

Docket No. PL03-3-001                                                                 - 4 -

limited to "aggregated reporting locations" or to points with high connectivity and adequate liquidity. EPSA also requested that the Commission provide guidance on how to report when index developers use different trading locations.

9.      First, the Commission expects that all trade data submissions to price index developers will be under uniform confidentiality agreements to protect commercially sensitive transaction data, and that price index developers will have a public code of conduct confirming their commitment to confidential treatment of the data. See Policy Statement ¶ 33.1. Under this umbrella of protection, a participant should be confident it can report all individual trade data regardless of the volume of transactions at a particular location. The Commission will not adopt EPSA's suggestion that prices should be reported only at points of high connectivity and liquidity.

10.     As to EPSA's comment on aggregated trading locations and the fact that different index developers use somewhat different trading points in their price indices, the Commission expects price index developers to communicate to the industry the specific character of the price locations used in their indices. Using these parameters, the Commission expects market participants to report all trades to match or closely match the characteristics defined by the index developer(s) to which they choose to report.

**Reporting to one or more than one price index developer**

11.     Third, EPSA also asked the Commission to clarify the extent to which "each transaction" must be reported and to whom, noting, for example, that if multiple index developers ask for information, the reporting burden on individual companies could become burdensome. Related to this is that, in the survey it conducted, the Commission considered reporting to include executing trades on an electronic platform or having trades confirmed through an electronic service, if the data from such trades or confirmations were then incorporated into a published index. The rationale is that if trade data is being contributed to a published price index in this manner, it is part of price formation in the marketplace. The Commission's interest is in robust price formation, not in the particular vehicle by which the price information reaches the market, so long as the resulting indices are accurate, reliable, and transparent.

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC    Document 32-6    Filed 09/28/2007    Page 5 of 8

Docket No. PL03-3-001                                                                                      - 5 -

12.     Generally, a market participant need not report to more than one index developer, so long as the relevant data for all reportable transactions are given to that developer.[4] If a participant makes all of its trades on an electronic platform, or has all trades confirmed through an electronic confirmation service, or a combination of both, and all data from such electronic trading or processing is included in a single published index, then the participant is automatically reporting all of its trades.  If, however, a participant executes some trades electronically, but others through other means, then to be reporting "each transaction" for purposes of the safe harbor provisions of the Policy Statement the participant must report all transactions, including platform-facilitated transactions, to at least one index developer.[5]  A participant, of course, may report transactions to more than one index developer.  The Commission recognizes that reporting to multiple index developers may be burdensome, however, and there is no requirement to report to multiple index developers if at least one developer is accepting all transaction data.  There is also no requirement to report to an index developer that has not affirmatively adopted the standards of Policy Statement ¶ 33.

---

[4] As noted in Policy Statement ¶ 34.3, reportable transactions are non-index based "bilateral, arm's-length transaction between non-affiliated companies in the physical (cash) markets at all trading locations."  Note, however, that if a participant reports trades to an index developer that publishes only a limited or regional index, the market participant must report trades in other areas not covered by the limited or regional index to another index developer.

[5] Certain electronic trading or confirmation services automatically capture trade data for use in an index.  While the Commission considers that to be a form of reporting (because the data contributes to price formation), it is not a separate voluntary step such as reporting to an index developer.  Given the current voluntary system of price reporting, the Commission clarifies that if a market participant does some transactions on an electronic platform that automatically captures data for an index, but chooses not to report any transactions (electronic or non-electronic) to other index developers, that participant is choosing not to report transactions.  Put another way, the fact that a participant does some trades on an electronic platform does not mean that the participant is then "reporting" under the Policy Statement such that the participant must report all trades.  Thus, under the behavior rules issued in Docket Nos. EL01-118 and RM03-10, such a participant would notify the Commission that it is not reporting trades.

