LEXSEE 1979 U.S. DIST. LEXIS 11738

The Times Mirror Co. v. Federal Trade Commission, Michael Pertschuk, Paul Rand Dixon, Elizabeth Hanford Dole, David A. Clanton, and Robert Pitofsky.

Civil No. 78-3422-LEW.

United States District Court, Central District of California.

1979 U.S. Dist. LEXIS 11738; 1979-2 Trade Cas. (CCH) P62,756

June 13, 1979, Filed

OPINION BY: [*1] WATERS

OPINION

Memorandum of Decision

Background

WATERS, D. J.: In this suit, plaintiff Times Mirror Company, publisher of The Los Angeles Times, seeks injunctive and declaratory relief from an adjudicative proceeding initiated by the Federal Trade Commission. The FTC issued its twocount complaint, Commission Docket No. 9103, on July 27, 1977. Count I charges that Times Mirror's practice of offering cumulative annual volume discounts to purchasers of retail display advertising space in the Los Angeles Times violates Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45). Count II of the complaint charges that the practice violates Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C. § 13(a)).

On November 4, 1977, Times Mirror filed a motion to dismiss Count II of the complaint on the ground that newspaper advertising space is not a "commodity" within the meaning of Section 2(a). The motion was granted by the administrative law judge who certified his order for interlocutory appeal to the Commission pursuant to Section 3.23(b) of the Commission's Rules of Practice ( 16 C.F.R. § 3.23(b)). The Commission granted review and on July 27, [*2] 1978, issued an order reinstating Count II of the complaint.

On September 1, 1978, Times Mirror filed this action to enjoin the Commission from pursuing any future proceedings under either count of its complaint in Docket No. 9103. The plaintiff contends that the FTC lacks subject matter jurisdiction over the proceeding under either Section 5 of the Federal Trade Commission Act or Section 2(a) of the Clayton Act. Moreover, Times Mirror asserts that it will suffer irreparable injury if it is forced to pursue an administrative remedy. The case is now before this court on Times Mirror's motions for a preliminary injunction and summary judgment, and the FTC's motion to dismiss.

Merits

It is clear that no final FTC decision has been rendered on the issues and proceedings involved in Docket No. 9103. Consequently, the plaintiff has not exhausted its administrative remedies and the FTC argues that judicial intervention is premature. It is certainly the general rule that failure to exhaust administrative remedies precludes judicial relief, but in a particular case other factors may outweigh the preference for a preliminary agency determination. Casey v. FTC 578 F. 2d 793 (9th [*3] Cir. 1978); California ex rel. Christensen v. FTC 549 F. 2d 1321 (9th Cir. 1977), cert. denied, 434 U.S. 876, 98 S. Ct. 227, 54 L. Ed. 2d 156 (1977). The propriety of judicial intervention is tested under the three part standard adopted in Lone Star Cement Corp. v. FTC, 339 F. 2d 505 (9th Cir. 1964), which requires the court to weight: (1) The extent of injury from pursuing an administrative remedy, (2) the degree of doubt about agency jurisdiction, and (3) the involvement of agency expertise in the question of jurisdiction. The two counts of the complaint in Docket No. 9103 will be tested against this standard in reverse order.

Case 1:07-cv-06682-DC    Document 32-19    Filed 09/28/2007    Page 2 of 6

Page 2
1979 U.S. Dist. LEXIS 11738, *3; 1979-2 Trade Cas. (CCH) P62,756

Count II

In Count II of the complaint, the FTC alleges that Times Mirror's practice of offering cumulative annual volume discounts to purchasers of retail display advertising space violates Section 2(a) of the Clayton Act, which prohibits discrimination in price "between purchasers of commodities of like grade and quality" where the effect is substantially to lessen competition or a tendency to create a monopoly. 15 U.S.C. § 13(a). Times Mirror filed its motion to dismiss this count for lack of subject matter jurisdiction on November 4, 1977, arguing [*4] that newspaper advertising does not fall within the scope of the term "commodities" under the Clayton Act.

The administrative law judge agreed, holding that Section 2(a) covers only tangibles. Of newspaper advertising space, he stated: "But here the respondent sells the service of taking the advertiser's message into a million homes, with its own circulation list and its own means of distribution. That the message is carried on a tangible piece of paper does not make the delivery of the message any less a service."

