LEXSEE 1999 U.S. DIST. LEXIS 14431

SHEPARD INDUSTRIES, INC., Plaintiff, - against - 135 EAST 57TH STREET, LLC, and COHEN BROTHERS REALTY CORPORATION, Defendants.

97 Civ. 8447 (DAB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1999 U.S. Dist. LEXIS 14431; 1999-2 Trade Cas. (CCH) P72,664

September 15, 1999, Decided
September 17, 1999, Filed

**DISPOSITION:** [*1] Defendants' motion to dismiss granted in part and denied in part. Defendants' motion to vacate temporary injunctive relief GRANTED. Plaintiff's motion for preliminary injunctive relief DENIED.

**COUNSEL:** For PLAINTIFF: Ronald A. Nimkoff, Robert J. Schechter, Harvey B. Silikovitz, SCHECHTER & NIMKOFF, LLP, New York, New York.

For DEFENDANTS: Jay B. Itkowitz, Donald A. Harwood, Allyn Crawford, ITKOWITZ GOTTLIEB & HARWOOD, New York, New York.

**JUDGES:** Deborah A. Batts, United States District Judge.

**OPINION BY:** Deborah A. Batts

**OPINION**

*MEMORANDUM & ORDER*

Deborah A. Batts, United States District Judge.

Plaintiff Shepard Industries, Inc. ("Plaintiff") brings this diversity action against Defendants 135 East 57th Street, LLC ("LLC"), and Cohen Brothers Realty Corporation ("Cohen Brothers Realty")(collectively, "Defendants"), seeking an injunction and damages for tortious interference with contract and business relations, and unlawful restraint of trade in violation of the "Donnelly Act," New York General Business Law § 340, *et seq.* Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all the claims. Defendants also move to vacate a temporary restraining [*2] order issued by this Court on or about November 20, 1997, enjoining them from interfering with Shepard's provision of cleaning and maintenance services to tenants in Defendants' building. For the following reasons, Plaintiff's motion is denied, Defendants' motion to vacate is granted, and Defendants' motion to dismiss is granted in part and denied in part.

I. BACKGROUND

Plaintiff is a New Jersey corporation and contractor that provides, *inter alia*, a full range of cleaning and maintenance services to office buildings and their commercial tenants in the New York metropolitan area. (Am. Compl. P 6.) Beginning about April, 1996, Plaintiff was selected by the manager of the building at 135 East 57th Street (the "Building") to provide basic cleaning services to the Building and its tenants. (Am. Compl. P 11.) Around the same time, at least nine tenants (collectively, the "Tenant-Clients") also retained Plaintiff to provide continuous supplemental cleaning and maintenance services for their offices beyond the basic services they received. (Am. Compl. P 12.) [1] By mid-September, 1997, Plaintiff's monthly billings to the Tenant-Clients for these supplementary services totaled approximately [*3] $ 24,000 per month. (Am. Compl. P 14.)

    1  These services included, among others, carpet care, auxiliary vacuuming, floor maintenance, provision of lavatory supplies, kitchen

Case 1:07-cv-06682-DC   Document 32-22   Filed 09/28/2007   Page 2 of 7

Page 2
1999 U.S. Dist. LEXIS 14431, *3; 1999-2 Trade Cas. (CCH) P72,664

maintenance, wet rubbish removal, provision of a licensed exterminator, glass maintenance, and desk, wall, door, and lighting maintenance. (Am. Compl. P 13.)

Around September, 1997, the Building was sold to Defendant LLC, which subsequently appointed Defendant Cohen Brothers Realty as the Building's Management Agent. (Am. Compl. P 16.) Defendants immediately terminated Shepard as supplier of basic cleaning services for the Building. (Am. Compl. P 17.) Furthermore, Defendants enacted a series of building regulations (collectively, the "Restrictions") that provided, among other things, that when an outside contractor entered the Building, the tenant who retained that contractor would be required to pay a freight elevator charge of $ 150 per hour after 5 P.M., and to hire a security guard at a cost of $ 35 per hour for each floor on which the [*4] contractor worked for the time the contractor remained in the Building. (Am. Compl. PP 18, 19.) The fees would be imposed whether or not the contractor in fact used the freight elevator. (Am. Compl. P 19.) If the tenants elected to purchase their supplemental cleaning and maintenance services from either the Defendants themselves or one or more contractors in which the Defendants had an interest (collectively, the "Favored Contractors"), these charges would not apply. [2] (Am. Compl. PP 17, 18.)

