LEXSEE 2005 U.S. DIST. LEXIS 994

ENERGY DEVELOPMENT CORPORATION versus MICHAEL X. ST. MARTIN, et al.,

CIVIL ACTION NO. 98-3395 c/w 99-1793 SECTION "C" (3)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2005 U.S. Dist. LEXIS 994

January 24, 2005, Decided
January 24, 2005, Entered

**PRIOR HISTORY:** Energy Dev. Corp. v. St. Martin, 112 Fed. Appx. 952, 2004 U.S. App. LEXIS 21151 (2004)

**DISPOSITION:** [*1] Plaintiffs Motion for Preliminary Injunction granted.

**COUNSEL:** For ENERGY DEVELOPMENT CORPORATION, plaintiff (98-CV-3395, 99-CV-1793): David Randolph Richardson, Schully, Roberts, Slattery, Jaubert & Marino, New Orleans, LA; Raymond G. Hoffman, Jr., Hoffman & Haggerty, LLC, Metairie, LA; James A. Barton, III, Law Office of James A. Barton, III, LLC, Covington, LA.

For MICHAEL X ST MARTIN, VIRGINIA RAYNE ST MARTIN, defendants (98-CV-3395): Andrew J. Gray, III, Gray Law Firm, Lake Charles, LA.

For LOUISIANA LAND AND EXPLORATION COMPANY, defendant (98-CV-3395): B. J. Duplantis, Denis C. Swords, Gordon, Arata, McCollam, Duplantis & Eagan, LLP, Lafayette, LA; Andrew J. Gray, III, Gray Law Firm, Lake Charles, LA.

For QUALITY ENVIRONMENTAL PROCESSES, INC., defendant (98-CV-3395, 99-CV-1793): Conrad S. P. Williams, III, St. Martin & Williams, Houma, LA; Andrew J. Gray, III, Gray Law Firm, Lake Charles, LA.

For SAMUEL J STAGG, III, M.D. husband of/and, JULIE M STAGG, JAMES G FISTER, husband of and, LINDA F FISTER, BAYOU AREA CHILDREN'S FOUNDATION, INC., counter-defendants (98-CV-3395): Andrew J. Gray, III, Gray Law Firm, Lake Charles, LA.

For MICHAEL X ST MARTIN, VIRGINIA [*2] RAYNE ST MARTIN, defendants (99-CV-1793): Andrew J. Gray, III, Wade Thomas Visconte, Gray Law Firm, Lake Charles, LA.

**JUDGES:** HELEN G. BERRIGAN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** HELEN G. BERRIGAN

**OPINION**

ORDER AND REASONS

Before the Court is Plaintiff Energy Development Corporation's ("EDC") renewed Motion for Preliminary Injunction following a decision by the United States Fifth Circuit of Appeal to reverse and remand this Court's ruling to deny injunctive relief. (Rec. Doc. 125). EDC seeks to enjoin two concursus actions brought by Defendant St. Martin's Group ("SMG") lessees, in which they have raised the preclusive effect of an adjudication in SMG's favor of certain mineral rights in Jefferson Parish. Upon a thorough review of the law, the record, the Motion, and the memoranda filed in support of and in opposition to the Motion, Plaintiffs Motion for Preliminary Injunction is **GRANTED.**

I. Facts and Procedural History

Case 1:07-cv-06682-DC    Document 32-23    Filed 09/28/2007    Page 2 of 8

Page 2
2005 U.S. Dist. LEXIS 994, *2

In light of the remand from the Fifth Circuit, [1] Plaintiff renews its Motion for Preliminary Injunction to enjoin two Louisiana concursus proceedings. It is no secret that the facts and procedural history in this case are extremely complicated [*3] and convoluted. The Court briefly summarizes the relevant history here as a basis for its decision. To greatly simply, Defendant SMG is the surface owner of the disputed tracts of land while the Plaintiff EDC claims mineral rights under a purported mineral servitude in a 1971 conveyance granted to its predecessor in interest. As will be outlined below, the litigation surrounding these tracts of land has given rise to competing claims of res judicata based on two independent final judgments, one issued by this Court and the other issued by a Jefferson Parish court.

