UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | Judge Sargus |
| Plaintiff, | Magistrate King |
| | CIVIL ACTION NO. C2-03-891 |
| v. | |
| AMERICAN ELECTRIC POWER COMPANY, INC. AND AEP ENERGY SERVICES, INC., | Complaint For Injunctive And Other Equitable Relief And Civil Monetary Penalties Under The Commodity Exchange Act |
| Defendants. | |

The United States Commodity Futures Trading Commission ("Commission"), by its attorneys, alleges as follows:

**I. Summary**

1. As is more fully alleged below, defendants American Electric Power Company, Inc. ("AEP") and AEP Energy Services, Inc. ("AEPES") (collectively "defendants") have engaged in acts and practices which constitute violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 *et seq*. (2001).

2. Specifically, from at least November 2000 through October 2002 (the "Relevant Period"), defendants violated Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b and 13 (a)(2), by knowingly delivering through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate information concerning market information or conditions that affected or tended to affect the market price of natural gas and by knowingly delivering such false or misleading or

knowingly inaccurate market information in an attempt to manipulate the price of natural gas, a commodity in interstate commerce.

3.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin such acts and practices, and compel compliance with the provisions of the Act. In addition, the Commission seeks civil penalties and such other ancillary relief as the Court deems necessary or appropriate in the circumstances.

## II.  Jurisdiction And Venue

4.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

5.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that the defendants are found in, inhabit, and transact business in this District, and acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

6.     Unless restrained and enjoined by this Court, defendants are likely to continue to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as more fully described below.

## III.  The Parties

7.     Plaintiff Commission is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.*

8. Defendant AEP is a New York corporation headquartered at One Riverside Plaza, Columbus, Ohio. AEP is a publicly traded company on the New York Stock Exchange with a market capitalization of over $11 billion.

9. Defendant AEPES is an Ohio corporation, a wholly-owned subsidiary of AEP, and is also headquarted at One Riverside Plaza, Columbus, Ohio.

## IV. Facts

### A. The Natural Gas Price Indexes and Defendants' Natural Gas Trading

10. In 1997, AEP created AEPES to trade and market energy commodities, including natural gas and power. AEP exercised control over its subsidiary AEPES, including AEPES's energy traders.

11. Defendants divided the natural gas traders into groups, referred to as Desks. Some of the Desks corresponded with geographic regions of the United States: the Gulf Coast, the West, the Northeast, and the Mid-continent Desks.

12. Defendants also established a Desk for trading natural gas futures and options contracts on the New York Mercantile Exchange ("NYMEX") and other related instruments.

13. The Desks traded a variety of instruments, including contracts involving fixed price natural gas and index-based over-the-counter natural gas trades.

14. During the Relevant Period, price index compilers used price and volume information in calculating indexes of natural gas prices for various hubs throughout the United States. The price index compilers include Platts, a division of The McGraw-Hill Companies, which issues a monthly index for various natural gas hubs titled *Inside FERC Gas Market Report ("IFERC")*, and a daily index for various natural gas hubs titled *Gas Daily*.

15.     The indexes were calculated based upon market information, including volume and price information, collected by firms like Platts from market participants such as the defendants.

16.     Participants in the natural gas markets use these indexes to price and settle commodity transactions.

17.     Natural gas futures traders refer to the prices published by price index compilers for price discovery and for assessing price risk. For instance, an increase in prices at a natural gas trading hub signals either stronger demand or weakened supply and futures traders take account of both price movements and changes in the supply/demand balance when conducting their futures trading.

**B.     Defendants' Submission of False or Misleading or Knowingly Inaccurate Trades To Compilers of Natural Gas Price Indexes**

18.     During the Relevant Period, defendants engaged in a pervasive and widespread scheme to violate the Act by knowingly delivering by facsimile and via the Internet false or misleading or knowingly inaccurate reports concerning market information or conditions that affected or tended to affect the market price of natural gas and by attempting to manipulate the price of natural gas, a commodity in interstate commerce, by knowingly delivering false or misleading or knowingly inaccurate information about purported natural gas trades to firms such as Platts.

19.     During the Relevant Period, the defendants had trading profits of approximately $63.5 million for three of their natural gas trading desks (the Gulf Desk, Mid-continent Desk, and Northeast Desk).

20. During the Relevant Period, more than three-quarters of the purported natural gas trades defendants knowingly delivered to *IFERC* for three of their trading desks (the Gulf Desk, Mid-continent Desk, and Northeast Desk) were false or misleading or knowingly inaccurate.

21. Indeed, one of defendants' trading desks went so far as to maintain a computer spreadsheet named "IFERC Bogus" for the purpose of preparing reports to *IFERC* containing false or misleading or knowingly inaccurate market information.

22. During the Relevant Period, defendants knowingly delivered reports to *IFERC* containing over 3,600 purported natural gas trades. Of those trades, approximately 78% or 2,800 were false or misleading or knowingly inaccurate.

23. During the Relevant Period, defendants' Gulf Desk knowingly delivered reports containing approximately 1,600 of the over 3,600 purported trades to *IFERC*. Of those trades, approximately 1,500 (approximately 90%) were false or misleading or knowingly inaccurate.

