<u>Filed via Electronic Filing System</u>

Daniel I. Davidson
Robert C. McDiarmid
Peter J. Hopkins
Mark S. Hegedus
**SPIEGEL & McDIARMID**
1333 New Hampshire Avenue, N.W.
2nd Floor
Washington, D.C. 20036

*Attorneys for Amici*
*American Public Gas Association*
*American Public Power Association*
*National Rural Electric Cooperative Association*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------

| | | |
|---|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **07 CIV. 6682 (DC)** |
| v. | : | |
| | : | |
| **AMARANTH ADVISORS L.L.C.,** | : | |
| **AMARANTH ADVISORS (CALGARY) U.L.C.** | : | |
| **AND BRIAN HUNTER,** | : | |
| | : | |
| Defendants | : | |

------

MEMORANDUM OF LAW OF *AMICUS CURIAE*
AMERICAN PUBLIC GAS ASSOCIATION,
AMERICAN PUBLIC POWER ASSOCIATION AND
NATIONAL RURAL ELECTRIC COOPERATIVE ASSOCIATION
IN OPPOSITION TO MOTION FOR A PRELIMINARY
INJUNCTION AGAINST THE
FEDERAL ENERGY REGULATORY COMMISSION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF INTERESTS .............................................................................. 1

ARGUMENT ............................................................................................................ 4

I.  THE DISTRICT COURT LACKS JURISDICTION TO REVIEW FERC'S INTERLOCUTORY SHOW CAUSE ORDER AND ENJOIN FERC'S ENFORCEMENT PROCEEDING UNDER THE NATURAL GAS ACT ............ 4

    A.  The Exclusive Jurisdiction Vested in the Courts of Appeals "Cuts Off" This Court From Exercising Jurisdiction Over the FERC Proceeding ............. 4

    B.  The Parallel FERC Proceeding Does Not Defeat This Court's Jurisdiction Over the CFTC Complaint in the Instant Action .......................... 7

II. IT IS CONTRARY TO THE PUBLIC INTEREST TO ENJOIN FERC'S ENFORCEMENT PROCEEDING UNDER THE NATURAL GAS ACT ............ 10

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

### Federal Court Cases

*Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571 (1981)............................................3-4

*Atlantic Refining Co. v. Public Service Commission*, 360 U.S. 378 (1959)................11-12

*CFTC v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477 (10th Cir. 1983) ..........9-10

*FPC v. Hope Natural Gas Co.*, 320 U.S. 591 (1944).......................................................8

*FTC v. Cement Institute*, 333 U.S. 683 (1948) ................................................................8

*FTC v. Standard Oil Co. of California,* 449 U.S. 232 (1980). ..........................................9

*In re Diet Drugs Products Liability Litigation*, 282 F.3d 220 (3d Cir. 2002) ....................9

*In re FCC*, 217 F.3d 125 (2d Cir. 2000).................................................................. 5, 6, 7

*Jones v. FCC*, No. 02 Civ. 693, 2002 U.S. Dist. LEXIS 16396
     (S.D.N.Y. Sept. 4, 2002) .............................................................................. 5, 6, 7, 8

*Kahn v. iBiquity Digital Corp.*, 2006-2 Trade Cas. (CCH) ¶ 75,524 (S.D.N.Y. 2006) .......5

*Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990) ....................................................8

*Landis v. North American Co.*, 299 U.S. 248 (1936) ......................................................9

*Peck v. United States*, 522 F. Supp. 245 (S.D.N.Y. 1981) ..............................................9

*Petroleum Exploration, Inc. v. Public Service Commission*,
     304 U.S. 209 (1938)...........................................................................................9

*Public Utilities Commission v. United Fuels Gas Co.*,
     317 U.S. 456 (1943).............................................................................................9

*Renegotiation Board v. Bannercroft Clothing Co.*, 415 U.S. 1 (1974)..............................9

*SST Global Technology, LLC v. Chapman*, No. 02 Civ. 7687,
     2004 U.S. Dist. LEXIS 22286 (S.D.N.Y. 2004).......................................................4

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).................................4

*Telecommunications Research & Action Center v. FCC*,
     750 F.2d 70 (D.C. Cir. 1984)......................................................................... 5, 6, 8

*Ukiah Adventist Hospital v. FTC*, 981 F.2d 543 (D.C. Cir. 1992)...................... 6-7, 13, 14

*United States v. Any & All Radio Station Transmission Equipment*,
     207 F.3d 458 (8th Cir. 2000) ................................................................................5

