## LIST OF EXHIBITS

A.  Transcript of Conference before the Honorable Denny Chin, *U.S. CFTC v. Amaranth Advisors LLC, et al.,* 07 Civ. 6682 (DC) (S.D.N.Y. Aug. 16, 2007).

B.  Memorandum of Understanding Between The Federal Energy Regulatory Commission (FERC) and The Commodity Futures Trading Commission (CFTC) Regarding Information Sharing and Treatment of Proprietary Trading and Other Information, dated Oct. 12, 2005.

C.  Commission Opinion Order re *New York Mercantile Exchange,* No. EL95-81-00, 75 FERC ¶ 61311 (1996).

D.  I. Talley, *UPDATE: Court May Settle CFTC, FERC Oversight Turf Battle,* Factiva® , Dow Jones International News, Sept. 26, 2007.

E.  Sept. 27, 200[7] Letter to CFTC Acting Chairman Walt Lukken from U.S. Reps. Peterson, Goodlatte, Etheridge and Moran.

F.  Excerpts from 1974 Legislative History
   H.R. Rep. No. 93-975
   S. Rep. No. 93-1131
   H.R. Rep. No. 93-1383 (Conf. Rep.)
   120 Cong. Rec. 34,736-7 (1974)
   120 Cong. Rec. 30,458-9 (1974)
   120 Cong. Rec. 34,995-7 (1974)

G.  Excerpts from 1978 Legislative History
   H.R. Rep. No. 95-1181
   S. Rep. No. 95-850

# EXHIBIT A

1      UNITED STATES DISTRICT COURT

       SOUTHERN DISTRICT OF NEW YORK

2      ------------------------------x

3      U.S. COMMODITY FUTURES TRADING

       COMMISSION,

4

              Plaintiff,

5

              v.                   07 Civ. 06682 (DC)

6

       AMARANTH ADVISORS, LLC,

7      AMARANTH ADVISORS (CALGARY)

       ULC, BRIAN HUNTER,

8

              Defendants.

9

       ------------------------------x

10                          New York, N.Y.

                            August 16, 2007

11                          10:10 a.m.

12     Before:

13             HON. DENNY CHIN,

14                      District Judge

15             APPEARANCES

16     COMMODITY FUTURES TRADING COMMISSION,

          Attorneys for Plaintiff

17     BY:  DAVID MAC GREGOR,

       BY:  MANAL SULTAN

18

       WINSTON & STRAWN LLP

19        Attorneys for Defendants

       BY:  DAVID E. MOLLON,

20     BY:  STEVEN M. SCHWARTZ

21

       FEDERAL ENERGY REGULATORY COMMISSION,

22

       BY:  TODD MULLINS,

23     BY:  LEE ANN WATSON

24

25

1          (In open court; case called)

2          THE COURT::  All right, we were presented with this

3     application for an order to show cause the other day.  It does

4     not request a temporary restraining order, but I prefer to have

5     a conference when I get these applications anyway, because lots

6     of times we can agree on things.

7          And so, first, we do have someone here from the

8     Federal Energy Regulatory Commission.

9          MR. MULLINS:  Yes, your Honor, Todd Mullins from

10    Federal Energy Regulatory Commission.

11         THE COURT:  I took a quick look at the papers, and I

12    guess at first glance I do have questions as to why two federal

13    agencies would be pursuing regulatory actions against the same

14    defendants, apparently based on the same conduct, seeking the

15    same or similar relief.

16         And I guess it strikes me as not being an efficient

17    way to proceed.

18         I don't know what CFTC thinks.

19         And I guess my question is, why is there a need for a

20    parallel proceeding, number one?  And, number two, would the

21    Federal Energy Regulatory Commission consent to a stay of its

22    administrative proceeding pending the outcome of this case?

23         Anyone?  I will hear from anyone who wants to speak

24         MR. MAC GREGOR:  Your Honor, for the plaintiff U.S.

25    Commodity Futures Trading Commission, David MacGregor.  And my

1    colleague Manal Sultan.

2        Your Honor, just preliminarily.  I am not a member of

3    the bar of this court.  I do have a pro hac application which I

4    could bring up, or we could submit later.

5        THE COURT:  You could submit it later.  For now you

6    are admitted for purposes of this conference.

7        MR. MAC GREGOR:  Thank you, your Honor.

8        We appreciate your Honor letting us come in and not

9    entering the ex parte application that was sought.

10       Just a couple of quick observations.

11       There is obviously no relief sought against the

12   plaintiff CFTC.  Although procedurally we have some questions

13   about the appropriateness of this application.

14       THE COURT:  Well, my first question to Mr. Schwartz,

15   when he was in my chambers the other day, was, do I have

16   jurisdiction over the Federal Energy Regulatory Commission as

17   it is not a party.  I assume that we will talk about that

18   today.  Yes, that's an issue.

19       MR. MAC GREGOR:  So we have that.  And I, frankly,

20   don't see how they can be a party because their action can't be

21   adjudicated before your Honor's administrative action.

22       THE COURT:  To the extent that it could interfere with

23   my jurisdiction, I guess is part of the thinking.

24       MR. MAC GREGOR:  That's an argument.

25       THE COURT::  Could a ruling or a result or relief in

1      the FERC administrative proceeding somehow affect my

2      jurisdiction in this case?

3          MR. MAC GREGOR:  I am sure it is conceivable that

4      could be.

5          THE COURT:  But why are there two federal agencies --

6      first of all, are the defendants correct when they say it is

7      two federal agencies going after the same parties based on the

8      same conduct seeking essentially the same relief?  Is that a

9      true statement?

10         MR. MAC GREGOR:  The conduct is, for the most part,

11     similar.  There are certain actions that are the basis of our

12     complaint or the basis of their action that are not in ours.

13     The FERC is proceeding under its statute, the statute under

14     which they have power.  We are proceeding under our statute,

15     the commodity exchange action, two separate actions.

16         I don't want to speak for FERC and what they are

17     pursuing, but we are pursuing actions under two separate

18     statutes.

19         But another, I think, important point --

20         THE COURT:  But is it essentially the same conduct?

21         MR. MAC GREGOR:  It is essentially the same conduct.

22         THE COURT:  Is it essentially the same relief?

23         MR. MAC GREGOR:  The relief is different.

24         THE COURT:  Money?  Penalties?  Disgorgement?

25         MR. MAC GREGOR:  There are those things.

*Court Conference w/ Judge Chin  8/16/2007  10:10:00 AM

1      THE COURT:  And that would be the same for both?

2      MR. MAC GREGOR:  We have certain trading

3   prohibitions --

4      THE COURT:  What happens if there is a finding, no

5   disgorgement in this case and a finding of disgorgement in the

6   other case?  It seems to be almost administrative double

7   jeopardy.  It strikes me as raising a host of questions.

8      MR. MAC GREGOR:  I would also point out, this issue is

9   being adjudicated currently in the District Court in the

10   District of Columbia, where the FERC is a party, where

11   Amaranth, as indicated in its brief, it intends to interplead

12   to become a party.

13      These issues, whether the FERC can proceed, is being

14   adjudicated and has been the subject of a hearing.  And I think

15   the FERC can give you more information on that.  But a hearing

16   is under the Court's consideration down there, the issue of

17   whether the FERC can proceed in that case.

