# EXHIBIT G

*1*

| 95TH CONGRESS | HOUSE OF REPRESENTATIVES | REPORT |
| 2d Session | | No. 95-1181 |

2(G)(4)

# COMMODITY EXCHANGE ACT EXTENSION AND AMENDMENTS

MAY 15, 1978.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. FOLEY, from the Committee on Agriculture, submitted the following

# REPORT

together with

## ADDITIONAL VIEWS AND SEPARATE VIEWS

[To accompany H.R. 10285]

[Together with Congressional Budget Office Cost Estimate]

## CONTENTS

| | Page |
|---|---|
| Committee amendments | 3 |
| Summary | 8 |
| Purpose and need for the legislation | 10 |
|   1. Extension of funding authorization | 11 |
|   2. Jurisdictional issues | 12 |
|   3. Commodity option transactions | 16 |
|   4. Disclosure of market information | 18 |
|   5. Registration of a title III organization | 19 |
|   6. Provisions strengthening enforcement of the Commodity Exchange Act | 20 |
|   7. Management and operations of the Commission | 21 |
| Section-by-section analysis | 23 |
|   Section 1. Composition and functions of Commission; conflict of interest; liaison with other agencies; Senate confirmation of the CFTC Executive Director; conforming and technical amendments | 23 |
|   Section 2. Approval of Contract Market Rules; options trading | 25 |
|   Section 3. Customers' funds and property | 26 |
|   Section 4. Registration of futures commission merchants and floor brokers | 26 |
|   Section 5. Maintenance of trading records by floor brokers | 26 |
|   Section 6. Registration of associated persons | 26 |
|   Section 7. Registration of commodity trading advisers and commodity pool operators | 27 |
|   Section 8. Prohibition of fraudulent transactions by commodity trading advisers and commodity pool operators | 27 |
|   Section 9. Arbitration by registered futures association | 27 |
|   Section 10. Hearing on the record for refusal, suspension or revocation of "Contract Market" designation; Commission subpena power | 27 |
|   Section 11. Hearing on the record for a cease and desist order to imposition of a civil money penalty against a contract market | 28 |
|   Section 12. Jurisdiction of the States | 28 |

executed on a contract market designated pursuant to section 5 of the Commodity Exchange Act or any other Board of Trade, exchange or market.

It was then the intent that under the exclusive grant of jurisdiction to the Commission, the authority in the Commodity Exchange Act (and the regulations) issued by the Commission would preempt the field insofar as futures regulation is concerned.

Congress was aware in 1974 that proposals for futures trading in financial instruments and Government securities were being developed by the futures industry. Recognizing the risk-shifting and price-discovery functions of the futures markets, regulation of futures contracts on financial instruments and Government securities under the Commodity Exchange Act was vested in the single expert agency that had been created to administer the Act—the Commodity Futures Trading Commission.

During the past three years the Commission has approved four applications for designation of contract markets involving futures trading where financial instruments—mortgage-backed certificates guaranted by the Government National Mortgage Association, short term commercial paper, Treasury bills and Treasury bonds—constituted the commodity to be traded. There is currently under review applications for approval of futures contracts in other financial instruments.

The Committee has reevaluated this Congressional judgment as a result of concerns expressed by the Department of the Treasury, the Securities and Exchange Commission, and the General Accounting Office and others. The Treasury Department has asked for legislation which would grant it authority to veto applications for new futures contracts in financial instruments issued or guaranteed by a United States Government agency and to suspend trading in any such futures contracts should it determine such action to be necessary. The Securities and Exchange Commission has testified in support of legislation that would transfer to it jurisdiction over futures contracts written on financial instruments and other securities, as well as options on such futures contracts. A similar recommendation was received from the General Accounting Office. These agencies urged that a form of vertical integration of Federal regulation over these new futures markets be imposed; under their proposals the agency that issues or has authority to investigate fraudulent activities in the offer and sale of Government securities or financial instruments in the cash markets would also have jurisdiction over the corresponding futures contract based on these securities or instruments.

