David E. Mollón
Steven M. Schwartz (SS-4216)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendants Amaranth Advisors L.L.C.
and Amaranth Advisors (Calgary) ULC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                    :
**U.S. COMMODITY FUTURES TRADING**
**COMMISSION,**                                     :
                        **Plaintiff,**
                                                    :          **Electronically Filed**
                **v.**
                                                    :          **07 Civ. 6682 (DC)**
**AMARANTH ADVISORS L.L.C.,**
**AMARANTH ADVISORS (CALGARY) ULC**                 :
**and BRIAN HUNTER,**
                                                    :
                        **Defendants.**
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THE MOTION OF DEFENDANTS AMARANTH ADVISORS L.L.C.**
**AND AMARANTH ADVISORS (CALGARY) ULC FOR A PRELIMINARY**
**INJUNCTION AGAINST THE FEDERAL ENERGY REGULATORY COMMISSION**

**WINSTON & STRAWN** LLP

200 PARK AVENUE
NEW YORK, NY  10166-4193
(212) 294-6700

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................3

I.   Amaranth Is Likely To Prevail On The Merits................................................3

    A.   The CFTC Has Exclusive Jurisdiction Over Trading In Futures
    Contracts, The Conduct At Issue In Both Regulatory Enforcement
    Proceedings..................................................................................................3

    B.   By Its Own Admission, The FERC Must Prove Manipulation Of
    NYMEX Futures Contracts To Establish Its Claim Against
    Amaranth, Which Is In The Sole Province Of The CFTC......................6

    C.   The Best Evidence Of Amaranth's Likelihood Of Success On The Merits
    Is That FERC Refuses To Allow Any Court To Address The Merits Of
    Whether It Has Jurisdiction Over Amaranth's Trading In NYMEX
    Futures Contracts ........................................................................................8

II.  This Court Has The Power To Stay The FERC's Unlawful And Duplicative
    Enforcement Proceeding..................................................................................9

    A.   This Court Has Inherent Power Over The FERC ....................................9

    B.   The Court Should Stay The FERC's Proceeding As The CFTC Has
    Primary Jurisdiction Over FERC ...........................................................11

    C.   Amaranth's Motion Does Not Improperly Interfere With The Rights Of
    Non-Parties ...............................................................................................11

    D.   A Stay Of FERC's Enforcement Proceedings Would Nevertheless
    Permit Appellate Review Of FERC's Jurisdiction, Provided FERC
    Stops Obstructing That Process ...............................................................12

III. Amaranth Will Suffer Irreparable Injury If Both Regulatory Actions Are
    Allowed To Proceed Simultaneously.............................................................12

    A.   The FERC's *Ultra Vires* Proceeding Constitutes Irreparable Injury .....12

# **TABLE OF CONTENTS**
(continued)

**Page No.**

B.     The Threat Of Two Inconsistent Enforcement Decisions Constitutes
Irreparable Harm To Amaranth ............................................................15

CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

## CASES

Page(s)

*In re Adelphia Commc'ns Corp.*, 298 B.R. 49 (S.D.N.Y. 2003)..........................................9

*Ayers v. S.E.C.*, 482 F.Supp. 747 (D. Mont. 1980)............................................................13

*Cate v. Oldham*, 707 F.2d 1176 (11tb Cir. 1983)...............................................................13

*Chic. Mercantile Exch. v. Deaktor*, 414 U.S. 113 (1973).................................................11

*Chic. Mercantile Exch. v. S.E.C.*, 883 F.2d 537 (7th Cir. 1989) ........................................5

*Consolidated Gas Supply Corp. v. FERC*, 611 F.2d 951 (4th Cir. 1979).........................10

*E.F. Hutton & Co. v. Schank*, 456 F.Supp. 507 (11th Cir. 1988) .......................................3

*Earth Island Institute v. U.S. Forest Serv.*, 351 F.3d 1291 (9th Cir. 2003) ......................13

*Energy Development Corp. v. St. Martin*, Civ. No. 98-3395, 2005 U.S.Dist.
    LEXIS 994 (E.D. La. Jan. 24, 2005)...........................................................................15

*F.T.C. v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001) .................................................5

*Fairchild, Arabatzis & Smith, Inc. v. Prometco*, 470 F.Supp. 610 (S.D.N.Y. 1979) ..........3

*Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc.*, 424 F.3d
    363 (3d Cir. 2005)........................................................................................................15

*Leedom v. Kyne*, 358 U.S. 184 (1958) ..............................................................................10

*Mallen v. Merrill Lynch, Pierce, Fenner & Smith*, 605 F.Supp. 1105 (N.D. Ga.
    1985) ..............................................................................................................................5

*Messer v. E.F. Hutton & Co.*, 847 F.2d 673 (11th Cir. 1988) .............................................3

*Order No. 670*, 114 F.E.R.C. 61 ........................................................................................3

*Pross v. Katz*, 784 F.2d 455 (2d Cir. 1986) ........................................................................4

