Exhibit E

# FEDERAL ENERGY REGULATORY COMMISSION

July 26, 2007  
Docket Nos. IN07-26-000, IN06-3-002

NEWS MEDIA CONTACT  
Mary O'Driscoll - 202.502.8680

## Commission Takes Preliminary Action in Two Major Market Manipulation Cases

The Federal Energy Regulatory Commission for the first time used its new enforcement authority to prosecute market manipulation today when it issued show cause orders that made preliminary findings of market manipulation and proposed civil penalties totaling $458 million in two investigations involving traders' unlawful actions in natural gas markets.

The Commission's actions, which come under both the anti-manipulation authority of the Energy Policy Act of 2005 and its former market manipulation rule, are a signal that FERC will not tolerate manipulation of energy markets.

"Congress granted FERC the authority to prevent manipulation to protect both consumers and the integrity of these markets on which our economy depends," Commission Chairman Joseph T. Kelliher said. "Bad actors in the industry must recognize that manipulation, even in increasingly complex energy markets, can be detected. And when it is proven, they will be punished severely."

The first case, brought under the Commission's new anti-manipulation rule, involves the Greenwich, Conn.-based hedge fund Amaranth LLC and traders Brian Hunter and Matthew Donohoe. The Commission voted unanimously to give Amaranth and the traders 30 days to show why they should not be assessed civil penalties and disgorge profits totaling $291 million for manipulating the price of Commission-jurisdictional transactions by trading in the NYMEX Natural Gas Futures Contract in February, March and April 2006.

In the second case, the Commission voted unanimously to give Energy Transfer Partners, LP (ETP), a Texas-based owner of pipeline assets and a natural gas trading affiliate, 30 days to show that it did not violate the Commission's former market behavior rule by manipulating the wholesale natural gas market at Houston Ship Channel on certain dates in 2003, 2004 and 2005. The Commission is proposing more than $167 million in total penalties and disgorgement of unjust profits.

"These cases are serious. It is alarming to read and hear the instant message and voice recording evidence of improper actions, some of which were authorized by senior managers. The Commission is right to propose close to the maximum in penalties for actions that harmed millions of consumers and the natural gas markets they depend on for their energy needs," Kelliher said.

"For these two companies, failure to refute these findings will confirm that their actions harmed many wholesale market participants, creating losses that ultimately hurt natural gas customers across the country," Kelliher added.

FERC's actions today are related to similar actions by the Commodity Futures Trading Commission for violations of its statutes. The two federal agencies cooperated in the two investigations through their

(more)





**NEWS**

Memorandum of Understanding, though their individual actions fall under separate statutes.

"I also want to praise the Commodity Futures Trading Commission for being a strong partner in coordinating investigations regarding market manipulation," Kelliher said. "There is a relationship between physical gas sales and gas futures, and coordination between the two agencies is necessary to effectively police market manipulation."

### Amaranth LLC

This case involves manipulation of the final, or "settlement," price of the NYMEX Natural Gas Futures Contract on February 24, March 29 and April 26, 2006, by selling an extraordinary amount of these contracts during the last 30 minutes of trading before these future contracts expired, with the purpose and effect of driving down the settlement price.

Investigators in the Commission's Office of Enforcement found that Amaranth had previously taken positions in various financial derivatives that were several times larger, and whose values increased, as a direct result of the fall in the settlement price of the natural gas futures contract. Thus, for every dollar lost on its sales of the futures contracts, Amaranth would gain several dollars on its derivative financial positions.

The Commission's investigation found that Amaranth and its traders Hunter and Donohoe intentionally manipulated the settlement price of the futures contract. That settlement price is explicitly used to determine the price for a substantial volume of FERC-jurisdictional physical natural gas transactions.

Evidence uncovered by the investigation includes instant messages (IM) written by traders. According to one such IM, the scheme began as "a bit of an expiriment (sic)" devised by Hunter on or before Feb. 23, 2006, the day before the first manipulation occurred. The Feb. 24 "experiment" was then repeated and refined on March 29 and April 26.

