David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendants Amaranth Advisors L.L.C.
and Amaranth Advisors (Calgary) ULC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

U.S. COMMODITY FUTURES TRADING
COMMISSION,
           Plaintiff,

            v.

AMARANTH ADVISORS L.L.C.,
AMARANTH ADVISORS (CALGARY) ULC
and BRIAN HUNTER,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Electronically Filed**

07 Civ. 6682 (DC)

**Oral Argument Requested**

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS BY DEFENDANTS
AMARANTH ADVISORS L.L.C. AND
AMARANTH ADVISORS (CALGARY) ULC**

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................................................... ii

Preliminary Statement .................................................................................................................. 1

Argument ...................................................................................................................................... 2

I.     THE ATTEMPTED MANIPULATION CLAIM FAILS BECAUSE IT IS BASED SOLELY ON LEGITIMATE OPEN MARKET TRADING ...................... 2

    A.     Securities Market Manipulation Cases Are Instructive On The Need For Deceptive Conduct ................................................................................ 2

    B.     Manipulation Of Commodity Prices Requires Deceptive Conduct ...................... 5

II.     THE CFTC'S FAILURE ADEQUATELY TO ALLEGE MANIPULATIVE INTENT COMPELS DISMISSAL PURSUANT TO RULE 9(b) ............................... 7

    A.     Rule 9(b) Applies To The CFTC's Attempted Manipulation Claim ..................... 7

    B.     The CFTC Fails To Satisfy Rule 9(b) .................................................................. 8

III.    THE CFTC'S "COVER-UP" CLAIM SHOULD BE DISMISSED .............................. 9

Conclusion .................................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**          **Page(s)**

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............... *passim*

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............... 9

*Cargill Inc. v. Hardin*, 452 F.2d 1154 (8th Cir. 1971) ............... 7

*CFTC v. Bradley*, 408 F. Supp. 2d 1214 (N.D. Okla. 2005) ............... 3-4

*CFTC v. Delay*, No. 05 CV 5026, 2006 WL 3359076 (D. Neb. Nov. 17, 2006) ............ 6-7

*CFTC v. Enron*, H-03-909, 2004 WL 594752 (S.D. Tex. Mar. 10, 2004) ............... *passim*

*CFTC v. Risk Capital Trading Group, Inc.*,
452 F. Supp. 2d 1229 (N.D. Ga. 2006) ............... 4

*CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) ............... 4

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) ............... 2

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ............... 4, 7

*GFL Advantage Fund Ltd. v. Colkitt*, 272 F.3d 189 (3d Cir. 2001) ............... 3

*In re Avista Energy, Inc.*,
CFTC No. 01-21, 2001 WL 951736 (C.F.T.C. Aug. 21, 2001) ............... 7

*In re Crude Oil Commodity Litig.*,
No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ............... 8

*In re Indiana Farm Bureau Coop. Assoc., Inc.*,
CFTC No. 75-14, 1982 WL 30249 (C.F.T.C. Dec. 17, 1982) ............... 4, 7

*In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005) ............... 4, 8

*Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) ............... 9

*Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), *aff'd*, 456 U.S. 353 (1982) ............... 5

*MBH Commodity Advisors Inc. v. CFTC*, 250 F.3d 1052 (7th Cir. 2001) ............... 4

*Mormels v. Girofinance, S.A.*, 544 F. Supp. 815 (S.D.N.Y. 1982) ............... 5

*Nilsen v. Prudential-Bache Sec.*, 761 F. Supp. 279 (S.D.N.Y. 1991) ............... 10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041 (2d Cir. 1983) ............................. 4-5

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................. 10

*SEC v. Masri*, 04 Civ. 1584, 2007 WL 4126773 (S.D.N.Y. Nov. 20, 2007) ..................... 3

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2d Cir. 1986) ............................... 4

*Schrieber v. Burlington N., Inc.*, 472 U.S. 1 (1985) ........................................ 3

*Starr v. Time Warner, Inc.*,
   07 Civ. 5871, 2007 WL 4144627 (S.D.N.Y. Nov. 21, 2007) ................................. 9

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S. Ct. 2499 (2007) ................... 2, 8-9

## STATUTES AND RULES

CEA § 4b, 7 U.S.C. § 6b .................................................................... 5

CEA § 4o, 7 U.S.C. § 6o .................................................................... 5

CEA § 6(c), 7 U.S.C. § 9 ................................................................... 3

CEA § 6(d), 7 U.S.C. § 13(b) ............................................................... 3

