David E. Mollón (DM-5624)
Steven M. Schwartz (SS-4216)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
(212) 294-6700

*Attorneys for Defendants Amaranth Advisors L.L.C.
and Amaranth Advisors (Calgary) ULC*

Michael S. Kim (MK-0308)
Leif T. Simonson (LS-5915)
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1200

*Attorneys for Defendant Brian Hunter*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | : | |
| Plaintiff, | : | |
| | : | Electronically Filed |
| v. | | |
| | : | 07 Civ. 6682 (DC) |
| AMARANTH ADVISORS L.L.C., AMARANTH ADVISORS (CALGARY) ULC and BRIAN HUNTER, | : | Oral Argument Requested |
| | : | |
| Defendants. | : | |
| | : | |

---

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION FOR RECONSIDERATION OF THIS COURT'S MAY 21, 2008
<u>DECISION DENYING DEFENDANTS' MOTIONS TO DISMISS</u>

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Preliminary Statement | 1 |
| Argument | 3 |
|    A. Clear Second Circuit Precedent And Other Persuasive Authority Hold That Large Volume Open Market Trading Is Not Manipulation | 3 |
|    B. This Court Overlooked Controlling Authority From The Second Circuit That A Claim For Manipulation is A Claim For Fraud Subject To Rule 9(b) | 8 |
| Conclusion | 9 |

Defendants Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, (together "Amaranth Advisors") and Brian Hunter (together with Amaranth Advisors, "Defendants") pursuant to Local Rule 6.3, respectfully request that this Court reconsider its May 21, 2008 Order denying Defendants' motions to dismiss ("Motions") the Commodity Futures Trading Commission's ("CFTC") Complaint ("the Order"). Local Rule 6.3 provides for reconsideration to allow "a party to direct the court to an argument the party has previously raised but the court has overlooked." *Perez v. N.Y. Presbyterian Hosp.*, No. 05 Civ. 5749, 2006 Dist. LEXIS 27318, at *2 (S.D.N.Y. April 14, 2006). Defendants respectfully submit that two such arguments have been so overlooked and, accordingly, on reconsideration, this Court should grant Defendants' Motions and dismiss the Complaint in its entirety.

### Preliminary Statement

First, although the Court in one instance cited the Second Circuit's binding decision of *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007), it did not mention *ATSI's* holding that "manipulation is a claim for fraud," and accordingly, that large volume open market trading cannot form the basis for a manipulation claim without "something more" that rises to a deception as to the value of the security or commodity allegedly being manipulated. *Id.* at 101-02. Indeed, in a recent decision, issued after briefing on the Motions in this case was complete, Judge Sand read *ATSI* as clear precedent in this Circuit that:

> Mere sales do not inject false information into the marketplace, nor can a party inject false information into the marketplace, as required to defeat summary judgment under the Second Circuit's *ATSI* decision, simply by selling stock on the open market. *ATSI Commun's., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) ("To be actionable as a manipulative act, selling must be willfully combined with *something more* to create a false impression of how market participants value a security").

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ. 0767, 2008 WL 1882702, at *2 (S.D.N.Y. April 21, 2008) ("*Nanopierce II*") (denying motion for reconsideration of *Nanopierce Tech., Inc. v. Southridge Capital Mgmt.*, No. 02 Civ. 0767, 2008 WL 250553 (S.D.N.Y. Jan. 29, 2008)("*Nanopierce I*")) (emphasis in original).

As this Court has noted, the CFTC does not allege any deceptive or fraudulent conduct, but merely large volume sales at market prices (as opposed to specific bid prices). *See* Order at 16. Based on *ATSI* and *Nanopierce*, binding law in this Circuit requires dismissal of the CFTC's manipulation claim because it alleges nothing more than large volume sales with intent, which *per se* cannot constitute manipulation, because as a matter of law it is activity that cannot send a false price signal to the market.

