UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>BRIAN HUNTER,<br><br>                    Defendant. | 07 Civ. 6682 (RA)<br><br>ECF CASE |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO ALLOW EXAMINATION OF DEFENDANT HUNTER CONCERNING PRIOR CREDIBILITY FINDINGS IN U.S. FEDERAL ENERGY REGULATORY COMMISSION PROCEEDING**

U.S. COMMODITY FUTURES TRADING
   COMMISSION
Division of Enforcement
140 Broadway, 19th Floor
New York, New York 10005
(646) 746-9761

Plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or the "Commission") submits this memorandum of law in support of its motion *in limine* to allow examination of Defendant Hunter concerning credibility determinations made by the U.S. Federal Energy Regulatory Commission (the "FERC") in the Initial Decision issued by Presiding Administrative Law Judge ("ALJ") Carmen A. Cintron on January 22, 2010 in the *Matter of Brian Hunter*, Docket No. IN07-26-004 (the "FERC Initial Decision").[1]  The FERC Initial Decision was ultimately reversed by the D.C. Circuit in an appeal in which the Commission participated as an intervening party.  However, the reversal was due to the absence of subject-matter jurisdiction.  ALJ Cintron's credibility determinations were undisturbed and should be a subject of Plaintiff's examination of Hunter pursuant to Rule 608(b) of the Federal Rules of Evidence ("FRE").

## BACKGROUND

On July 25, 2007, the Commission filed its complaint against Hunter and other Defendants, alleging that Hunter intentionally and unlawfully attempted to manipulate the price of natural gas futures contracts traded on the New York Mercantile Exchange in 2006.

On July 26, 2007, proceedings against Hunter and other defendants were also instituted by the FERC through an Order to Show Cause and Notice of Proposed Penalties, involving similar manipulation claims.  *See* FERC Initial Decision ¶ 2.

In the FERC proceeding, a hearing was held from August 18, 2009 through September 2, 2009 before ALJ Cintron.  FERC Initial Decision ¶ 16.  Throughout the course of the hearing, ALJ Cintron heard witness testimony concerning matters relating to the same events that give rise to this action, including four days of sworn testimony from Defendant Hunter.  *See* Declaration of Michael C. McLaughlin dated September 19, 2013 ¶ 5 and Exhibit 2.

---

[1] The FERC Initial Decision is available at http://www.ferc.gov/enforcement/market-manipulation/hunter.pdf; the relevant excerpts are attached as Exhibit 1 to the Declaration of Michael C. McLaughlin dated September 19, 2013.

After the hearing was completed, ALJ Cintron issued the FERC Initial Decision, in which ALJ Cintron weighed the evidence presented and held that Hunter violated the FERC's anti-manipulation rule. FERC Initial Decision ¶ 215. In ALJ Cintron's conclusion, the Judge made clear that assessment of Hunter's credibility was central to the FERC Initial Decision. *Id.* ¶ 215. ("Hunter's explanations of his conduct are not credible.")

In several other passages of the FERC Initial Decision, ALJ Cintron made findings concerning Hunter's credibility, all of which supported the ultimate holding cited above. ALJ Cintron rejected Hunter's explanations of his purported legitimate reasons for trading as he did on the days at issue, finding that Hunter "has not been forthright with this tribunal" and that his explanations "are not credible and amount to after-the-fact defenses of his actions." *Id.* ¶212. ALJ Cintron described Hunter's testimony during the FERC hearing as "*ex post facto* and solely intended to obfuscate the truth," *id.* ¶167; "a story...inconsistent with the record evidence," *id.* ¶172; "problematic," *id.* ¶160; "not credible," *id.* ¶¶163, 165, 169, 179, 183, 184, 186, 187, 188, 191; and "troublesome," *id.* ¶186. ALJ Cintron further found that Hunter "exhibited significant selective memory," *id.* ¶165, that he "misrepresented his June position," *id.* ¶185, and that "in all of [Hunter's] explanations there is studiously an attempt to obfuscate the issue of the positions on the other exchanges," *id.* ¶189.

On appeal, in which the Commission participated as an intervening party, the D.C. Circuit reversed the FERC Initial Decision, holding that because the CFTC had exclusive jurisdiction over Hunter's trading of natural gas futures contracts, the FERC lacked jurisdiction to charge Hunter with manipulation of those contracts. *See Hunter v. FERC*, 711 F.3d 155 (D.C.Cir. 2013).

In the present case, Hunter has been listed as a trial witness by both Plaintiff and Defendant.

**ARGUMENT**

**THE COMMISSION SHOULD BE PERMITTED TO EXAMINE HUNTER CONCERNING CREDIBILITY FINDINGS MADE IN THE FERC PROCEEDING**

    A.    **Examination of Hunter Concerning the FERC Credibility Findings is Supported by FRE 608(b) and Second Circuit Law**

Pursuant to FRE Rule 608(b), "the Court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b).

