UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,

v.

BRIAN HUNTER,

                              Defendants.

07 Civ. 6682 (RA)

ECF CASE

## JOINT PROPOSED JURY INSTRUCTIONS

### REQUEST TO CHARGE

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Court's Individual Rules & Practices in Civil Cases 1.6.B.iii, the parties Brian Hunter and the Commodity Futures Trade Commission hereby submit their Joint Proposed Jury Instructions in these proceedings.

The parties reserve the right to amend, supplement or modify these Joint Proposed Jury Instructions and their objections to proposed instructions as the case proceeds toward the final pre-trial conference and trial. Additionally, the parties do not waive any objections to instructions that are the subject of pending motions, including motions in limine.

Following the agreed proposed jury instructions are the jury instructions which plaintiff and defendant are each proposing without agreement.

## **SUBSTANTIVE INSTRUCTIONS**

## **FIRST REQUEST TO CHARGE**

**1. Role of the Court**

You have now heard all of the evidence in the case as well as the closing arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

None of you should be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than the one that I give you.[1]

---

[1] Leonard B. Sand, et al.,  Modern Federal Jury Instructions-Civil 71-2; *Franks v. United States Lines Co.*, 324 F.2d 126 (2d Cir. 1963)

## THIRD REQUEST TO CHARGE

**3.  Burden of Proof—General Instruction**

This is a civil case and as such the plaintiff has the burden of proving the material allegations of the complaint by a preponderance of the evidence.

If after considering all of the testimony you are satisfied that the plaintiff has carried its burden on each essential point as to which it has the burden of proof, then you must find for the plaintiff on its claims. If after such consideration you find the testimony of both parties to be in balance or equally probable, then the plaintiff has failed to sustain its burden and you must find for the defendant.[2]

---

[2] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 73-1

**FIFTH REQUEST TO CHARGE**

**5. What Is and Is Not Evidence**

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose – such as for the purpose of assessing a witness's credibility – you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence because the lawyers are not witnesses.  What they have said to you in their opening statements and in their closing arguments are intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which were marked for identification may not be considered by you as evidence unless the exhibits were received in evidence by the court.  To constitute evidence, exhibits must be received in evidence.  Exhibits marked for identification but not admitted are not evidence,

nor are the materials brought forth only to refresh a witness's recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.[3]

---

[3] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 74-1; *United States v. Aluminum Co. of America*, 1 F.R.D. 62 (S.D.N.Y. 1939)

## SIXTH REQUEST TO CHARGE

**6. Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence.  This is evidence which tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So, you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule

that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.[4]

---

[4] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 74-2; *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960).

## EIGHTH REQUEST TO CHARGE

### 8. Inference Defined

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defendant asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.[5]

---

[5] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 75-1; *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 76 S. Ct. 608, 100 L. Ed. 668 (1956); *Lavender v. Kurn*, 327 U.S. 645, 66 S. Ct. 740, 90 L. Ed. 916 (1946); *Wilkins v. American Export Isbrandtsen Lines, Inc.*, 446 F.2d 480 (2d Cir. 1971).

## NINTH REQUEST TO CHARGE

### 9. Witness Credibility

You have had the opportunity to observe all the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did the witness appear to be frank, forthright, and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was the witness's demeanor – that is, the witness's carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says, but how the person says it, that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which the witness testified, the accuracy of the witness's memory, the witness's candor or lack of candor,   intelligence, the reasonableness and probability of the testimony and its

consistency, or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.[6]

---

[6] Leonard B. Sand, et al.,  Modern Federal Jury Instructions-Civil 76-1; *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967 (1944); *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1952); *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946).

**TWELFTH REQUEST TO CHARGE**

**12. Expert Witnesses—Generally**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.[7]

---

[7] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 76-9; *United States v. Simon*, 425 F.2d 796 (2d Cir. 1969)

**CFTC'S PROPOSED JURY INSTRUCTIONS
TO WHICH DEFENDANT OBJECTS**

**PRELIMINARY INSTRUCTIONS BEFORE OPENING STATEMENTS**

We propose that the following be read to the jury prior to opening statements:

The plaintiff in this action is the Commodity Futures Trading Commission. You may hear the plaintiff being referred to during the trial as the Commission or the CFTC. The CFTC is an agency of the United States government and was created by Congress, among other things, to regulate futures markets in the United States. As part of its regulatory responsibilities, the Commission investigates and prosecutes instances of alleged misconduct in the futures markets, including manipulative activity. The defendant in this case is Brian Hunter.