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC    Document 32-6    Filed 09/28/2007    Page 6 of 8

Docket No. PL03-3-001                                            - 6 -

### Verifying data reported

13.     Policy Statement ¶ 34.2 states that the personnel reporting trade data to an index developer must be independent from and not responsible for trading and "should also verify the accuracy and completeness of the data before submitting it."  EPSA and several survey respondents ask for clarification on what "verify" means in this context, noting that reconfirming transactions would be costly and time-consuming.  The Commission clarifies that if the prices reported are certified to be accurate and complete by an appropriate company official (independent from trading) or are the same as those recorded on the books and records of the company in accordance with generally accepted accounting principles, the personnel reporting trade data from such books and records of the company need not take additional steps to verify the data.

### Auditing the data gathering and submission process

14.     Policy Statement ¶ 34.5 states that the "data provider should have an independent auditor review the implementation of and adherence to data gathering and submission process adopted by the company at least once annually."  The Commission has received informal inquiries whether this requires an external audit.  It is the Commission's understanding that the terms and costs for such an external audit may be an issue, particularly for smaller companies.  Here again, the Commission does not want to raise barriers to voluntary reporting.  While there are advantages to having an external audit, the Commission clarifies that the independent audit may be performed by a company's internal auditor, so long as the internal audit personnel are independent from the trading and reporting departments and personnel, and the audit follows internal auditing standards such as those prescribed by the Institute of Internal Auditors or other similar generally accepted auditing standards.

### CCRO best practices

15.     The CCRO states that its *Best Practices for Energy Price Indices,* provided to the industry and filed with the Commission in Docket No. AD07-3, address many of the points set out in the Policy Statement.[6]  The CCRO ask whether participants can look to the *Best Practices* for guidance on how to comply with the Policy Statement.  The Commission notes that the *Best Practices* have played a useful role in the development of the industry consensus upon which the Commission built when it issued the Policy Statement.  While the Commission does not here expressly adopt or endorse the *Best Practices*, to the extent they are not inconsistent with the Policy Statement, participants are welcome to use the *Best Practices* to implement the standards of the Policy Statement.

---

[6] Docket No. AD03-7, filed April 21, 2003.

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC     Document 32-6     Filed 09/28/2007     Page 7 of 8

Docket No. PL03-3-001                                                                                      - 7 -

**Investigations**

16.     NASUCA contends that the Commission was unclear about whether it would investigate allegations of inaccurate price reporting to index developers by companies that follow the Policy Statement standards, and argues that the safe harbor protection should not prevent disgorgement of profits resulting from inadvertent errors.  As the Commission noted in Policy Statement ¶ 38, the safe harbor good faith reporting presumption is rebuttable.  Further, market participants that report prices are now under an affirmative obligation to report accurately.[7]  The Commission will not, however, impose remedies on companies that follow the Policy Statement standards but make an inadvertent error.  In making inquiries into any such instance, the Commission will consider whether the company followed the error correction procedures in Policy Statement ¶ 33.3 and 34.3.

**Conclusion**

17.     The Commission continues to believe that, with the foregoing clarifications, our Policy Statement will encourage accurate, reliable, and transparent price indices for natural gas and electric power.  The Commission will continue to monitor progress in the current voluntary system of price formation, and will take such further steps as may be necessary to restore confidence in price indices.

The Commission orders:

    (A)     The *Policy Statement on Natural Gas and Electric Price Indices* is clarified as discussed in the body of this order.

---

[7] The Commission notes that the market behavior rules adopted in Docket Nos. EL01-118 and RM03-10 expressly require market-based rate sellers and blanket certificate holders that report prices to "provide accurate and factual information, and not knowingly submit false or misleading information or omit material information" to index developers and to report "transactions in a manner consistent with the procedures set forth in the Policy Statement . . . ."  See, e.g., *Order Amending Market-Based Rate Tariffs and Authorizations*, Appendix A, Rule 4.

20031212-0429 Issued by FERC OSEC 12/12/2003 in Docket#: PL03-3-001
Case 1:07-cv-06682-DC    Document 32-6    Filed 09/28/2007    Page 8 of 8

Docket No. PL03-3-001 - 8 -

   (B) NASUCA's request for rehearing of the Policy Statement is hereby dismissed as discussed in the body of this order.

By the Commission.

( S E A L )

                 Magalie R. Salas,
                   Secretary.