The Commission disagreed. It found that the Clayton Act was clearly intended to apply to tangibles and not to apply to intangibles, but that newspaper advertising space falls somewhere in between. Analyzing the problem in terms of the policies underlying the Clayton Act, the Commission concluded that newspaper advertising space "is sufficiently fungible in nature to be susceptible to the kind of non-discriminatory pricing which the legislative scheme seeks to encourage" and that "there is nothing inherent in the sale of newspaper advertising space that requires particularized skills or treatment for different customers." As a result, the Commission refused to follow [*5] two recent district court decisions, National Tire Wholesale, Inc. v. Washington Post Co., 441 F. Supp. 81 (D.D.C. 1977), and National Auto Brokers Corp. v. General Motors Corp., 1974-2 TRADE CASES P97,856, (S.D.N.Y. 1974), in which it has been held that newspaper advertising space is not a commodity under the Clayton Act. Times Mirror argues that Lone Star justifies its suit for relief from the effect of the Commission's decision on Count II.

1. Extent of Injury

It is well established that only a clear showing of irreparable injury from anticipated agency action will excuse the exhaustion of administrative remedies and permit judicial intervention in the agency process. Christensen, supra; Renegotiation Board v. Bannercroft Clothing Co., 415 U.S. 1, 94 S. Ct. 1028, 39 L. Ed. 2d 123 (1974).

Times Mirror alleges that it will suffer five separate types of harm if it is forced to pursue this action through the administrative system: (1) the expense and inconvenience of further litigation before the Commission, (2) waste of government resources which will hurt Times Mirror as a member of the taxpaying public, (3) the possibility of private treble damage suits pending ultimate [*6] judicial review, (4) violation of Times Mirror's due process rights, and (5) a chilling effect upon the flow of news, editorial and commercial information to the public.

Litigation expenses which are normal incidents of participation in the agency process do not constitute irreparable injury. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S. Ct. 459, 82 L. Ed. 638 (1938); Christensen, supra . Nor does asserted waste of government resources by the FTC in allegedly frivolous litigation amount to irreparable injury under the Lone Star test. "Obviously, Congress has empowered the FTC to decide which actions are worthy of its attention." Christensen, supra, at 1323 n. 2.

The plaintiff next argues that if the FTC proceeding is allowed to result in a cease and desist order, Times Mirror might have to defend a multitude of private treble damage suits pending reversal of an adverse decision. The same argument was rejected in Casey, supra: "If the FTC lacks jurisdiction, however, no party would be collaterally estopped by an FTC finding." 578 F. 2d at 796 n. 5, citing Paramount Transportation Systems, 436 F. 2d 1064, 1066 (9th Cir. 1971); but see McCulloch Interstate Gas Corp. [*7] v. Federal Power Commission, 536 F. 2d 910 (10th Cir. 1976).

Times Mirror's last two asserted elements of injury relate to constitutional rights it claims will be violated if the FTC is allowed to proceed in Docket No. 9103. Some courts have held that in certain circumstances the assertion of a constitutional right may be, by itself, enough to give a district court jurisdiction to hear an attack on an interlocutory order. Downen v. Warner, 481 F. 2d 642 (9th Cir. 1973); Coca-Cola Company v. FTC, 475 F. 2d 299 (5th Cir. 1973); Fay v. Douds, 172 F. 2d

Case 1:07-cv-06682-DC   Document 32-19   Filed 09/28/2007   Page 3 of 6

Page 3
1979 U.S. Dist. LEXIS 11738, *7; 1979-2 Trade Cas. (CCH) P62,756

720 (2d Cir. 1949). The rationale underlying this exception is that "[resolving] a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." Downen v. Warner, supra, at 643.

This limited exception is not intended, however, to provide an automatic escape route from the exhaustion requirement. "The fact that the attack is voiced in conclusory language of a denial of due process and like constitutional rights does not warrant stopping [an administrative agency] in its tracks." Bokat v. Tidewater Equipment Co., 363 F. 2d 667, 672 (5th Cir. 1966); [*8] accord, Coca-Cola Co. v. FTC, 475 F. 2d 299, 303 (5th Cir. 1973); see also Writers Guild of America, West, Inc. v. FCC, 423 F. Supp. 1064, 1082 (C.D. Cal. 1976).