> 2 Despite a letter from one of the Tenant-Clients stating both that the use of a freight elevator would not be necessary in order for Plaintiff to work in its offices, and that the Tenant-Client would provide the requisite security at all times when Plaintiff's employees were present in its offices, Defendants stated that Plaintiff could not have access to the Building unless the Tenant-Client complied with the Restrictions. (Am. Compl. P 24.)

Security personnel denied access to two of Plaintiff's employees in late September, [*5] 1997, stating that Plaintiff would only be allowed to enter the Building with a letter of authorization from Defendants. (Am. Compl. PP 28, 29.) Defendants have repeatedly refused to issue such a letter. (Am. Compl. P 29.) Around October 1, 1997, several hours after Plaintiff's employees entered the Building and began performing work for two of the Tenant-Clients pursuant to Plaintiff's agreements with them, security personnel claimed that Plaintiff's employees were trespassing and compelled them to leave the Building. (Am. Compl. P 30.) As a result of the Restrictions and the overt exclusion of its employees from the Building, Plaintiff could not perform work in the Building on a competitive basis. (Am. Compl. P 31.)

Plaintiff brought the instant suit claiming that Defendants tortiously interfered with its contracts with the Tenant-Clients, as well as its business relations with both the Tenant-Clients and other tenants in the Building. Plaintiff also claims that Defendants' relationship with the Favored Contractors constitutes a restraint of trade in the market for supplemental cleaning and maintenance services in the Building, in alleged violation of the "Donnelly Act," New York [*6] General Business Law § 340. This Court issued a temporary restraining order on November 21, 1997, enjoining Defendants from interfering with Plaintiff's provision of supplemental cleaning and maintenance services to the Tenant-Clients. By Stipulation signed by the parties on November 25, 1997, the parties consented to extending the restraining order pending the determination of Plaintiff's preliminary injunction motion and Defendants' motion to dismiss.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

It is axiomatic that "on a motion to dismiss under 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted). "When determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff's amended complaint . . . to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *E. & G. Gabriel v. Gabriel Bros. Inc.*, 1994 U.S. Dist. LEXIS 9455, *6, No. 93 Civ. 0894, 1994 WL 369147 [*7] at *2 (S.D.N.Y. 1994) (citations omitted). In deciding a 12(b)(6) motion, the Court's function "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990). Thus, the District Court should grant such a motion only if after viewing the plaintiff's allegations in this favorable light, "it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle

Case 1:07-cv-06682-DC   Document 32-22   Filed 09/28/2007   Page 3 of 7

Page 3
1999 U.S. Dist. LEXIS 14431, *7; 1999-2 Trade Cas. (CCH) P72,664

him to relief." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992) (quoting *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119 (2d Cir. 1991)). It should also be recalled that in the antitrust context, "where the proof of the alleged antitrust violation is largely in the hands of the defendants, dismissals prior to giving the plaintiff an opportunity for discovery should be granted sparingly." *Pepsico, Inc. v. Coca-Cola Co., Inc.*, 1998 U.S. Dist. LEXIS 13440, *10, No. 98 Civ. 3283, 1998 WL 547088 at *3 (S.D.N.Y. 1998)(citations omitted).