1   *Energy Dev. Corp. v. St. Martin*, 112 Fed. Appx. 952, No. 04-30098, (Oct. 11, 2004). (*See also* Rec. Doc. 128).

### A. The Independent Bases for Competing Claims of *Res Judicata*

On July 7, 1997, EDC filed suit in Jefferson Parish (hereinafter referred to as the "Jefferson case"), [2] seeking a declaratory judgment with respect to a *neighboring* tract of land (known as the "Protective Area") to the area at issue here, but where the [*4] action hinged on similar factual and legal issues as the instant case. Although the Jefferson Parish court initially ruled in EDC's favor, it reversed itself on remand and entered a judgement for SMG on December 12, 1999. [3] The Louisiana Fifth Circuit Court of Appeals affirmed the Jefferson Parish decision on December 4, 2000 and writs were denied by the Louisiana Supreme Court on March 9, 2001. The Jefferson Parish final judgment currently serves as the basis of SMG's res judicata claim in the pending concursus actions in Terrebone Parish.

2   *Energy Development Corp. v. Quality Environmental Processes, Inc. et al*, La. App. 00-314, 777 So. 2d 481 (La.App 5 Cir. 2000), *writ denied* La. 2001-0010, 786 So. 2d 734 (La. 2001).

3   In the Jefferson case, the state court held that the mineral servitudes or mineral rights conveyed by the 1966 Mineral Conveyance to EDC's predecessors in interest had been extinguished by prescription based on 10 years non-use, and that these interests reverted to SMG. The state court also recognized, although it did not rely on these findings, that (1) an earlier (1966) mineral conveyance effectively conveyed to third parties a mineral servitude and other mineral rights in the Protective Area of the Sunrise Field (which is geographically distinct from the area in the instant case), and (2) the omnibus property description based on the 1944 mortgage (in the title chain to the 1971 mineral conveyance) was not an adequate description to effect a conveyance of the property to EDC's predecessors described in the 1944 mortgage. See *Energy Development Corporation v. St. Martin*, 296 F.3d 356, 359-360 (5th Cir. 2002), for recitation of the Jefferson case findings.

[*5] In a parallel chronology of events, EDC filed a federal action on November 16, 1998, seeking a declaratory judgment that it possessed the valid mineral servitude on a thousand acre tract, a one hundred and seventy acre tract, and parts of two Louisiana Conservation Commissioner's units, all located in Terrebonne Parish, and a permanent injunction to prevent Defendants from interfering with EDC's exclusive enjoyment of the underlying mineral rights. The case was consolidated with an interpleader action by an EDC lessee, Louisiana Land and Exploration Co. ("LL&E"), wherein Defendants deposited payments with the Court due under the leases (hereinafter both consolidated cases referred to as "the federal case"). Significantly, this action concerned *a tract that was entirely distinct geographically from the Protective Area*, the mineral rights of which the Jefferson Parish court had adjudicated in favor of SMG. The trial was held from May 15, 2000 through May, 19, 2000 before Judge Schwartz.

Equally important, during the federal proceeding SMG failed to assert a res judicata defense based on the Jefferson Parish judgment. On December 12, 2000, Judge Schwartz granted EDC's request [*6] for a declaratory judgment. [4] Judgment was entered on January 17, 2001, which the Defendants appealed. [5] When SMG raised its claim of res judicata on appeal, the Fifth Circuit rejected it as untimely, ruling that failure to raise the defense in district court constituted waiver and that a factual dispute precluded SMG from asserting res judicata of the Jefferson case on appeal. *Energy Development Corp. v. Michael X. St. Martin*, 296 F.3d 356, 360-362 (5th Cir. 2002).

4   *Energy Development Corporation v. St.*

Case 1:07-cv-06682-DC    Document 32-23    Filed 09/28/2007    Page 3 of 8

Page 3
2005 U.S. Dist. LEXIS 994, *6

*Martin*, 128 F. Supp.2d 368 (E.D. La. 2000).