24. During the Relevant Period, defendants' Mid-continent Desk knowingly delivered approximately 1,300 of the over 3,600 purported trades to *IFERC*. Of those trades, approximately 1,200 trades (approximately 86%) were false or misleading or knowingly inaccurate.

25. During the Relevant Period, defendants' Northeast Desk knowingly delivered approximately 730 of the over 3,600 purported trades to *IFERC*. Of those trades, approximately 260 trades (approximately 36%) were false or misleading or knowingly inaccurate.

26. Defendants knowingly delivered thousands of trades to *Gas Daily* during the Relevant Period. A substantial number of those natural gas trades were false or misleading or knowingly inaccurate.

27.     Defendants knowingly delivered false or misleading or knowingly inaccurate information concerning trades that did not occur, submitted actual trades with altered volumes and/or prices, and/or failed to submit other actual trades all in an attempt to skew the price indexes.

28.     During the Relevant Period, defendants knowingly delivered false or misleading or knowingly inaccurate market information and omitted true information from the reports they sent to firms such as Platts in an attempt to manipulate the natural gas price indexes to financially benefit defendants' trading positions.

29.     In an October 9, 2002 press release, AEP publicly admitted that its employees engaged in inaccurate reporting of natural gas trades to firms that compile natural gas price indexes and stated that it terminated five employees for doing so. AEP determined that the traders it terminated "provided inaccurate price information for use in [the natural gas] indexes."

### V. Violations Of The Commodity Exchange Act

### Count I: Delivery Of False or Misleading or Knowingly Inaccurate Information

30.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

31.     It is a violation of Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), for any person, *inter alia*, "knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce . . ."

32.     Defendants violated Section 9(a)(2) of the Act when they knowingly delivered by facsimile and via the Internet reports to *IFERC* and *Gas Daily* containing false or misleading or knowingly inaccurate market information such as price and volume information for purported

6

natural gas trades, as well as entirely fictitious purported natural gas trades, and/or a failed to include actual natural gas trades that defendants made.

33.     Such false or misleading or knowingly inaccurate reports concerned market information or conditions that affected or tended to affect the market price of natural gas, including New York Mercantile Exchange natural gas futures prices.

34.     AEPES was AEP's agent at all relevant times. In addition, AEP exercised control over its wholly owned subsidiary AEPES.  Therefore, AEP is also liable as a principal for AEPES's violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B).

35.     Each and every act or transaction engaged in by defendants, as described above, is alleged herein as a separate and distinct violation of Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2).

## Count II:  Attempted Manipulation Of The Natural Gas Price Indexes

36.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

37.     Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§§ 9, 13b and 13(a)(2), make it illegal for any person to attempt to manipulate the market price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market.

38.     Defendants (1) had the intent to manipulate natural gas index prices and (2) overtly acted in furtherance of that intent to manipulate the price of natural gas.

39.     AEPES was AEP's agent at all relevant times.  In addition, AEP exercised control over its wholly owned subsidiary AEPES.  Therefore, AEP is liable as a principal for AEPES's violations of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

40. Each and every act or transaction engaged in by defendants in furtherance of the manipulative scheme, as described above, is alleged herein as a separate and distinct violation of Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2).

### VI. Relief Requested

WHEREFORE, Plaintiff Commission respectfully requests that this Court enter an order of permanent injunction:

A. restraining and enjoining Defendants and any of their affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly violating Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2);

B. directing Defendants to pay civil monetary penalties, to be assessed by the Court separately against each Defendant, in amounts not to exceed $110,000 for each violation of the Act occurring before October 23, 2000 and $120,000 for each violation occurring on or after October 23, 2000, or triple the monetary gain to them for each violation of the Act, as described herein;

C. directing Defendants to make full restitution of funds received by them as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

D. directing Defendants, and any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment interest thereon from the date of such violations; and

E.  providing for such other and further remedial and ancillary relief as this Court may deem necessary and appropriate.

Dated:   September 30, 2003

                              Respectfully submitted,

                              Gregory G. Lockhart
                              United States Attorney
                              Southern District of Ohio


By: **s/ Andrew M. Malek**

Andrew M. Malek
Assistant United States Attorney
Southern District of Ohio, Eastern Division
Bar No. 0061442
303 Marconi Blvd.
Suite 200
Columbus, Ohio 43215
(614) 469-5715
(614) 469-5240 (facsimile)
e-mail:  Andrew.Malek@usdoj.gov




**s/ Gregory G. Mocek**

Gregory G. Mocek, Director
Vincent A. McGonagle, Senior Deputy Director

Division of Enforcement
United States Commodity Futures
 Trading Commission
3 Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581
(202) 418-5000
(202) 418-5523 (facsimile)

9

**s/ Stephen J. Obie**

Stephen J. Obie, Regional Counsel
Lenel Hickson, Jr., Deputy Regional Counsel
David W. MacGregor, Chief Trial Attorney
Gregory Compa, Trial Attorney

Division of Enforcement
United States Commodity Futures
 Trading Commission
140 Broadway
New York, NY 10005
(646) 746-9733
(646) 746-9940 (facsimile)