*United States v. Palumbo Bros., Inc.*, 145 F.3d 850 (7th Cir. 1998).................................8

*United States v. Reliant Energy Services, Inc.*,
     420 F. Supp. 2d 1043 (N.D. Cal. 2006) .................................................................8

*Volmer Distributors v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993).....................9

**Federal Agency Cases**

Order to Show Cause and Notice of Proposed Penalties,
    *Amaranth Advisors L.L.C.*, 120 F.E.R.C. ¶ 61,085 (2007) ............ 1, 4-5, 10-11, 14


**Federal Statutes and Regulations**

Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* ......................................................... 8

Energy Policy Act of 2005, Pub. L. No. 109-58 (2005)
    § 314b (to be codified as part of the
    Natural Gas Act at 15 U.S.C. § 717t-l) ......................................................... 12, 14

    § 315 (to be codified as part of the Natural
    Gas Act at 15 U.S.C. § 717c-l) ....................................................... 1, 3, 4, 12, 14

    § 1283 (to be codified as part of the
    Federal Power Act at 16 U.S.C. § 824v) ...................................................... 3, 12, 14

Natural Gas Act, 15 U.S.C. § 717 *et seq.* ....................................................... 4, 5, 8, 13

    § 19(b), 15 U.S.C. § 717r(b)........................................................................ 5, 6, 8

Prohibition of Energy Market Manipulation, Order No. 670, 71 Fed. Reg. 4244
    (Jan. 26, 2006), III F.E.R.C. Stat. & Regs. ¶ 31,202 (to be codified
    at 18 C.F.R. pt. 1c), *reh'g denied*, 114 F.E.R.C. ¶ 61,300 (2006) ........................ 11


**Miscellaneous**

Testimony of Arthur Corbin, President & CEO of the Municipal Gas Authority
    of Georgia, on behalf of APGA before the Senate Homeland Security
    and Government Affairs Permanent Subcommittee on Investigations
    (June 25, 2007), *available at*
    http://hsgac.senate.gov/_files/STMTCorbinArthurGeorgia.pdf. .................. 1-2

Testimony of Laura Campbell, Assistant Manager of Energy Resources,
    Memphis Light, Gas & Water on behalf of the American Public Gas
    Association before the Commodity Futures Trading Commission (Sept.
    18, 2007) (footnote omitted), *available at*
    http://www.cftc.gov/stellent/groups/public/@newsroom/documents/
    file/event091807_campbell.pdf. ................................................................. 15

**STATEMENT OF INTERESTS**

Defendants Amaranth Advisors, L.L.C. and Amaranth Advisors (Calgary) U.L.C. (collectively "Amaranth" or "Amaranth Defendants") have moved this Court to enjoin a Federal Energy Regulatory Commission ("FERC") enforcement proceeding against them *i.e.,* the FERC Show Cause proceeding in FERC Docket IN07-26-000. *See* Order to Show Cause and Notice of Proposed Penalties, *Amaranth Advisors L.L.C.*, 120 F.E.R.C. ¶ 61,085 (2007) ("Show Cause Order").[1] American Public Gas Association ("APGA"), American Public Power Association ("APPA"), and National Rural Electric Cooperative Association ("NRECA") have vital interests in the FERC Show Cause proceeding and FERC's anti-manipulation authority under 15 U.S.C. § 717c-1 and oppose the Amaranth Defendants' request to enjoin and stay the FERC proceeding.

APGA is a national, not-for-profit association of more than 680 municipal and other publicly-owned local distribution systems in 36 states. APGA members own and operate natural gas distribution systems serving their communities and are served by interstate natural gas pipeline systems located across the country. Publicly-owned gas systems are not-for-profit retail distribution entities owned by and accountable to the citizens they serve. They include municipal gas distribution systems, public utility districts, county districts, and other public agencies that have natural gas distribution facilities. APGA's members serve millions of natural gas customers and are substantial purchasers of natural gas. On June 25, 2007, the Municipal Gas Authority of Georgia submitted testimony on behalf of APGA to the Senate Homeland Security and Government Affairs Permanent Subcommittee on Investigations explaining the adverse impacts of Amaranth's alleged wrongdoing: "[t]he Gas Authority's members were

---

[1] A copy of the FERC Show Cause Order appears at Exhibit D to Amaranth's pleadings. The FERC order is also directed at other parties.

forced to pay an $18 million premium and pass it through to their customers on their gas bills as a result of the excess speculation in the market by Amaranth and others."[2]

APPA is the national service organization representing the interests of not-for-profit, publicly owned electric utilities throughout the United States. More than 2,000 public power systems provide over 15 percent of all kilowatt-hour ("kWh") sales to ultimate customers, and do business in every state except Hawaii. APPA's utility members have as their primary goal providing customers in the communities they serve with reliable electric power and energy at the lowest reasonable cost, consistent with good environmental stewardship. This orientation aligns the interests of APPA-member electric utilities with the long-term interests of the residents and businesses in their communities. Collectively, public power systems serve over 44 million Americans, many of them living in smaller cities and towns. Public power systems own almost 10 percent of the nation's electric generating capacity, but purchase nearly 70 percent of the power used to serve their retail consumers.