18      THE COURT:  Putting aside all the legalities, why is

19   the federal government proceeding on two fronts in this way?

20   It seems there could be a better way to expend resources.

21      MR. MAC GREGOR:  As I said, your Honor, we are

22   pursuing claims -- the action before your Honor is under the

23   Commodity Exchange Act based on futures at the --

24      THE COURT:  -- I am just trying to get a practical

25   answer to my question.

Court Conference w/ Judge Chin    8/16/2007    10:10:00 AM

1    statute to proceed in District Court.

2         THE COURT:: So the short answer is that the

3    commission believes that it is required by law to proceed with

4    the regulatory --

5         MR. MULLINS: -- yes, your Honor.  And there are other

6    reasons which I can elaborate on.

7         THE COURT:  Okay, well, it seems to me we ought to set

8    a schedule, a briefing schedule and have argument.  Unless

9    there is some argument that is being made that I can't

10   entertain this.  Is there such an argument that I don't have

11   jurisdiction to entertain this?  An application by the

12   defendants?

13        MR. MULLINS:  I don't know if it is a question of

14   jurisdiction as much as it is a question of comity with respect

15   to the Federal District Court in Washington, Judge Leon before

16   whom I was last Tuesday arguing a preliminary injunction motion

17   which raises the same issues, and whether FERC has jurisdiction

18   as opposed to the CFTC, to proceed against another defendant,

19   in this case, Mr. Hunter.  A TRO was sought, the Court, Judge

20   Leon, indicated he will rule with a written opinion.  It is

21   forthcoming later this month or in September.

22        THE COURT:  And Mr. Hunter is a party in this case,

23   but Amaranth is not yet a party in that case, but Amaranth is

24   going to try to get into that case.

25        MR. MULLINS:  That's our understanding.  At some point

*Court Conference w/ Judge Chin   8/16/2007   10:10:00 AM

1    they plan to intervene.  But they are not yet a party.

2         THE COURT:  Is Amaranth interested in letting the

3    Court down there deal with this?

4         MR. MOLLON:  We certainly have no power over the Court

5    in DC.  And we understand, these two proceedings, these two

6    motions are completely different.  We are not asking for the

7    same relief from your Honor that Mr. Hunter is seeking from

8    Judge Leon.

9         THE COURT:  What is he seeking down there?

10        MR. MOLLON:  As we understand it, Mr. Hunter had

11   sought a preliminary injunction of the commencement of the

12   administrative proceeding, as that's now been proceeding, and

13   now they are asking for it to be stayed while Judge Leon

14   decides the underlying jurisdictional decision.

15        We have not presented it to your Honor.  We don't

16   intend to present that issue to your Honor.  The only reason we

17   intend to intervene in DC is not with respect to the

18   preliminary injunction, but with respect to, if there is a

19   decision on the jurisdiction with FERC in our cause, we would

20   like to be part of that determination, if there is to be a

21   determination on the merits.  But whether or not the FERC has

22   the jurisdiction, we believe the FERC's action should be

23   stayed.

24        THE COURT:  I think we should set a briefing schedule.

25   FERC can make whatever arguments it wants, including that I

1    should defer to the District Court in DC whatever other

2    jurisdictional arguments you might have.

3          I don't know whether the CFTC wants to weigh in, it

4    can if it wants to.

5          Was Mr. Hunter's lawyers given notice of this

6    conference, by the way?

7          MR. MOLLON:  Yes, your Honor, we gave them notice.

8          MR. MAC GREGOR:  I think, your Honor, our issues will

9    be procedural in nature, that this is kind of a diversion in

10   our case to have this application here while it is being

11   adjudicated in DC.  Since we are not briefing the

12   jurisdictional issues since that is not before your Honor.

13         THE COURT:  The briefing should include whatever

14   issues the parties want to raise.  If anyone -- I mean

15   obviously if anyone thinks -- you don't think I have

16   jurisdiction, you ought to tell me that.

17         Yes, I think whatever issues you think are relevant,

18   jurisdiction is always something that I have to consider.  I

19   mean, if we are talking subject matter jurisdiction

20         MR. MAC GREGOR:  My reference was to the question of

21   whether FERC has jurisdiction under its statute, which they are

22   not raising.  That's before the Court in DC, your Honor.

23         THE COURT:  Are the defendants raising that?

24         MR. MOLLON:  No, your Honor, we are not asking your

25   Honor to decide that question.

1        THE COURT:  Then you don't need to address it.

2        MR. MULLINS:  Your Honor, may I offer a suggestion?

3    The basis for the preliminary injunction are, as I understand

4    it, with respect to the prong as to success on the merits or

5    the legal issue, is the question of whether we have

6    jurisdiction.  But I read your Honor as to when we should

7    address that.

8        THE COURT:  Actually that's a fair point.  I think the

9    argument is the CFTC has exclusive jurisdiction over matters

10   involving futures contracts.  And, therefore, FERC shouldn't be

11   involved.

12       MR. MOLLON:  Yes, your Honor, we have argued that.

13   All I was saying is, we are not asking your Honor to decide

14   that issue and rule whether or not the FERC has jurisdiction.

15   You may have to consider the FERC's jurisdiction or the

16   overlapping nature of the jurisdiction, but our point is

17   irrespective.

18       THE COURT:  Don't you have to show likelihood of

19   success on that?  Argue like --

20       MR. MOLLON:  -- there are a number of matters we

21   raised with respect to likelihood of success.  One of them was

22   the fact that CFTC has exclusive jurisdiction.

23       THE COURT:  And FERC disagrees with that?

24       MR. MULLINS:  Yes, as we do in the District Court in

25   DC.

*Court Conference w/ Judge Chin  8/16/2007  10:10:00 AM

1          THE COURT:  It seems to me that is an issue that's

2    before me, whether FERC is precluded from pursuing this matter

3    administratively because the CFTC has exclusive jurisdiction.

4    I think that issue is before me and should be addressed.

5          MR. MULLINS:  On the schedule my suggestion was going

6    to be that because that precise issue is before Judge Leon, if

7    we were able to set the briefing schedule so with respect to

8    any papers filed by FERC, they would likely be due to your

9    Honor in a time frame that would more likely be after he has

10   ruled.  So we can -- would that be possible?

11         THE COURT:  I guess my question is, is FERC planning

12   on doing anything in the administrative proceeding in the

13   meantime?  Because if the answer is no, I am happy to wait

14   until learning of the Court down there.

15         MR. MULLINS:  Let me address that.  The procedure

16   we're involved in is called an order to show cause, it is

17   preliminary.  And the respondents, Amaranth and other parties,

18   have been given until September 28 to respond to the order to

19   show cause.  And barring any action, we would expect those

20   actions to be filed.

21         And I would urge your Honor would better inform the

22   issue before your Honor, because I think it would flush out

23   whether there are issues of overlap or not.  Because there may

24   very well be a number of issues that don't end up becoming

25   disputed or otherwise dealt with by that response.

1          THE COURT::  The response is in the nature of an

2     answer or something more elaborate than an answer?