The Committee believes, however, that the Congressional judgment in 1974 to maintain the traditional horizontal regulatory approach to commodity futures trading under the Commodity Exchange Act is sound. The Committee is of the view that jurisdiction over futures markets should reside in an agency such as the Commission whose regulatory role requires an economic expertise which focuses upon the risk-shifting and price-determining function that futures trading performs. Futures markets have not remained static and futures regulations have covered an increasing number of commodities as the benefits of futures trading has become more widely understood. The Committee does not believe that the public interest would be served by duplicating in one or more additional agencies regulatory authority over futures markets that presently exists in the Commodity Futures Trading Commission.

3

Calendar No. 781

| 95TH CONGRESS 2d Session | SENATE | REPORT No. 95-850 |

# REAUTHORIZATION OF THE COMMODITY FUTURES TRADING COMMISSION

## REPORT

OF THE

## COMMITTEE ON AGRICULTURE, NUTRITION, AND FORESTRY UNITED STATES SENATE

TO ACCOMPANY

## S. 2391



MAY 15 (legislative day, APRIL 24), 1978.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1978

★ (Star Print)

23

<div style="columns:2">

h regulates the exchanges on
sees a comprehensive system
lying industrial equities.
s of the production and mar-
contracts are established was
erse Government agencies as
ureau of Mines, the Maritime
ent of Agriculture.
ects the congressional aware-
main static. This action also
 economic benefits of futures
 where such trading would be
re in 1974 that proposals for
s and Government securities

ent in rapid development and
IMA mortgage-backed securi-

ditional sense. However, the
 these commodities to hedge
ty, as well as aid in market

ts has stimulated the propos-
f the Treasury for increased
futures trading. In each case,
 interest in certain underlying
ities and indexes thereof, and
sion of Government security

f the Securities and Exchange
ie interest of the Department
y of markets for Government
n reached in 1974 that there
sponsible for futures trading

erest the changing nature of
lerlying commodity is not an
hority. Further, the fact that
to the traditional mold where
ry functions should not be the
ract is to be regulated by the
 serves a legitimate function,
ires Trading Commission with

hat any significant abuse exists
t futures trading in these com-
rities or money-market instru-
ed, or that regulation of the
processes involved should be

 to the committee to treat these
other futures contracts.
he Treasury anticipate futures
it are not currently the subject

</div>

of futures trading. There is just as much reason to assume that the CFTC will deny these contract applications as there is to assume that it will grant them. If such futures trading is proposed, it is the intent of the committee that the CFTC will actively solicit the views of other agencies when any application is made for a futures contract written on instruments under the jurisdiction of those agencies. The CFTC has assured the committee that the SEC, the Treasury, or other appropriate agencies will be consulted, and that these agencies will be able to communicate their concerns to the Commission.

The vesting of jurisdiction to regulate commodity futures trading in more than one agency would only lead to costly duplication and possible conflict of regulation or over-regulation.

*Commodity options transactions*

I.

Section 4c(b) of the Commodity Exchange Act was added in 1974. Section 4c(b) authorizes the Commission to regulate or prohibit option transactions on all commodities other than the commodities specifically enumerated in the Act prior to 1974, and continues to ban option transactions on such enumerated commodities.

The Senate report (S. Rept. No. 93-1131) stated the following on page 26:

> The committee intends that options not be traded except on organized exchanges and in conformity with the rules and regulations of the Commission.

II.

Since 1974, there has been an enormous growth in the number of firms merchandising commodity options to the public. Many of these firms engaged in unscrupulous practices and simply bucketed their customers' orders. Some of these firms were so marginally capitalized that they simply fled when customers sought to exercise their options. This growth of fraud and deception received national attention in the Lloyd, Carr and Co. investigations and prosecutions.

The resources of the Commission have been severely drained and much of the Commission's personnel has been deployed in options investigations and litigation and the reparations claims filed with the Commission by customers aggrieved by the actions of these firms.

The unanticipated magnitude of growth and fraud in this form of trading has caused the Commission to lay aside pending decisions regarding regulation of the futures markets and internal management decisions. The Commission needs a period in which to reevaluate its future directions and policies before embarking on regulation of this new form of trading.

III.

New section 4c(c) added by S. 2391 imposes a congressional ban on commodity options transactions, except where both parties to the transaction are entering the transaction as part of their commodity related businesses (a trade option) or under new section 4c(d) where the grantor of the option and the futures commission merchant satisfy the requirements of that new subsection.