*Quint v. CMHC*, No. 06-2889-pr, 2007 U.S.App. LEXIS 22421 (2d Cir. Sept. 20,
    2007) ..............................................................................................................................6

*Random House v. Rosetta Books, LLC*, 283 F.3d 490 (2d Cir. 2002) .................................6

*S.E.C. v. Amer. Commodity Exch., Inc.*, 546 F.2d 1361 (10tb Cir. 1986) .......................6

*S.E.C. v. G.C. Sec., Inc*, 637 F.2d 685 (9th Cir. 1989) ......................................10

*S.E.C. v. Univest, Inc.*, 405 F.Supp. 1057 (N.D. Ill. 1976)..................................3

*Trans World Airlines, Inc. v. Mattox*, 712 F.Supp. 99 (W.D. Tex. 1989) ........................13

*U.S. v. Paccione*, 964 F.2d 1269 (2d Cir. 1992).................................................9

*U.S. v. Rural Electric Convenience Cooperative Co.*, 922 F.2d 429 (7th Cir. 1991) ................................................................................15

*U.S. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 266 F.3d 45 (2d 2001)................................9

*U.S. v. Reliant Energy Serv.*, 420 F.Supp.2d 1043 (N.D. Ca. 2006) ................................14

*U.S. v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966)........................................15

*U.S. v. Valencia*, No. 03-024, 2003 U.S.Dist. LEXIS 15264 (S.D.Tex. Aug. 25, 2003) .............................................................................5

*Warner-Lambert Co. v. F.T.C.*, 361 F.Supp. 948 (D.D.C. 1973) ......................................14

## DOCKETED CASES

*Harrington v. Atlantic Sounding Co., Inc.*, No. 06-CV-2900..............................................2

## FEDERAL STATUTES

15 U.S.C.§717r(a) .....................................................................................1

15 U.S.C.§717t-2(c).................................................................................3

17 C.F.R.§143.8(a) ..................................................................................7

18 C.F.R.§1b.19 ......................................................................................1

18 C.F.R.§385.209 ..................................................................................7

120 Cong.Rec. H34,736 (Oct. 9, 1974) ..........................................................5

Section 10(b) of the Securities Exchange Act, 15 U.S.C. 78j(b)......................................3

Securities Exchange Commission ("SEC") Rule 10(b)(5), 17 C.F.R.§240.10(b)(5)
(2006) —..........................................................................................................................4

Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC (collectively, "Amaranth") respectfully submit this reply memorandum in support of their motion for an order staying the enforcement action commenced by the Federal Energy Regulatory Commission (the "FERC") against Amaranth and other parties, pending a final resolution of the instant action brought by the Commodity Futures Trading Commission (the "CFTC").

## PRELIMINARY STATEMENT

At the heart of the motion before this Court is whether the FERC has the power to prosecute its enforcement action against Amaranth and other related parties based on the exact same conduct at issue in the instant CFTC action — allegedly improper trading of New York Mercantile Exchange ("NYMEX") natural gas futures contracts. Only the FERC concludes that its assertion of jurisdiction over Amaranth's trading in natural gas futures is proper. The CFTC has made plain that *it* has exclusive jurisdiction over Amaranth's conduct. The industry associations and exchanges that filed an amicus brief, including the NYMEX, where the trading at issue took place, strongly maintain that the CFTC has exclusive jurisdiction. In contrast, the amici filing briefs in support of FERC reiterate the FERC's procedural arguments, but their silence on the issue of jurisdiction is deafening. The FERC's own statements in adopting its anti-manipulation rule similarly concede that the CFTC has exclusive jurisdiction. In short, based on the submissions and the law, it is beyond a doubt that the FERC's administrative proceeding is *ultra vires*.

It is equally apparent that the FERC wants to avoid judicial examination of its jurisdiction. The FERC argues that this Court lacks power to grant relief. It has told the District Court for the District of Columbia the same thing. In response to Amaranth's motion for rehearing in the FERC's administrative case — a procedural prerequisite to appellate review —

the FERC refused to state unequivocally that it finally has determined it has jurisdiction. Instead, the FERC purports to consider the issue further while proceeding with its enforcement action in a blatant attempt to forestall judicial scrutiny. To justify its actions, the FERC only states that it wants to litigate its administrative proceeding fully on the merits before it will allow a court to examine whether it has the power to enforce new manipulation rules over markets that the CFTC exclusively regulates, in essence, "putting the cart before the horse." Why? The only conclusion to be drawn is that the FERC itself doubts the legal correctness of its assertion of jurisdiction, while Amaranth is ready, willing, and able to have a court determine the proper extent of the FERC's power under Energy Policy Act of 2005 ("EPAct").