These market manipulation violations took place well before Amaranth's notorious demise in the fall of 2006, when it experienced massive trading losses and ceased trading operations. Amaranth's collapse was not related to these manipulations. This investigation was initiated in Summer 2006 by Commission staff, well before those losses and collapse.

Based on the facts and circumstances and the absence of any material mitigating factors, the Commission is recommending penalties of $200 million for Amaranth, $30 million for Hunter and $2 million for Donohoe. The Commission also proposes that Amaranth disgorge more than $59 million in unjust profits, plus interest.

### ETP, LP

This case, which came to the Commission's attention through its enforcement hotline, involves manipulation of wholesale natural gas markets at Houston Ship Channel and Waha, Texas, trading hubs on various dates from December 2003 through December 2005.

The Commission's investigation found that ETP violated FERC's Market Behavior Rule, the anti-

(more)

FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, DC 20426

WWW.FERC.GOV



manipulation rule then in effect, when it artificially lowered the price for prompt month gas at the Houston Ship Channel to the benefit of its physical and financial positions. By lowering the price, ETP suppressed the *Inside FERC* Houston Ship Channel index, published by Platts, on which the pricing of many physical natural gas contracts and financial derivatives are based.

The investigation also found that ETP suppressed the price of daily gas at Waha, and violated the Natural Gas Policy Act (NGPA) by unduly preferring affiliated shippers and unduly discriminating against non-affiliated shippers on its Oasis Pipeline for interstate gas transportation system from Waha, in West Texas, to Katy, near Houston.

The investigation uncovered voice recordings that show senior managers at ETP were aware of the situation and directed the company's manipulative strategy to suppress fixed-price gas at the Houston Ship Channel.

In one such recording from Sept. 26, 2005, Marshall McCrea, the company officer in charge of trading at the hub, told at least one trader that "as long as we sell as much as we can sell, it ought to push Ship down." The phrase "push Ship down" means to suppress the price at the Houston Ship Channel, which would lower the price of ETP's physical gas purchases and widen the price spread between that market and the Henry Hub, thereby increasing the value of its financial derivative positions.

The Commission is proposing to assess ETP civil penalties totaling $97.5 million, and total disgorgement of $69.9 million in unjust profits.

For market manipulation, FERC proposes that ETP pay $82 million in civil penalties – the maximum $79 million for the manipulations at the Houston Ship Channel, and $3 million for the manipulations at Waha and Permian. The Commission also is proposing disgorgement of $69.9 million, plus interest, in unjust profits. This includes $67.6 million for manipulation in the Houston Ship Channel and $2.2 million for manipulation at Waha and Permian.

The Commission also is proposing to revoke ETP's blanket certificate to sell natural gas for one year, beginning 120 days from today. This means that ETP would have to get Commission approval for all jurisdictional sales of natural gas.

For the Oasis Pipeline NGPA violations, the Commission proposes that ETP pay $15.5 million in civil penalties for undue discrimination and undue preference, and $500,000 for failure to file an amended operating statement. The Commission also is proposing the company disgorge $267,122, plus interest, in unjust profits.

Both companies' manipulative actions sought to lower the price of natural gas for the profit of their physical and/or financial derivative positions. Over the long run that can be as destructive to consumers and markets as prices that have been manipulated to rise.

"Manipulation designed to lower prices is as offensive as manipulation that raises prices," Kelliher said. "In any form, market manipulation undermines the integrity of markets by driving away legitimate participants.

(more)



FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, DC 20426                                                                                           WWW.FERC.GOV



When it raises prices, manipulation harms consumers immediately and in ways that are easy to understand. Manipulation that lowers prices also hurts consumers, over a longer period and more indirectly."

And while today's actions propose serious sanctions against market manipulation, Kelliher said it is important to note that FERC is not opposed to legitimate risk-taking and trading.

"Trading and risk taking are vital parts of energy markets, and benefit consumers," he said. "The core element of manipulation is fraud – fraud on consumers and fraud on the market. Manipulation is deception, period. It is not legitimate trading, risk-taking and speculation."

More information on the FERC orders can be found at www.ferc.gov. The CFTC orders can be found at http://www.cftc.gov/opa/opaenf2007.htm.

(30)

R07-47

FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, DC 20426

WWW.FERC.GOV