CEA § 9(a)(2), 7 U.S.C. § 13(a)(2) ................................................... *passim*

Federal Rule of Civil Procedure 9(b) ................................................. *passim*

SEA § 10(b) and Rule 10b-5 ........................................................... *passim*

## Preliminary Statement

The CFTC does not dispute that its Complaint only alleges open market trading, without any of the typical hallmarks of manipulative conduct such as wash sales, matched orders, fictitious trades or the injection of false or misleading information into the marketplace.[1] Well-established precedent interpreting the anti-manipulation provisions of the Securities and Exchange Act of 1934 ("SEA") preclude, as a matter of law, a claim for manipulation absent allegations of such deceptive conduct. *See ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007). Nonetheless, the CFTC maintains that it can pursue a claim for attempted manipulation based solely on Amaranth's legitimate open market trading with real counterparties at prevailing market prices simply because the trading consisted of "huge volumes of natural gas futures contracts...during the closing range."[2] The CFTC takes this unprecedented position asserting, without any legal basis and despite authority to the contrary, that the conduct necessary for commodity price manipulation is discerned differently than for security price manipulation.

Even ignoring the applicable securities precedent, dismissal of the CFTC's attempted manipulation claim would still be warranted because commodities cases also preclude such a claim absent deceptive conduct. The CFTC relies on one case, *CFTC v. Enron*, H-03-909, 2004 WL 594752 (S.D. Tex. Mar. 10, 2004), to support its contrary position. But in *Enron*, the CFTC in fact alleged deceptive conduct including a conspiracy among traders to "bid up" prices and to cover trading losses suffered by certain traders due to the scheme. Moreover, the CFTC fails to discuss, let alone distinguish, the commodities cases cited by Amaranth requiring deceptive conduct to sustain a manipulation claim under the Commodity Exchange Act ("CEA").

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Memorandum of Law in Support of Motion to Dismiss by Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC, dated November 8, 2007 [Docket No. 46] ("Am. Mem.").

[2] *See* Memorandum of Law of Plaintiff Commodity Futures Trading Commission in Opposition to Defendants' Motions to Dismiss, dated December 20, 2007 [Docket No. 51] ("CFTC Opp."), at 1.

The CFTC also asserts that it is not required to satisfy Rule 9(b), again relying on *Enron*. Two cases in this Court involving alleged manipulation under the CEA, however, reached the opposite conclusion. Moreover, the Second Circuit's subsequent decision in *ATSI* could not be clearer: "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI*, 493 F.3d at 101 (citations omitted). Further, the CFTC fails to address *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 127 S. Ct. 2499 (2007), which established a stricter test to determine whether a plaintiff has demonstrated a strong inference of scienter. *Tellabs* applies to both the CFTC's attempted manipulation claim and its alleged "cover-up" claim. Yet, the CFTC makes no effort to, and cannot, satisfy *Tellabs*. Specifically, it alleges no facts from which to infer that Amaranth intended that its trades be at ***artificial*** prices.

Accordingly, the CFTC's Complaint should be dismissed in its entirety.[3] Further, because the flaws in the Complaint cannot be cured through additional pleading, especially given that the CFTC had extensive pre-Complaint discovery, and because the CFTC declined an opportunity at the pre-motion conference to amend its Complaint, the Complaint should be dismissed with prejudice and without leave to replead.[4]

## Argument

### I. THE ATTEMPTED MANIPULATION CLAIM FAILS BECAUSE IT IS BASED SOLELY ON LEGITIMATE OPEN MARKET TRADING

#### A. Securities Market Manipulation Cases Are Instructive On The Need For Deceptive Conduct

The CFTC does not, nor could it, dispute that a securities manipulation claim requires deceptive conduct and thus cannot be based only on legitimate open market trading. Indeed, the

---

[3] The CFTC does not dispute that even if an aspect of the Complaint survives this motion, its requests for disgorgement and restitution should be stricken. (Am. Mem. at 5 n.3).

[4] *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to replead even once is appropriate where problem with complaint is not inartful pleading but substantive, making any repleading futile) (citations omitted).

2

Second Circuit stated only a few months ago, "[t]o be actionable as a manipulative act, [the conduct] must be willfully combined with something more to create a false impression of how market participants value a security." *ATSI*, 493 F.3d at 101; *see Schrieber v. Burlington N., Inc.*, 472 U.S. 1, 12-13 (1985) (upholding dismissal of manipulation claim under the SEA in context of a tender offer because "[a]ll activity of the defendants that could have conceivably affected the price of [the stock] was done openly") (citations omitted). (Am. Mem. at 7-10).[5] The CFTC merely repeats the allegations in the Complaint, asserting in conclusory fashion that they constitute sufficient "overt acts" to support its attempted manipulation claim even though, as the CFTC concedes, they do not allege any deceptive conduct. (CFTC Opp. at 10-11).