Second, this Court declined to hold the CFTC's Complaint to the standards of Federal Rule of Civil Procedure ("Rule") 9(b). *See* Order at 16. In its discussion of Rule 9(b), however, the Court did not mention *ATSI*, which holds: "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI*, 493 F.3d at 101 (citations omitted). Accordingly, Defendants respectfully submit that the Court overlooked the clear holding of *ATSI* in this regard. The fact that the CFTC did not allege any fraudulent or deceptive conduct does not excuse application of Rule 9(b), rather it only highlights that the CFTC has utterly failed to plead a claim for manipulation under the standards announced by the Second Circuit in *ATSI*, which clearly requires allegations of fraudulent conduct. *See ATSI*, 493 F.3d at 102 (stating that "a manipulation complaint must plead with particularity the nature, purpose, and effect of the ***fraudulent conduct*** and the roles of the defendants") (emphasis added) (citations omitted).

2

Accordingly, Defendants respectfully submit that reconsideration under Local Rule 6.3 is warranted, and upon reconsideration, the Complaint should be dismissed in its entirety.

## Argument

**A. CLEAR SECOND CIRCUIT PRECEDENT AND OTHER PERSUASIVE AUTHORITY HOLD THAT LARGE VOLUME OPEN MARKET TRADING IS NOT MANIPULATION**

In *ATSI*, plaintiff alleged a claim for market manipulation asserting that defendants engaged in large short selling of the plaintiff's stock during key time periods. Further, plaintiff alleged that defendants made these trades with the specific intent to drive down the price of such stock. *See ATSI*, 493 F.3d at 96-97. The Second Circuit affirmed dismissal of the manipulation claim under Rule 12(b)(6) stating that manipulation "require[s] a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security. The deception arises from the fact that investors are misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand . . . ." *Id.* at 100 (citations and quotations omitted). Thus, regardless of a traders' alleged subjective intent to affect price, the question is what activity is outside the natural interplay of supply and demand, such that it could be the basis for a manipulation claim. The Second Circuit found in *ATSI* that it is a "transaction [that] sends a false pricing signal to the market." *Id.* The Second Circuit explained, "short selling—even in high volumes—is not by itself manipulative . . . . To be actionable as a manipulative act, short selling must be willfully combined with *something more* to create a false impression of how market participants value a security." *Id.* at 101 (emphasis added).

The CFTC's Complaint does *not allege a transaction that sends a false pricing signal* to the market. As this Court held, the CFTC's "attempted manipulation claim is **not** premised on allegations of fraud." Order at 15 (emphasis added). The only conduct alleged in the Complaint is large volume open market sales at prevailing market prices near the close of trading on two days. The Second Circuit, citing with approval the Third Circuit's decision in *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 207 (3d Cir. 2001), found trading analogous to that of Amaranth's—high volume short selling at key times, even if with an alleged intent to affect price—is not a transaction that sends a false pricing signal to the market, and thus does not state a manipulation claim. *See ATSI*, 493 F.3d at 101. As the Third Circuit stated in *GFL Advantage Fund*:

> to make out a claim of market manipulation, [the plaintiff] must present evidence that [the defendant] engaged in some other type of deceptive behavior in conjunction with its short selling that either injected inaccurate information into the marketplace or created artificial demand for the securities. [Plaintiff] has offered nothing but evidence that [the defendant] engaged in lawful short sales . . . which alone is insufficient to prevail on a claim of market manipulation. . . .

*GFL Advantage Fund*, 272 F.3d at 211.