The Second Circuit has "long held that a witness can be cross-examined based on 'prior occasions when his testimony in other cases had been criticized by [a] court as unworthy of belief.'" *U.S. v. White*, 692 F.3d 235, 248 (2d Cir. 2012), *quoting United States v. Terry,* 702 F.2d 299, 316 (2d Cir.1983) (alteration in quotation); *see also White*, 692 F.3d at 241 (reversing district court and holding that the district court should have allowed the defendant to cross-examine an officer about a judge's adverse credibility findings concerning the officer's testimony in an unrelated criminal case).

The Second Circuit has "articulated seven non-exhaustive factors for courts to consider in determining the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief":

> (1) "whether the prior judicial finding addressed the witness's veracity in that specific case or generally"; (2) "whether the two sets of testimony involved similar subject matter"; (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and

3

> whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible,"

*White*, 692 F.3d at 249, *quoting United States v. Cedeno*, 644 F.3d 79, 81-82 (2d Cir. 2011) *cert. denied*, 132 S. Ct. 325, 181 L. Ed. 2d 201 (U.S. 2011); *see also Rosales v. Kelly*, 07 CIV. 10554 LAP, 2011 WL 5873374 (S.D.N.Y. Nov. 14, 2011) (in § 1983 action, permitting plaintiff's counsel to inquire on cross-examination into non-defendant correction officer's unrelated disciplinary action, in which the investigator found that one of the officer's statements was inconsistent with video of the incident.).

This motion is fully supported by each of these seven factors such that, during the examination of Hunter, Plaintiff should be permitted to inquire into ALJ Cintron's specific credibility determinations made concerning Hunter's testimony in the FERC proceeding.

The first factor, whether the prior judicial finding addressed the witness's veracity in that specific case or generally, is clearly established by the FERC Initial Decision, in which ALJ Cintron parsed through specific key testimony provided by Hunter and determined that it was not credible, and that it was problematic and troublesome, among other things. Thus, ALJ Cintron was assessing Hunter's veracity in his specific testimony during the FERC hearing, testimony that was central to ALJ Cintron's determination that Hunter violated the FERC's anti-manipulation rule.

The second factor, whether the two sets of testimony involved similar subject matter, is satisfied in this case because not only do both instances of testimony concern Hunter's trading, they concern precisely the same trading activity on the days at issue in the present case.

4

The third factor, whether the lie was under oath in a judicial proceeding or was made in a less formal context, weighs in favor of examination because Hunter's testimony before ALJ Cintron was under oath and in a judicial setting.  The FERC proceeding was an administrative trial lasting for several weeks during which witnesses in addition to Hunter testified and other evidence was put before the ALJ.

The fourth factor, whether the lie was about a matter that was significant, strongly favors permitting examination in this case as the testimony at issue was clearly significant.  The testimony was proffered by Hunter in his failed attempt to avoid being found to have violated the FERC's anti-manipulation rule.  In addition, ALJ Cintron specifically referenced the credibility determinations in concluding that the evidence supported finding that Hunter violated the FERC rule.

The fifth factor, how much time elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness, weighs in favor of permitting examination in this case because the credibility determination was made in 2009, closer in time to the events about which Hunter testified.  Plaintiff is aware of no other relevant credibility determinations that should be considered.

The sixth factor, the apparent motive for the lie and whether a similar motive exists in the current proceeding, requires little explanation for how it is satisfied here.  Just as in the FERC proceeding, Hunter seeks to offer certain explanations for his conduct in order to attempt to avoid being found to have violated the anti-manipulation section of the Commodity Exchange Act.

The seventh factor, whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible, has not, to Plaintiff's knowledge, occurred.

Although the FERC Initial Decision was subsequently overturned on the basis of the FERC's lack of subject matter jurisdiction, *see Hunter v. FERC*, 711 F.3d 155 (D.C. Cir. 2013), this procedural posture does not impact the use of credibility findings made by ALJ Cintron to examine Hunter.  The credibility determinations were not challenged by the D.C. Circuit, which, as a circuit court reviewing an administrative decision, would give great deference to the credibility determinations made by ALJ Cintron.  *See Pennzoil Corp. v. FERC*, 789 F.2d 1128, 1135 (5th Cir. 1986) (faulting the FERC for failing to accord the appropriate deference to an administrative law judge's credibility determinations and stating that "when the ultimate determination of motive or purpose hinges entirely upon the degree of credibility to be accorded the testimony of interested witnesses, 'the credibility findings of the [ALJ] are entitled to special weight and are not to be easily ignored.'" (quoting *Ward v. NLRB,* 462 F.2d 8, 12 (5th Cir. 1972) (alteration in quotation).)