In this case, the plaintiff claims that defendant Hunter engaged in unlawful manipulative futures trading in 2006. You should not concern yourselves, come to any conclusions, or draw any inferences based on the fact that the events at issue in this case occurred in 2006. Plaintiff also alleges that defendant Hunter was employed by a hedge fund named Amaranth Advisors at the time of the events at issue. When the Commission initially brought this action, the complaint named both defendant Hunter and Amaranth. The Commission's case against Amaranth has since been resolved, and Amaranth is no longer a defendant in this action. You are not to speculate as to why Amaranth is no longer in this lawsuit, nor come to any conclusions or draw any inferences based on the fact that Amaranth is no longer a defendant. Similarly, although Amaranth and defendant Hunter were not the only traders active in the natural gas futures markets in 2006, you should not be concerned about whether the Commission has conducted investigations into, or prosecuted, market participants other than defendant Hunter.

12

**SECOND REQUEST TO CHARGE**

**2.  Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is what I may have said – or what I may say in these instructions – about a fact issue evidence.  In this regard, you should bear in mind that a question put to a witness is never evidence.  It is only the answer by the witness that is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven its case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

13

You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.[8]

---

[8] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 71-3

**FOURTH REQUEST TO CHARGE**

**4. Preponderance of the Evidence**

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all of the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties –that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party having the burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence – it must prove the element at issue by a preponderance of the evidence. On the other hand, the party with the burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this

and you should put it out of your mind.[9]

---

[9] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 73-2 ; *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) ; *Larson v. JoAnn Cab Corp.*, 209 F.2d 929 (2d Cir. 1954).

## SEVENTH REQUEST TO CHARGE

**7. Depositions**

Some of the testimony before you is in the form of depositions and prior sworn testimony which have been received in evidence.  A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial.  This is part of the pretrial discovery, and each side is entitled to take depositions.  Similarly, prior sworn testimony is testimony given by a person in a proceeding where that witness is testifying under oath, like the witnesses you have heard from in this Court room. You may consider the testimony of a witness given at a deposition and in prior sworn testimony according to the same standards you would use to evaluate the testimony of a witness given at trial.[10]

---

[10] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 74-14.

## TENTH REQUEST TO CHARGE

**10. Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care and subject it to close and searching scrutiny.[11]

---

[11] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 76-2; *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Duke Laboratories, Inc. v. United States*, 222 F. Supp. 400 (D. Conn. 1963).

## ELEVENTH REQUEST TO CHARGE

**11. Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.[12]

---

[12] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 76-3; *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Duke Laboratories, Inc. v. United States*, 222 F. Supp. 400 (D. Conn. 1963)

<u>**THIRTEENTH REQUEST TO CHARGE**</u>

**13. No Inference of Conclusion Based on Age of the Case**

The events giving rise to this case took place in 2006.  You are not to concern yourselves with that fact and you are not to draw any conclusion or make any inference based on that fact.[13]

---

[13] Fed. R. Evid. 401; *Crowley v. Chait*, 2004 U.S. Dist. LEXIS 27235 (D.N.J. Dec. 27, 2004) (granting motion to exclude direct references to age of case, noting "It is possible that members of the jury might speculate as to the reasons why a twenty-year-old case is only now reaching trial. Then again, the jury might not care at all and instead conclude that the events of twenty years ago have only recently amounted to a cause of action against Defendants.")

## **FOURTEENTH REQUEST TO CHARGE**

**14. Stipulations**

A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed upon facts as true.[14]

---

[14] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil74-3.

## FIFTEENTH REQUEST TO CHARGE

### 15. Plaintiff's Contentions

In this case, the Commission contends that defendant Hunter sold futures on two specific days for the purpose of lowering the price of natural gas futures contracts in order to profit from those lower prices. The CFTC contends that the defendant Hunter, the head of natural gas trading at a Greenwich, Connecticut hedge fund, Amaranth Advisors, accumulated a large number of natural gas futures contracts for trading on February 24, 2006 and on April 26, 2006, and ordered those futures contracts to be sold just prior to the close of the market, in an attempt to manipulate the market price of natural gas futures to the benefit of other financial positions Amaranth Advisors held.