Here, Times Mirror alleges two potential violations of its constitutional rights. First, it claims that to allow the FTC to pursue its "unlawful proceeding" deprives Times Mirror of due process. This is the kind of "conclusory language of a denial of due process" that has been held not to justify judicial intervention. Bokat, supra. In essence, Times Mirror asserts that due process requires that it be allowed to seek judicial intervention in any agency proceeding in which it challenges the agency's jurisdiction. This argument is at direct odds with the policies underlying the exhaustion requirement. "The judicially-created exhaustion requirement is intended to facilitate the development of a full factual record, to encourage the exercise of administrative expertise and discretion, and to promote judicial and administrative efficiency." Downen v. Warner, supra, at 643. Doubts about an agency's subject matter jurisdiction in a proceeding are only one factor in a district court's decision whether or not to interrupt an [*9] agency adjudication. Times Mirror will have a full opportunity to present its contentions in the proceeding before the Commission, and the Commission's final decision is subject to review by the court of appeals. 15 U.S.C. § 45(c).

Times Mirror's second claim of constitutional injury is based on first amendment freedom of speech. The plaintiff contends that if it is forced to cut back on volume discounts, the result will be a reduction in total advertising. Less advertising will mean less space for news and editorial material with the resultant "... chilling effect on the flow of news... to the public." This attenuated argument falls far short of the "unambiguous statutory or constitutional right" that justifies the extraordinary remedy of judicial intervention in an agency proceeding. Coca-Cola, supra, at 304.

II. FTC Jurisdiction

The second factor of the Lone Star test requires this court to assess the degree of doubt about agency jurisdiction to proceed. In the absence of a "clear jurisdictional defect," an agency should have the opportunity to make the initial determination of its own jurisdiction, subject to appellate court review. Christensen, supra, at 1324. Relying [*10] on (1) the plain language of the Clayton Act, (2) legislative history, (3) contemporaneous interpretation by the FTC, (4) judicial decisions, and (5) statements of authorities in the field, Times Mirror contends that newspaper advertising space clearly lies outside the reach of the Clayton Act.

First, Times Mirror argues that under the wording of the Clayton Act "commodities" can only include tangible goods and merchandise. Section 2(a) speaks of "commodities of like grade and quality," and allows for price differentials based on "cost of manufacture, sale or delivery," "actual or imminent deterioration of perishable goods, obsolescence of seasonal goods," etc. Times Mirror quotes the statement of antitrust authority F. Rowe that "any extension of the price discrimination prohibitions beyond the area of tangibles would make nonsense of this language." Price Discrimination Under the Robinson-Patman Act 61-62 (1962).

Next, Times Mirror argues that the legislative history of both the original Section 2 of the Clayton Act and Section 2 as amended by the Robinson-Patman Act in 1936 reflects an intention to limit its applicability to tangible products and merchandise.

Third, Times [*11] Mirror points to an informal ruling of the FTC, recorded at 81 Cong. Rec. App. 2336-37 (1937) soon after the passage of the Robinson-Patman Act. In the ruling the FTC announced that it was dropping a case against periodical publishers who charged proportionally higher rates for less than full page advertisements. The FTC concluded that "the sale of advertising space in the circumstances in this case does not involve the sale of a 'commodity' within the meaning of the act." Id.

In 1953, however, the Supreme Court, in Times-Picayune Pub. Co. v. United States, 345 U.S. 594,

Case 1:07-cv-06682-DC    Document 32-19    Filed 09/28/2007    Page 4 of 6

1979 U.S. Dist. LEXIS 11738, *11; 1979-2 Trade Cas. (CCH) P62,756

Page 4

610 n. 27, 73 S. Ct. 872, 881, 97 L. Ed. 2d 1277, 1290, explicitly referred to the status of advertising space under the Clayton Act as an open question:

On oral argument here, the government explanatorily referred to an early informal Federal Trade Commission opinion to the effect that advertising space was not a "commodity" within the meaning of § 2 of the Clayton Act. We express no views on that statutory interpretation. Compare note 11, supra.

In footnote 11, the Court had listed cases demonstrating its broad interpretation of the "interstate commerce" requirement of the Sherman Act. The reference [*12] suggests that if it had ruled on the point, the Court would also have given a broad interpretation to the term "commodities."

Times Mirror points out that four years later a bill was introduced, but not enacted, in Congress to amend the Clayton and Robinson-Patman Acts "to include the sale of services by independent contractors." H.R. 8277, 85th Cong., 1st Sess., 103 Cong. Rec. 9898 (1957). The bill reflected congressional understanding that Section 2(a) covered "only tangible commodities and not services." H.R. Rep. No. 607, 85th Cong., 1st Sess. 66 (1957). But the Commission decision here does not conflict with this understanding. The Commission found that newspaper advertising space is neither pure tangible nor pure intangible. Since the tangible/intangible distinction provided no easy answer, the Commission looked to Clayton Act policy in deciding that newspaper advertising space is a commodity under Section 2(a).