B. The Donnelly Act

Defendants argue that Plaintiff fails to state a cause [*8] of action under the Donnelly Act because the restrictive conditions in the lease grant Defendants the right to choose a cleaning contractor for the building and to exclude any other cleaning service provider. (Defs.' Mem. Law at 13.) Defendants further argue that Plaintiff fails to state a claim under the Donnelly Act because the restrictive condition in question is reasonable and limited in scope to one building. (Defs.' Mem. Law at 16.) The issue of reasonableness with respect to a lease restriction is an appropriate determination for a trier of fact, and is an inappropriate determination for purposes of a 12(b)(6) motion. *X.L.O. Concrete Corp. v. Rivergate Corp.*, 83 N.Y.2d 513, 517, 611 N.Y.S.2d 786, 634 N.E.2d 158 (N.Y. 1994)(finding that where substantial questions of fact remained, summary judgment on the plaintiff's Donnelly Act claim was inappropriate). However, Plaintiff fails to state a claim under the Donnelly Act for other reasons.

The Donnelly Act provides, in pertinent part:

> Every contract, agreement, arrangement or combination whereby[:]
>
> A monopoly in the conduct of any business, trade, or commerce or in the furnishing of any service in this [*9] state, is or may be established or maintained, or whereby
>
> Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state is or may be restrained or whereby
>
> For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade, or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy; illegal and void.

19 Consol. N.Y. Gen. Bus. Law § 340 (McKinney 1988). A party alleging a conspiracy in violation of the Donnelly Act must identify the relevant product market, describe the nature and effects of the purported conspiracy, and allege how the economic impact of the conspiracy is to restrain trade in the market in question. *International Television Productions, Ltd. v. Twentieth Century-Fox*, 622 F. Supp. 1532, 1535 (S.D.N.Y. 1985)(applying New York law). "The first step in a court's analysis must be a definition of the relevant markets. [*10] . . because without a definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy competition." [3] *Pepsico, Inc.*, 1998 WL 547088 at *4. Moreover, the alleged product market must be theoretically plausible. *E. & G. Gabriel*, 1994 WL 369147 at *2. Accordingly, in the context of motions to dismiss, federal courts "have not hesitated to reject market allegations that make no economic sense." *Id.*

> 3   Although *Pepsico* involved an alleged violation of the Sherman Antitrust Act, the Donnelly Act is generally construed in accordance with the Sherman Act. *Re-Alco Indus., Inc. v. National Center for Health Education*, 812 F. Supp. 387, 393 (S.D.N.Y. 1993)(citations omitted). The Sherman Act and the Donnelly Act require identical basic elements of proof for claims of monopolization or attempt to monopolize, *id.*, and the Donnelly Act was modeled on the Sherman Act. *See New York v. Mobil Oil Corp.*, 38 N.Y.2d 460, 381 N.Y.S.2d 426, 344 N.E.2d 357 (N.Y. 1976).

[*11] For antitrust purposes, a relevant market consists of both a product market-- those commodities or services that are reasonably interchangeable, and a geographic market-- the area in which such reasonable interchangeability occurs. *Pyramid Co. of Rockland v. Mautner*, 153 Misc. 2d 458, 463, 581 N.Y.S.2d 562

Page 4

1999 U.S. Dist. LEXIS 14431, *11; 1999-2 Trade Cas. (CCH) P72,664

(N.Y. Sup. 1992)(citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 8 L. Ed. 2d 510, 82 S. Ct. 1502 (1962)). The plaintiff must explain "why the market it alleges is in fact the relevant, economically significant product market." *Re-Alco*, 812 F. Supp. at 391. In the analogous federal antitrust context, if a complaint does not allege facts regarding substitute products, distinguish among apparently comparable products, or allege other pertinent facts relating to cross-elasticity of demand, a court may grant a Rule 12(b)(6) motion. [4] *Id.* (holding market defined as that for brand of health education materials insufficient to state a claim where complaint failed to discuss both existence or nonexistence of other health education materials, and any relevant differences in demand).

> 4 "Cross-elasticity of demand refers to the change in the demand by consumers for one product as a result of a change in the price of another product." *Smith & Johnson, Inc. v. Hedaya Home Fashions, Inc.*, 1996 U.S. Dist. LEXIS 19023, *18 n.5, No. 96 Civ. 582, 1996 WL 737194 at *5 n.5 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997)(citations omitted).