5   In contrast to the substantive ruling in the Jefferson case, Judge Schwarz found in the federal case that the 1966 Mineral Conveyance created only a contingent obligation to convey, not a present conveyance of a mineral interest. Thus, the Court found that no mineral interests were conveyed until the 1971 Mineral Conveyance transferred the interests under the mineral servitude to EDC's predecessor Pelto. The Court also found that the description in the 1944 mortgage, incorporated by reference into the 1971 Mineral Conveyance, was sufficient to convey immovables under applicable Louisiana law. Based on this premise, the Court found that mineral activities in the southern portion of the contiguous tract maintained the servitude on the entire tract, including SMG's property. Accordingly, it awarded judgment in favor of EDC on all issues. *See generally Energy Development Corp.*, 128 F. Supp. 2d at 386-387.

[*7] Finally, it should be emphasized that the interpleader action consolidated in the federal case was concluded pursuant to the Court's Judgment on January 17, 2001, with final disbursement of funds in the court registry to EDC on January 3, 2003.

**B. State Concursus Actions**

Meanwhile, three related cases sprang up in the Louisiana courts. In September 1998, lessees of SMG, Voyage Petroleum ("Voyager") and Mandalay Oil & Gas ("Mandalay"), brought the first concursus action (the equivalent of federal interpleader) in Terrebone Parish. 6 The first concursus involved tracts of land that were physically distinct from both the Protective Area and the area covered under the federal judgment. Although initially ruling in EDC's favor, the appellate court reversed and remanded on the issue of the preclusive effect of the Jefferson case. 7 On remand, the trial court found that the Jefferson Parish judgment was res judicata. EDC's appeal was unsuccessful. 8

[*8]
6   *Mandalay Oil & Gas, LLC and Voyage Petroleum, Inc. v. Energy Development Corp. and Michael X. St. Martin, et al*, No. 123330 - 32nd JDC.

7   *Mandalay Oil & Gas, LLC v. Energy Development Corp.*, 867 So. 2d 709, WL 1434422 (La. App. 1st Cir. 2002).

8   *Mandalay Oil & Gas, LLC v. Energy Development Corp.*, 880 So. 2d 129, WL 1737466 (La. App. 1st Cir. 2004).

The Terrebone Parish court's res judicata ruling generated some confusion in the face of the Fifth Circuit's dicta suggesting that the Jefferson case could not be issue preclusive because its findings in regard to the 1971 mineral conveyance were nonessential to its holding. *See Energy Development Corp.*, 296 F.3d at 362. The lack of clarity was perpetuated in this Court's prior opinion when it stated that a fear of inconsistency with the res judicata ruling in the first concursus action prompted the Court, at least in part, to refrain from issuing an injunction. (*See* Rec. Doc. 125 at 4). As the Fifth Circuit pointed out, however, an injunction is reconcilable with the first concursus res judicata ruling: While the Jefferson case and federal case adjudications arrived at *legally* inconsistent rulings, there was no *physical* incongruity in the claims to mineral rights [*9] awarded under the divergent adjudications because each decision affected a different tract of land. 9 The undersigned underscores this subtlety because, in reversing the Court, the Fifth Circuit honed in on imprecise wording in the Court's first Order and Reasons that prompted the appellate court to find that the Court had relied on clearly erroneous factual assumptions. 10 (Rec. Doc. 128 at 4).

9   As EDC reconciled the rulings: "EDC can enjoy its servitude over the federal property while St. Martin Group [SMG] simultaneously enjoys its servitude over the property covered by the first concursus." (*See* Rec. Doc. 131 at 4).

10   The Court in its Order and Reasons stated: "On September 14, 1998, the lessees of EDC and Defendants filed another concursus proceeding in Terrebonne Parish involving, again, tracts of land the mineral rights to which were later adjudicated by the federal case to belong to EDC." (Rec. Doc. 125 at 4).