NRECA is the national service organization dedicated to representing the national interests of cooperative electric utilities and the consumers they serve. NRECA is an advocate for consumer-owned cooperatives on energy and operational issues. NRECA's more than 900 member cooperatives serve more than 40 million people in 47 states, frequently in rural areas. Most of the member distribution systems are consumer-owned cooperatives; some are public power districts.

APPA and NRECA members purchase substantial amounts of natural gas, which is consumed in plants that generate electricity for millions of retail consumers. Manipulation in

---

[2] Testimony of Arthur Corbin, President & CEO of the Municipal Gas Authority of Georgia, on behalf of APGA before the Senate Homeland Security and Government Affairs Permanent Subcommittee on Investigations 7-8 (June 25, 2007), *available at* http://hsgac.senate.gov/_files/STMTCorbinArthurGeorgia.pdf.

2

natural gas futures markets affecting natural gas commodity prices also affects the cost of producing electricity from gas-fired plants. Such effects, however, are not limited to the cost of gas-produced electricity but extend to the prices for a significant portion of all electricity consumed regardless of fuel source. Natural gas prices have a multiplier and ripple effect throughout wholesale electric markets, but are not the sole driver of electricity prices. Gas fired electric generation often sets the market clearing price for wholesale electric sales in general under auction-type market designs used in many regions of the country, including the Northeast, the Mid-Atlantic, the Midwest, and California. Further, natural gas prices are often the key marginal variable production cost influencing the marginal clearing electric generator spot market bid price, which is paid to generators participating in such markets regardless of fuel source. These spot market prices, in turn, can affect prices for long-term electricity contracts traded in bilateral markets, as well as the cost of congestion on the interstate electricity transmission grid. FERC oversees these wholesale electricity markets and interstate transmission, and thus plays a key role in protecting consumers from excessive prices. As a result, APPA's and NRECA's interest in the proper functioning of natural gas markets is both broad and deep.

Congress also added a parallel market anti-manipulation provision to the Federal Power Act ("FPA"). *See* FPA § 222, 16 U.S.C. § 824v. FERC's consumer protection mission under the FPA is to ensure just and reasonable rates, terms, and conditions for, *inter alia* jurisdictional wholesale electric power sales. APPA, NRECA, and their members have an added vital interest in the potential impact any ruling on the scope of FERC's jurisdiction under 15 U.S.C. § 717c-1 may have on the scope of FERC's new market anti-manipulation authority under the FPA. The Supreme Court has an "established practice of citing interchangeably decisions interpreting the

pertinent sections of the two statutes [*i.e.,* the NGA and FPA]." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981).

## ARGUMENT

I. **THE DISTRICT COURT LACKS JURISDICTION TO REVIEW FERC'S INTERLOCUTORY SHOW CAUSE ORDER AND ENJOIN FERC'S ENFORCEMENT PROCEEDING UNDER THE NATURAL GAS ACT**

The issue of jurisdiction must be addressed "as a threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "That threshold question must be addressed first, since if the Court lacks subject matter jurisdiction the case is not properly before it, and consequently the Court should say nothing about any other issue." *SST Global Tech., LLC v. Chapman*, No. 02 Civ. 7687, 2004 U.S. Dist. LEXIS 22286 *3-4 (S.D.N.Y. 2004).

A. *The Exclusive Jurisdiction Vested in the Courts of Appeals "Cuts Off" This Court From Exercising Jurisdiction Over the FERC Proceeding*

Here, the Amaranth Defendants ask this Court to enjoin an ongoing FERC enforcement proceeding against them and others. The Court has no jurisdiction to entertain Amaranth's claim for injunctive relief because FERC is acting under the Natural Gas Act ("NGA")[3] in the Show Cause Proceeding, and Congress has vested jurisdiction to review FERC's orders under the NGA exclusively in the United States courts of appeals.