3          MR. MULLINS:  It is more elaborate than a District

4     Court answer, your Honor.  It does require substantive

5     discussion of the issues.  And it can include and will include

6     the argument to the agency that it lacks jurisdiction which,

7     just not to inject too many points, one of the arguments that

8     we have advanced, the primary argument we have advanced in the

9     district court is, there is a lack of jurisdiction because it

10    is not final agency action.  And because appeals on reviews of

11    FERC's orders are exclusively within the Court of Appeals.

12         So back to the schedule issue.  I would urge that the

13    issue will be more crystallized for briefing when we are aware

14    of the ruling from Judge Leon, and when the order to show cause

15    responses have been filed, which I believe the defendants --

16    respondents asked for an extension.  I assume they are working

17    on them.  I believe those would flush out the issues of what is

18    going on between the two cases and how has Judge Leon ruled on

19    the issues.

20         THE COURT:  You are proposing a response date when?

21         MR. MULLINS:  Mid-October.

22         THE COURT:  All right, how do the defendants feel

23    about that?

24         MR. MOLLON:  If the FERC can agree to exclude the time

25    between now and the time they file their papers here, from our

*Court Conference w/ Judge Chin   8/16/2007   10:10:00 AM

1    time to answer, then I don't think we have any grounds to

2    object.

3         I don't believe that Mr. Mullins standing here today

4    has the power to agree to that.  But if he does and he can bind

5    the commission, I don't have a problem with that schedule.

6         THE COURT:  Are you willing to?

7         MR. MULLINS:  Mr. Mollon states the case correctly, I

8    do not have the power to do that.  The commission would have to

9    make an order to alter that schedule.

10        I guess our point is, amongst the other reasons, the

11   filing of the response to the order to show cause would inform

12   the dispute before your Honor, so that's what we are seeking.

13        MR. MOLLON:  If I can describe, I don't think Mr.

14   Mullins completely described the process.

15        The response that we have to put in is a substantive

16   response on the merits that requires us to not only join issue,

17   but to assert facts and evidence in opposition.  And it is

18   entirely possible under the FERC's procedures that this will be

19   the entirety of the due process that we receive before the

20   FERC --

21        THE COURT:  I am convinced.  Let's have opposition to

22   the order to show cause by September 7, 2007.  Reply papers by

23   September 17, 2007.  And let's have a hearing or argument on, I

24   am starting a trial in September -- well, I am starting a trial

25   and so I am kind of limited.  I could do Friday the 14th in the

1    early afternoon.  But we would have to back up the briefing a

2    little.  The 21st is Yom Kippur.  Or I could do the 28th.  I

3    don't know if that's too late.

4        MR. MOLLON:  We are willing to take less time to reply

5    if we can be heard on the 14th, Judge.

6        THE COURT:  That would be fine.

7        MR. MOLLON:  And I assume a day or two in advance of

8    the hearing would be sufficient for the other side.

9        MR. MAC GREGOR:  Actually, I am out that week, and we

10    have some other issues in terms of vacation schedules in terms

11    of briefings.  But the schedule you indicated initially would

12    work well.

13        THE COURT:  The 21st, the calendar says Yom Kippur

14    begins at sundown, I could do it in the morning.  I don't know

15    if that would affect them.

16        MR. MAC GREGOR:  I am out that week.

17        THE COURT:  Well, the other option is, if there is a

18    real time constraint, we do it September -- if we can do it

19    September 4 any time, or September 7, I will find some time on

20    the 7th.  Or we have to wait until September 28.  I am starting

21    my trial on September 5.

22        MR. MULLINS:  Your Honor, may I be heard?

23        THE COURT::  Yes.

24        MR. MULLINS:  For a variety of reasons, I would urge

25    the 28th just so we have additional time to brief up additional

*Court Conference w/ Judge Chin   8/16/2007  10:10:00 AM

1    issues.

2         THE COURT:  Their response is due on the 28th.  I do

3    think it defeats the purpose of the whole thing in light of

4    what I heard if they have to respond before I can consider

5    this.

6         MR. MULLINS:  We are available on Yom Kippur, your

7    Honor, that's not a problem.

8         THE COURT::  The CFTC?  Can Ms. Sultan cover?

9         MR. MOLLON:  Is the CFTC even filing anything?

10        THE COURT:  It is a party, I think it is entitled to

11   be here.

12        MR. MAC GREGOR:  I am a little confused as to choices.

13        THE COURT:  My suggestion would be Friday, September

14   14.

15        MR. MAC GREGOR:  And what would that do to the

16   briefing schedule?

17        THE COURT:  Well, we could leave it for the 7th and

18   the reply papers by close of business on the 12th.

19        MS. SULTAN:  That would work for us, your Honor.

20        THE COURT:  So let's have the hearing on the 14th at

21   11:30.  9-14 at 11:30.  This isn't the kind of thing we are

22   going to need witnesses, so it is just argument on the 14th at

23   11:30, and the reply papers will be due by close of business on

24   September 12.

25        Let's make sure they are served electronically or by

1    hand by the 7th.

2        MR. MOLLON:  That's fine.  I am sure we will be able

3    to do that.

4        Can we just make it the 12th and we will try to make

5    it by the close of business?

6        THE COURT:  The 12th is fine.

7        MR. MAC GREGOR:  September 7 for the --

8        THE COURT:  -- opposition papers by the 7th.

9        MR. MAC GREGOR:  Thank you, your Honor.

10        THE COURT:  That takes into account whatever vacation

11    plans are left in August.  And if you reach some kind of an

12    agreement, and the pressure is off, and you extend the

13    September 28 date, and you want to make an adjustment, that's

14    fine with me.

15        Anything else today?

16        MR. MOLLON:  No, your Honor.

17        THE COURT:  Okay, thank you.  Thank you for coming on

18    short notice.

19

20                    o0o

21

22

23

24

25

# EXHIBIT B

MEMORANDUM OF UNDERSTANDING

BETWEEN

THE FEDERAL ENERGY REGULATORY COMMISSION (FERC)

AND

THE COMMODITY FUTURES TRADING COMMISSION (CFTC)

REGARDING INFORMATION SHARING AND

TREATMENT OF PROPRIETARY TRADING AND OTHER INFORMATION

## Definitions

"**Aggregate data**" shall mean data utilized in a format that does not separately disclose the business transactions or market positions of any person, trade secrets, and/or names of customers.

"**CEA**" shall mean the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*

"**FPA**" shall mean the Federal Power Act, 16 U.S.C. § 791a, *et seq.*

"**Futures and options trading data**" shall mean data and information regarding commodity futures or options transactions as described in section 2(a)(1)(A) of the CEA, 7 U.S.C. § 2(a)(1)(A).

"**MOU**" shall mean this Memorandum of Understanding.

"**NGA**" shall mean the Natural Gas Act, 15 U.S.C. § 717, *et seq.*

"**NGPA**" shall mean the Natural Gas Policy Act of 1978, 15 U.S.C. § 3301, *et seq.*

"**Other information**" shall mean non-public enforcement and regulatory materials other than futures and options trading data.

"**Parties**" shall mean the FERC and the CFTC.