   To avoid judicial reckoning, the FERC hides behind procedural arguments. It claims that this Court lacks power to stay the FERC's action pending the outcome of the instant action. Yet as the CFTC has acknowledged, this Court has inherent power to protect its undeniable jurisdiction over the CFTC's enforcement proceeding. The FERC also argues that this Court should ignore the doctrine of primary jurisdiction, which requires deference to the CFTC's expertise as to futures markets. The FERC then blithely claims that Amaranth will not suffer irreparable harm. The law is clear, however: when an agency exercises power *ultra vires*, the object of that *ultra vires* exercise of power is irreparably harmed. Competing and inconsistent regulatory standards and enforcement regimes over a market that Congress has placed in the exclusive hands of the CFTC also causes irreparable injury. In short, Amaranth is legally entitled to the limited relief it seeks.

## ARGUMENT

**I.     Amaranth Is Likely To Prevail On The Merits.**

    **A.     The CFTC Has Exclusive Jurisdiction Over Trading In Futures Contracts, The Conduct At Issue In Both Regulatory Enforcement Proceedings.**

The CFTC *agrees* that it has *exclusive* jurisdiction over trading on futures markets — the conduct at issue in the CFTC and FERC's respective enforcement proceedings against Amaranth — pursuant to Section 2(a)(1)(A) of the Commodity Exchange Act ("CEA").[1] *See* CFTC Br. at 9-17.[2] Moreover, the CFTC also *agrees* that the EPAct does not affect Section 2(a)(1)(A)'s grant of exclusive jurisdiction over futures markets to the CFTC. *Id.* at 18. The FERC concedes that there is no language explicitly repealing the CFTC's jurisdiction, and it does not cite any language implicitly repealing Congress' grant of exclusive jurisdiction.[3]

Nevertheless, the FERC contends that the "in connection with" requirement of its anti-manipulation rule — modeled after Section 10(b) of the Securities Exchange Act, 15 U.S.C.

---

[1]    On October 1, 2007, certain members, including Chairman Collin Peterson, of the House Agriculture Committee, the Committee charged with Congressional oversight of the CFTC, sent a letter to the CFTC reaffirming Congress' intention to give the CFTC exclusive jurisdiction over futures trading contracts. The members praised the CFTC's efforts to assert its exclusive jurisdiction in this matter and to uphold the CEA as intended by Congress. The members stated: "If the CFTC were to cede jurisdiction, it will not only abrogate the law, it will ignore the singular vision Congress intended for the CFTC, and invite those who look to nefariously arbitrage multiple regulatory regimes back to the futures market." *See* Ex. A.

[2]    The CFTC cites several cases in its memorandum of law confirming that the CFTC has exclusive authority over futures markets. *See, e.g., Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 676 (11th Cir. 1988) (stating that the purpose of creating the CFTC was to avoid duplicative or contradictory regulatory structure); *S.E.C. v. Amer. Commodity Exch., Inc.*, 546 F. 2d 1361, 1369 (10th Cir. 1976) (finding that Congress intended to avoid overlapping jurisdiction in passing the 1974 Amendments); *Fairchild, Arabatzis & Smith, Inc. v. Prometco*, 470 F. Supp. 610, 614 (S.D.N.Y. 1979) (finding that the legislative history of the 1974 Act conclusively proves that Congress intended commodities options to be relegated to a distinct regulatory sphere); *E.F. Hutton & Co. v. Schank*, 456 F. Supp. 507, 513 (D. Utah 1976) (deciding that commodities future contracts are subject to exclusive jurisdiction of the CFTC); *S.E.C. v. Univest, Inc.*, 405 F. Supp. 1057, 1058 (N.D. Ill. 1976) (determining that the creation of the CFTC stripped the SEC of its ability to bring suits regarding commodity futures contracts).

[3]    Congress specifically stated that "[n]othing in this Section may be construed to limit or affect the exclusive jurisdiction of the [CFTC] under the [CEA]." 15 U.S.C. § 717t-2(c)(2). Indeed, the FERC itself acknowledged the CFTC's exclusive jurisdiction over futures contracts. *Memorandum of Understanding Between FERC and the CFTC Regarding Information Sharing and Treatment of Proprietary Trading and Other Information*, dated Oct. 12,

78j(b)(2000) and Securities Exchange Commission ("SEC") Rule 10(b)(5), 17 C.F.R. § 240.10(b)(5) (2006) — grants it jurisdiction over a "broad range of conduct" that "affect[s] FERC-jurisdictional rates and services." *See* FERC Br. at 30-31. The Second Circuit, however, has held that "incidental involvement of securities d[oes] not implicate the anti-fraud provisions of the federal securities laws" and the fraud itself must be "integral to the purchase and sale of the securities in question." *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986). Here, as Amaranth did not trade in physical natural gas and did not profit from physical natural gas, any alleged effect on physical prices from Amaranth's futures trading is at most "incidental." Accordingly, the FERC's anti-manipulation rule does not extend as broadly as the FERC would like.