The CFTC does argue that securities law precedent is irrelevant to this case. (CFTC Opp. at 12-14, 18-19). Yet, the CFTC fails to cite any case holding that its manipulation claim under Section 9(a)(2) of the CEA, 7 U.S.C. § 13(a)(2), can proceed based on conduct that would not suffice for a manipulation claim under the SEA and Rule 10b-5.[6] Moreover, the CFTC's statement that "[n]o court has ever held that Section 9(a)(2) of the CEA should be interpreted like SEA § 10(b), or that the two sections are otherwise analogous" is dead wrong. (CFTC Opp. at 12). In setting forth the standard for pleading manipulation under Section 10(b) and Rule 10b-5, the Second Circuit cited, among other cases, *CFTC v. Bradley*, 408 F. Supp. 2d 1214, 1222

---

[5] After Amaranth filed its motion to dismiss, one Judge in this District in a securities case declined to adopt a "*per se* rule that open-market activity cannot be considered manipulative based solely on manipulative intent, that is, without additional deceptive or fraudulent conduct." *See SEC v. Masri*, 04 Civ. 1584, 2007 WL 4126773, at *8 (S.D.N.Y. Nov. 20, 2007). The CFTC did not cite this decision. Amaranth submits that *Masri* is inconsistent with *ATSI* and therefore should not be followed. The *Masri* court's statement that the Second Circuit has not determined "whether manipulative intent alone can support liability for otherwise legal open-market transactions," is simply not correct. *Masri*, 2007 WL 4126773, at *6. *ATSI* made clear that the answer is no, specifically adopting the analysis of the Third Circuit in *GFL Advantage Fund Ltd. v. Colkitt*, 272 F.3d 189, 205, 209, 211 (3d Cir. 2001) distinguishing manipulative from legal conduct by asking whether the alleged manipulator created a false impression of supply and demand in order to artificially affect price. *ATSI*, 493 F.3d at 101. By contrast, *Masri* expressly rejected *GFL Advantage*. *Masri*, 2007 WL 4126773, at *5, 8. Further, the motion in *Masri* was argued before *ATSI* was decided, and the docket indicates that neither of the parties made the court aware of the Second Circuit's decision. Indeed, the court in *Masri* does not even cite *ATSI*, which was decided four months earlier.

[6] The CFTC does not assert that there exists any difference between Section 9(a)(2) of the CEA and Sections 6(c) and 6(d) of the CEA, 7 U.S.C. §§ 9 and 13b, which are also cited in Count I of the Complaint.

3

(N.D. Okla. 2005), specifically noting that *Bradley* concerned "market manipulation under [Section 9(a)(2) of the CEA]." *ATSI*, 493 F.3d at 102. Similarly, holding that Rule 9(b) applied to plaintiff's claim for manipulation under Section 9(a)(2) of the CEA, one court explained that "it makes little sense to apply caselaw articulating standards applicable to allegations of market manipulation only when the allegations concern claims under the securities laws." *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336, 344 n.5 (S.D.N.Y. 2005) ("*Natural Gas II*").[7]

It makes sense to require the same type of deceptive conduct necessary for securities manipulation claims for commodities manipulation claims. The underlying statutes both expressly prohibit manipulative conduct and the purpose of both statutes is to prevent traders from intentionally creating artificial prices in their respective markets. As the Supreme Court has explained, securities manipulation "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or ***artificially*** affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (emphasis added). Similarly, manipulation of the commodities market requires creating ***artificial*** prices. *See In re Indiana Farm Bureau Coop. Assoc., Inc.*, CFTC No. 75-14, 1982 WL 30249, at *5 (C.F.T.C. Dec. 17, 1982).