This Court's Order, however, does not specifically address *ATSI*'s requirement for **conduct** that is "something more" than legitimate trading in order to sustain a manipulation claim. Instead, the Order relied on *SEC v. Masri*, 523 F. Supp. 2d 361 (S.D.N.Y. 2007), in holding that open market trading **without** any deceptive conduct, can be the basis of a manipulation claim if the defendant had manipulative intent. *See* Order at 21-23. Defendants respectfully submit that *Masri* is bad law after *ATSI*. Notably, *Masri* did not mention *ATSI* in

discussing manipulation.[1] Accordingly, it incorrectly states that the question of "whether manipulative intent alone can support liability for otherwise legal open-market transactions" has not been decided by the Second Circuit. *Masri*, 523 F. Supp. 2d at 369. That question has been decided in *ATSI*. Moreover, Judge Holwell expressly rejected the Third Circuit's analysis in *GFL Advantage Fund*, a case which the Second Circuit specifically relied on in *ATSI*. *Compare Masri*, 523 F. Supp. 2d at 367-370 (recognizing that the Third Circuit concluded in *GFL Advantage Fund* that manipulative intent alone is not sufficient "to make open market-transactions manipulative and in violation of the securities laws") *with ATSI*, 493 F.3d at 101 (adopting a few months earlier the reasoning of *GFL Advantage Fund*).

Further, two recent decisions by Judge Sand, which came down after briefing on Defendants' Motions in this case (and therefore were not before this Court on the Motions), *Nanopierce I* and *II*, considered *ATSI* and found it to be binding clear precedent on the issues before this Court. In particular, Judge Sand wrote in *Nanopierce I*:

> In this Court's 2002 decision denying Defendants' motion to dismiss, the Court noted that the 'law of the Second Circuit on so-called open-market manipulation ... is not yet fully settled.' Defendants argue that in the intervening years, however, the Second Circuit has settled the question of whether open-market sales, accompanied by a subjective intent to affect the price of a stock, could constitute market manipulation. And in *ATSI*, the Second Circuit concluded that it was not.

*Nanopierce I*, 2008 WL 250533 at *2. Judge Sand recognized that in order to allege manipulation, the Second Circuit's decision in *ATSI* requires conduct that injects false information into the market or creates a false impression regarding supply and demand for the security. *Id.* Accordingly, in light of *ATSI*, Judge Sand found that the defendant in *Nanopierce*,

---

[1] Judge Holwell did not consider *ATSI* in *Masri*, in all likelihood because the motion in *Masri* was briefed almost a year before *ATSI* was decided, and *ATSI* came down only two months before Judge Holwell issued his ruling from the bench in *Masri*. Two months later Judge Holwell's bench ruling was turned into a written opinion.

5

who was accused of taking advantage of the struggling plaintiff company by negotiating a death spiral financing deal, and thereafter, selling the plaintiff's stock in large volumes so as to drive down the price, did not engage in manipulation because the plaintiff failed to establish that the defendant's behavior was inherently deceptive. *Id.* at \*2, \*4. Indeed, Judge Sand denied the plaintiff's motion to reconsider *Nanopierce I* and adhered to his conclusions, stating in *Nanopierce II* that "[m]ere sales do not inject false information into the marketplace, nor can a party inject false information into the marketplace as required [by *ATSI*], simply by selling stock on the open market." *Nanopierce II*, 2008 WL 1882702, at \*2 (citation omitted). He went on to explain that "[u]nusually large sales, **without a doubt**, cannot be the basis for a market manipulation claim after *ATSI*." *Id.* (emphasis added).[2]

Defendants submit that Judge Sand's decisions in *Nanopierce I* and *II* correctly apply the clear holding of *ATSI*. Although the Order in one instance cites *ATSI*, *see* Order at 21, it relies instead on the reasoning of *Masri*, which is in clear conflict with Second Circuit law as set forth in *ATSI*. In *Masri*, the court cited earlier *Nanopierce* decisions by Judge Sand to suggest that the issue of whether manipulative intent alone, absent other deceptive conduct, suffices to state a claim for manipulation, had not been resolved by the Second Circuit. *See Masri*, 523 F. Supp. 2d at 369. But Judge Sand, relying on the Second Circuit in *ATSI* and the Third Circuit in *GFL Advantage Fund*, now finds that the Second Circuit has indeed resolved the issue, holding that manipulative intent alone, absent other deceptive conduct, does not state a