Further, for examining the credibility of a witness under FRE 608(b), there is no requirement that the judicial determination has a preclusive effect.  For example, this Court permitted cross-examination into the credibility of a police detective who carried out a search of the defendants' apartment on the basis of non-judicial credibility findings made by police department's deputy commissioner in an unrelated matter involving execution of a search warrant.  *United States v. Nelson*, 365 F. Supp. 2d 381, 391 (S.D.N.Y. 2005) ("Although Commissioner Sarner's findings are not judicial, the Court recognizes that they may, in the eyes of a juror, carry a similar weight and appearance of authority as judicial findings. Nevertheless, the Court finds that the potential for undue prejudice resulting from the fact that the credibility finding was made by an NYPD Commissioner may be cured by an instruction to the jury regarding the limited purpose for which the jury may assign weight to that finding."); *see also*

*Lombardo v. Stone*, 99 CIV. 4603 (SAS), 2002 WL 113913, at *8 (S.D.N.Y. Jan. 29, 2002) (holding that defendant's "proffer of false information to the Special Investigator regarding the May 2000 incident clearly reflects her character for untruthfulness. Thus, plaintiff's counsel may cross-examine [defendant] on the fact that she lied to the Special Investigator regarding the May 2000 incident."); *Hynes v. Coughlin*, 79 F.3d 285 (2d Cir. 1996) (in inmate's § 1983 suit against guards for unreasonable use of force, evidence that one guard had allegedly filed false claim for worker's compensation and had been previously suspended for giving false information was relevant to issue of guard's credibility as a witness); *Chnapkova v. Koh,* 985 F.2d 79 (2d Cir. 1993) (holding in a personal injury case that plaintiff's failure to file tax returns for eight years, though irrelevant, was an admissible line of inquiry on cross-examination since it bore directly on plaintiff's credibility as a witness), *abrogated on other grounds, Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

Indeed, "sworn statements to a court or government agency, employment applications, and even applications for credit carry an obligation for truthfulness, so that falsehoods in such situations may be probative of a lack of credibility." *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 462-63 (S.D.N.Y. 1988) (discussing potential admissibility at trial in context of discovery dispute).

### B.  Examination of Hunter Concerning the FERC Credibility Findings is More Probative than Prejudicial

Although the Second Circuit's seven factor evaluation takes into account "probity and relevance," *White*, 692 F.3d at 249, one court applying this test in civil litigation found that additional probative-prejudice balancing was required. *Spencer v. Int'l Shoppes, Inc.*, CV 06-2637 AKT, 2013 WL 685453 (E.D.N.Y. Feb. 25, 2013) (holding that it would be unduly prejudicial to admit a judicial finding that plaintiff had submitted false resume and employment

7

applications and had changed his previous testimony, but allowing cross-examination concerning the events underlying the judicial finding). Even if an additional probative-prejudice balancing were done in this case, the factors would still weigh in favor of permitting examination of Hunter concerning the FERC credibility findings.

The FERC credibility findings are highly probative in this case, outweighing any prejudice, because Hunter's credibility is of central importance to whether the jury should credit his explanations for why he traded the way he did on the dates in question. This testimony and whether or not it is credited directly concerns one of the two elements that the Commission must demonstrate: Hunter's intent. When Hunter provided these explanations before, the ALJ found that his testimony lacked credibility and was inconsistent with the evidence. These findings bear on Hunter's credibility and are highly probative given that the testimony before the ALJ addresses the same subject matter as this case.

This case is different from the one before the court in *Spencer*, where the judicial finding of credibility concerned misstatements made outside the presence of the court in a resume, employment application and prior testimony. Here, the judicial findings of credibility concern the testimony that Hunter made *in the presence* of ALJ Cintron. The Commission is not seeking to introduce the findings themselves into evidence but, rather, is seeking to ask Hunter about ALJ Cintron's credibility findings during his testimony pursuant to FRE 608(b).

**CONCLUSION**

Pursuant to FRE 608(b), the Plaintiff should be permitted to examine Hunter concerning the credibility determinations made by ALJ Cintron in paragraphs 160, 163, 165, 167, 169, 172, 179, 183, 184, 185, 186, 187, 188, 189, 191, 212 and 215 of the FERC Initial Decision.

Dated: September 19, 2013
      New York, New York

Respectfully submitted,
ATTORNEYS FOR PLAINTIFF
U.S. COMMODITY FUTURES TRADING COMMISSION

/s/ David W. MacGregor
David W. MacGregor
Chief Trial Attorney
Manal Sultan
Chief Trial Attorney
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9700
(646) 746-9762 (direct dial)
(646) 746-9940 (facsimile)
dmacgregor@cftc.gov