Specifically, the CFTC claims that on February 24, 2006, the last trading day for the March 2006 natural gas futures contract, under defendant Hunter's direction Amaranth acquired more than 3,000 futures contracts. The CFTC contends that defendant Hunter that directed those contracts be sold during the last thirty minutes of trading. The last thirty minutes of trading on the final trading day of the natural gas futures contract is significant because NYMEX uses the trades made during this period to calculate the final settlement price of the natural gas futures contract. This last thirty minutes on the last day of trading is referred to as the closing range or settlement period. The CFTC contends that Amaranth was a party to swaps contracts by which it would benefit financially from a lower natural gas settlement price on February 24. The CFTC claims that by directing more than 3,000 futures contracts be sold during the settlement period – the period during which the final settlement price was determined – defendant Hunter attempted to lower natural gas futures prices so that Amaranth would earn a profit on the swaps contracts that it held.

The CFTC further claims that defendant Hunter attempted to manipulate the price of natural gas futures contracts again on April 26, 2006. It is the CFTC's contention that in the days before April 26, under defendant Hunter's direction, Amaranth again acquired more than 3,000 natural gas futures contracts.  The CFTC contends further that defendant Hunter then directed the selling of those futures contracts during the last eight minutes of the settlement period.  The CFTC contends that, just as in February, Amaranth was a party to swaps contracts by which it would benefit financially from a lower natural gas settlement price on April 26.  The CFTC contends that by trading as defendant Hunter directed during the final eight minutes of the settlement period – the period during which the final settlement price was determined – defendant Hunter attempted to lower natural gas futures prices so that Amaranth would earn a profit on the swaps contracts that it held.

## SIXTEENTH REQUEST TO CHARGE

### 16. Elements of Attempted Manipulation

I will now instruct you in the law applicable in this case.  As you have heard, this case

turns on certain activity related to transactions on the NYMEX natural gas futures market

occurring on two separate days:  February 24, 2006 and April 26, 2006.

It is a violation of Section 9(a)(2) of the Commodity Exchange Act for any person to

attempt to manipulate the price of any commodity in interstate commerce, or for future delivery

on or subject to the rules of any registered entity.  NYMEX natural gas futures contracts are

agreements for the future delivery of a commodity on or subject to the rules of a registered

entity.  Consequently, it is unlawful to attempt to manipulate the price of NYMEX natural gas

futures contracts.

An attempted manipulation requires only an intent to affect the market price of futures

contracts and some overt act in furtherance of that intent.  The plaintiff need not prove that

defendant Hunter actually had the ability to manipulate prices or did in fact manipulate prices,

only that he intended to affect prices and that he took some overt act in furtherance of that intent.

"Marking the close," or placing orders near or during the close of the market to affect the closing

price – if accompanied by evidence of manipulative intent – is one type of illegal manipulative

activity.[15]

With respect to each of the two specific dates alleged, you must find that defendant

Hunter attempted to manipulate the price of natural gas futures contracts if you find that it is

more likely than not that

---

[15] *CFTC v. Amaranth Advisors, L.L.C., et al,*, 554 F. Supp. 2d 523, 532-34  (S.D.N.Y. 2008) (Chin, D.J.) (denying
defendants' motion to dismiss); *id.* at 534 (holding that buying or selling in a manner calculated to produce the
maximum effect upon prices, frequently in a concentrated fashion and in relatively large lots is one form of
manipulative activity, among others); *see In re Hohenberg Bros. Co.*, 1977 WL 13562, at *7 (CFTC Feb. 18, 1977).

(1) defendant Hunter had the intent to affect the price of  natural gas futures contracts; and

(2) defendant Hunter took an overt act or acts in furtherance of that intent.

## SEVENTEENTH REQUEST TO CHARGE

**17. Manipulative Intent.**

Because proof of intent will most often be circumstantial in nature, manipulative intent may be shown inferentially from the conduct or the words of the defendant. Thus, intent may be inferred by a person's actions and the totality of the circumstances.