Finally, Times Mirror argues that most recent cases and commentary support their contention that newspaper advertising space is not a commodity under Section 2(a). Their point is well taken. In a number of decisions involving products other than newspaper advertising [*13] space, but which also fall in between the tangible and intangible categories, it has been held that Section 2(a) of the Clayton Act is inapplicable. See, e. g., Baum v. Investors Diversified Services, Inc., 409 F. 2d 872 (7th Cir. 1969) (mutual fund shares); American Bankers Club, Inc. v. American Express Co., 1977-1 TRADE CASES P70,740 (D.D.C. 1977)(travelers checks); Kennedy Theater Ticket Service v. Ticketron, Inc., 342 F. Supp. 922 (E.D. Pa. 1972) (reserved seat tickets). And in Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc., 295 F. 2d 375 (7th Cir. 1961), cert denied, 369 U.S. 812 (1962), the court held the Clayton Act inapplicable to the sale of television advertising.

Also, in ALW, Inc. v. United Air Lines, Inc., 510 F. 2d 57 (9th Cir. 1975), the court cited Amana, supra, in dictum for the proposition that "[advertising] does not fall within the traditional definition of 'commodities' within the purview of Section 3" of the Clayton Act. Finally, two recent district court cases have specifically held that newspaper advertising space is not a "commodity." National Tire Wholesale, Inc. v. Washington Post Co., 441 F. Supp. 81 (D.D.C. 1977); National Auto [*14] Brokers Corp. v. General Motors Corp., 1974-2 TRADE CASES 97,856 (S.D.N.Y. 1974).

Authorities in the field have also concluded that newspaper advertising space has been excluded from the Clayton Act. P. Areeda states that Section 2(a) "applies only to transactions in 'commodities' which are customarily understood to exclude services and such intangibles as newspaper or broadcast advertising." Antitrust Analysis 846 (1974), cited in National Tire, supra, at 85. E. Kintner argues that "[what] is being sold is in the nature of a service, the circulation of ideas to the newspaper's readers. The printed paper is merely a tangible vehicle for the conveyance of these ideas. It is only incidental to the dominant tangible nature of the transaction." A Robinson-Patman Primer 49 (1970), cited in National Tire, supra, at 85. J. von Kalinowski states in his treatise that newspaper and magazine advertising are intangibles not within the term "commodities."3 Antitrust Law and Trade Regulation § 24.05. Finally, co-sponsor Patman stated in his book on the subject that the act was not intended to apply to magazine or other advertising. W. Patman, The Robinson-Patman Act 75 (1938).

But the [*15] cases are not unanimous. In Scott Publishing Co. v. Columbia Basin Publshers, Inc., 180 F. Supp. 754 (W.D. Wash. 1959), aff'd 293 F. 2d 15 (9th Cir. 1961), cert. denied 368 U.S. 940 (1961), the district court expressed "considerable doubt" about whether newspaper advertising was a "commodity," but neither the district nor the circuit court found it necessary to decide the question. In Syracuse Broadcasting Corp. v. Newhouse, 236 F. 2d 522, 527 (2nd Cir. 1956), the court stated that whether or not newspaper advertising is a "commodity" remained an "important and apparently unresolved question" under the Clayton Act. And in United States v. Wichita Eagle Publishing Co., 1959 TRADE CASES 75,535 (D. Kan. 1959), newspaper

Case 1:07-cv-06682-DC  Document 32-19  Filed 09/28/2007  Page 5 of 6

Page 5
1979 U.S. Dist. LEXIS 11738, *15; 1979-2 Trade Cas. (CCH) P62,756

advertising was treated as a commodity without discussion. Finally, in National Tire, supra, while the court concluded that newspaper advertising space is not a "commodity," it noted that "[there] is little legal authority on the issue" and that "the characterization of newspaper advertising is not clearly established." 441 F. Supp. at 85.

Overall, it is clear that most courts and authorities that have addressed the question have concluded that newspaper advertising [*16] is not a "commodity" under Section 2(a). It cannot be said, however, that the jurisdictional question is free from doubt, or that the Commission's jurisdictional conclusion is frivolous. Lone Star, supra, at 511. Since it is not clear that the FTC is operating outside the scope of its statutory authority, intervention is not warranted under this branch of the Lone Star test. Christiansen, supra, at 1324.