[*12] In its Amended Complaint, Plaintiff defines the relevant product market as "the market for the provision of supplemental cleaning and maintenance services to tenants in the Building." (Am. Compl. PP 35-36.) Plaintiff's definition of the geographic market at issue--"the Building"-- is patently under-inclusive. The building at 135 East 57th Street presumably is not the only building in New York City, much less the only building on that street, to benefit from cleaning services provided by Plaintiff or its competitors. (Am. Compl. P 6.) Indeed, Plaintiff defines itself as "a contractor that provides. . . cleaning and maintenance services to office buildings and their commercial tenants in the New York metropolitan area." (Am. Compl. P 6.) Furthermore, Plaintiff alleges no facts in support of its claim that the single building in question constitutes a relevant geographic market for antitrust purposes.

Plaintiff also fails to allege a proper product market. While it does identify a potential product market -- "the market for supplemental cleaning and maintenance services"-- it offers no facts in support of its contention that this is indeed the relevant, economically significant product [*13] market at issue. Plaintiff does not allege any facts regarding substitute products or relating to cross-elasticity of demand, nor does Plaintiff distinguish between the "market for the provision of supplemental cleaning and maintenance services" and the market for the provision of any other kinds of cleaning and maintenance services. Finally, Plaintiff's own allegation that it "provides. . . a full range of cleaning and maintenance services," (Am. Compl. P 6), further supports the notion that the product market at issue cannot be so narrowly construed as to consist solely of the provision of "supplemental" services.

Plaintiff cites *Eagle Spring Water*, 236 N.Y.S.2d 266 (N.Y. Sup. 1962), for the proposition that a landlord's exclusion of competing service providers from a building is a restraint of trade in violation of the Donnelly Act. (Pl.'s Mem. Law at 17.) However, *Eagle Spring Water* was decided as an adjudication on the merits, and not as a 12(b)(6) motion. Accordingly, the court there made factual determinations, inappropriate for purposes of the instant case, about the precise size of the market in question and the reasonableness of the defendant landlord's [*14] lease restrictions. 236 N.Y.S.2d at 276. Most importantly, and contrary to Plaintiff's assertions, the court found that the geographic market at issue included substantially more than simply the defendant's buildings. *Id.* at 278.

It is impossible, without an adequate market definition, to assess the anticompetitive effect of allegedly wrongful practices. *Re-Alco*, 812 F. Supp. at 392 (citations omitted); *see Pyramid Co.*, 153 Misc. 2d at 463. Plaintiff's failure to allege a geographic market and a product market is thus fatal to its Donnelly Act claim. Accordingly, Plaintiff's Donnelly Act claim is dismissed.

C. Tortious Interference with Contract

Under New York law, the elements of a claim of tortious interference with contract are that (1) a valid contract exists; (2) a third party had knowledge of the contract; (3) the third party intentionally and improperly procured the breach of contract; and (4) the breach resulted in damages to the plaintiff. *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996). Plaintiff alleges the first two elements in the Amended Complaint. (Am. Compl. PP 12-13, 61; Pl. [*15] 's Mem. Law at 19.) Improper intentional interference is generally shown by a tortfeasor "inducing or otherwise causing a third person not to perform" his contractual obligations to the plaintiff. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 189, 428 N.Y.S.2d 628, 406 N.E.2d 445

Case 1:07-cv-06682-DC   Document 32-22   Filed 09/28/2007   Page 5 of 7

Page 5
1999 U.S. Dist. LEXIS 14431, *15; 1999-2 Trade Cas. (CCH) P72,664

(N.Y. 1980)(quoting Restatement (Second) of Torts § 766 (1977)). Defendants argue that because their actions are authorized by the lease restrictions and because the lease restrictions are reasonable, Plaintiff has failed to state a claim for tortious interference with contractual relations. (Defs.' Mem Law at 18.) Again, the Court notes that determination of the nature and reasonableness of lease restrictions is inappropriate for purposes of a motion to dismiss pursuant to Rule 12(b)(6).