In any event, currently pending in Terrebone Parish are a second and third [*10] concursus action brought by SMG's lessees, Voyager and Mandalay, in which the lessee plaintiffs have again asserted claim preclusion based on the adjudication in SMG's favor of the mineral rights in the Jefferson case. 11 The second concursus action was filed On May 23, 2000, which was four days subsequent to the close of trial in the federal case, but

Case 1:07-cv-06682-DC    Document 32-23    Filed 09/28/2007    Page 4 of 8

Page 4
2005 U.S. Dist. LEXIS 994, *10

prior to the issuance of the Court's opinion. The third concursus action was filed on August 22, 2000. It is essential to note that these second and third concursus actions *each include a section of the area geographically covered under the federal judgment.*

> 11  In its first Order and Reasons, this Court referred to these suits as "collateral attacks", which apparently sparked some debate on appeal. The Court was not suggesting any pejorative connotation in these denominations. For clarity as to meaning and organization, therefore, the Court will refer to these suits only as the "second and third concursus actions" based solely chronology.

In the second concursus, [*11] EDC and SMG filed cross-motions for summary judgment, respectively asserting res judicata of the federal case and the Jefferson case. The Terrebone Parish trial court found in favor of EDC, specifically that the federal judgment was claim preclusive and that to give preclusive effect to the Jefferson Parish judgment would improperly interfere with the federal judgement. SMG appealed this decision in the Louisiana First Circuit Court of Appeal where it is currently pending. In the third concursus action, the Terrebone Parish trial court has yet to rule on the res judicata claims.

On October 9, 2003, EDC filed for a preliminary injunction to enjoin the second and third concursus proceedings. (Rec. Doc. 115). On January 23, 2004, the Court issued an Order and Reasons denying Plaintiff's motion. (Rec. Doc. 125). The Court refused to enjoin the state court proceedings on the grounds that the Fifth Circuit found to be improper. (*See generally* Rec. Doc. 128).

### C. Fifth Circuit Decision

In reviewing the Court's decision, the Fifth Circuit held that: (1) it was an abuse of discretion to justify a ruling denying the preliminary injunction based on erroneous factual findings, namely [*12] that enjoining the third concursus would cause a "permanent inconsistency" where the tract covered in the federal case and tract at issue in the first concursus are geographically distinct; and (2) that it was a legal misapplication of *Parsons Steel v. First Ala. Bank,* 474 U.S. 518, 88 L. Ed. 2d 877, 106 S. Ct. 768 (1986), to preclude the injunction under the relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, when the state court had not "*finally rejected* a claim of *res judicata.*" (Rec. Doc. 128 at 6, 8) (emphasis original). As additional guidance, the Fifth Circuit invited the Court to consider the Plaintiff's motion under all three exceptions to § 2283 (and not merely focus on the relitigation exception).

### II. Law and Analysis

When a party seeks to enjoin a state court proceeding, it must demonstrate that the injunction meets one of the narrowly tailored exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283. *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 145-46, 100 L. Ed. 2d 127, 108 S. Ct. 1684 (1988). The Anti-Injunction Act provides that a federal court may not grant an injunction to stay proceedings in a state court unless (1) expressly authorized by [*13] an Act of Congress, (2) where necessary in aid of its jurisdiction, or (3) to protect or effectuate its judgments. 28 U.S.C. § 2283. The exceptions are not to be enlarged by loose statutory construction. *Clothing Workers v. Rickman Brothers Co.,* 348 U.S. 511, 514, 99 L. Ed. 600, 75 S. Ct. 452, 71 Ohio Law Abs. 177 (1955). Even where one of these exceptions applies, the district court still retains discretion to deny a request for preliminary injunction under traditional criteria for granting injunctive relief. *Chick Kam Choo,* 486 U.S. at 151.

### A. The Anti-Injunction Exceptions

#### 1. Express authorization by congressional act

To qualify as an "expressly authorized" exception to § 2283, "the test . . . is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster,* 407 U.S. 225, 32 L. Ed. 2d 705, 92 S. Ct. 2151 (1972). EDC argues that 28 U.S.C. § 2361, which pertains to interpleader actions, is such an express congressional authorization to support an injunction here. 12 (Rec. Doc. 131 at 17). SMG responds that [*14] § 2361 is inapposite because the statute is designed to protect the interpleader party, not the claimants. (Rec. Doc. 133 at 24).