Amaranth concedes (*e.g.,* Amaranth Br. at 12) that FERC's asserted basis of statutory authority in the Show Cause proceeding is 15 U.S.C. § 717c-1 (a market anti-manipulation provision recently added to the NGA). The FERC Show Cause Order is express on this point. "Congress expanded [the Commission's NGA] anti-manipulation authority with the enactment of the Energy Policy Act of 2005 ("EPAct 2005")." Show Cause Order P 3.[4] "[If Amaranth] fail[s]

---

[3] 15 U.S.C. § 717 *et seq.*

[4] Citing the Energy Policy Act of 2005, Pub. L. No. 109-58, § 315 (2005) (to be codified at 15 U.S.C. § 717c-1).

to address fully the case presented here, the matter will present an appropriate occasion for the first exercise of [the Commission's] expanded substantive regulatory authority." *Id.* P 4.

It is likewise beyond reasonable dispute that Congress has provided the courts of appeals with exclusive jurisdiction to review FERC action under the NGA. Section 19 of the NGA addresses judicial review and provides, in relevant part, that:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located … or in the United States Court of Appeals for the District of Columbia, by filing in such court … a written petition … that the order of the Commission be modified or set aside in whole or in part.

15 U.S.C. § 717r(b). Section 19(b) of the NGA is a dispositive jurisdictional bar to Amaranth's request that this Court enjoin FERC's Show Cause proceeding.

Because "Congress has vested exclusive jurisdiction to review final [NGA] orders in the Courts of Appeals," the NGA "'cuts off original jurisdiction' in [federal] courts in all other cases." *Jones v. FCC*, No. 02 Civ. 693, 2002 U.S. Dist. LEXIS 16396 *6-7 (S.D.N.Y. Sept. 4, 2002) (Cote, J.) (dismissing for lack of subject matter jurisdiction complaint challenging FCC issuance of Notice of Apparent Liability for Forfeiture) (quoting *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")). Following *TRAC*, and kindred Eighth Circuit authority, the Second Circuit has held that "'a preemptive strike by seeking an injunction'" is "'an evasion of the exclusive jurisdiction of the Court of Appeals.'" *In re FCC*, 217 F.3d 125, 139 (2d Cir. 2000) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000)). *See also Kahn v. iBiquity Digital Corp.*, 2006-2 Trade Cas. (CCH) ¶ 75,524 (S.D.N.Y. 2006) ("a district court may review neither the FCC's regulatory actions nor the outcome of those actions").

5

It is hard to imagine more conclusive pronouncements. Per *Jones* this Court's jurisdiction is "cut[] off" and that should be the end of the matter. *Jones*, 2002 U.S. Dist. LEXIS 16396 at *7.

Amaranth's challenge to FERC's jurisdiction does not take its claim for injunctive relief outside the bar of *Jones* and *In re FCC*. Amaranth's core allegation in support of injunctive relief is that "FERC is acting beyond the scope of its statutory authority." (Amaranth Br. at 4.[5]) This contention, even if it were correct (which it is not), does not get Amaranth over the jurisdictional bar of Section 19(b) of the NGA (15 U.S.C. § 717r(b)). Building upon the *TRAC* decision which this Court quoted and relied upon in *Jones*, *supra*, the District of Columbia Circuit rejected the argument that an entity could seek interlocutory relief in district court to challenge the statutory basis of ongoing agency action. *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543 (D.C. Cir. 1992). The *Ukiah* court expressly held that "*all* challenges to an agency's jurisdiction in the context of nonfinal agency action lie within the exclusive jurisdiction of the courts of appeals under *TRAC*." *Id.* at 551 (emphasis in original). *Ukiah* stands four square against Amaranth's attempt here to enjoin FERC's ongoing Show Cause proceeding based upon FERC's alleged lack of statutory jurisdiction.

In *Ukiah* the court of appeals noted that "denial of [interlocutory] review in a district court will *not* foreclose all judicial review." *Id.* at 550 (emphasis in original). The same is true here. If FERC ultimately issues a final order adverse to Amaranth, Amaranth will be able to appeal that order and raise its jurisdictional challenge to the circuit court.

The *Ukiah* court further explained that important policy considerations supported its jurisdictional ruling.

---

[5] Paradoxically, on the same page of its brief at 4 n.6, Amaranth states that it "is not asking this Court to determine whether the FERC has jurisdiction to proceed with its enforcement action." It is unnecessary to resolve the apparent contradiction in Amaranth's statements for purposes of dismissing its request for injunctive relief.