**Preamble**

WHEREAS, sections 316 and 1281 of the Energy Policy Act of 2005 direct that, within 180 days of its enactment on August 8, 2005, the FERC and the CFTC shall conclude a memorandum of understanding to ensure that information requests to markets within the respective jurisdiction of each agency are properly coordinated to minimize duplicative information requests, and to address the treatment of proprietary trading information;

WHEREAS, the CFTC has exclusive jurisdiction with respect to accounts, agreements, and transactions involving contracts of sale of a commodity for future delivery, including, but not limited to, natural gas, electricity, or any other energy product, traded or executed on or subject to the rules of a designated contract market, registered derivatives transaction execution facility, or any other board of trade, exchange, or market as described in section 2(a)(1)(A) of the CEA, 7 U.S.C. § 2(a)(1)(A);

WHEREAS, the FERC has exclusive jurisdiction over, among other things, the transportation of natural gas in interstate commerce and certain sales in interstate commerce of natural gas for resale as set forth in section 1 of the NGA, 15 U.S.C. § 717, and section 601(a) of the NGPA, 15 U.S.C. § 3431(a); certain other transportation and sales of natural gas authorized pursuant to section 311 of the NGPA, 15 U.S.C. § 3371; and the transmission of electric energy in interstate commerce and the sale of electric energy at wholesale in interstate commerce by public utilities, as described in section 201 of the FPA, 16 U.S.C. § 824;

WHEREAS, section 8(e) of the CEA, 7 U.S.C. § 12(e), permits but does not require the CFTC, upon the request of any department or agency of the government of the United States acting within the scope of its jurisdiction, to furnish to such department or agency any information in the possession of the CFTC obtained in connection with the administration of the CEA;

WHEREAS, section 8(e) of the CEA requires that any information so furnished by the CFTC to any federal department or agency not be disclosed by such department or agency except in an action or proceeding under the laws of the United States to which it, the CFTC, or the United States is a party;

WHEREAS, the CFTC engages in administrative and enforcement activities in accordance with the CEA of organized exchanges, registered entities, trading facilities, brokers, and persons engaged in activities subject to the CEA and rules and regulations of the CFTC;

WHEREAS, section 407(a) of the Department of Energy Organization Act (DOE Organization Act), 42 U.S.C. § 7177(a), requires each federal agency to provide to the FERC, upon request, such existing information in the possession of the agency as the FERC determines is necessary to carry out its responsibilities under the DOE Organization Act;

WHEREAS, the FERC engages in the administrative and enforcement activities identified in Appendix A pursuant to its statutory authority, as contemplated by section 8(e) of the CEA; and

WHEREAS, the CFTC and the FERC may from time to time engage in oversight or investigations of activity affecting both CFTC-jurisdictional and FERC-jurisdictional markets;

NOW, THEREFORE, this MOU is entered into by and between the Parties.


The Parties agree to the following:

Information requests by the FERC

1.      The FERC shall direct in writing to the CFTC any and all requests for futures and options trading data or other information from a designated contract market, a registered derivatives transaction execution facility, or any other board of trade, exchange, or market. The CFTC shall promptly obtain this data and furnish it to the FERC under the conditions set forth in this MOU.

2.      Any futures and options trading data or other information furnished pursuant to this MOU by the CFTC to the FERC shall be kept confidential and non-public, and shall not be disclosed or made available by the FERC to any other person except in an action or proceeding under the laws of the United States to which the FERC, the CFTC, or the United States is a party in accordance with section 8(e) of the CEA. The FERC may disclose to other persons futures and options trading data or other information the CFTC furnishes under this MOU only in an administrative or enforcement proceeding listed in Appendix A.

Information requests by the CFTC

3.      In the event the CFTC seeks data or information which may be in the possession of the FERC, the CFTC shall direct in writing a request for such information to the FERC. If the information is in the possession of the FERC, the FERC shall furnish it to the CFTC under the conditions set forth in this MOU. If the information is not in the possession of the FERC, the FERC will so inform the CFTC promptly.

4.      Any data or information obtained by the FERC pursuant to the confidentiality provisions of 18 C.F.R. Part 1b or any other FERC confidentiality regulation, and furnished pursuant to this MOU by the FERC to the CFTC, shall be kept confidential and non-public, and shall not be disclosed or made available by the CFTC to any other person except in an action or proceeding under the laws of the United States to which the CFTC or the United States is a party.

Information requests, general provisions

5.      The Parties will confer on coordinating procedures relating to the disclosure of information so as to conform to third-party notice requirements of their respective regulations.

6.      The Parties agree to avoid duplicative information requests to the extent possible, and to coordinate on a regular basis oversight, investigative, and enforcement activities of mutual interest. To facilitate this coordination, the respective oversight and enforcement staffs of the FERC and CFTC are authorized to share information concerning ongoing oversight,

investigative, and enforcement activities to determine whether and when they have a mutual interest in matters.

7.    The Parties agree that this MOU does not in any way interfere with, proscribe, or adversely affect the ability or authority of the FERC or the CFTC to obtain any information directly from entities subject to their powers to obtain information.

Treatment of proprietary information

8.    Aggregate data furnished or derived from data furnished pursuant to this MOU by the FERC to the CFTC or by the CFTC to the FERC may be disclosed or made available by the recipient agency and are not subject to the restrictions in paragraphs 2 and 4.

9.    The disclosure or publication by the FERC of any report, history, evaluation, narrative, analysis, or other document to any person outside the FERC, whether that person is within or without the federal government, that contains futures and options trading data or other information provided by the CFTC to the FERC pursuant to this MOU may not be made without the prior written consent of the CFTC, except as permitted by paragraph 2 herein.  The disclosure or publication by the CFTC of any report, history, evaluation, narrative, analysis, or other document to any person outside the CFTC, whether that person is within or without the federal government, that contains confidential or non-public information provided by the FERC to the CFTC pursuant to this MOU may not be made without the prior written consent of the FERC, except as permitted by paragraph 4 herein.  Requests for written consent may be made in accord with paragraph 11.  This limitation does not apply to disclosure or publication of aggregate data only, or to the disclosure or publication of information received by other means.

10.    Except as permitted by section 8(e) of the CEA, and unless prohibited by federal law, the FERC shall promptly notify the CFTC in writing in accord with paragraph 11 of the receipt of any request or demand of the FERC for the disclosure of futures and options trading data or other information that has been furnished by the CFTC to the FERC pursuant to this MOU.  The CFTC shall unless prohibited by federal law promptly notify the FERC in writing of the receipt of any request or demand of the CFTC for the disclosure of confidential or non-public data or information that has been furnished by the FERC to the CFTC pursuant to this MOU.  This includes, but is not limited to, an informal request, a subpoena, a court order, or a request pursuant to the Freedom of Information Act (FOIA).   In responding to any such request other than a FOIA request, the FERC and the CFTC each shall assert all legal exemptions and privileges on the other's behalf that may reasonably be requested to be asserted.  The FERC shall refer any FOIA request to the CFTC for disposition by the CFTC, and the CFTC shall refer any FOIA request to the FERC for disposition by the FERC.

Implementation

11.    The FERC designates its General Counsel and his or her designees as its point(s) of contact for requesting or providing any data or information or notifications as required by this MOU.  The CFTC designates its Director of the Division of Enforcement and his or her

designees as its point(s) of contact for requesting or providing any data or information or notifications as required by this MOU.