Further, the FERC argues that the CFTC's jurisdiction concerns only "accounts, agreements, and transactions involving contracts of sale of a commodity for future delivery," and simply asserts that none of these are at issue in the FERC's case. *See* FERC Br. at 34. This is inconsistent with the FERC and the CFTC's claims, which rest on allegations that Amaranth allegedly manipulated the settlement price of NYMEX ***futures*** contracts by selling large amounts of ***futures*** contracts during the settlement period. Thus, "transactions involving contracts of a sale of a commodity for future delivery," *i.e.,* NYMEX natural gas futures contracts, are central to each action and are entirely within the exclusive province of the CFTC. The FERC's Chairman, Joseph T. Kelliher, said as much in a February 21, 2007 letter to the Senate Committee on Energy and Natural Resources: "EPAct 2005 did not broaden the Commission's jurisdiction over the financial sales of natural gas that take place on designated

---

2005, at 2; *see also* Order No. 670, 114 FERC 61,047, ¶ 20 (Jan. 19, 2006) (stating that if Congress had intended to expand the FERC's jurisdiction, "it would have done so explicitly").

contract markets such as the New York Mercantile Exchange (NYMEX). Those markets remain under the exclusive jurisdiction of the CFTC."[4]

To support its unlawful exercise of jurisdiction, the FERC refers to the "regulatory savings clause" of Sections 2(a)(1)(A)(I)-(II) of the CEA, but misconstrues the purpose and effect of the clause, which is simply to prevent exactly what is occurring herein, duplicative regulation.[5] *See* FERC Br. at 35. In discussing the CFTC's exclusive jurisdiction and the "regulatory savings clause," the United States Court of Appeals for the District of Columbia reiterated that "[t]he aim of this [exclusivity] provision, according to one of its chief sponsors, was to 'avoid unnecessary, overlapping and duplicative regulation.'" *F.T.C. v. Ken Roberts Co.*, 276 F.3d 583, 588 (D.C. Cir. 2001) (citing 120 Cong. Rec. H34,736 (Oct. 9, 1974) (remarks of House Agriculture Committee Chairman Page)).[6] As a consequence, other agencies may only share power with the CFTC "over activities that lie outside the scope of §2(a)(1)(A)." The inclusion of Sections 2(a)(1)(A)(I)-(II) enables agencies such as the FERC to retain their jurisdiction **only** over "matters **beyond** the confines of 'accounts, agreements, and transactions involving contracts of sale of a commodity for future delivery.'" *Roberts*, 276 F.3d at 591 (emphasis added) (citing *Chic. Mercantile Exch. v. S.E.C.*, 883 F.2d 537, 550 (7th Cir. 1989)).

Although the FERC argues that this clause enables it to proceed concurrently with the CFTC, legislative history indicates otherwise:

---

[4]     *See* Ex. B for a copy of Chairman Kelliher's letter.

[5]     The FERC cites to a case where the court held that manipulation through false reporting of trades that never actually took place was not in itself a contract or transaction. *U.S. v. Valencia*, No. 03-024, 2003 U.S. Dist. LEXIS 15264 at *2-3 (S.D. Tex. Aug. 25, 2003). The *Valencia* court's interpretation of the language of the CEA is wholly inapposite here, because Amaranth's allegedly manipulative conduct is solely based upon actual transactions in futures contracts traded on a designated contract market.

[6]     *See also Mallen v. Merrill Lynch, Pierce, Fenner & Smith*, 605 F. Supp. 1105, 1112 (N.D. Ga. 1985) ("[t]he congressional hearings focused on the need for sole regulatory power of commodities to be placed in one federal agency, unlike the regulation of securities which is shared by a federal agency and state agencies.").

> The Conference Report [] explains that the Senate Amendment merely clarifies the House Bill by stressing the exclusive jurisdiction of the Commodity Futures Trading Commission within its sphere of activity so that on a permanent basis there would not be overlapping. The [earlier] House version would have allowed limited joint jurisdiction.  This is confirmed by the Staff Report of the Senate Committee on Agriculture and Forestry, 93rd Cong., 2d Sess., The Commodity Futures Trading Commission Act of 1974, 6 (Comm. Print 1974), which says that 'The Senate refined this language (referring to the House provision which is referred to above) *in an attempt to avoid unnecessary overlapping and duplicative regulation*.'

*S.E.C. v. Am. Comm. Exch., Inc.*, 546 F.2d 1361, 1368 (10th Cir. 1976) (emphasis added).

It is therefore, likely — if not inevitable — that Amaranth will succeed on the merits of its claim.  Regardless, this Circuit recognizes that for the purposes of an injunction, Amaranth either needs to establish likelihood of success on the merits *or* "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."  *Quint v. CMHC*, No. 06-2889-pr, 2007 U.S. App. LEXIS 22421, *1-2 (2d Cir. Sept. 20, 2007) (citing *Random House v. Rosetta Books, LLC*, 283 F.3d 490, 491 (2d Cir. 2002)).  Amaranth meets both standards.

### B.    By Its Own Admission, The FERC Must Prove Manipulation Of NYMEX Futures Contracts, Which Is In The Sole Province Of The CFTC, To Establish Its Claim Against Amaranth.