Beyond the specifics of manipulation claims, courts in the Second Circuit have relied on securities precedent when interpreting parallel provisions of the CEA. *See, e.g., Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986) ("Traditionally, courts have looked to the securities laws when called upon to interpret similar provisions of the CEA."); *Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1044 (2d Cir. 1983) ("In construing the reaches of

---

[7] The CFTC's reliance on *CFTC v. Risk Capital Trading Group, Inc.*, 452 F. Supp. 2d 1229, 1243-44 (N.D. Ga. 2006) and *CFTC v. Vartuli*, 228 F.3d 94, 101 (2d Cir. 2000) is misplaced. (CFTC Opp. at 18-19). Both cases involved claims for misrepresentation under the CEA. Neither case discusses manipulation claims under the CEA or the SEA, nor misrepresentation claims in the securities context. Similarly, *MBH Commodity Advisors Inc. v. CFTC*, 250 F.3d 1052 (7th Cir. 2001) does not support the CFTC's position. (CFTC Opp. at 12-13). In the context of disciplinary proceedings against a trader and his company by the CFTC for misleading advertising, the Court noted that the *de novo* review standard used by the SEC does not apply to the CFTC. *MBH Commodity Advisors*, 250 F.3d at 1062. The case is limited to this procedural point; neither fraud nor manipulation were at issue.

jurisdiction under the CEA, courts have analogized to similar problems under the securities laws which have been more extensively litigated.") (citations omitted); *Leist v. Simplot*, 638 F.2d 283, 298, 298 n.14 (2d Cir. 1980), *aff'd*, 456 U.S. 353 (1982) (statutes regulating unfair securities practices are the "analogue" to the CEA with respect to futures trading and the analogy between securities cases and commodities cases has been frequently accepted by the courts and Congress due to "the common legislative objective of insuring fair dealing for investors"); *Mormels v. Girofinance, S.A.*, 544 F. Supp. 815, 817 n.8 (S.D.N.Y. 1982) ("Securities cases and principles are used as persuasive aids to interpretation of the CEA.").

The CFTC's citations to various cases analogizing Sections 4b and 4o of the CEA, 7 U.S.C. §§ 6b and 6o, to Section 10(b) of the SEA and Rule 10b-5 are wholly irrelevant. (CFTC Opp. at 12-13, 19). The fact that those CEA provisions bar fraud (such as misrepresentations and omissions) and therefore are analogous to Section10(b)'s anti-fraud provision does not mean that Section 9(a)(2) of the CEA precluding commodities manipulation is not analogous to the prohibition on securities manipulation also contained in Section10(b) of the SEA. Like the SEA, the CEA prohibits fraud by way of misrepresentation and omission and fraud by way of market manipulation through deceptive trading practices. The SEA addresses the two types of fraud in one section, while the CEA breaks them into separate statutory prohibitions.

B.  **Manipulation Of Commodity Prices Requires Deceptive Conduct**

Even if the securities law precedent were not applicable, the CFTC's attempted manipulation claim would fare no better. Amaranth cited a litany of cases involving manipulation of commodity prices, all of which allege some form of deceptive conduct. (Am. Mem. at 10-12). The CFTC relies on one case, *Enron*, to support its position that open market trading, absent deceptive conduct, can be the basis for an attempted manipulation claim. The quote from *Enron* repeated three times by the CFTC that "[b]uying and selling in a manner

5

calculated to produce the maximum effect upon prices, frequently in a concentrated fashion and in relatively large lots is one form of manipulation" (CFTC Opp. at 5, 11, 20), however, does not support the CFTC's position. The defendant whose motion was being addressed in *Enron* did not even raise the issue of whether open market trading could support a manipulation claim, and therefore it was not addressed by the Court.[8] In fact, in *Enron,* the CFTC alleged significant deceptive conduct, unlike anything asserted here. The CFTC alleged that, "the head of Enron's Central Desk ***colluded*** with another Enron trader [at a ***different*** trading desk] to engage in a buyer spree . . . that forced natural gas spot prices to rise and then they liquidated those positions, causing spot natural gas prices to decline and resulting in artificial prices for NYMEX natural gas futures." (CFTC Opp. at 6) (emphasis added). The traders allegedly conspired to "bid up" the market and to time their trades, with one agreeing to cover, and in fact covering, "any trading losses" suffered by the other as a result of their scheme. *Enron*, 2004 WL 594752, at *2, 7. In any event, as interpreted by the CFTC, *Enron* is *sui generis*, and inconsistent with the Second Circuit's decision in *ATSI*, as well as the other commodity cases cited by Amaranth.