---

[2] In *Nanopierce II*, Judge Sand does refer to *SEC v. Competitive Tech., Inc.*, No. 04 CV 1331 (JCH), 2005 WL 1719725 (D. Conn. July 21, 2005), but a reading of that case demonstrates that it involves several trademark manipulative actions, such as "painting the tape" (placing successive, small-amount buy orders at increasing prices to simulate increased demand), using "matching orders" (arranging identical buy and sell orders and other buy orders, to simulate active trading and to offset the impact of other sales of the stock). *Id.* at \*1. These traditional trademarks of market manipulation are not alleged by the CFTC in their Complaint against Defendants.

6

claim for manipulation in the Second Circuit.[3] *See also Gruntal & Co., Inc. v. San Diego Bancorp*, 901 F. Supp. 607, 618 (S.D.N.Y. 1995) (Chin, J.) (noting that the goal of the securities laws is to "protect investors from manipulative and deceptive **conduct**, not . . . from the adverse consequences of large block sales" and dismissing claim involving large volume trading, notwithstanding an alleged specific intent to depress prices) (emphasis added).

Indeed, the Third Circuit's decision in *GFL Advantage Fund*, cited with approval by the Second Circuit in *ATSI*, is analogous to the facts at hand. Therein, the defendant was accused of executing concentrated short sales so as to depress stock prices. *GFL Advantage Fund*, 272 F.3d at 197. The Court found such allegations to be insufficient to allege manipulation because "market manipulation requires an additional element, something beyond otherwise legal trading, which specifically injects false information into the market and/or creates an *artificial* demand for the underlying security." *Id.* at 204 (emphasis in original). The Third Circuit recognized that requiring a plaintiff to "establish that the alleged manipulator injected 'inaccurate information' into the market or created a false impression of market activity . . . permits courts to differentiate between legitimate trading activities that permissibly may influence prices, such as short sales, and ingenious devices that might be used to manipulate securities prices . . . ." *Id.* at 205 (citations and quotation omitted). Defendants assert, and the Court did not find otherwise, that the CFTC's Complaint does not plead any sort of activity that

---

[3] Although in dicta discussing the appropriate pleading standard under the Private Securities Litigation Reform Act *ATSI* states that "in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation," *ATSI*, 493 F.3d at 102, the Second Circuit did not hold or even insinuate that intent is the "something more" that suffices the Second Circuit's requirement that a manipulation claim involve conduct that deceives the market regarding the price of the stock or commodity at issue. *See id.* at 100-01; *see also GFL Advantage Fund*, 272 F.3d at 207. Further, it is unequivocal that Judge Sand did not view this dicta in *ATSI* to mean intent alone, absent deceptive conduct, is sufficient to state a claim for manipulation. Moreover, even if intent alone somehow suffices, as detailed below, in this case the CFTC failed to plead intent in accordance with Rule 9(b) and therefore the attempted manipulation claim must be dismissed.

7

would inject false information or something that would create an artificial demand for New York Mercantile Exchange natural gas futures contracts.

Accordingly, *ATSI*, *GFL Advantage Fund*, and *Nanopierce I* and *II* all make it clear that the CFTC's allegations are insufficient to state a claim for attempted manipulation. Thus, Defendants' Joint Motion for Reconsideration should be granted and, on reconsideration, the Court should dismiss Count I of the CFTC's Complaint.