To establish intent to manipulate or affect market prices, it must be shown that a person acted or failed to act with the purpose or conscious object of causing or affecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand. A profit motive may also evidence intent, although profit motive is not a necessary element of an attempted manipulation.

Manipulative intent can be inferred from objective facts, actions, statements, and the totality of the circumstances. Much of the evidence in this case has involved instant messages. In assessing this kind of evidence, you may consider witness explanations. However, you need not accept witness explanations at face value; you may also assess instant messages in light of your own reason, experience, and common sense.[16]

---

[16] *CFTC v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 532-33 (S.D.N.Y. 2008), reconsideration denied (June 10, 2008) (citing *In re Indiana Farm Bureau Coop. Assoc.*, CFTC No. 75-14, 1982 WL 30249, at *6 (CFTC Dec. 17, 1982 and *In re Hohenberg Bros. Co.*, 1977 WL 13562, *7 (CFTC Feb. 18, 1977)

## EIGHTEENTH REQUEST TO CHARGE

**18.  The Overt Act**

      If you find that defendant Brian Hunter intended to manipulate the price of natural gas futures contracts, you will be asked to determine what, if any, overt acts defendant Hunter took in furtherance of that manipulative intent.  An overt act in furtherance of the intent to manipulate prices can include, among other things, placing orders, causing orders to be placed, selling futures contracts, and entering into related transactions.  An overt act can be any step taken to manipulate prices, including each and every order placed, or caused to be placed, to build up Amaranth's position leading up to the settlement periods on February 24, 2006 and April 26, 2006, as well as each and every step taken to place an order, or cause an order to be placed, to sell futures contracts during the settlement periods on February 24, 2006 and April 26, 2006.  An overt act can be any and every operation or transaction or practice, including each and every instant message by defendant Hunter and any acts that defendant Hunter took to cover up Amaranth's illegal trading activity, so long as the act is taken in furtherance of the requisite intent.

      The CFTC does not need to show a fraudulent act, or that defendant Hunter's conduct was otherwise unlawful or a violation of exchange rules, in order to prove that defendant Hunter attempted to manipulate the price of natural gas futures contracts.  Even otherwise legal, open-market transactions can constitute acts taken in furtherance of manipulative intent.  Consequently, even if you believe that defendant Hunter's conduct did not involve fraud, did not violate exchange rules, or that other market participants willingly purchased the contracts that defendant Hunter was selling, you must still find that defendant Hunter attempted to manipulate

natural gas futures contracts if you find that (1) defendant Hunter intended to affect the price of

the contracts and (2) defendant Hunter took an overt act in furtherance of that intent.[17]

---

[17] *CFTC v. Amaranth Advisors, L.L.C.*,554 F. Supp. 2d 523,533-35 (S.D.N.Y. 2008) (Chin, J.), reconsideration denied, *CFTC v. Amaranth Advisors, L.L.C.*, et al, 07-CV-6682 (S.D.N.Y. June 10, 2008); *Volkart Bros., Inc. v. Freeman*, 311 F.2d 52, 58 (5th Cir. 1962); *In re Hohenberg Bros. Co.*, 1977 WL 13562 at *7-8, [1975-1977 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 20,271 at 21,477 (CFTC Feb. 18, 1977); *In re Indiana Farm Bureau Coop. Assoc.*, CFTC No. 75-14, 1982 WL 30249, at *7 (CFTC Dec. 17, 1982); *CFTC v. Hunter*, 07-CV-6682 (BSJ) (citing *CFTC v. Amaranth Advisors, L.L.C.*, et al, 07-CV-6682, at 17 (S.D.N.Y. May 21, 2008).

## **CLOSING INSTRUCTIONS**

You are about to go into the jury room and begin your deliberations and decide this case. In order to prevail, the plaintiff must sustain its burden of proof as I have explained to you with respect to each element of the claim. If you find that the plaintiff has succeeded, you should return a verdict in its favor on that claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff.

It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement. Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

When you go back into the jury room, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

If during your deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony – in fact any communication with the Court –

should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**[Insert explanation of verdict form-to be determined after Court approves form]**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.[18]

---

[18] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil 78-1, 78-3, 78-5.