III. Involvement of Agency Expertise in the Question

Times Mirror has argued that there is no need for specialized administrative expertise to decide a purely legal question of statutory interpretation. Some courts have distinguished between legal and factual questions in assessing the importance of administrative expertise. See, e.g., McKart v. United States, 395 U.S. 185, 198-99, 89 S. Ct. 1657, 1665, 23 L. Ed. 2d 194, 205-06 (1965). But "the requirement of exhaustion of remedies often applies as well to questions of law as to questions of fact. Courts should accord deference to an agency's own construction of its authorizing statute when reviewing final agency action." Christensen, supra, at 1324; accord, Casey, supra, at 798.

The question of FTC jurisdiction to proceed [*17] against Times Mirror under the Clayton Act in the present case appears to be an example of a legal issue to which the exhaustion requirement should apply. The FTC has special expertise in the area of federal antitrust law and a thoughtful jurisdictional decision by the Commission may prove helpful to a reviewing court. See National Tire, supra, at 85. The Commission has already issued an opinion upholding FTC jurisdiction under Count I of the complaint involved in Docket No. 9103, but further proceedings in the case could result in clarification or even reversal of that decision.

In summary, Times Mirror fails to establish a basis for judicial intervention. Both of the primary goals of the exhaustion doctrine, promotion of judicial economy and administrative efficiency, will be served by allowing the FTC to proceed with the adjudication. It is not clear that the FTC is exceeding its jurisdiction and Times Mirror has asserted no cognizable injury it will suffer if it is forced to defend itself in the FTC proceeding.

Count I

In Count I of the complaint, the FTC alleges that Times Mirror's practice violates Section 5 of the Federal Trade Commission Act. Section 5 empowers [*18] the FTC to initiate proceedings to prevent "unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45 (1976). Times Mirror's argument for district court action relieving it from further FTC proceedings under Count I of the complaint is even less convincing than its argument for relief from Count II. Its claims for relief under the injury and administrative expertise branches of the Lone Star test are the same for both counts. With regard to agency jurisdiction, however, its allegations of agency overreaching in Count I are much weaker.

Times Mirror has raised no challenge to Section 5 jurisdiction in the proceeding now before the FTC. Consequently, Times Mirror is asking this court to decide against the FTC on the issue of Section 5 jurisdiction before the agency has been offered the opportunity to give even a preliminary justification for its action. Times Mirror attempts to circumvent this problem by arguing that the jurisdictional questions under Section 5 and Section 2(a) are identical and that the FTC decision on Section 2(a) is also a decision on Section 5. In fact, however, it is clear [*19] that the FTC's power to act to prevent unfair methods of competition and unfair or deceptive acts or practices includes the power "to define and proscribe an unfair competitive practice, even though the practice does not infringe either the letter or spirit of the antitrust laws." FTC v. Sperry and Hutchinson Co., 405 U.S. 233, 239, 92 S. Ct. 898, 903, 31 L. Ed. 2d 170, 176 (1972).

In response, Times Mirror argues that Section 5 jurisdiction may exist in proceedings involving conduct that has been inadvertently omitted from the Clayton Act, but not where the conduct involved has been deliberately excluded from the Act. See Grand Union Co. v. FTC, 300 F. 2d 92 (2d Cir. 1962). It is unnecessary to pass on the validity of this argument since, as discussed above, it is not clear that the sale of newspaper advertising space has been deliberately excluded from the coverage of the

Case 1:07-cv-06682-DC    Document 32-19    Filed 09/28/2007    Page 6 of 6

Page 6
1979 U.S. Dist. LEXIS 11738, *19; 1979-2 Trade Cas. (CCH) P62,756

Clayton and Robinson-Patman Acts.

With regard to Count I of the complaint, the FTC has not had the opportunity to make even a preliminary decision on its jurisdiction under Section 5 of the FTC Act, and it appears likely that its authority to act under that section is broader in the present case than its authority [*20] under Section 2(a) of the Clayton Act. Consequently, the plaintiff again fails to meet the Lone Star test for judicial intervention and must pursue its claims in the proceeding before the FTC.

The plaintiff's motions for a preliminary injunction and summary judgment are denied; the FTC's motion to dismiss is granted.