Construing the Plaintiff's factual allegations as true, the Court finds that the Plaintiff has stated a claim for tortious interference with contractual relations. At the time Defendants began engaging in the allegedly wrongful conduct, the Plaintiff had agreements with several of Defendants' tenants to provide supplemental cleaning and maintenance services to them. (Am. Compl. PP 52, [*16] 61.) It is undisputed that Defendants had knowledge of these agreements. (Am. Compl. PP 52, 61; Defs.' Mem. Law at 18.) The Plaintiff states that "by imposing the Restrictions and wrongfully preventing Shepard's employees from physically entering the building," (Am. Compl. P 53), and "by imposing the Lease Renewal Condition, the [Defendants] intentionally rendered it impossible for the Tenant-Clients to continue to perform under the Shepard-Tenant agreements." (Am. Compl. P 62.) If true, this allegation sufficiently pleads the third element of the claim; whether or not Plaintiff can make this out at a later point in the proceedings is an open matter. Finally, Plaintiff alleges that it has lost revenues as a result of the interference in the amount of $ 24,000 per month. (Am. Compl. P 56.) If true, this allegation clearly satisfies the final element of the tortious interference with contract claim. Accordingly, Defendants' motion to dismiss Plaintiff's claim of tortious interference with contract is denied.

D. Tortious Interference with Business Relations

Under New York law, a claim for tortious interference with business relations must meet requirements "more demanding than [*17] those for interference with [the] performance of an existing contract." *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995)(citing *Fine v. Dudley D. Doernberg & Co.*, 203 A.D.2d 419, 610 N.Y.S.2d 566 (N.Y. App. Div. 1994)). In order to state a claim, a plaintiff must allege "the defendant's interference with business relations existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any way improper." *PPX Enterprises, Inc., v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)(citations omitted). If the defendant's interference is intended, at least partly, to advance its own interests, the claim will fail unless the means employed include criminal or fraudulent conduct. *Id.*

As an initial matter, the Court notes that Plaintiff claims tortious interference both with existing business relations with the "Tenant-Clients, [who] would have extended their agreements with [Plaintiff]," (Pl.'s Mem. Law at 19), as well as with prospective business relations, "with tenants in the building who have not yet [*18] retained [Plaintiff's] services" (collectively, the "Prospective Tenant-Clients"). (Am. Compl. P 71.) With respect to the latter group, Plaintiff's claim fails immediately, because a plaintiff alleging tortious interference with business relations "must specify some particular, existing business relationship through which plaintiff would have done business *but for* the allegedly tortious behavior." *Kramer*, 890 F. Supp. at 258 (emphasis added)(citing *PPX Enterprises*, 818 F.2d at 269). Plaintiff alleges no existing relationship with the "Prospective Tenant-Clients," whoever they may be, and its allegedly "legitimate expectation of business relationships with them," (Am. Compl. P 71), is too speculative for purposes of this claim. *See Universal Marine Medical Supply, Inc. v. Lovecchio*, 8 F. Supp. 2d 214, 221 (E.D.N.Y. 1998) (defendant failed to state a claim for tortious interference with business relations absent any allegation of any specific existing business relations).

As to existing business relations with the Tenant-Clients, Defendants' activities appear to be intended to advance Defendants' own legitimate business interests, [*19] for even Plaintiff concedes that either Defendants or "one or more contractors in which [Defendants] had an interest" have replaced Plaintiff as supplier of supplemental cleaning and maintenance services. (Am. Compl. P 17.) Indeed, Plaintiff does not contest that Defendants may be considered its "competitor" in this respect. (Pl.'s Reply Mem. Law at 16; Defs.' Mem. Law at 19.)

Because Plaintiff and Defendants may be considered competitors, Plaintiff must allege that Defendants engaged in "criminal or fraudulent" conduct. *See In re Houbigant, Inc.*, 914 F. Supp. 964, 984 (S.D.N.Y.