> 12  "In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in

Case 1:07-cv-06682-DC    Document 32-23    Filed 09/28/2007    Page 5 of 8

Page 5
2005 U.S. Dist. LEXIS 994, *14

any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." 28 U.S.C. § 2361.

The Court finds that § 2361 does not provide the appropriate vehicle for injunctive relief given that the federal action between the parties is one for declaratory relief. The interpleader action relied on by EDC was brought by its lessee LL&E, and that action concluded with an award of royalty funds to EDC. (Rec. Doc. 93). LL&E is not a party to the present suit. The express language of § 2361 suggests that the statutory injunctive remedy [*15] is inapplicable to EDC under these circumstances because there is currently no interpleader action pending. *Cf. New York Life Ins. Co. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998) (finding federal court in a Rule 22 interpleader proceeding may issue an injunction to restrain the parties from pursuing similar issues in another federal court). In light of the Supreme Court's warning not to enlarge the § 2283 exceptions by statutory construction, *see Rickman Brothers Co.*, 348 U.S. at 514, the Court refuses to do so here.

## 2. In aid of federal jurisdiction

Similar to its argument above, EDC contends that because SMG's second and third concursus actions would interfere with property over which the federal court allegedly has exclusive jurisdiction (*i.e.* the mineral proceeds), the Court may enjoin the state proceedings. (Rec. Doc. 131 at 15). EDC characterizes the nature of the Court's jurisdiction with respect to the mineral rights dispute as in rem (in civil law terminology) or quasi in rem (in common law terminology) because "the federal district court first took jurisdiction of the 1200 acres upon which judgment was ultimately rendered and of [*16] the deposits generated by the unit tracts." (*Id.*). SMG contends that the federal case was an in personam action for declaratory relief with respect to the validity of two conveyances (from 1966 and 1971) and their effect on the claimants' mineral rights. (Rec. Doc. 133 at 22-23).

"Where the jurisdiction over the proceedings is in rem or quasi in rem, 'the state or federal court having custody of such property has exclusive jurisdiction to proceed.'" *Pacific Indemnity v. Acel Delivery Service Inc.*, 432 F.2d 952, 954 (5th Cir. 1970)(quoting *Donovan v. City of Dallas*, 377 U.S. 408, 412, 12 L. Ed. 2d 409, 84 S. Ct. 1579 (1964)). "Absent a res to be preserved and protected . . ., the federal courts have been hesitant to expand, by judicial improvisation, the exceptions Congress has created to the general prohibition of § 2283." *Id.* "An irreconcilable conflict between the state and federal judiciaries would only arise if both sought to exercise authority to dispose of the same res." *Signal Properties Inc. v. Farha*, 482 F.2d 1136, 1137 (5th Cir. 1973).

Until the Court's January 17, 2001 Judgment awarding EDC the funds on deposit in the court registry, the Court [*17] did have quasi in rem jurisdiction over the *res* of the dispute, namely the royalties flowing from the mineral rights in question. (*See* Rec. Doc. 93 at 10). However, those funds have been awarded, and the Court no longer has a res to protect. [13] With a final judgment, the Court relinquished custody of the funds, and with it the Court's exclusive jurisdictional control. The timing of the suits - the current state concursus actions and concluded federal proceeding - thus precludes applicability of the second exception to § 2283. As recourse, EDC should properly invoke res judicata to protect its interest (which it has obviously done in the state concursus proceedings). *See Kline v. Burke Constr. Co.*, 260 U.S. 226, 230, 67 L. Ed. 226, 43 S. Ct. 79 (1922) ("Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction . . . .") [14] Because the second § 2283 exception is useful in protecting federal jurisdiction when the state and federal proceedings are *concurrent*, the Court [*18] declines to issue an injunction on that statutory basis.

---

13  The undersigned confirmed with the Court's Financial Unit that there are currently no funds in the registry. The last disbursement was made on January 3, 2003.

14  At this juncture, the Court briefly comments on the SMG's argument under the *Rooker-Feldman* doctrine. (Rec. Doc. 136 at 21). SMG essentially argues that an injunction would serve as an appellate review of the Terrebone Parish decision to grant EDC its res judicata claim in the second concursus. This argument is entirely meritless because the Court is not attempting to exercise appellate jurisdiction or void state court judgments. *Cf. District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 75 L. Ed.