> Allowing questions of jurisdiction to be 'carved out' of ongoing agency proceedings and challenged in district courts would create an unmanageable body of litigation in the federal courts. By establishing an 'agency jurisdiction' exception to the *TRAC* rule, we would invite an endless stream of suits filed in district courts, followed by appeals to this court, by parties seeking to stall or forestall agency action. [Movant's] proffered distinction between 'purely legal' and 'mixed law and fact' jurisdictional questions only exacerbates this concern. [Movant] asks us to draw a line where no line may be drawn − or, just as accurately, where any line may be drawn. … Even were we to find it easy to draw the suggested distinction in this particular case, we can imagine no reason for adopting such a rule.

*Id.* at 550-551. Consistent with *Jones* and *In re FCC*, this Court should likewise refuse to "adopt[] such a rule."

### B. The Parallel FERC Proceeding Does Not Defeat This Court's Jurisdiction Over the CFTC Complaint in the Instant Action

Amaranth addresses the jurisdictional issue in the last two and a half pages of its 30 page brief. The entirety of its jurisdictional argument rests upon the conclusory (and erroneous) assertions that the Court can enjoin FERC: i) to protect its own jurisdiction; and ii) to protect the CFTC's jurisdiction. (Amaranth Br. at 28-30.) Although Amaranth cites inapposite authority, and raises a litany of objections concerning the alleged inequity of its predicament, it *nowhere* attempts to explain how FERC's prosecution of the Show Cause proceeding will interfere with this Court's or the CFTC's jurisdiction.

Amaranth complains that it is:

> unaware of any other instance in which an administrative agency: (1) disregarded the exclusive jurisdiction of another administrative agency who, (2) has already instituted enforcement proceedings against a party, (3) to bring its own enforcement proceeding against that same party, (4) when it has no jurisdiction to do so, and (5) force the party to submit to *two* jurisdictions at the same time with *two* different procedures and evidentiary standards, and face the enormous expense of defending both proceedings.

7

(Amaranth Br. at 29 (emphasis in original).) None of these objections is in any way relevant to establishing the Court's subject matter jurisdiction. As noted above, Section 19(b) of the NGA "'cuts off original jurisdiction' in [federal district] courts," *Jones*, 2002 U.S. Dist. LEXIS 16396 at *6-7 (quoting *TRAC* at 77) and Amaranth's challenge to FERC's statutory jurisdiction is no exception to this bar. The fact that Amaranth must answer for its alleged wrongdoing in two different proceedings under two different statutes is unexceptional, if not a commonplace occurrence. *See, e.g., Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 213 (1990) (alleged natural gas price fixers answerable to direct purchaser claims under federal antitrust law and indirect purchaser claims under state law arising out of same conspiratorial conduct). The CFTC is required to enforce the Commodity Exchange Act ("CEA")[6] and FERC is required to enforce the NGA. "'[I]t is a cardinal principle of construction that . . . when there are two acts upon the same subject, the rule is to give effect to both.'" *United States v. Reliant Energy Servs., Inc.*, 420 F. Supp. 2d 1043, 1064 (N.D. Cal. 2006) (quoting *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 862 (7th Cir. 1998)). *See also FTC v. Cement Inst.*, 333 U.S. 683, 690 (1948) (same). While the CFTC's regulatory action under the CEA with respect to trading in NG Futures Contracts may incidentally (and importantly) protect consumers of natural gas (and electricity), it is FERC that is charged with that duty under the NGA (and FPA). *See FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 610 (1944) (Commission's primary duty under the NGA is to protect consumers). It is FERC that first noticed the unusual NYMEX trading activity and precipitated the investigation into Amaranth's market manipulation.

      Amaranth fails to explain (and cannot show) how the supposed "enormous expense of defending both proceedings" defeats either this Court's or the CFTC's jurisdiction. Amaranth's

---

[6] 7 U.S.C. § 1 *et seq.*

expense objection does not even constitute a basis for irreparable harm, let alone a basis for subject matter jurisdiction.

> "[T]he expense and annoyance of litigation is 'part of the social burden of living under government.'" *Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209, 222 (1938). As [the Court] recently reiterated: "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Bannercroft Clothing Co.*, 415 U.S. 1, 24 (1974).

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980).