12.    The disclosure of any of the futures and options trading data or other information to the FERC, or the subsequent disclosure of futures and options data or other information by the FERC pursuant to the terms of this MOU, and the disclosure of any confidential or non-public data or information to the CFTC, or subsequent disclosure of confidential or non-public data or information by the CFTC pursuant to the terms of this MOU, does not constitute a waiver with regard to any confidentiality or privilege of undisclosed data or information.  In addition, this MOU does not create any right enforceable against the FERC or the CFTC or any of their members, officials, or employees.

13.    The Parties agree that no further authorizations are necessary for their respective staffs to undertake an information request; exchange of data or information; exchange of oversight, investigation, and enforcement interests; discussion among staff of mutual interests; or otherwise to conduct activities as described by this MOU.  All such information requests and exchanges shall be initiated by a written request.

14.    This MOU shall become effective as of the date of its signing, and may be revised or modified only upon the written agreement of the Parties, or as required by changes in relevant laws.


Agreed to this  12th  day of  __October___, 2005



Reuben Jeffrey III                      Joseph T. Kelliher
Reuben Jeffery III, Chairman            Joseph T. Kelliher, Chairman
Commodity Futures Trading Commission    Federal Energy Regulatory Commission

APPENDIX A

FERC ADMINISTRATIVE AND ENFORCEMENT ACTIONS

1.    Any FERC action filed in a U.S. District Court to enjoin violations of, or to enforce
      compliance with, any provision of law or any rule or order issued thereunder pursuant
      to:  section 314 of the Federal Power Act (FPA), 16 U.S.C. § 825m (2000); section 20
      of the Natural Gas Act (NGA), 15 U.S.C. § 717s; section 504(b)(1) of the Natural
      Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3413(b)(1); or comparable statutory
      authority under any other law administered by FERC, including the Energy Policy
      Act of 2005.

2.    Any FERC action filed in a U.S. District Court to affirm an assessment of a civil
      penalty or to recover the amount of such a penalty pursuant to:  FPA section 31, 16
      U.S.C. § 823b; NGPA section 504(b)(6); or comparable statutory authority under any
      other law administered by FERC, including the Energy Policy Act of 2005.

3.    Any action in any court in which FERC is a defendant, intervener, plaintiff, or other
      party.

4.    Any level of judicial appeal of an order issued in an action described in items 1, 2, or
      3 above.

5.    Any administrative proceeding or matter filed with or initiated by FERC in which (a)
      the compliance of an entity with any provision of the FPA, NGA, NGPA, any other
      law administered by FERC, or any rule or order issued thereunder is at issue, and (b)
      FERC staff participates, that may result in the issuance of an order, including but not
      limited to matters under FPA § 206, NGA § 5, and non-public matters under 18
      C.F.R. Part 1b.

6.    Any level of judicial appeal of an order FERC issues in an administrative proceeding
      described in item 5 above.

# EXHIBIT C

COMM-OPINION-ORDER, 74 FERC ¶61,311, New York Mercantile Exchange, Docket No. EL95-81-000, (Mar. 27, 1996)

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

New York Mercantile Exchange, Docket No. EL95-81-000

[61,984]

[¶61,311]

New York Mercantile Exchange, Docket No. EL95-81-000

Order on Definition of Security Under the Federal Power Act

(Issued March 27, 1996)

Before Commissioners: Elizabeth Anne Moler, Chair; Vicky A. Bailey, James J. Hoecker, William L. Massey, and Donald F. Santa, Jr.

## I. Summary

This order addresses the New York Mercantile Exchange's (NYMEX) petition for a declaratory order. In its petition, NYMEX requests that the Commission find that an electricity futures contract approved for trading by the Commodity Futures Trading Commission (CFTC) is not a security within the meaning of section 3(16) of the Federal Power Act (FPA). [1]

As discussed below, the Commission finds that such an electricity futures contract [2] is not a security within the meaning of section 3(16) of the FPA, and thus is not subject to the Commission's jurisdiction under sections 203 and 204 of the FPA. [3]

However, as also discussed below, sections 205 and 206 of the FPA [4] would apply if an electricity futures contract goes to delivery, the electric energy sold under the contract will be resold in interstate commerce, and the seller is a public utility.

If all three conditions are present, the public utility seller would have to have, at the moment of delivery, a rate schedule on file for the transaction. [5]

## II. Background

A. *NYMEX's Petition to the CFTC*

On August 9, 1995, NYMEX submitted two applications to the CFTC under the Commodity Exchange Act. [6] Each application proposed to have NYMEX designated as a contract market for electricity futures. NYMEX states that the two proposed electricity futures contracts [7] are designated as the Palo Verde Electricity Futures Contract (Palo Verde

Contract) and the California-Oregon Border (COB) Electricity Futures Contract (COB Contract). [8] NYMEX states that these contracts provide for the future delivery of electricity at approved delivery locations during specified periods. [9]

Specifically, NYMEX asserts that the contract unit for both contracts is 736 MWH of firm electric energy, delivered at a rate of 2 MW each hour over specified hours during the delivery month. NYMEX explains that the standard delivery point for the Palo Verde Contract is the Palo Verde Switchyard (a high-voltage, 500 kV switchyard to the Palo Verde Nuclear Generating Station) located near Wintersberg, Arizona. NYMEX also states that the standard delivery point for the COB contract consists of the points of interconnection of three 500 kV transmission lines at the border between California and Oregon.

Recently, the CFTC designated NYMEX as a contract market for the Palo Verde and COB Contracts and for options on those contracts under sections 4c and 5 of the Commodity Exchange Act. [10]

B. *NYMEX's Petition to the Commission*

On September 28, 1995, NYMEX filed a petition for declaratory order in Docket No.

**[61,985]**

EL95-81-000 asking that the Commission find that the two applications it filed with the CFTC for designation of NYMEX as a contract market in electricity futures, if approved and offered for trading, would not be securities within the meaning of section 3(16) of the FPA. Furthermore, NYMEX asks that, to the extent public utilities elect to take short (seller) or long (buyer) positions under such contracts, these utilities would not be engaged in an activity that is subject to Commission regulation under sections 203 and 204 of the FPA. NYMEX adds, however, that where a public utility seller is matched with a buyer in what becomes a sale for resale in interstate commerce (in fact, actual delivery is expected to occur in a small fraction of cases), the rate and tariff filing requirements of sections 205 and 206 of the FPA would apply.

NYMEX makes the following four arguments in support of its petition. First, NYMEX argues that the legislative history of Part II of the FPA does not support the Commission's jurisdiction over CFTC-approved futures contracts. Second, NYMEX argues that federal securities law also supports the view that electricity futures contracts are not securities. Third, NYMEX argues that Commission precedent supports a finding that an electricity futures contract is not a security under section 3 (16) of the FPA. NYMEX claims that the Commission has held that an instrument is a security under the FPA only when it represents an ownership interest or evidence of indebtedness on the part of the holder, and NYMEX argues that an electricity futures contract is neither. Fourth, NYMEX argues that underlying federal policy supports the conclusion that the contracts are not securities. NYMEX argues that there will be no regulatory gap if the Commission disclaims jurisdiction because the CFTC will provide full regulatory oversight with respect to all aspects of trading and reporting in connection with transactions in the contracts.