The FERC futilely attempts to distinguish the CFTC and the FERC enforcement actions; in reality, they are virtually indistinguishable.  The CFTC alleges that Amaranth attempted to manipulate NYMEX natural gas futures contracts.[7]  Although the FERC asserts that its claims relate to manipulation of the ***physical*** natural gas market, the FERC concedes that its claims rise and fall on whether Amaranth manipulated the settlement price of NYMEX natural

---

[7]    That the CFTC has an additional claim against Amaranth for alleged misrepresentations to the NYMEX in violation of Section 9(a)(4) of the CEA adds nothing to FERC's effort to distinguish its case.

gas futures contracts.  *See* FERC Br. at 8-9.  Without manipulation of NYMEX settlement prices, even the FERC must concede that it has no case.

To distinguish its action from the CFTC's case, the FERC also asserts that there is no identity of parties in the two proceedings.  The FERC misses the point.  All of the parties in the CFTC case are also parties in the FERC case.  Moreover, none of the parties to the FERC proceeding have objected to the relief requested here and, in fact, consent to Amaranth's motion to stay.

Further, there is no risk that a "regulatory gap" would result by allowing the CFTC to proceed first with its enforcement action.[8]  First, Amaranth does not seek a permanent injunction of the FERC's action, but only to allow the CFTC action to proceed first.  Second, the FERC's Show Cause Order does not allege that Amaranth made or took delivery of physical natural gas, nor are there any allegations that Amaranth profited from the sale of physical natural gas.  The FERC's Show Cause Order only challenges Amaranth's conduct in trading NYMEX natural gas futures, which the CFTC is regulating and enforcing in this proceeding.  Although the FERC attempts to argue that it has different penalty authority than the CFTC, both agencies can seek essentially the same relief, namely, civil monetary penalties and disgorgement or restitution. *See* CEA § 6(c), (d); 17 C.F.R. § 143.8(a)(1).

The FERC, through a two-page chart, attempts to create an optical illusion that its enforcement action and concomitant penalties are significantly different in magnitude than the CFTC's because the FERC is seeking a **total** of $200 million while the CFTC is seeking $130,000 **per violation**.  In fact, the CFTC is seeking $130,000 **per violation**, where "every

---

[8]     A CFTC spokesperson unequivocally stated with respect to the motion before the Court that "[r]egardless of the outcome of the court's decision, no regulatory gaps will exist in the federal regulation of the energy markets." "*Head of U.S. energy panel backs FERC in natgas case*," Reuters, Oct. 2, 2007, at http://www.reuters.com/article/GlobalEnvironment07/idUSMAR26537620071002?pageNumber=2.

overt action in furtherance of the intent to affect the price . . . including, but not limited to, every purchase, sale, bid, offer, telephone call, e-mail and instant message, is alleged as a separate and distinct violation." CFTC Compl. at p. 17, ¶ 74 (Doc. 1). If upheld, this could, in theory, result in fines far exceeding the FERC's $200 million.

>C.     **The Best Evidence Of Amaranth's Likelihood Of Success On The Merits Is That FERC Refuses To Allow Any Court To Address The Merits Of Whether It Has Jurisdiction Over Amaranth's Trading In NYMEX Futures Contracts.**

The FERC has done everything possible to avoid judicial scrutiny of whether it has statutory jurisdiction to bring its claims. Amaranth first raised the jurisdictional issue with the FERC on June 26, 2007, in its 18 C.F.R. § 1b.19 statement (which is analogous to a *Wells* submission). The FERC responded one month later by issuing the Show Cause Order. Brian Hunter, another defendant in the CFTC's case and respondent in the FERC proceeding, filed an action challenging the FERC's jurisdiction in the District Court for the District of Columbia, which the FERC has strenuously fought on procedural grounds to avoid judicial review of its jurisdiction. Then Amaranth, as a statutory prerequisite to seeking review in a United States Court of Appeals, filed with the FERC a motion for rehearing of the FERC's final determination that it has jurisdiction. *See* 15 U.S.C. § 717r(a) (2007). The FERC responded with another delay tactic. It issued a "tolling" order granting the FERC *further and indefinite* time to consider Amaranth's rehearing request despite the fact that: (1) it is required by statute to rule on rehearing motions within 30 days of filing; (2) the FERC already had filed extensive briefing in support of its jurisdiction in the Hunter matter on July 30, 2007 and argued the matter on August 7, 2007; and (3) the FERC was two days away from filing its detailed briefing herein.[9]

---

[9]     *See* Ex. C for a copy of the FERC's September 26, 2007 tolling order regarding Amaranth's motion for rehearing as to the FERC's jurisdiction. Despite the tolling order, the enforcement action against Amaranth proceeds. Amaranth's answer and response brief to the FERC's Show Cause Order is due on October 19, 2007.

Ironically, in both the Hunter action and in this Court, the FERC argues that the only court with the authority to decide its jurisdiction is the Court of Appeals for the D.C. Circuit. *See* FERC Br. at 19-22. This is the very same court that the FERC is avoiding by *refusing* to rule on Amaranth's rehearing request when the FERC decided long ago it enjoys jurisdiction over Amaranth. The only inference from the FERC's aversion to judicial review is that it wants no court to decide whether it has jurisdiction.