In that regard, the CFTC is incorrect when it states that many of the CEA cases Amaranth cited did not involve fraud or deceit and that no case suggests that such conduct is required. (CFTC Opp. at 19). Legitimate trading, of course, affects prices and thus, to sustain an attempted manipulation claim, the "overt acts" alleged must consist of ***either*** the injection of false or misleading information into the market *or* deceptive trading techniques such as wash sales, matched orders or fictitious trades. *See, e.g., CFTC v. Delay,* No. 05 CV 5026, 2006 WL 3359076, at *3 (D. Neb. Nov. 17, 2006) (finding no manipulation under Section 9(a)(2) of the CEA because it is not a violation to engage in lawful conduct with the intent of affecting prices;

---

[8] Defendant Enron did argue in its motion to dismiss that open market trading alone could not form the basis of a manipulation claim. Enron settled before its motion was decided, and thus the issue was not resolved by the Court.

"to be unlawful, the reported sales must be sham or nonexistent transactions, or the reports must be knowingly false or misleading"); *Indiana Farm Bureau,* 1982 WL 30249, at *5 ("a clear line between lawful and unlawful activity is required in order to ensure that innocent trading activity not be regarded with the advantage of hindsight as unlawful manipulation"). (Am. Mem. at 1-2, 8-12). The cases cited by Amaranth that the CFTC tries to distinguish did not allege fraud in the sense of misrepresentations or omissions, but they did assert deceptive trading practices such as a market squeeze,[9] bid rigging and collusion[10] and non-competitive trading.[11]

It is the CFTC that fails to cite any case holding that legitimate open market trading, the only conduct alleged here, is sufficient to form the basis of an attempted manipulation claim under the CEA. Thus, Count I of the Complaint should be dismissed for failure to state a claim.

## II.   THE CFTC'S FAILURE ADEQUATELY TO ALLEGE MANIPULATIVE INTENT COMPELS DISMISSAL PURSUANT TO RULE 9(b)

### A.   Rule 9(b) Applies To The CFTC's Attempted Manipulation Claim

There is no dispute that allegations of securities manipulation require compliance with Rule 9(b). *See ATSI,* 493 F.3d at 101-02 (citations omitted). As detailed above, the conduct required for claims of manipulation under Section 9(a)(2) of the CEA is no different, and such claims therefore are also subject to Rule 9(b). The Supreme Court described manipulation as "intentional or willful conduct designed to deceive or defraud investors,"[12] and the Second Circuit stated that "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularly under Rule 9(b)."[13] These decisions were not made because the cases involved securities, but rather because manipulation of any market misleads investors and thus is

---

[9] *Cargill Inc. v. Hardin,* 452 F.2d 1154, 1172 (8th Cir. 1971).

[10] *Enron,* 2004 WL 594752, at *7.

[11] *In re Avista Energy, Inc.,* CFTC No. 01-21, 2001 WL 951736, at *2 (C.F.T.C. Aug. 21, 2001).

[12] *Ernst & Ernst,* 425 U.S. at 199.

[13] *ATSI,* 493 F.3d at 101 (citations omitted).

a fraudulent activity subject to the heightened pleading requirements of Rule 9(b).

Accordingly, cases in this District have applied Rule 9(b) to manipulation claims under Section 9(a)(2) of the CEA. *See In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 1946553, at *5 (S.D.N.Y. June 28, 2007); *Natural Gas II*, 358 F. Supp. 2d at 343. (Am. Mem. at 15-17). The CFTC tries to distinguish these cases on the ground that they involved the dissemination of false and misleading information, which is not alleged here. (CFTC Opp. at 14 n.3). The fact that those cases concerned a different method of allegedly manipulating the commodities market does not alter the legal conclusion that manipulation is a species of fraud subject to the heightened pleading standard of Rule 9(b).[14]

### B.   The CFTC Fails To Satisfy Rule 9(b)

The CFTC raises and then strikes down a series of straw men in an effort to persuade this Court that its Complaint satisfies Rule 9(b). The CFTC repeats allegations from its Complaint regarding Amaranth's conduct, who was involved, and when the acts occurred. (CFTC Opp. at 15-18). But Amaranth did not assert that the CFTC failed to satisfy Rule 9(b) with respect to these points. Rather, Amaranth argued that the Complaint fails to justify a strong inference of scienter as required by Rule 9(b), and the cases interpreting it. (Am. Mem. at 18-23).