**B.   THIS COURT OVERLOOKED CONTROLLING AUTHORITY FROM THE SECOND CIRCUIT THAT A CLAIM FOR MANIPULATION IS A CLAIM FOR FRAUD SUBJECT TO RULE 9(b)**

This Court's Order also held that Rule 9(b) does not apply to the CFTC's attempted manipulation claim. *See* Order at 16. The two authorities relied on in reaching this decision, *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) and *In re Natural Gas Commodity Litig.*, 358 F. Supp. 2d 336 (S.D.N.Y. 2005), were decided ***before*** the Second Circuit's holding in *ATSI* that "[b]ecause a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI*, 493 F.3d at 101 (citations omitted). Therefore, the "case-specific approach" of these two earlier district court decisions is inapplicable in light of the Second Circuit's controlling subsequent decision in *ATSI*. *See* Order at 14-15. Nowhere does the Order mention the Second Circuit's holding in *ATSI* that Rule 9(b) applies to manipulation claims. In light of *ATSI's* holding that manipulation claims require some sort of deceptive conduct, Rule 9(b) must apply to the CFTC's claims. Moreover, as the Court has already concluded that the Complaint does not allege any deceptive or fraudulent conduct, it is absolutely clear that it does not meet the heightened pleading standards of Rule 9(b). The failure of the CFTC to demonstrate a strong inference of manipulative intent under Rule 9(b) is also addressed in the Defendants' moving

papers on the Motions.  *See* Amaranth Advisors Mem. at 18-23; Hunter Mem. at 16-20. Therefore, Count I of the CFTC's Complaint should be dismissed.[4]

## Conclusion

For the foregoing reasons, Defendants Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, and Mr. Hunter respectfully submit that this Court should (i) grant their Joint Motion for Reconsideration, (ii) on reconsideration dismiss the Complaint; and (iii) grant such other and further relief as this Court deems just and proper.[5]

Dated: New York, New York
       June 5, 2008

---

[4] Defendant Hunter also continues to assert his objection to personal jurisdiction and respectfully requests that the Court reconsider its conclusion that it may exercise personal jurisdiction over him based on New York's long-arm statute.  First, New York's long-arm statute does not apply because the Commodity Exchange Act provides for nationwide service of process in CFTC actions, 7 U.S.C. § 13a-1(e), such that the Court should have instead directly considered whether the requirements of due process were met.  *See, e.g., Estate of Yaron Ungar v. The Palestinian Authority*, 400 F. Supp. 2d 541, 548 (S.D.N.Y. 2005) (noting that, where federal statute provides for nationwide service of process, the analysis turns to whether due process has been satisfied).  Second, having noted that section 302(a)(1) has been found to be narrower than what is required by due process, the Court nevertheless erred by concluding that a separate due process analysis was unnecessary because even if the long-arm statute were to apply, such an analysis was necessary to confirm that the application of the long-arm statute comports with due process. *See, e.g., Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir. 1996) (having concluded that the requirements of section 302(a)(1) were met, analyzing separately whether the Due Process Clause was satisfied).  Here, as stated in Defendant Hunter's briefing on his Motion (which the Court did not address), the exercise of personal jurisdiction does not meet due process because, there is no allegation that Hunter's actions actually had any harmful effect on U.S. markets.

[5] Defendants do not separately seek reconsideration with respect to Count II of the Complaint (the "cover-up" claim).  If the attempted manipulation claim (Count I) is dismissed, however, Count II should also be dismissed because the alleged cover-up is wholly dependent on the existence of the alleged attempted manipulation.  Absent the alleged attempted manipulation, there would be nothing to "cover-up".

WINSTON & STRAWN LLP

By /s/ David E. Mollón
   David E. Mollón (DM-5624)
   Steven M. Schwartz (SS-4216)
   dmollon@winston.com
   sschwartz@winston.com

200 Park Avenue
New York, NY 10166
(212) 294-6700

Stephen J. Senderowitz
Kristen V. Grisius
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Defendants*
*Amaranth Advisors L.L.C. and*
*Amaranth Advisors (Calgary) ULC*

and

KOBRE & KIM LLP

By /s/ Michael S. Kim
   Michael S. Kim (MK-0308)
   Leif T. Simonson (LS-5915)
   Michael.Kim@KobreKim.com
   Leif.Simonson@KobreKim.com

800 Third Avenue
New York, NY 10022
(212) 488-1200

*Attorneys for Defendant Brian Hunter*

CHI:2099616.2