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS
## TO WHICH PLAINTIFF OBJECTS

## REQUEST TO CHARGE

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and the Court's Individual Rules & Practices in Civil Cases 1.6.B.iii, the parties Brian Hunter and the Commodity Futures Trade Commission hereby submit their Joint Proposed Request to Charge and Verdict Sheet in these proceedings.

The parties reserve the right to amend, supplement or modify these Joint Proposed Jury Instructions and their objections to proposed instructions as the case proceeds toward the final pre-trial conference and trial. Additionally, the parties do not waive any objections to instructions that are the subject of pending motions, including motions in limine.[19]

---

[19] The parties also do not waive their objections to the definition of manipulation and attempted manipulation raised in summary judgment motions to the extent their positions have not been adopted by this Court..

## PRELIMINARY INSTRUCTIONS BEFORE OPENING ARGUMENTS

Members of the jury, we are about to begin the trial of this case.  You have heard some details about this case during jury selection.  Before the opening statements, however, there are certain instructions you should have in order to better understand the evidence that will be presented to you and how you should conduct yourself during trial.  What I will now say is intended to serve as an introduction to the trial of this case.  It is not a substitute for the detailed instructions on the law and the evidence that I will give you at the close of the case, before you retire to consider your verdict.

During the trial you will hear me use a few terms that you may not have heard before.  Let me briefly explain some of the most common to you.  Throughout this trial, and in these instructions, I will refer to the Commodity Futures Trade Commission (or "the Commission" for short) as the Plaintiff and to Brian Hunter as the Defendant.

Additionally, you will sometimes hear me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

When I "sustain" an objection that one of the lawyers makes to a witness' testimony or to other evidence then I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.  When I say "admitted into evidence" or "received into evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions that you must make at the end of the case.

By your verdict, you will decide disputed issues of fact.  I will decide all questions of law that arise during the trial.  Before you begin your deliberations at the close of the case, I will instruct you in more detail regarding the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  Keep in mind that I will instruct you at the end of the trial about determining the credibility or believability of the witnesses or how much weight to give any testimony by experts.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the closing arguments by the lawyers, and my instructions to you on the law.  It is your duty as jurors to follow the law as I state it to you, and to apply that law to the facts as you find them from the evidence in the case.  You are not to be concerned with the wisdom or soundness of any rule of law stated by me.  Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty as jurors for you to base a verdict on any view of the law other than that given by me in my instructions.  It would also be a violation of your sworn duty, as judges of the facts, to base a verdict on anything other than the evidence in this case.  In particular, you may not perform any investigation of the case on your own, including through Internet searches, discussions with friends or family during the trial, or review of any media reports about the case.

The evidence presented to you during the trial will consist primarily of the testimony of witnesses and tangible items known as "exhibits."  Any exhibit admitted into evidence during the trial will be available to you to study during your deliberations.

33

If you would like to take notes during the trial, you may do so, but you are not required to take notes if you don't want to.  If you do take notes, be careful not to get so involved in note taking that you become distracted from the proceedings.  Also, your notes should be used only as an aid to your memory.  If your memory later should differ from your notes, you should rely on your memory and not on your notes.  If you do not take notes, you should rely on your own independent recollection or memory of what the testimony was, and you should not be unduly influenced by the notes or by the recollection of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else.  In addition, you should not permit anyone to discuss the case in your presence.  You should avoid reading any news articles or commentary that might be published about the case or about the parties and individuals involved in the case.  You should also avoid watching or listening to any television or radio comments about the trial or about the parties and individuals involved in the case.  Along these same lines, you should not try to access any information about the case or parties or do research on any issue that arises in the case from any outside source including the Internet.  You should also not discuss the case with anyone, including on Internet social media networks like Twitter, Facebook, Linkedin, or MySpace.  In the event you see anything in the media or on the Internet about this case, please turn away and pay it no attention.  Your sworn duty is to decide this case solely and wholly on the evidence presented in the courtroom.

From time to time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible or appropriate for this trial.  You should not

view unfairly or be partial against a lawyer or the lawyer's client because the lawyer has made objections.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inference or conclusion from the question.  You should not infer or conclude from any ruling or other comment I may make that I have any opinion on the merits of the case favoring one side or the other.  I do not favor one side or the other.