Case 1:07-cv-06682-DC    Document 32-22    Filed 09/28/2007    Page 6 of 7

Page 6
1999 U.S. Dist. LEXIS 14431, *19; 1999-2 Trade Cas. (CCH) P72,664

1995)(finding that because plaintiff and defendant were competitors, the requirement of "criminal or fraudulent" conduct was invoked). Because Plaintiff does not aver that Defendants were exclusively motivated to harm Plaintiff, Plaintiff must allege facts showing that Defendants interfered with its business relations by means that were so "dishonest, unfair, or in any way improper" as to rise to the level of "criminal or fraudulent" conduct. See PPX Enterprises, 818 F.2d at 269. Plaintiff alleges that Defendants engaged in behavior that was "dishonest, unfair, or otherwise [*20] improper," acted "maliciously and without the protection of any privilege," and accomplished its allegedly illegal restraint of trade by "coercion." (Am. Compl. PP 72, 79.) However, none of this behavior, even when construed as true for purposes of this motion, rises to the level of "criminal or fraudulent" conduct. See Paper Corp. v. Schoeller Technical Papers, Inc., 724 F. Supp. 110, 119 (S.D.N.Y. 1989)(stating that "wanton, wilful, and outrageous" behavior did not rise to level of "criminal or fraudulent" conduct); Guard-Life Corp., 50 N.Y.2d at 191 (stating that persuasion alone, albeit knowingly directed at interference with the contract, does not amount to "criminal or fraudulent" conduct). Plaintiff does not even allege otherwise, referring to Defendants' conduct only as "abundantly wrongful," but never so severely as "criminal" or "fraudulent." (Pl.'s Reply Mem. at 18.) See Paper Corp., 724 F. Supp. at 119 (dismissing claim for tortious interference with business relations because plaintiff failed to allege "criminal or fraudulent" conduct). Because Plaintiff has not alleged any acts to suggest any "criminal or fraudulent" [*21] conduct by Defendants, its claim for tortious interference with business relations must fail.

D. Plaintiff's Motion for a Preliminary Injunction

It is well-settled in this Circuit that a preliminary injunction is an extraordinary remedy not to be routinely granted. Rosen v. Siegel, 106 F.3d 28, 31 (2d. Cir 1997)(collecting cases). In order for a preliminary injunction to issue, the plaintiff must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Western Publ'g Co. v. Rose Art Indus., Inc., 910 F.2d 57, 59 (2d Cir. 1990). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990). Monetary loss may constitute irreparable harm only in the exceptional, circumstance that the movant faces "imminent financial ruin" if the injunction [*22] does not issue. National Football League Players Ass'n v. National Football League Properties, Inc., 1991 U.S. Dist. LEXIS 6109, *10, No. 90 Civ. 4244, 1991 WL 79325 at *4 (S.D.N.Y. 1991).

Plaintiff requests a preliminary injunction based upon each of its three claims, including its Donnelly Act claim, tortious interference with contract claim, and its tortious interference with business relations claim. In light of the Court's dismissal of the Donnelly Act claim and the tortious interference with business relations claim, the Court will only address Plaintiff's request for a preliminary injunction based upon its claim of tortious interference with contract. On this claim, Plaintiff requests a preliminary injunction enjoining Defendants from interfering with Plaintiff's provision of cleaning and maintenance service to the Tenants, including, but not limited to, an injunction restraining Defendants from (1) preventing Plaintiff's employees from entering the Building to perform work for the Tenants; (2) ejecting Plaintiff's employees from the Building while they are performing work for the Tenants; (3) conditioning Plaintiff's employees' access to the Building on the payment, by either Plaintiff or [*23] the Tenants, of fees or other charges including, but not limited to, charges for the freight elevator or security personnel; and (4) enforcing the Lease Renewal Condition and conditioning the granting or renewal of any lease for office space in the Building on Tenant's agreement to retain Defendants or the Favored Contractors as its exclusive providers of supplemental cleaning and maintenance services in the Building. (Am. Compl. PP 58, 67.) With respect to its showing of "irreparable harm," Plaintiff alleges that if it must wait until after trial to regain access to the Building, it will lose the goodwill and reputation with the Tenant-Clients that it has allegedly gained over the past year and a half. (Pl.'s Mem. Law at 9.) Plaintiff further asserts that the value of this loss would be extremely difficult to determine at trial because the services it provides to its customers are variable, and because at trial it will not know how much business it could have generated from the Tenants otherwise. (Pl.'s Mem. Law at 9.) Finally, Plaintiff argues that the damage to its reputation stemming from its inability to service customers in the Building will impair its ability to solicit