2d 206, 103 S. Ct. 1303 (1983) ("United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 68 L. Ed. 362, 44 S. Ct. 149 (1923) (holding that district court sitting in equity may not overrule a state supreme court ruling where district court's jurisdiction is "strictly original"); *United States v. Shepherd,* 23 F.3d 923 (5th Cir. 1994) (barring district court from voiding state court judgment).

Enjoining a state court proceeding is simply a different judicial act than exercising appellate review. Moreover, as the Fifth Circuit's elucidation of *Parsons Steel* indicates, the district court may enjoin a state action as long as the state court has not rejected the res judicata claim. (Rec. Doc. 128 at 8). SMG's argument, were it correct, would run squarely afoul of this Fifth Circuit authority.

[*19] **3. The Relitigation Exception (revisited)** [15]

[15] In further support of injunctive relief, EDC also invokes that the All Writs Act, 28 U.S.C. § 1651, which authorizes the federal court "to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This statutory authorization overlaps with 28 U.S.C. § 2283, *see Vasquez v. Bridgestone/Firestone Inc.,* 325 F.3d 665, 676 (5th Cir. 2003), and thus does not merit separate comment.

As to the third exception under § 2283, allowing an injunction to protect or effectuate a federal court judgment is commonly referred to as the "relitigation exception." *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 676 (5th Cir. 2003). To determine if the relitigation exception applies, a four-part test is deployed: (1) the parties in the subsequent state suit must be identical to (or at least in privity with) the parties [*20] in the earlier federal suit; (2) the judgment in the prior federal suit must have been rendered by a court of competent jurisdiction; (3) the prior suit must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits. *Chick Kam Choo,* 486 U.S. at 148; *Regions Bank of Louisiana v. Rivet,* 224 F.3d 483, 488 (5th Cir. 2000).

When applying the relitigation exception, the Court in its prior opinion misapplied the rule in *Parsons Steel,* 474 U.S. 518, 88 L. Ed. 2d 877, 106 S. Ct. 768, which clarified the point in time when a federal court must turn to state law to determine the preclusive effect of a state court decision under the Full Faith and Credit Act, 28 U.S.C. § 1738. The Fifth Circuit underscored the *Parsons Steel* language that a federal court must look to state law, and not its own rules, for claim preclusion only when "the state court has *finally rejected* a claim of res judicata." (Rec. Doc. 128 at 8) (quoting *Parsons Steel,* 474 U.S. at 524). The Fifth Circuit pointed out that the Terrebone Parish court in the second concursus did not reject EDC's claim [*21] preclusion argument. (*Id.*). Rather, the state court ruled in favor of EDC granting res judicata pursuant to the judgment in the federal case, a decision which is currently on appeal by SMG. Absent a rejection in state court, therefore, *Parsons Steel* does not inhibit a district court from issuing the injunction. The effect of this clarification from the Fifth Circuit is that the Court on remand is unfettered by *Parsons Steel* to issue the injunction with respect to either the second or third concursus. [16]

[16] *Parsons Steel* is immaterial to the third concursus because the trial court has yet to rule on EDC's claim preclusion argument.

EDC argues that the only sure means of avoiding physically irreconcilable state and federal ruling is for the Court to enjoin the second and third concursus proceedings. [17] As justification, it asserts that a theoretical state court ruling in favor of SMG would prevent the Court from effectuating its judgment in the federal case, which awarded EDC mineral rights and [*22] approximately $ 300,000 in royalties currently in the Terrebone Parish court registry. While EDC spends much of its brief arguing this point in the context of quasi in rem jurisdiction and the second § 2283 exception, as indicated above, the argument makes best sense if presented under the relitigation exception. [18] The Fifth Circuit also indicated that nothing should prevent the relitigation exception from applying here.