The cases cited by Amaranth in its defense (at 28-30) of this Court's jurisdiction to stay the FERC proceeding are either irrelevant or damaging to its position. Taking the cases seriatim, *Landis v. North American Co.*, 299 U.S. 248 (1936), involved the court's authority to stay a case before it, not a case before another tribunal, and even that authority was held to be limited. *Public Utilities Commission v. United Fuels Gas Co.*, 317 U.S. 456 (1943), affirmed a federal injunction of a state regulatory agency on Supremacy Clause grounds where federal law had preempted state regulatory power. *Peck v. United States*, 522 F. Supp. 245 (S.D.N.Y. 1981), involved a district court staying a case on its docket, not a matter in another tribunal. *In re Diet Drugs Products Liability Litigation*, 282 F.3d 220 (3d Cir. 2002), involved circumstances far different from those here: an injunction of federal and state court proceedings issued by a district judge presiding over 2,000 consolidated cases with a class comprising six million members. The Court of Appeals recognized the "general rule [is] that in personam cases must be permitted to proceed in parallel" but that very complex multidistrict cases are especially vulnerable to parallel state actions that may frustrate the district court's effort to craft a settlement "thereby destroying the . . . benefits of consolidation," *id*. at 236. *Volmer Distribs. v. N.Y. Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993), was a case in which a judge stayed some discovery in a case before him to protect defendants' Fifth Amendment rights in a criminal case in another forum. In *Commodity*

9

*Futures Trading Commission v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477 (10th Cir. 1983), the stay granted by the district court was reversed on appeal.

The inability of Amaranth to find any case supporting its position is telling. Also revealing is the fact that there are cases, cited in Amaranth's brief (at 20), of jurisdictional disputes between the CFTC and the SEC where the jurisdictional issue was decided after the required appeal from the agency to a court of appeals.

## II.   IT IS CONTRARY TO THE PUBLIC INTEREST TO ENJOIN FERC'S ENFORCEMENT PROCEEDING UNDER THE NATURAL GAS ACT

FERC views the Show Cause Proceeding as a "*serious* case." Show Cause Order P 122 (emphasis in original). APGA, APPA, and NRECA agree. Following a lengthy and extensive investigation coordinated with the CFTC, FERC has preliminarily found that the "harm to the market was significant," and the "manipulation was the result of intentional and deceitful conduct." *Id.* PP 123 & 124. "The Amaranth Entities are punishable for the actions of their employees, officers, and agents." *Id.* P 121 (footnote omitted). Unless the Amaranth Defendants and other parties can rebut FERC's preliminary findings, the Show Cause proceeding "will present an appropriate occasion for the first exercise of [FERC's] expanded substantive regulatory authority, as well as a substantial exercise of [FERC's] expanded remedial authority." *Id.* P 4. FERC found a direct link between Amaranth's manipulation of the New York Mercantile Exchange (NYMEX) Natural Gas Futures Contract (the NG Futures Contract) and the physical markets entrusted to FERC's regulation: "manipulation of the NG Futures Contract Settlement price will necessarily change the price in [FERC-jurisdictional gas transactions]." *Id.* P 27. With respect to *scienter* FERC found that:

> [t]he evidence summarized above indicates that both [former Amaranth Vice President] Hunter and [former Amaranth trader] Donohoe traded with the intent to manipulate the settlement price of the March, April, and May 2006 NG Contracts. The settlement

10

> price directly sets the price of any futures contracts that go to delivery. Thus, Amaranth's conduct amounts to the intentional manipulation of the price for that jurisdictional gas.

*Id*. P 111 (footnote omitted).

FERC was also careful to delineate the factual basis for its jurisdiction under its new statutory authority.

> The Anti-Manipulation Rule applies whether or not the manipulator's principal or exclusive purpose is the manipulation of physical natural gas sales. In Order No. 670, we stated that "we do not intend to construe the Final Rule so broadly as to convert every common law fraud that *happens to touch* a jurisdictional transaction into a violation of" the Anti-Manipulation Rule. However, such a transaction would be covered if "in committing fraud, the entity … intended to affect, or have acted recklessly to affect, a jurisdictional transaction." We noted that the "in connection with" language is drawn from similar language of Rule 10b-5 which has been very liberally construed. Accordingly, the Anti-Manipulation Rule applies where there is a "nexus" between the manipulative conduct and the jurisdictional transaction. Under the analogous Rule 10b-5 precedent, the alleged manipulator need not be a party to the jurisdictional transaction, nor must the connection be overwhelmingly direct. Finally, we have also noted that a determination of manipulation, in general, is "a question of fact that is to be determined by all the circumstances of a case." Given the facts discussed above, the manipulative conduct at issue here is more than sufficient to meet the generalized "in connection with" requirement.