Notice of NYMEX's filing was published in the *Federal Register*, [11] with comments, protests, and motions to intervene due on or before November 15, 1995.

C. *Interventions*

On November 13, 1995, Tule Hub Services Company (Tule) filed a motion to intervene. Tule asserts that electricity futures contracts do not constitute securities within the meaning of section 3(16) of the FPA and that the trading of these contracts by public utilities is not within the Commission's jurisdiction under sections 203 and 204 of the FPA.

On November 15, 1995, Phibro Inc. (Phibro) and J. Aron Company (J. Aron) field motions to intervene and comments in support of the petition. Both Phibro and J. Aron state that neither the language and legislative history of the FPA nor judicial and administrative interpretations indicate that the definition of securities under section 3(16) of the FPA includes electricity futures contracts. On November 15, 1995, Sonat Power Marketing Inc. (Sonat) and San Diego Gas & Electric

Company (San Diego) filed separate motions to intervene but take no position on the issue.

On November 16, 1995, Edison Electric Institute (Edison Electric) filed a reply. Edison Electric does not take any position on whether electricity futures contracts are subject to the Commission's jurisdiction under the FPA, but states that should the electricity futures contracts proposed by NYMEX go to delivery, the Commission clearly would have jurisdiction over those transactions under the FPA. Edison Electric also states that since the Commission has required marketers to report actual deliveries on a quarterly basis, the Commission should require this of NYMEX as well. [12]

### III. Discussion

Under rule 214 of the Commission's Rules of Practice and Procedure, [13] the timely, unopposed motions to intervene serve to make the intervenors parties to this proceeding.

A. *Statutory Provisions and Legislative History*

A plain reading of the definition of security under the FPA suggests that an electricity futures contract approved for trading by the CFTC is not a security under the FPA since it is not expressly listed among those items that are considered to be securities under the FPA. [14] Furthermore, our review of the legislative history of the FPA (as well as our review of the text and legislative history of PUHCA [15]) lends no support to the contrary notion that an electricity futures contract approved for trading

[61,986]

by the CFTC should be included in the definition of security under the FPA.

The section 3(16) definition of security was enacted in the 1935 amendments to the Federal Water Power Act of 1920. As just noted, the statutory definition of security does not include futures contracts. The legislative history likewise does not suggest an intent on the part of the drafters to include futures contracts. [16] Although the legislative history does not reveal the exact parameters of the term security, a review of the legislative history of sections 203 and 204 of the FPA suggests the intent of the drafters. The concern was clearly the financial integrity of the public utility, and its ability to continue to provide adequate service to its customers while issuing or investing in financial instruments. While futures contracts were well known at that time and while the drafters were certainly troubled by inappropriate financial conduct and activities, we find no mention that trading in futures contracts contributed to this concern. [17]

In contrast, Congress created the CFTC expressly to supervise futures trading. The jurisdictional parameters of the CFTC are stated in section 2(i) of the Commodity Exchange Act, [18] which reads:

[T]he Commission shall have exclusive jurisdiction . . . with respect to accounts, agreements . . . and transactions involving contracts of sale of a commodity [ [19]] for future delivery, traded or executed on a contract market . . . . Except as hereinabove provided, nothing contained in this section shall (I) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or any State, or (II) restrict the Securities and Exchange Commission and other authorities from carrying out their duties and responsibilities in accordance with such laws. Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State. . . .

Our review of the legislative history of the Commodity Exchange Act, as amended, indicates that this provision was enacted to give a single expert agency the responsibility for developing a coherent regulatory program for the commodities industry and to prevent the costs and confusion associated with multiple regulators. [20] In fact, courts have

*In 1996, FERC itself*

upheld the CFTC's exclusive jurisdiction over futures contracts reasoning that they are not securities under other federal laws. [21]

B. *Commission Precedent*

A review of Commission precedent indicates that the Commission traditionally has viewed the FPA section 3(16) definition of security broadly. The Commission has found a variety of conventional financial instruments and indicia of ownership to be securities within the meaning of section 3(16) of the FPA. However, while the Commission to date has never specifically addressed whether an electricity futures contract approved for trading by the CFTC is a security under the FPA, the Commission has not encompassed within the definition of security financial instruments that, like such futures contracts, do not represent an ownership interest or evidence of indebtedness. [22]

C. *Conclusion*

We conclude, based on the language of the FPA and the legislative history of the FPA,

**[61,987]**

Congress' creation of the CFTC and its vesting the CFTC with exclusive jurisdiction over the trading of futures contracts, and Commission precedent, that the term security as defined in section 3(16) of the FPA does not include electricity futures contracts approved for trading by the CFTC. Therefore, such electricity futures contracts are not within our jurisdiction under sections 203 and 204 of the FPA.

However, in order to avoid future misunderstandings, we note that we would have jurisdiction pursuant to sections 205 and 206 of the FPA if the electricity futures contract goes to delivery, the electric energy sold under the contract will be resold in interstate commerce, and the seller is a public utility. If all three conditions are present, the public utility seller would have to have, at the moment of delivery, a rate schedule on file for the transaction.

*The Commission orders*:

NYMEX's petition for a declaratory order that an electricity futures contract approved for trading by the CFTC is not a security within the meaning of section 3(16) of the FPA, and thus is not subject to the Commission's jurisdiction under sections 203 and 204 of the FPA, is hereby granted as discussed in the body of this order.

-- Footnotes --

**[61,984]**

[1] 16 U.S.C. §796 (16) (1994).

[2] Since they were not the subject of NYMEX's petition, this order does not address whether the Commission has jurisdiction over other types of risk management instruments; *e.g.*, options contracts, forwards contracts, or swap agreements.

[3] 16 U.S.C. §§824 b, 824c (1994).

[4] 16 U.S.C. §§824 d, 824e (1994).

[5] Prior Notice and Filing Requirements Under Part II of the Federal Power Act, 64 FERC ¶61,139, at pp. 61,977 , 61,985-89 , *order on reh'g*, 65 FERC ¶61,081 (1993); 16 U.S.C. §824 d(c) (1994); 18 C.F.R. §35.1 (1995).

[6] 7 U.S.C. §1 *et seq.* (1994).

[7] The term futures contract is generally considered to be a contract for the purchase and sale of commodities for delivery some time in the future on an organized exchange and subject to the terms and conditions of the exchange. S. Rep. No. 1131, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.n.5843, 5856.

[8] NYMEX subsequently filed other applications requesting that it be designated a contract market for options on the two electricity futures contracts.

[9] Our decision that an exchange-traded electricity futures contract is not a security as defined in section 3(16) of the FPA does not hinge on the delivery locations. Thus, our findings herein will not be affected if the CFTC allows NYMEX to be a contract market for electricity futures contracts for delivery at other locations.

[10] 7 U.S.C. §§6c and 7 (1994).

**[61,985]**

[11] 60 Fed. Reg. 53600 (1995).

[12] While such power marketers are public utilities, Edison Electric does not indicate how NYMEX would be subject to the Commission's jurisdiction.

[13] 18 C.F.R. §385.214 (1995).