The FERC's extensive efforts to avoid impartial judicial review of its authority speaks volumes about the merits of the jurisdictional question. To be absolutely clear, Amaranth would like nothing better than to have the jurisdictional issue decided by a Court of Appeals—by any court—right now. It is obvious that the FERC would like to avoid such an examination of its jurisdiction.

## II. This Court Has The Power To Stay The FERC's Unlawful And Duplicative Enforcement Proceeding.

### A. This Court Has Inherent Power Over The FERC.

Courts have inherent power to stay or enjoin proceedings to protect their jurisdiction. *See* Amaranth Br. at 28-29. The CFTC concedes in its response brief that this Court has the "inherent power" to stay the FERC's administrative action. *See* CFTC Br. at 4**.** Although the CFTC emphasizes that such "inherent power[] must be exercised with restraint and discretion," in this case it is necessary and proper for the Court to exercise its power.[10] Because

---

[10]    Despite the CFTC's assertions to the contrary, *see* CFTC Br. at 3, courts routinely issue orders that reach beyond the parties before them. *See, e.g.*, *U.S. v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992) (finding a non-party bound by district court's contempt order and noting that the remedies of garnishment or attachment "may be directed routinely at third-parties."); *U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 266 F.3d 45, 50 (2d Cir. 2001) (upholding order enjoining two non-parties on the grounds that it was necessary or appropriate to the district court's protection of its prior decree); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ("It is well settled that bankruptcy courts, under this provision, may extend the automatic stay to 'enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts.'") (quoting *In re Granite Partners, L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996)); *Hatfill v. Gonzales*, No. M8-85 (AKH) (Part I), 2007 WL 2710116, at *1-2 (S.D.N.Y. Sept. 11, 2007) (granting order compelling non-

the FERC has acted "in excess of its delegated powers, and contrary to a specific prohibition" in a statute, the district court has inherent jurisdiction to determine that the agency has engaged in "unlawful action." *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958) (affirming the district court's jurisdiction to prevent deprivation of a party's rights where the agency had "attempted [an] exercise of power that had been specifically withheld" by statute).

Although both agencies attempt to distinguish the cases Amaranth cited in support of the Court's power to stay the FERC's administrative proceeding in its memorandum in support of its motion, *neither* agency cites any case stating that this Court *cannot* stay the FERC's administrative proceeding.[11]  Indeed, Amaranth cites to *U.S. v. Norton*, where the court found that "[a] federal court has the power to stay administrative action.  This power to stay administrative action may be enough to accomplish the goal of keeping the administrative proceeding from interfering with the exercise of the court's jurisdiction."  640 F.Supp. 1257, 1262 (D. Colo. 1986) (citations omitted).  *See also S.E.C. v. G.C. Secs., Inc*, 637 F.2d 685 (9th Cir. 1981) (The court stayed an administrative proceeding because the "principal concern is to avoid a wasteful and useless duplication of time and effort.  [The] secondary concern is to maintain integrity and coherence in the system.").

---

party respondent to testify as to the identity of informants); *Harrington v. Atlantic Sounding Co., Inc*., No. 06-CV-2900 (NG)(VVP), 2007 WL 2693529, at *6 (E.D.N.Y. Sept. 11, 2007) ("It is commonplace to order a co-defendant — or for that matter a non-party — to provide discovery in aid of obtaining personal jurisdiction.").

[11]     The FERC cites several cases in its brief to support its argument that this Court does not have jurisdiction to review FERC's Show Cause Order.  *See* FERC Br. at 19-22.  None of these cases address the issue in this case: whether this Court has jurisdiction to stay the FERC action because it interferes with the current proceeding.  For example, the FERC contends, incorrectly, that *Consolidated Gas Supply Corp. v. FERC*, 611 F.2d 951 (4th Cir. 1979), is a "very similar case".  *See* FERC Br. at 20. The injunction the court vacated required the FERC to stop its hearings until the time that the *FERC performed an affirmative act* (issuing more information about the show cause proceeding).  In contrast, Amaranth is asking that this court stay the FERC proceeding until the time that the CFTC proceeding is complete — a very different request.

**B.     The Court Should Stay The FERC's Proceeding As The CFTC Has Primary Jurisdiction Over FERC.**

Amaranth does not disagree with the FERC's contention that the doctrine of primary jurisdiction is generally used to stay a court proceeding where "enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of a [federal] administrative body."  Amaranth Br. at 20 (citation omitted); *contra* FERC Br. at 38.  What the FERC fails to address is that the underlying rationale behind the doctrine of primary jurisdiction makes it even more pertinent herein that the CFTC's enforcement action proceed without obstruction, where two federal agencies are pursuing enforcement actions and fines based on the exact same conduct.  Because the CFTC has specialized expertise in, and exclusive jurisdiction over trading in natural gas futures, and the FERC — by its own admission — has no such experience and/or expertise, the FERC should defer to the CFTC.  *See, e.g., Chic. Mercantile Exch. v. Deaktor,* 414 U.S. 113, 114-15 (1973) (court deferred to the Commodity Exchange Commission's (predecessor to the CFTC) primary jurisdiction).  As the FERC refuses to defer to the CFTC, this Court should stay the FERC's action until this action is resolved.