The CFTC does not dispute that if Rule 9(b) applies it must satisfy *Tellabs* by showing that an inference of specific intent to create an ***artificial*** price is "cogent and at least as compelling" as an inference of non-fraudulent trading. *Tellabs*, 127 S. Ct. at 2510. Amaranth detailed why the allegations in the Complaint, including the attached IMs, demonstrate that Amaranth engaged in legitimate trading with real counterparties at prevailing market prices, and

---

[14] The CFTC again relies on *Enron* to support its position that Rule 9(b) does not apply. The *Enron* decision is inconsistent with the subsequent opinion of the Second Circuit in *ATSI* and directly contravenes this Court's decisions in *Natural Gas II* and *Crude Oil*. Further, the Court in *Enron* failed to conduct any analysis, simply stating in a one sentence conclusion that Rule 9(b) did not apply. Accordingly, *Enron* should not be followed.

do not support an inference of manipulative intent to create artificial prices. The CFTC does not even attempt to counter this analysis. Instead, the CFTC states, in conclusory fashion, that "Defendants offer strained explanations for some of the IMs cited in the Complaint" and that "all reasonable inferences should be construed in the plaintiff's favor." (CFTC Opp. at 9).[15]

*Tellabs*, however, requires much more. It mandates a comparative analysis between the plausible, non-culpable inferences offered by Amaranth and the CFTC's allegations of manipulative intent. *Tellabs*, 127 S. Ct. at 2509-10. The CFTC provides no discussion of why it believes that Amaranth's explanation of its trading is not more compelling than the CFTC's conclusory assertion of specific manipulative intent. Yet that is precisely what *Tellabs* requires a plaintiff to do. This failure is particularly significant given the extensive pre-Complaint discovery by the CFTC. (Am. Mem. at 3).[16] Accordingly, the attempted manipulation claim should be dismissed for failure to comply with Rule 9(b). *See ATSI*, 493 F.3d at 104 (dismissing manipulation claim because plausible non-culpable explanation for defendants' actions was more likely than inference that defendants intended to manipulate the market) (citations omitted).[17]

## III. THE CFTC'S "COVER-UP" CLAIM SHOULD BE DISMISSED

The CFTC's attempt to separate its "cover-up" claim from its attempted manipulation claim is completely flawed. The CFTC asserts that the very purpose of the alleged cover-up was that Amaranth's "manipulative scheme would unravel if a true account of its trading activity was disclosed." (CFTC Opp. at 21; Compl. ¶66). Thus, if the Complaint fails adequately to allege

---

[15] The cases cited by the CFTC, however, do not involve the application of Rule 9(b), and thus are not relevant. *See Starr v. Time Warner, Inc.* 07 Civ. 5871, 2007 WL 4144627 (S.D.N.Y. Nov. 21, 2007) (employment discrimination case); *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) (age discrimination case).

[16] The CFTC does not dispute that the more relaxed pleading standard sometimes used in manipulation cases is inapplicable due to this extensive pre-Complaint discovery. (Am. Mem. at 16 n. 9).

[17] Even if Rule 9(b) does not apply, the Complaint fails to plead manipulative intent sufficient to withstand Amaranth's motion to dismiss. The Complaint provides only conclusory allegations of intent and does not provide a plausible basis, beyond rank speculation, to infer intent. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). (Am. Mem. at 12-14).

manipulative conduct or intent, then the "cover-up" claim cannot survive.

Even indulging the CFTC's position, the "cover-up" claim cannot survive on its own. The claim is for fraudulent misrepresentation or concealment. (CFTC Opp. at 21 n.6). Yet, the CFTC ignores the case Amaranth cited holding that Rule 9(b) applies to fraudulent concealment in violation of the CEA. *See Nilsen v. Prudential-Bache Sec.*, 761 F. Supp. 279, 290 (S.D.N.Y. 1991). The CFTC cites no contrary authority. Further, Rule 9(b) applies to any claims premised on allegations of fraud. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Amaranth did not dispute the sufficiency of the allegations regarding the writing at issue, when it was written or who authored it, as the CFTC suggests. (CFTC Opp. at 22-23). The Complaint, however, fails to explain in any cogent or compelling manner how the August 15 Letter was false or misleading, or how there can be an inference of fraudulent intent given the non-culpable explanations for the trading and the August 15 Letter. (Am. Mem. at 24-25).

## Conclusion

Amaranth respectfully requests that this Court (i) dismiss the Complaint in its entirety; (ii) make such dismissal with prejudice and without leave to replead; and (iii) grant such other relief as this Court deems just and proper.

Dated: January 10, 2008

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: ___Steven M. Schwartz___
    David E. Mollón (DM-5624)
    Steven M. Schwartz (SS-4216)

200 Park Avenue
New York, New York 10166
(212) 294-6700
sschwartz@winston.com

*Attorneys for Defendants Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC*

NY: 1154155.4