The trial lawyers are not allowed to speak with you during this case.  When you see them at a break in the trial or pass them in the halls and they do not speak to you, they are not being rude or unfriendly.  They are simply following the law and my instructions.

During the trial, occasionally I may need to confer with the lawyers out of your presence or earshot on questions of law or procedure that require consideration by me alone.  On some occasions you may be excused from the courtroom.  Sometimes these "bench" conferences or "side-bars" serve to speed things along.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine, and should be patient.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations.  The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all of the evidence.[20]

The case will proceed as follows:

---

[20] 3 Kevin F. O'Malley et. al., Federal Jury Practice & Instructions – Civil § 101.02 (5th ed. 2000).

First, the lawyers for each side may make opening statements.  What is said in the opening statements is not evidence but is simply an outline to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, Plaintiff will present evidence in support of its claims and Mr. Hunter's lawyers may cross-examine the witnesses.  At the conclusion of Plaintiff's case, Mr. Hunter's lawyers may introduce evidence and Plaintiff's lawyers may cross-examine the witnesses.  Mr. Hunter's lawyers are not *required* to introduce any of their own evidence because Plaintiff has the burden of proving its case to you.  The Defendant does not have a burden to prove anything about Plaintiff's claims.[21]

After the evidence is presented, the parties' lawyers will make closing arguments explaining what they believe the evidence has shown.  What is said in closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

Now, we will begin by giving the lawyers for each side an opportunity to make their opening statements in which they may explain the issues in the case and summarize the facts they expect the evidence will show.  So I ask that you now give counsel your close attention as I recognize them for purposes of opening statements.

---

[21] 3 Kevin F. O'Malley et. al., Federal Jury Practice & Instructions – Civil § 101.02 (5th ed. 2000).

## THIRD REQUEST TO CHARGE

As members of the jury, you are the sole and exclusive judges of the facts.  You consider the evidence and determine the credibility of witnesses.  In this role, you are also to decide how much weight to give to the testimony of any experts that might be presented by either party.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or function as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, closing arguments, objections, or questions is not evidence.  Nor is what I may have said or what I may say in these instructions evidence.  In this regard, you should bear in mind that a question put to a witness is never evidence.  It is only the answer by the witness that is evidence.  You also may not consider any answer that I directed you to disregard or that I directed to be stricken from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to suggest any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not Plaintiff has proven its case.

I also ask you to draw no inferences from the fact that, on occasion, I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinion on my part about the verdict that you

should render, or whether any of the witnesses has been more credible than any other witness. You must understand that the Court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding facts without bias or prejudice to any party.[22]

---

[22] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil ¶71.01 Instruction 71-3 (2010)

## **FOURTH REQUEST TO CHARGE**

This is a civil case and as such the Plaintiff has the burden of proving the material allegations of its complaint by a preponderance of the evidence.

What does a "preponderance of evidence" mean?  It means "more likely than not."  To establish a fact by a preponderance of the evidence, the party must therefore prove that the fact is more likely true than not true.  A preponderance of the evidence is the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all of the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – in other words, that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party that has the burden of proof.  That is because the party bearing this burden, the Plaintiff, must prove more than simple equality of evidence – the party must prove the element at issue by a preponderance of the evidence. If you are unable to understand the Plaintiff's evidence, then you must find that the Plaintiff has failed to meet its burden of proof.[23]

---

[23] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil ¶ 73 Instruction 73-2 (2010)

## SEVENTH REQUEST TO CHARGE

Some of the testimony before you is in the form of depositions that have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards that you would use to evaluate the testimony of a witness given at trial.[24]

---

[24] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil ¶ 74 Instruction 74-14 (2010).

## **TENTH REQUEST TO CHARGE**

A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed upon facts as true.[25]   The following are facts that the parties have stipulated to in this case (*see* Stipulation Agreement _____):

---

[25] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil ¶ 74 Instruction 74-3 (2010).