Case 1:07-cv-06682-DC   Document 32-22   Filed 09/28/2007   Page 7 of 7

Page 7
1999 U.S. Dist. LEXIS 14431, *23; 1999-2 Trade Cas. (CCH) P72,664

new [*24] customers generally, and that the damage resulting from this loss of reputation would be extremely difficult, if not impossible, to measure. (Pl.'s Mem. Law at 9-10.)

Plaintiff's monetary loss is quantifiable; Plaintiff itself calculates that each month it is not allowed to service the Tenant Clients, it "is losing revenues which aggregate to approximately $ 24,000." (Am. Compl. PP 56, 65.) Plaintiff takes this figure directly from its monthly billings to the Tenant-Clients as of mid-September, 1997. (Am. Compl. P 14.) Furthermore, while damage to goodwill and reputation are intangibles which may constitute irreparable harm, conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm. *National Football League Players Ass'n*, 1991 WL 79325 at *4. Plaintiff's pleadings, affidavits, and exhibits consist only of conclusory allegations of harm to its goodwill or reputation in the absence of a preliminary injunction. Because Plaintiff has not alleged that it faces imminent financial ruin, and because Plaintiff's damages would be easily calculable at trial, Plaintiff has failed to show a sufficient threat of [*25] irreparable harm. Accordingly, the temporary injunctive relief previously ordered by this Court, and subsequently agreed to and extended by the parties, must be vacated.

E. Leave to Replead

Rule 15(a) of the Federal Rules of Civil Procedure provides that permission to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cohen v. Citibank*, 1997 U.S. Dist. LEXIS 2112, *5-6, No. 95 Civ. 4826, 1997 WL 88378, at *2 (S.D.N.Y. Feb. 28, 1997); *accord Intermetals Corp. v. M/V Arctic Confidence*, 1993 U.S. Dist. LEXIS 11239, No. 92 Civ. 1856, 1993 WL 312903, at *1 (S.D.N.Y. Aug. 12, 1993). Absent a showing of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the futility of the amendment, a plaintiff should be granted leave to replead. *See Protter v. Nathan's Famous Sys., Inc.*, 904 F. Supp. 101, 111 (E.D.N.Y. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).

Amendment of Plaintiff's Donnelly Act claim would be futile because the relevant geographic market stated [*26] by Plaintiff is clearly under-inclusive. Amendment of Plaintiff's claim of tortious interference with business relations also would be futile because Defendants' alleged interference cannot be shown to be criminal or fraudulent. Finally, Plaintiff has not requested leave to amend.

III. CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' 12(b)(6) motion to dismiss the Donnelly Act and tortious interference with business relations claims, but DENIES Defendants' 12(b)(6) motion to dismiss the tortious interference with contract claim. The Court also hereby GRANTS Defendants' motion to vacate temporary injunctive relief previously ordered by the Court. Plaintiff's motion for preliminary injunctive relief is hereby DENIED.

Defendants are directed to file an answer within twenty (20) days of the date of this Order. The parties are directed to appear for a status conference on Friday, October 29, 1999, at 10:00 a.m.

SO ORDERED.

DATED: New York, New York

September 15, 1999

DEBORAH A. BATTS

U.S.D.J.