[17] To reiterate, the tract of land and minerals at issue in the first collateral attack is Unit 2 of the 87 RA VUA, which lies entirely within the 1,000 tract awarded to EDC in the federal case.
[18] Likewise, SMG attempts to refute EDC's arguments in terms of personal jurisdiction, but

Case 1:07-cv-06682-DC   Document 32-23   Filed 09/28/2007   Page 7 of 8

Page 7
2005 U.S. Dist. LEXIS 994, *22

not that the relitigation exception is inapplicable. *See* Rec. Doc. 133 at 22-24.

Under the four-part *Chick Kam Choo* test, an injunction may properly issue. First, the parties to the concursus actions are lessees of SMG and thus in privity with the party in the federal case. [19] Next, there is no [*23] question that this Court was of competent jurisdiction when it rendered its January 17, 2001 Judgment on the merits of the case. As to fourth part of the test, a federal court unquestionably has the authority to protect its judgment under the theory of res judicata when a state court proceeding rests on the re-litigation of the same issue with the same operative facts. *See New York Life Ins. Co. v. Gillispie*, 203 F.3d 384 (5th Cir. 2000) (finding that a district court conclusion that suicide, determined by the available evidence, relieved insurance company of its obligation to pay death benefits was res judicata meriting injunction against a state court sitting in review of "new" evidence of an amended death certificate with cause of death as "accidental"). Here, the second and third concursus actions threaten to dismantle the federal court's adjudication of mineral rights based on the same operative facts, *i.e.* with respect to the same tract of land (unlike in the first concursus action). Avoiding such needless relitigation was the purpose of this exception to § 2283. *See Chick Kam Choo*, 486 U.S. at 147 (The relitigation exception "was designed [*24] to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel"). Accordingly, the actions of Mandalay/SMG impede the Court from effectuating its judgment such that the relitigation exception is proper grounds to enjoin the second and third concursus actions.

19   At oral argument before the Fifth Circuit panel, SMG contested the appropriateness of injunctive relief because the same parties are not involved in the two state suits, *i.e.* Mandalay (and not LL&E) deposited the funds and other parties besides the surface owners, have been named as defendants. The Fifth Circuit dismissed this argument because Mandalay was successor in interest to LL&E, which puts them in privity. (Rec. Doc. 128 at 7).

B. Traditional Grounds for Injunction

As SMG argues, even if injunctive relief is warranted under the relitigation exception, EDC's request must still withstand [*25] the traditional test for injunctive relief. *Chick Kam Choo,* 486 U.S. at 145-46. A district court may issue a preliminary injunction if the plaintiff makes a showing under the following four factors: (1) the substantial likelihood of success on the merits; (2) the threat of irreparable harm if the preliminary injunction is not granted; (3) that the threatened injury to plaintiff outweighs the harm that the injunction may do to the defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *Harris County, Texas v. Carmax Auto Superstores, Inc.,* 177 F.3d 306, 312 (5th Cir. 1999).

Among these criteria, the factor in serious dispute is the threat of irreparable injury to EDC should the Court not issue the injunction. EDC argues that irreparable harm would occur because the potentially conflicting state and federal judgments would cloud title to the mineral rights, making the subject property "unusable and unmerchantable." (Rec. Doc. 131 at 20). SMG asserts that EDC cannot demonstrate irreparable harm in light of the remedy at law afforded under the state appellate process. (Rec. Doc. 133 at 16).

Defendant relies [*26] on a two-part test enunciated in *Duke v. Texas,* 477 F.2d 244, 248 (5th Cir. 1973), to preclude a finding of irreparable injury: "First, the moving party must demonstrate that he will suffer irreparable injury if the federal court stays its hand, and second the moving party must demonstrate that he does not have an adequate remedy at law in the state courts." SMG rests on the principle that the fact of on-going litigation is not irreparable harm. *See Owens-Corning Fiberglas Corp. v. Moran,* 959 F.2d 634, 636 (7th Cir.1992) ("The Supreme Court says that the burdens and expenses of the legal process (including retrials) are not irreparable injury") (citing *FTC v. Standard Oil Co.,* 449 U.S. 232, 244, 66 L. Ed. 2d 416, 101 S. Ct. 488 (1980)).