*Id*. P 110 (emphasis in original and footnotes omitted, quoting Order No. 670[7]). Based upon an assessment of the relevant penalty factors, FERC preliminarily determined that it would be appropriate to levy against Amaranth "a nearly maximum civil penalty" in the amount of $200,000,000 (*id*. P 134) and disgorgement of at least $59,000,000 in unjust profits. *Id*. P 139.

---

[7] Prohibition of Energy Market Manipulation, Order No. 670, 71 Fed. Reg. 4244 (Jan. 26, 2006), III F.E.R.C. Stat. & Regs. ¶ 31,202 (to be codified at 18 C.F.R. pt. 1c), *reh'g denied*, 114 F.E.R.C. ¶ 61,300 (2006).

FERC is entrusted with ensuring just and reasonable rates, and indeed seeing that the markets it regulates produce "the lowest possible reasonable rate consistent with the maintenance of adequate service in the public interest." *Atl. Ref. Co. v. Pub. Serv. Comm'n*, 360 U.S. 378, 388 (1959) (quoting 52 Stat. 825). In recent years, FERC has moved to a regimen of market based pricing. Following the 2000-01 California electric market meltdown, and the evidence of market manipulation on the part of Enron and others, it was apparent that FERC stood in need of new statutory powers to police against and sanction market manipulation. Congress responded and provided FERC new substantive and remedial authority. *See* EPAct 2005 § 315 (to be codified at 15 U.S.C. § 717c-l*); id*. § 314b (to be codified at 15 U.S.C. § 717t-l); *id.* § 1283 (to be codified at 16 U.S.C. § 824v). APGA, APPA, and NRECA were all active in the legislative proceedings resulting in EPAct 2005 and support FERC's new market anti-manipulation authority under 15 U.S.C. § 717c-l & § 717t-l (and the cognate jurisdiction provided FERC under new section 222 of the FPA, 16 U.S.C. § 824v). That statutory authority means little if it is not exercised. To that end, amici support FERC's Show Cause proceeding, and in a press release dated July 26, 2007, APGA publicly "commend[ed] the Federal Energy Regulatory Commission (FERC) for its vigilance in bringing two separate enforcement actions [including the action against Amaranth]."[8]

Amaranth should not be permitted to execute an end run around FERC's enforcement action by seeking to enjoin the proceeding. Fundamentally, an entity that is accused of manipulation of the markets ought not to be able to choose the authority which will be allowed to investigate it, based on which authority it deems less intrusive or dangerous to its interest. This is

---

[8] Press Release, APGA Commends FERC for its New Enforcement Authority in Two Separate Actions (July 26, 2007), *available at* http://www.apga.org/singlenews.asp?item_ID=3464&comm=0&list_code_int=NEW01-NEWS-INT.

12

particularly true in a situation where an agency is engaged in a highly fact intensive investigation which also brings into question how it will choose to exercise its statutory authority. In 2005, Congress gave FERC identical authority under the NGA and the FPA to impose penalties upon those who manipulate markets in natural gas (and electricity). The effect of the relief Amaranth seeks would come close to a declaration that Congress tasked FERC with policing the natural gas market but largely hamstrung its ability to do so. It may simply not be possible to draw a clean distinction between futures markets and physical markets. Many of the contracts that are traded in NYMEX become physical for settlement purposes if there is no bookout prior to maturity.[9] In these circumstances, where the agency is still in the process of delineating its own jurisdiction, it would be particularly egregious to block it from doing so.

Moreover, as the D.C. Circuit warned in *Ukiah*, permitting collateral attacks on ongoing agency proceedings is likely to create an unmanageable body of litigation in the federal courts. *Ukiah*, 981 F.2d at 551. The Amaranth Defendants acknowledge that there is a second independent proceeding before Judge Leon in the United States District Court for the District of Columbia where FERC defendant Hunter is seeking to enjoin the FERC Show Cause proceeding. (Amaranth Br. at 4 n.6.) What is FERC to do if Judge Leon denies injunctive relief holding that the matter is within FERC's authority but this Court orders it? Do the Amaranth Defendants expect this Court to issue orders against Judge Leon and the United States District Court for the District of Columbia and perhaps the United States Court of Appeals for the District of Columbia Circuit? The doctrines of exhaustion and finality, and the statutory scheme permitting judicial review only from final agency action before the circuit courts of appeals serve to ensure order,

---

[9] The contracts that are traded are described at http://www.nymex.com.

promote judicial economy and help create a body of judicial expertise for purposes of reviewing agency action. The relief that Amaranth seeks is antithetical to all of these considerations.