[14] Section 3(16) of the FPA defines security as:

> any note, stock, treasury stock, bond, debenture, or other evidence of interest in or indebtedness of a corporation subject to the provisions of this Act.

> 16 U.S.C. §796 (16) (1994).

[15] PUHCA was adopted simultaneously with Parts II and III of the FPA in the Public Utility Act of 1935.

**[61,986]**

[16] *See* Public Utility Holding Companies, Hearings on H.R. 5423 before the House Comm. on Interstate and Foreign Commerce, 74th Cong., 1st Sess. 388 (1935).

[17] Our review of PUHCA also does not support a finding that futures contracts were to be encompassed within the meaning of security as defined in section 3(16) of the FPA. While the term security is defined in PUHCA, 15 U.S.C. §79 b(a)(16) (1994), futures contracts also were not expressly included in the PUHCA definition of security. However, whether the PUHCA definition of security encompasses an electricity futures contract approved for trading by the CFTC is an issue for the Securities and Exchange Commission.

[18] 7 U.S.C. §2(i) (1994).

[19] Under section 1a(3) of the Commodity Exchange Act, as amended, the term commodity means any goods and articles, except onions, and all services, rights, and interests in contracts for future delivery. 7 U.S.C. §1a(3) (1994). Thus, electricity is a commodity for purposes of the Commodity Exchange Act.

[20] *See* Thomas A. Russo, Regulation of the Commodities Futures and Options Markets §10.03 at p. 10-7 (1983).

[21] *See Chicago Mercantile Exchange v. SEC*, 883 F.2d 537, 542 (7th Cir. 1989), *cert. denied sub nom. Investment Company Institute v. SEC*, 496 U.S. 936 (1990); *SEC v. Commodity Options International, Inc.*, 553 F.2d 628, 632 (9th Cir. 1977).

[22] *See generally Citizens Utilities Company*, 71 FERC ¶62,251 (1995) (stock dividends are securities); *UtiliCorp United Inc.*, 59 FERC ¶61,220 (1992) (Commission approval required prior to guaranteeing any note, stock, treasury stocks,

bonds, and debentures); *Ocean State Power*, 43 FERC ¶61,466 (1988) (equity interests in company are securities); *El Paso Electric Company*, 36 FERC ¶61,055 (1986) (lease arrangement is not a security). *Accord, Edison Electric Institute*, 60 FERC ¶61,294 (1992) (commercial paper is a security under section 305(b) of the FPA); *Edison Electric Institute*, 14 FERC ¶61,286 , *order granting rehearing and clarifying prior order*, 15 FERC ¶61,173 (1981) (same).

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

# EXHIBIT D

1 of 1 DOCUMENT

Copyright 2007 Factiva ®, from Dow Jones
All Rights Reserved



(c) 2007 Dow Jones & Company, Inc.
Dow Jones International News

September 26, 2007 Wednesday 12:51 AM GMT

**LENGTH:** 1299 words

**HEADLINE:** UPDATE: Court May Settle CFTC, FERC Oversight Turf Battle

**BODY:**

(Updates with comments from a FERC commissioner.)

By Ian Talley

Of DOW JONES NEWSWIRES

WASHINGTON (Dow Jones)--A potential turf battle brewing in a New York federal court may help determine jurisdiction in U.S. energy markets between the two major government agencies responsible for oversight.

In question is whether the Federal Energy Regulatory Commission - which normally oversees physical markets - has jurisdiction over futures, or if that is the exclusive domain of the Commodity Futures Trading Commission.

Lawmakers fear that the judge in the case may curtail oversight by the FERC, and may weaken surveillance of the physical and futures energy markets.

The warnings come as Congress considers giving regulators greater market oversight in both regulated and unregulated markets, such as electronic trading platforms like the Intercontinental Exchange.

"We believe that a jurisdictional battle between the CFTC and FERC will weaken both Commissions, and could significantly constrain our government's ability to pursue future market manipulation cases," Senators Dianne Feinstein, D-Calif., Maria Cantwell, D-Wash., and Ron Wyden, D-Ore., said in a letter to the regulatory agencies Friday. "The American people need both FERC and CFTC to fight market manipulators, not each other," the senators said.

The question of jurisdiction was raised by the defendant in a major suit against Amaranth Advisors LLC, alleging manipulation of natural gas prices.

The CFTC in July filed a case against Amaranth in connection with alleged manipulation of futures markets. FERC filed a similar suit against Amaranth, alleging Amaranth's manipulation of futures' markets impacted the physical market, where it has historically provided regulation.

In the CFTC case, Amaranth filed for an injunction against FERC's case proceeding, arguing that CFTC has exclusive jurisdiction over futures markets.

The judge Friday extended the deadline for requested briefs by the parties.

The CFTC earlier this month warned federal lawmakers the defendant could try to undercut the government's case by arguing that only the CFTC - and not FERC - has exclusive jurisdiction.

This is the first case the FERC has filed under new powers received through the Energy Policy Act of 2005, which FERC believes allows it to regulate futures markets that impinge on physical markets.

UPDATE: Court May Settle CFTC, FERC Oversight Turf Battle Dow Jones International News September 26, 2007
Wednesday 12:51 AM GMT

Lawmakers and industry officials are watching the case closely as the judge could clarify the law - outlining jurisdiction - or get FERC and the CFTC to agree to boundaries. He could also conceivably send the issue back to Congress - given that the Amaranth case is the first filed under FERC's new authority mandated under the Energy Policy Act - by not ruling on jurisdiction at all.

FERC Chairman Joseph Kelliher said that without the power given to it under the Energy Policy Act, it wouldn't be able to protect individuals and companies that purchase natural gas in the market for use. He said if the judge approved Amaranth's request, it could create a "regulatory gap."

CFTC spokeswoman Ianthe Zabel said the agency would let the CFTC's briefing to the court speak on the details of the case. FERC's and CFTC's briefings are due Friday. Zabel added, however, "The CFTC and FERC share a common goal of ensuring that the energy markets remain free from manipulation and we will continue to work cooperatively in meeting that goal. No gaps exist in the federal regulation of the energy markets."

The industry is already picking sides.

In a letter to the chairmen of FERC and CFTC, the head of the National Association of Regulatory Utility Commissioners said it supported maintaining the increased authority given to FERC in the Act.

Naruc argued in the letter that the intent of Congress in the Energy Policy Act, also known as EPAct05, "was to provide the FERC with the legal authority and regulatory tools needed to play a primary role in wholesale energy market regulation and oversight, while leaving regulation of the exchanges themselves and the contents of exchange-traded instruments to the CFTC."

Naruc said if Amaranth's claims of CFTC's exclusive jurisdiction are upheld by the court, "it would gut provisions of EPAct05 and leave consumers vulnerable to market manipulation affecting FERC-jurisdictional physical markets."

The American Public Power Association, American Public Gas Association and the National Rural Electric Cooperative Association filed an amicus briefing with the court - a document allowed by the judge to help advise him on the situation - asking the judge not to block the FERC case. The groups said they have "vital interests in the FERC (case against Amaranth) and FERC's anti-manipulation authority." One of the APGA's 680 municipal and local distribution company members testified to Congress earlier this year that they were forced to pay an $18 million premium as a result of Amaranth's alleged market manipulation and speculation.