**C.     Amaranth's Motion Does Not Improperly Interfere With The Rights Of Non-Parties.**

The CFTC asserts that a "problematic issue of staying" the FERC's administrative action is that it would interfere with the rights of those parties to the FERC proceeding who are not a party to this action; that, however, is a red herring.  *See* CFTC Br. at 8-9.  The rights of CFTC nonparties/FERC parties Amaranth LLC, Amaranth Management Limited Partnership, Amaranth International Limited, Amaranth Partners LLC, Amaranth Capital Partners LLC, Amaranth Group Inc., and Matthew Donohoe, will not be interfered with because none of them

oppose the relief that Amaranth seeks.  Moreover, if any other respondent to the FERC proceeding insists on defending itself irrespective of whether the FERC has jurisdiction, the FERC will undoubtedly accommodate them and Amaranth will not oppose them, provided Amaranth is not required to participate.

Further, the FERC asserts that the public would be harmed by a stay as it would prevent the FERC from ensuring "the natural gas prices in [its] jurisdictional markets are competitive and fair."  FERC Br. at 28-29.  Because Amaranth is no longer engaged in trading and is in the process of dissolution, Amaranth is not, nor was it ever, a threat to natural gas prices, and the public would not be harmed by a stay.  Amaranth does not seek to enjoin all enforcement activity by the FERC, but merely to delay the FERC proceeding temporarily.

> **D.    A Stay Of The FERC's Enforcement Proceedings Would Nevertheless Permit Appellate Review of The FERC's Jurisdiction, Provided The FERC Stops Obstructing That Process.**

The FERC argues that the D.C. Circuit Court is the appropriate forum to determine its jurisdiction; Amaranth would be more than happy for that court or any other court of competent jurisdiction to resolve the issue.  Amaranth tried to obtain a reviewable order from the FERC by filing a rehearing motion with the FERC.  The FERC refuses to issue a substantive order on the motion.  The stay that Amaranth seeks before this Court would temporarily halt the FERC from continuing its enforcement action, but could allow for appellate review of the FERC's jurisdiction, provided the FERC stops obstructing the review process.

> **III.    Amaranth Will Suffer Irreparable Injury If Both Regulatory Actions Are Allowed To Proceed Simultaneously.**

> **A.    The FERC's *Ultra Vires* Proceeding Constitutes Irreparable Injury.**

No monetary damages can remedy a dual system of conflicting enforcement, depriving Amaranth the opportunity to litigate its case with the agency that has expertise — and

exclusive jurisdiction — over its conduct, and resulting in substantial uncertainty to the futures market. As demonstrated below, Amaranth will suffer irreparable harm unless the FERC's enforcement action is stayed. *See Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) (holding that harm is irreparable if there is no possibility of adequate compensatory or other corrective relief).

Moreover, if a party shows "a ***strong*** likelihood of success on the merits," it need only show "***the possibility*** of irreparable injury" if preliminary relief is not granted, and that the "balance of hardships" tips in its favor. *Earth Island Inst. v. U.S. Forest Serv.,* 351 F.3d 1291, 1297 (9th Cir. 2003) (emphasis added). Accordingly, as Amaranth has demonstrated a strong likelihood of success on the merits, it need only establish the possibility of irreparable injury, which it does below.

The FERC's proceeding, in excess of its statutory authority, constitutes immediate irreparable injury to Amaranth as a matter of law. *See Trans World Airlines, Inc. v. Mattox*, 712 F. Supp. 99, 101 (W.D. Tex. 1989), *aff'd*, 897 F.2d 773 (5th Cir. 1990), *cert. denied*, 498 U.S. 926 (1990), *cert. granted sub nom. Morales v. Trans World Airlines, Inc.*, 502 U.S. 976 (1991), *aff'd in part, rev'd in part*, 504 U.S. 374 (1992); *see also Ayers v. S.E.C.*, 482 F. Supp. 747, 751-52 (D. Mont. 1980) (stating that the SEC's actions in excess of its statutory authority constitutes irreparable injury in clear violation of an individual's rights). The FERC mischaracterizes Amaranth's claims as merely an effort to avoid legal costs. FERC Br. p. 24. Separate and apart from any duplicative and unnecessary legal expenses, Amaranth's exposure to unlawful conflicting legal requirements for the same conduct constitutes irreparable injury. Of note, neither the FERC nor the CFTC points the Court to any case refuting that Amaranth will suffer

irreparable harm in the face of this clear jurisdictional defect, where the FERC is encroaching on another agency's authority.[12]