<u>**ELEVENTH REQUEST TO CHARGE**</u>

1. **Plaintiff's Contentions**[26]

On February 24, 2006, the last trading day for the March 2006 natural gas futures contract, Mr. Hunter caused Amaranth to sell futures on the floor of the NYMEX not for any business purpose, but for the purpose of creating an artificial price so that Amaranth could potentially earn a profit on certain swaps contracts it held on another exchange that would benefit from a lower NYMEX settlement price.

On April 26, 2006, Hunter caused Amaranth to sell futures contracts during the last eight minutes of the settlement period not for any business purpose, but rather for the purpose of creating an artificial price so that Amaranth could potentially earn a profit on certain swaps it held on another exchange that would benefit from a lower NYMEX settlement price.

The CFTC claims that this conduct constitutes unlawful manipulation of the natural gas futures settlement prices, in violation of the Commodities Exchange Act, which law I will instruct you on shortly.

---

[26] Defendant reserves the right to object to the Court summarizing either of the parties' contentions for the jury.

## TWELFTH REQUEST TO CHARGE

Mr. Hunter contends the following:

The trades at issue on February 24, 2006 were not made for the purpose of creating an artificial price or to impact the settlement price in any way. Rather they were made for a particular business reason related to unusual price movements observed by Mr. Hunter (and other traders) during the two minute closing period the previous day. Based on his observations of those price movements on February 23rd, Mr. Hunter anticipated that there would be a period of aggressive buying sometime during the thirty minute closing period on February 24th. And because of that anticipated buying pressure, Mr. Hunter believed that if his brokers, using their discretion, sold futures ratably during the close (or market on close), he could obtain a price for Amaranth's March 2006 futures that would be higher than the settlement price. Each of the sales of Amaranth's futures contracts on February 24th were legitimate trades with real buyers who willingly purchased the futures on the open market at prevailing market prices through competitive transactions for their own reasons.

The trades at issue on April 26, 2006 were not made for the purpose of creating an artificial price or to impact the settlement price in any way. Rather, they were made for business reasons, in particular, as part of a strategic directive from Mr. Hunter's superiors and risk manager at Amaranth to reduce the size of Amaranth's natural gas positions at the end of April. Mr. Hunter contends that selling futures during the settlement period on

April 26 was part of the strategy he helped put in place to try to reduce the size of the natural gas positions in a way he believed was the most effective and most beneficial for Amaranth's investors.  Under this strategy, Amaranth's overall position would not benefit from a lower settlement price and Mr. Hunter was specifically not hoping for a lower settlement price that day – the opposite of what the CFTC contends.  Moreover, each of Amaranth's futures contracts on April 26th were legitimate trades with real buyers who willingly purchased the futures on the open market at prevailing market prices through competitive transactions for their own reasons.

## <u>THIRTEENTH REQUEST TO CHARGE</u>[27]

I will now turn to the background and instruct you in the law applicable in this case.  As you have heard, this case turns on certain transactions on the NYMEX natural gas futures market occurring on two separate days:  February 24, 2006 and April 26, 2006.

It is a violation of Section 9(a)(2) of the Commodity Exchange Act for any person to attempt to manipulate the price of any commodity in interstate commerce, or for future delivery.  An attempted manipulation is a manipulation that has not succeeded or been proven to have succeeded.[28]  With respect to each of the two specific dates alleged, the Commission must prove:

(a) Mr. Hunter intended to cause the creation of an artificial price in the market for natural gas futures contracts; and

(b) Mr. Hunter took an overt act or acts for the purpose of attempting to bring about the artificial price; and

(c) such overt act or acts were not undertaken for another business purpose.

It is not enough for the CFTC to prove that Mr. Hunter's trading decisions could have, or even did, create an artificial price in the market.  The CFTC must prove that Mr. Hunter acted for that primary purpose, as opposed to some other purpose.  An "artificial price" in a market like a commodities market for the buying and selling of natural gas is a price that does not reflect normal market forces, such as forces of supply and demand.   For example, one type of conduct that can produce an artificial price is the deliberate injection of false information into the market place.[29] In this case, the Commission contends that Mr. Hunter sold futures on two specific days

---

[27] Hunter also does not waive his objections to the definition of manipulation and attempted manipulation raised in his summary judgment motion.  To the extent his position has not been adopted by this court.