Under the second *Duke* prong, the Court finds that the remedy at law through the state appellate process is simply not "adequate" because of the risk of conflicting state and federal judgments. The Court finds that the present state litigation is distinguishable from the typical suits that run parallel in state and federal court where the litigation ultimately serves to resolve claims and controversies although it may be duplicative [*27] and time-consuming. The ultimately clean resolution meets the definition of an "adequate" remedy at law. Here, by

contrast, the risk of physically inconsistent rulings forecloses any such clean resolution and thus the adequacy of SMG's proposed remedy at law. In this light, the concursus litigation in state court is not only duplicative, it is pointless. If the Court refrains from enjoining the second and third concursus, two scenarios are possible: If EDC ultimately prevails, the victory will exact a profligate expenditure of judicial resources and EDC will have been needlessly prevented from the enjoyment of its rights. If SMG prevails, its victory will have eaten up judicial resources and resulted in physically irreconcilable federal and state court rulings that would permanently mar title to the mineral rights.

This second eventuality thus amounts to irreparable injury to the plaintiff because its rightful claim under the federal judgment would be undermined by the state court judgment (should SMG win on the merits), resulting in a hopelessly clouded title. Conversely, a victory for SMG would be not only be pyrrhic; worse, it would be hollow because enforcement of the state [*28] judgment would likewise be barred due to the federal judgment.

This rationale is also relevant to the third requirement for an injunction that the irreparable injury outweigh harm to the defendant. As suggested above, if no injunction were granted, the most SMG could hope for in the event of a favorable ruling on the merits in state court would be a clouded title to the property rights at issue. Clearly, this eventuality does not outweigh the threat of same injury to the Plaintiff *in addition to* costly litigation. As to the remaining requirements, the Court finds that the favorable ruling by the trial court in second concursus indicates a likelihood of success on the merits. Finally, an injunction would not disserve the public interest because it spares the unnecessary expenditure of judicial resources.

### C. Federalism

When a case triggers the relitigation exception, "the principles of equity, comity and federalism must constrain a federal court when asked to enjoin a state curt proceeding." *Mitchum v. Foster*, 407 U.S. 225, 243, 32 L. Ed. 2d 705, 92 S. Ct. 2151 (1972). SMG argues that comity dictates that the federal court should forbear from enjoining the two state court proceedings when [*29] the state courts are competent to adjudicate the res judicata claims. EDC asserts the avoidance of "physical friction" is a superior concern of federalism when state and federal authorities attempt to exercise competing jurisdictional control over the same res. (Rec. Doc. 131 at 16).

The Court finds that federalism is best served by averting the possibility of physically irreconcilable rulings in the event the Louisiana appellate courts or the Terrebone Parish court ruled in favor of SMG. While EDC couches its argument in the context of quasi in rem jurisdiction (which the Court rejects as an exception to § 2283), the risk of potential friction in the enforcement of two opposite, yet equally valid final judgments is comparable for the same reasons similar raised by EDC. 20 While the Court cannot envisage the particular consequences in the event of a state court ruling favorable to SMG, the theoretical confrontation between state and federal authorities in the execution of the respective judgments is insupportable. Thus the interests of federalism are served by the injunction.

> 20  To illustrate the risk of friction, EDC uses the compelling example of the U.S. Marshal and Terrebone Parish Sheriff each seizing the same property pursuant to the competing jurisdictional control over the res. (Rec. Doc. 131 at 16).

[*30] ### III. Conclusion

For the foregoing reasons, the Court hereby GRANTS the preliminary injunction in favor of the Plaintiff EDC. Accordingly, the following concursus actions currently pending in the Louisiana courts are STAYED: *Mandalay Oil & Gas, LLC and Voyager Petroleum, LLC v. Louis Eschete, Jr. et al*, No. 129080 - 32nd JDC, and *Mandalay Oil & Gas, LLC, Southern Casing of La., and Voyager Petroleum, LLC v. Phillips Petroleum Corp. et al*, No. 129919 - 32nd JDC.

New Orleans, Louisiana, this 24th day of January, 2005.

HELEN G. BERRIGAN

UNITED STATES DISTRICT JUDGE