Collateral and interlocutory review is particularly misguided in regards to a Show Cause Proceeding of the sort here at issue. By its own terms the FERC Show Cause Order makes preliminary findings. *See*, *e.g.*, Show Cause Order P 5 ("[the Commission] preliminarily conclude[s] that the Respondents manipulated the price of Commission-jurisdictional transactions by trading in the NG Futures Contract"). The Show Cause Order also makes clear that FERC's assertion of jurisdiction rests upon a fact-intensive analysis. *E.g.*, *id*. P 110; *see also id*. PP 20-27 (discussing NG Futures Contract settlement price effects on prices in Commission jurisdictional transactions). It is entirely possible that FERC may reach any number of different conclusions incident to any final action in the Show Cause proceeding.[10] It should also be emphasized that this is a case of first impression concerning a new and important source of statutory regulatory authority. Prudence dictates that the important question of the scope of FERC's authority under EPAct 2005 §§ 315 & 314b, 15 U.S.C. §§ 717c-l[11] & 717t-l be addressed first by FERC on a complete record and pursuant to a final order, and then reviewed judicially by a court of appeals consistent with Congress's dictate.

Fair gas and electric markets are vital to *amici* and their members. This week, APGA testified before the CFTC on the direct linkage between NG Futures Contracts and physical gas pricing. "Increasingly, the price of natural gas in many supply contracts between suppliers and local distribution companies ("LDC"), including APGA members, is determined based upon

---

[10] It is worth noting that in the FTC proceeding that gave rise to the *Ukiah* proceeding, the FTC did just that and reversed its preliminary determination to exercise jurisdiction over non-profit hospitals.

[11] As noted above, any discussion of the scope of FERC's NGA authority under 15 U.S.C. § 717c-l also incidentally implicates the scope of FERC's FPA authority under 16 U.S.C. § 824v because the two statutes are typically construed *in pari materia*.

14

monthly price indexes closely tied to the monthly settlement of the NYMEX futures contract. ... [W]ithout question, a participant's trading conduct in one venue can affect, and has affected, the price of natural gas contracts in the other."[12] This is the exact same factual nexus that FERC has preliminarily identified as the basis for its exercise of regulatory authority in the Show Cause proceeding. FERC's enforcement efforts will help to protect not only millions of natural gas consumers, but also millions of electricity consumers, because of the pervasive effect natural gas prices has on the price of electricity. APGA, APPA and NRECA look to FERC to ensure that prices in all markets under its jurisdiction are just and reasonable, and FERC's ability to do so would be frustrated by the Amaranth Defendant's request.

## CONCLUSION

For all of the foregoing reasons, the extraordinary relief Amaranth seeks should be denied.

Respectfully submitted,

    s/ Daniel I . Davidson
Daniel I. Davidson (SDNY Bar No. DD0194)
Robert C. McDiarmid
Peter J. Hopkins
Mark S. Hegedus

Attorneys for *Amici*
American Public Gas Association, American Public Power Association, National Rural Electric Cooperative Association

Law Offices of:
    Spiegel & McDiarmid
    1333 New Hampshire Avenue, NW
    Washington, DC 20036
    (202) 879-4000
    September 28, 2007

---

[12] Testimony of Laura Campbell, Assistant Manager of Energy Resources, Memphis Light, Gas & Water on behalf of the American Public Gas Association before the Commodity Futures Trading Commission 5 (Sept. 18, 2007) (footnote omitted), *available at* http://www.cftc.gov/stellent/groups/public/@newsroom/documents/file/event091807_campbell.pdf.

15

CERTIFICATE OF SERVICE

      I hereby certify that I served a copy of the foregoing MEMORANDUM OF LAW OF AMICUS CURIAE on all parties via e-mail and U.S. mail, postage prepaid, to the parties listed below on this 28th day of September 2007.

Manual Sultan, Esq.
Stephen Jay Obie, Esq.
David W. MacGregor, Esq.
U.S. Commodity Future Trading
    Commission (NYC)
140 Broadway
New York, NY 10005
Attorneys for U.S. Commodity Future Trading Commission

Leslie Beth Bellas, Esq.
Lee Ann Watson, Esq.
Patrick Todd Mullins, Esq.
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426
Attorneys for Federal Energy Regulatory Commission

David E. Mollon, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Attorneys for Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC

Michael Kim, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022
Attorney for Defendant Brian Hunter

                                                    s/ Marlene Borack
                                                      Marlene Borack

Law Offices of:
    Spiegel & McDiarmid
    1333 New Hampshire Avenue, NW
    Washington, DC 20036
    (202) 879-4000