Mark Young, an attorney at Kirkland and Ellis LLP, which represents the Futures Industry Association and is drafting an amicus briefing on behalf of raft of industry groups and exchanges, said the organizations support the claim of exclusive jurisdiction. Young said the briefing - being filed on behalf of the FIA, the New York Mercantile Exchange (NMX), the Chicago Mercantile Exchange (CME) and the Managed Funds Association - asks the judge to grant the injunction against the FERC case.

"The law clearly gives the CFTC the exclusive right to protect participants in the futures markets," said Greg Zerzan, Counsel & Head of Global Public Policy, for the International Swaps and Derivatives Association. "Attempts by other agencies to assert overlapping jurisdiction will create regulatory uncertainty and harm the markets," he said.

"The exclusive jurisdiction serves a vital purpose," said Young at Kirkland and Ellis, warning that if the judged didn't grant exclusive jurisdiction, it could create further jurisdictional problems. "Futures markets and participants will end up being regulated by not just FERC, but the Securities Exchange Commission with respect to equity indexes, the Treasury Department with respect to government securities and foreign currency, maybe even the Fed with respect to interest rates," he said.

"If CFTC jurisdiction is balkanized in that way, the Commodity Exchange Act just won't work and the futures industry in this country will operate under an enormous disincentive and disadvantage," he added.

FERC Commissioner Suedeen Kelly told Dow Jones she didn't believe the issue was a "turf battle," and pointed to the fact that the agencies had cooperated on investigations since the Energy Policy Act had updated FERCs authority.

She also said that FERC's authority extended into any market where physical energy markets were impacted by price manipulation. "We have a duty to ensure that activities that adversely affect the physical markets in any market are pursued," she said, adding that it was conceivable that FERC could investigate currency markets or metals markets if manipulation there was impacting FERC's primary domain.

UPDATE: Court May Settle CFTC, FERC Oversight Turf Battle Dow Jones International News September 26, 2007
Wednesday 12:51 AM GMT

People close to FERC and CFTC say that while FERC and CFTC were aware of the possible jurisdictional questions in filing their cases against Amaranth, there was far more cooperation between them than any intentional crossing of boundaries.

"Kelliher and (Acting CFTC Chairman Walter) Lukken, don't want to this to blow up into a turf battle," said one of the people with close ties to the agencies. "There was never any intent to escalate into this issue, but the reality is that it has escalated because of Amaranth's filing," he said.

-By Ian Talley, Dow Jones Newswires, 202-862-9285; ian.talley@dowjones.com [ 26-09-07 0051GMT ]

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** September 27, 2007

# EXHIBIT E

COLLIN C. PETERSON, MINNESOTA,
CHAIRMAN

TIM HOLDEN, PENNSYLVANIA,
VICE CHAIRMAN

MIKE McINTYRE, NORTH CAROLINA
BOB ETHERIDGE, NORTH CAROLINA
LEONARD L. BOSWELL, IOWA
JOE BACA, CALIFORNIA
DENNIS A. CARDOZA, CALIFORNIA
DAVID SCOTT, GEORGIA
JIM MARSHALL, GEORGIA
STEPHANIE HERSETH, SOUTH DAKOTA
HENRY CUELLAR, TEXAS
JIM COSTA, CALIFORNIA
JOHN T. SALAZAR, COLORADO
BRAD ELLSWORTH, INDIANA
NANCY E. BOYDA, KANSAS
ZACHARY T. SPACE, OHIO
TIMOTHY J. WALZ, MINNESOTA
KIRSTEN E. GILLIBRAND, NEW YORK
STEVE KAGEN, WISCONSIN
EARL POMEROY, NORTH DAKOTA
LINCOLN DAVIS, TENNESSEE
JOHN BARROW, GEORGIA
NICK LAMPSON, TEXAS
JOE DONNELLY, INDIANA
TIM MAHONEY, FLORIDA

# U.S. House of Representatives
## Committee on Agriculture
### Room 1301, Longworth House Office Building
### Washington, DC 20515–6001

(202) 225-2171
(202) 225-8510 FAX

BOB GOODLATTE, VIRGINIA,
RANKING MINORITY MEMBER

TERRY EVERETT, ALABAMA
FRANK D. LUCAS, OKLAHOMA
JERRY MORAN, KANSAS
ROBIN HAYES, NORTH CAROLINA
TIMOTHY V. JOHNSON, ILLINOIS
SAM GRAVES, MISSOURI
JO BONNER, ALABAMA
MIKE ROGERS, ALABAMA
STEVE KING, IOWA
MARILYN N. MUSGRAVE, COLORADO
RANDY NEUGEBAUER, TEXAS
CHARLES W. BOUSTANY, JR., LOUISIANA
JOHN R. "RANDY" KUHL, JR., NEW YORK
VIRGINIA FOXX, NORTH CAROLINA
K. MICHAEL CONAWAY, TEXAS
JEFF FORTENBERRY, NEBRASKA
JEAN SCHMIDT, OHIO
ADRIAN SMITH, NEBRASKA
KEVIN McCARTHY, CALIFORNIA
TIMOTHY WALBERG, MICHIGAN

ROBERT L. LAREW,
CHIEF OF STAFF

ANDREW W. BAKER,
CHIEF COUNSEL

WILLIAM E. O'CONNER, JR.,
MINORITY STAFF DIRECTOR

September 27, 2008

The Honorable Walt Lukken
Acting Chairman
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC  20581

Dear Chairman Lukken:

We are writing to reaffirm that §2(a)(1)(A) of the Commodity Exchange Act dedicates to the Commodity Futures Trading Commission exclusive jurisdiction over the trading of futures contracts. The testimony the House Committee on Agriculture's General Farm Commodities and Risk Management Subcommittee received at its September 26, 2007 hearing, and the consensus of the members at the hearing confirms the jurisdictional grant. We applaud the anti-manipulation efforts of the CFTC and the FERC and we encourage both agencies to continue to work together to protect the integrity of the energy market.

The Commodity Exchange Act §2(a)(1)(A) clearly charges the CFTC with "…exclusive jurisdiction, …with respect to… transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated or derivatives transaction execution facility". We are pleased that the CFTC has taken this statutory charge as seriously as it has.

Congress made this unusual grant of exclusive jurisdiction to end the confusion caused by two separate federal regulators. This wisdom continues to prove itself. The markets regulated by CFTC have grown at unprecedented rates since 2000. If the CFTC were to cede jurisdiction, it will not only abrogate the law, it will ignore the singular vision Congress intended for the CFTC, and invite those who look to nefariously arbitrage multiple regulatory regimes back to the futures market.

The Honorable Walter Lukken
Page 2


It is the CFTC's primary responsibility to protect the integrity of the futures market. We congratulate the entire commission for taking this obligation so seriously. Please continue to work with all the resources of the federal government to stamp out fraud any place it may rear its ugly head.

Sincerely,


Collin Peterson,
Chairman

Bob Goodlatte,
Ranking Member


Bob Etheridge, Chairman, Subcommittee
on General Farm Commodities and Risk
Management

Jerry Moran, Ranking Member,
Subcommittee on General Farm
Commodities and Risk Management