The only issue on which the federal government speaks with one voice is the argument that the "FERC's administrative process will provide Amaranth [Advisors] with an opportunity to address the fundamental question of whether its trading activity falls within FERC's jurisdiction." *See* CFTC Br. at 6-7. In support of its argument, the CFTC cites to 18 C.F.R. § 385.209(b) for the proposition that the FERC's "statement of the authority under which [FERC] is acting" is "tentative." CFTC Br. at 7. A closer reading of Section 385.209(b), however, supports Amaranth's argument that the FERC has already found it enjoys jurisdiction. Section 385.209(b) states that "an order to show cause will contain a statement about which the [FERC] is inquiring, and a statement of the authority under which the [FERC] is acting. The statement is tentative and sets forth issues to be considered by the [FERC]." 18 C.F.R. § 385.209(b). The only statement in the Show Cause Order about which the FERC is "inquiring" so as to invite discussion by Amaranth is on pages 75 and 76, where it specifically lists the issues to be addressed by Amaranth in its answer, and the *jurisdictional* issue is not one of them. It is simply not credible for the FERC to claim that it has not finally decided whether it has jurisdiction, based on the statements of the FERC's Chairman to the press in announcing its issuance of the Show Cause Order against Amaranth.[13]

---

[12]    The FERC incorrectly asserts that there is "ample judicial precedent to support dual enforcement actions by separate government agencies such as FERC and the CFTC." *See* FERC Br. at 27 (citing *Warner-Lambert Co. v. F.T.C.*, 361 F. Supp. 948 (D.D.C. 1973) (involving an FDA rule-making proceeding and FTC adjudicatory proceeding, not two administrative adjudicatory proceedings as in Amaranth's case)); *U.S. v. Reliant Energy Serv.*, 420 F. Supp. 2d 1043 (N.D. Cal. 2006) (involving a criminal prosecution under the CEA and other criminal statutes by the U.S. government, not two administrative proceedings)). In contrast, here we have two administrative enforcement proceedings based on essentially the same conduct.

[13]    *See, e.g.,* Statement, Federal Energy Regulatory Commission, Chairman Joseph T. Kelliher's Statement on Market Manipulation Show Cause Orders (July 26, 2007) (attached as Ex. D); News Release, Federal Energy Regulatory Commission, Commission Takes Preliminary Action in Two Major Market Manipulation Cases (July 26, 2007) (attached as Ex.E).

Finally, both the CFTC and the FERC ask this Court to defer to the D.C. District Court. Amaranth, however, does not seek the same relief sought in the Hunter action — declaratory judgment that the FERC is exceeding its jurisdiction. Amaranth simply seeks a temporary stay of the FERC proceeding so as to avoid unlawful, duplicative, and costly litigation and exposure to competing regulatory schemes.

### B.    The Threat Of Two Inconsistent Enforcement Decisions Constitutes Irreparable Harm To Amaranth.

The threat of inconsistent judgments from litigations involving the exact same facts, but in two different venues with distinct procedural and evidentiary rules and standards, will cause Amaranth irreparable harm. *See Energy Dev. Corp. v. St. Martin*, Civ. No. 98-3395, 2005 U.S. Dist. LEXIS 994 at *26 (E.D. La. Jan. 24, 2005); *see also U.S. v. Rural Elec. Convenience Coop. Co.*, 922 F.2d 429, 438 (7th Cir. 1991). Amaranth Br. at 25.

Further, the FERC's decision on the merits may have preclusive effect in this case. *Buckley v. U.S.*, 57 Fed. Cl. 328, 343 (Fed. Cl. 2003) (citing *U.S. v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966)). Harm is especially palpable in this case, where the factual allegations against Amaranth by the CFTC and the FERC are indistinguishable.[14] Amaranth may have its conduct in the futures market conclusively judged by FERC, which has no expertise or jurisdiction over that market. Moreover, its conduct may be judged against differing standards under the CEA and the NGA — the very situation Congress sought to avoid by granting exclusive jurisdiction over futures markets to the CFTC. *See* Amaranth Br. at 25-26.

---

[14]    The FERC attempts to downplay the risk of harm and contends that there is no risk of inconsistent judgments when two cases are based on different facts or law. In doing so, the FERC mischaracterizes *Howard Hess Dental Laboratories, Inc. v. Dentsply Int'l, Inc.,* 424 F.3d 363 (3d Cir. 2005). *See* FERC Br. at 26. That case involved a suit between private parties for damages resulting from lost profits, a situation which has no bearing on penalties and disgorgements assessed by agencies in the regulatory context. *Id.* at 366-68.

## <u>CONCLUSION</u>

For all the foregoing reasons, as well as those set forth in Amaranth's moving papers, this Court should grant Amaranth's motion to stay the FERC's administrative enforcement action pending the outcome of the instant matter, and grant such other relief as this Court deems just and proper.

Dated: New York, New York
      October 3, 2007

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: _/s/ David E. Mollón_____
    David E. Mollón (DM-5624)
    Steven M. Schwartz (SS-4216)

200 Park Avenue
New York, New York 10166
(212) 294-6700

Stephen J. Senderowitz
Matthias A. Lydon
Kristen V. Grisius

35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Defendants Amaranth*
*Advisors L.L.C. and Amaranth*
*Advisors (Calgary) ULC*