[28] *See In re Hohenberg Bros. Co.*, CFTC No. 75-4, 1977 WL 13562, at *7 (C.F.T.C. Feb. 18, 1977).

[29]  *See In re Soybean Futures Litigation*, 892 F. Supp. 1025, 1046 (N.D. Ill. 1995) (false reports can influence prices and constitute part of a manipulation claim); *Cargill Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971) (one of the most common manipulative devices is the floating of false rumors that affect futures prices).

for the purpose of lowering the settlement price of natural gas futures contracts in order to profit from those lower prices, and not for another business purpose.  By contrast, Mr. Hunter asserts that the trading he caused Amaranth to engage in on each of the dates in question was undertaken for specific business purposes for Amaranth and not for the purpose alleged by the Plaintiff.  Mr. Hunter, however, bears no burden of proof in this case and thus the Plaintiff bears the burden to prove to you by a preponderance of the evidence that Mr. Hunter acted for the reason Plaintiff alleges and not for another business reason as Mr. Hunter asserts.  In assessing Mr. Hunter's purported reasons for ordering the trades in question, the jury may not replace its business judgment for that of Mr. Hunters and consider whether his alleged business reasons were wise or not.  If you find that he acted with a purpose that was not primarily to create an artificial price, whether or not you believe his decisions were prudent or wise is irrelevant.

In order to prove that the Defendant committed this violation, you must find that the Commission has proved by a preponderance of the evidence its claim that Mr. Hunter intended to manipulate the market on February 24 or April 26, 2006.  You must be unanimous as to at least one of the two dates alleged. It is not enough if only some of you find by a preponderance of the evidence that he violated the Act on February 24th and some of you find that he did so on April 26th, even if all of you agree that he violated the Act.  You must be unanimous as to at least one of the two dates.[30]

---

[30] *Cf, e.g.*, *U.S. v. Buchmeir*, 255 F.3d 415, 425-26 (7th Cir. 2001) (citing various authorities stating that the defendant is entitled to an "augmented instruction requiring unanimity on one or the other of the acts charged within a count that would otherwise appear to constitute separate offenses," and providing that "[i]f you cannot agree in that manner, you must find the defendant not guilty of that count") (citations and internal quotation marks omitted).

**<u>CLOSING INSTRUCTIONS</u>**

You are about to go into the jury room to begin your deliberations and decide this case. Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous with respect to either or both days on which the Defendant is alleged to have violated the Commodities Exchange Act. If only some of you find by a preponderance of the evidence that he violated the Act on one day and only some of you find by a preponderance of the evidence that he violated the Act on the other day, then you must find against the Plaintiff.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without suppressing individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced that it is erroneous. Do not, however, surrender your honest convictions as to the weight or effect of the evidence, solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

When you go back into the jury room, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

If during your deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony – in fact any communication with the Court –

should be made in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.[31]

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I again stress that each of you should be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in this case.  I have no doubt that you will discharge your responsibility carefully and conscientiously.[32]

---

[31] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil ¶ 78 Instruction 78-1 (2010).
[32] Leonard B. Sand, et al., Modern Federal Jury Instructions-Civil ¶ 78 Instruction 78-1, 78-3, 78-5 (2010); 3 Kevin F. O'Malley et. al., Federal Jury Practice & Instructions – Civil § 106.08 (5th ed. 2000).

Respectfully submitted jointly,

U.S. COMMODITY FUTURES TRADING COMMISSION

  s/  David MacGregor

David MacGregor
Manal Sultan
140 Broadway, 19th Floor
New York, New York 10005
Tel: (646) 746 9762
Fax: (646) 746 9940

*Attorneys for U.S. Commodity Futures Trading Commission*

KOBRE & KIM LLP

s/ Andrew C. Lourie

Michael S. Kim
Michael.Kim@kobrekim.com
Matthew I. Menchel
Matthew.Menchel@kobrekim.com
800 Third Avenue
New York, New York 10022
Telephone: +1 212 488 1200
Facsimile: +1 212 488 1220

Andrew C. Lourie
Andrew.Lourie@kobrekim.com
1919 M Street, NW
Washington, DC 20036
Telephone: +1 202 664 1900
Facsimile: +1 202 664 1920

*Counsel for Brian Hunter*