UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x
                  :

U.S. COMMODITY FUTURES TRADING   :    07 Civ. 6682 (RA)
COMMISSION,                   :

                  :
Plaintiff,                  :

                  :
v.                   :

                  :
BRIAN HUNTER,            :

                  :
Defendant.               :

                  :
---------------------------------x

**DEFENDANT BRIAN HUNTER'S MEMORANDUM OF LAW IN OPPOSITION TO THE CFTC'S MOTION *IN LIMINE* TO PRECLUDE HUNTER FROM REARGUING ELEMENTS OF ATTEMPTED MANIPULATION**

KOBRE & KIM LLP

800 Third Avenue
New York, New York 10022
Tel +1 212 488 1200

*Counsel for Brian Hunter*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .......................................................................................................................3

    A.    Evidence That Hunter Had a Non-Manipulative Business Purpose for the Trading Is Relevant to the Element of Manipulative Intent ..........................................................3

    B.    Evidence That Hunter Did Not Violate Any Exchange Rules or Inject False Information into the Market Is Relevant to the Element of Manipulative Intent and Not Unduly Prejudicial to the CFTC ...................................................................6

    C.    Evidence That the Trades at Issue Could Not Predictably Lower Price and Did Not Ultimately Impact Price Is Relevant to the Element of Manipulative Intent............7

CONCLUSION ...................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Amaranth Natural Gas Commodities Litig.*, 730 F. 3d 170 (2d Cir. 2013) ..........................5

*In re Indiana Farm Bureau Coop. Assoc.*, CFTC No. 75–14, 1982 WL 30249 (C.F.T.C.   Dec. 17, 1982).......................................................................................4, 5

*U.S. Commodity Futures Trading Comm'n v. Amaranth*, 554 F.Supp.2d 523 (S.D.N.Y. 2008) ..................................................................................................4

*U.S. Commodity Futures Trading Comm'n v. Hunter*, No. 07-06682 (BSJ) (FM), 2012 WL 297838 (S.D.N.Y. Jan. 30, 2012)...............................................................4

**Rules**

Federal Rule of Evidence 403...........................................................................................6

Defendant Brian Hunter, by and through his counsel Kobre & Kim LLP, respectfully submits this memorandum of law in opposition to Plaintiff the United States Commodity Futures Trading Commission's (the "CFTC") motion *in limine* to preclude Hunter from presenting evidence or argument to the jury regarding the elements of attempted manipulation [DE 120, 121] (the "CFTC Manipulation Motion").

## PRELIMINARY STATEMENT

The CFTC moves to preclude Hunter from: (1) arguing to the jury that the elements of attempted manipulation include some type of fraud, deception or rule violations; (2) offering evidence that Hunter did not in fact inject any false information into the market or violate any exchange rules; (3) offering evidence that the settlement price was not, and in fact could not have been, successfully manipulated by the specific trading alleged; and (4) arguing that the CFTC must prove that Hunter did not trade for a non-manipulative business purpose.

As an initial matter, Hunter has no intention of arguing that the elements of attempted manipulation are different than what this Court ultimately instructs the jury. Therefore, if the Court does not instruct the jury that it must find an attempt to commit some fraudulent, deceptive or illegal act in order to find him guilty of attempted manipulation, Hunter will of course not argue to the jury that it must so find. However, there is no dispute between the parties that "intent" to cause a lower, artificial settlement price is an element of the attempted manipulation alleged in the Complaint [DE 1]. And, there can be no serious question that it is relevant to the element of his intent that Hunter in fact violated no exchange rules, traded only at prevailing open market prices and injected no deceptive information into the market place. It is undoubtedly relevant for Hunter to offer evidence and for the jury to infer that if he had really intended to create an artificially lower price, as the CFTC must prove, there are things that he

would have done to ensure success, including injecting false information into the market place or attempting to trade at prices below the prevailing market prices.  The CFTC confuses this as an attempt to change the law of the case and add an element (*i.e.*, proof of deception) to the CFTC's burden of proof that is not required under the law of the case.  To the contrary, whether or not deception is an element of manipulation, evidence of deception (or in this case, lack of deception) is relevant to the element of Hunter's scienter.

Similarly, the CFTC requests that the Court preclude Hunter from offering evidence that the trades at issue did not move the settlement price and could not have moved the settlement price in a predictable way because the elements of attempted manipulation do not include proof that the attempted manipulation could have succeeded.  This, however, again ignores the relevance of such evidence to the element of intent.  Specifically, if Hunter did not believe that Amaranth's trading on February 24 and April 26, 2006 could have successfully lowered the settlement price, then the jury could certainly infer that he would not have directed those trades with intent to do so.  Logically, one would not intend to accomplish something one did not believe to be possible.  Accordingly, evidence that Hunter believed it was impossible to predictably move the settlement price in a certain direction by trading futures in the manner alleged—*along with evidence that Hunter was right*—is certainly relevant to whether an experienced market participant like Hunter would have such intent when making such trades. The fact that the expert evidence shows that the settlement price was not impacted at all by the alleged trades is important corroboration of Hunter's stated belief and supports the argument that because Hunter, as an experienced market participant, understood that the trades alleged by the CFTC could not possibly have moved the settlement price in a particular direction, he must not have traded with that intent.

Finally, the CFTC moves to prevent Hunter from arguing that the CFTC failed to prove he did not have a non-manipulative business reason for trading futures on the two days at issue and, apparently, also from offering affirmative evidence that he had a non-manipulative business purpose.  The CFTC claims that Hunter should be precluded from making such an argument and offering such evidence because they bear no such burden.  This is mere semantics, however. Although the Court will instruct the jury as to the elements and the burden of proof, and Hunter will not argue otherwise, there can be no doubt that the CFTC must prove that Hunter traded with the sole or primary intent to manipulate the settlement price down to something "artificial," as alleged in the Complaint.  In order to prove such intent, by definition the CFTC will have to establish that Hunter did not trade primarily for another non-manipulative purpose and that *but for* his manipulative intent, the trades at issue would not have occurred for other lawful reasons. There are numerous contemporaneous emails and instant messages that establish the true and non-manipulative business purposes for the trades in question that are directly relevant to the issue of Hunter's intent (or lack thereof), and Hunter is permitted as a matter of law to offer them into evidence to establish that the CFTC has failed to meet its burden, which by definition includes convincing the jury that Amaranth did not in fact trade for those non-manipulative business reasons.

## <u>ARGUMENT</u>

### A. Evidence That Hunter Had a Non-Manipulative Business Purpose for the Trading Is Relevant to the Element of Manipulative Intent

Although it is not entirely clear from the motion, the CFTC appears to be asking the Court to prevent Hunter from both: (1) offering evidence as to his non-manipulative business reasons for directing the trades at issue in this case; and (2) arguing to the jury that the CFTC failed to establish that he did not trade for such non-manipulative reasons.

3

It is well settled law that a trader could not have specifically intended to manipulate the market if he traded for another non-manipulative business purpose.  Although unclear, it appears the CFTC's position is that even if the trading at issue was done for "some purpose other than manipulation," it still "cannot obviate a finding of attempted manipulation."  *See* CFTC Manipulation Mot. at 8.  Such a position, however, would nearly eliminate the intent element and leave the CFTC with no burden other than to establish that the trades at issue were made and that Amaranth stood to gain financially from a lower settlement price, regardless of the true non-manipulative reasons for the trades that the jury would be prevented from hearing.  The CFTC therefore seems to be asking this Court to preclude Hunter from offering evidence that he traded for business purposes that had nothing whatsoever to do with creating an artificial price.  If the Court were to grant such relief, there would only be the CFTC's explanation for Hunter's trading and thus no need for a trial, as the CFTC would have prevailed on its Motion for Summary Judgment.[1]

As Judge Chin held in this case, and the CFTC noted several times in the instant motion, the Commodity Exchange Act requires a plaintiff to prove specific intent to manipulate the market.  *See U.S. Commodity Futures Trading Comm'n v. Amaranth*, 554 F.Supp.2d 523, 532 (S.D.N.Y. 2008) (citing *In re Indiana Farm Bureau Coop. Assoc.*, CFTC No. 75–14, 1982 WL 30249, at *6 (C.F.T.C. Dec. 17, 1982)); CFTC Manipulation Mot. at 1-3.  In commodities trading cases, the specific intent standard "separates ***otherwise lawful business conduct*** from unlawful manipulative activity."  *In re Indiana Farm*, 1982 WL 30249, at *6 ("[A] clear line

---

[1] Indeed, Judge Jones denied the CFTC's Motion for Summary Judgment on the basis that the fact finder must determine *at trial* the intent behind Hunter's trades.  *See U.S. Commodity Futures Trading Comm'n v. Hunter*, No. 07-06682 (BSJ) (FM), 2012 WL 297838, at *2 (S.D.N.Y. Jan. 30, 2012) (the Court cannot grant summary judgment to the CFTC on the issue of intent because "[t]o resolve the issue of intent, the Court [at the summary judgment phase] would have to weigh conflicting evidence and choose among the contrary inferences argued by both parties.").

between lawful and unlawful activity is required in order to ensure that ***innocent trading activity*** not be regarded with the advantage of hindsight as unlawful manipulation . . . Thus, market participants have a right to ***trade in their own best interests*** without regard to the positions of others as long as their trading activity does not have as its purpose the creation of 'artificial' or 'distorted' prices.") (emphasis added).  Indeed, in addressing the very same conduct at issue here (in an appeal related to the dismissal of a party in the related class action litigation), the Second Circuit very recently acknowledged that evidence of a "***legitimate economic reason***" for the trading conduct could refute allegations of manipulation even at the motion to dismiss stage.  *In re Amaranth Natural Gas Commodities Litig.*, 730 F. 3d 170, 185 (2d Cir. 2013) (per curium) (emphasis added).[2]

In other words, these cases hold, contrary to the CFTC's position, that if the jury determines that Hunter intended to engage in *e.g.*, "lawful business conduct," "innocent trading activity," "trading in [his] own best interest" and/or trading for "legitimate economic reasons," the jury cannot find that Hunter had the requisite intent to engage in "unlawful manipulation" to create an artificial price.  *See Indiana Farm,* 1982 WL 30249, at *6; *In re Amaranth*, 730 F. 3d at 185.[3]

Accordingly, the Court should deny the CFTC's motion to the extent that it seeks to exclude evidence regarding Hunter's non-manipulative business justification for the trades at issue as it is the most relevant consideration in assessing intent, it is consistent with the case law

---

[2] Even the CFTC's Complaint, citing to Amaranth's Compliance manual (to the extent it applies), acknowledges that the "prohibition [against price manipulation in the closing range] is not intended to preclude trades at or near the close of trading that have a legitimate business purpose, manage business risk or that otherwise have economic substance."  *See* Complaint at 8-9.

[3] Although we expect to address this issue more fully at the charging conference, Hunter's proposed Thirteenth Request to Charge [DE 125] is entirely consistent with the case law and the law of the case.  Specific intent requires the CFTC to prove that Hunter acted for the "primary purpose" of creating an artificial price; in other words that he did not act for another business reason.  *See Indiana Farm,* 1982 WL 30249, at *23.

and law of the case and as such could not be prejudicial under Federal Rule of Evidence 403. Moreover, in addition to offering such evidence, Hunter should not be prevented from arguing to the jury that the CFTC has failed to establish that his reasons for trading were anything other than the non-manipulative business reasons about which the jury heard evidence.

**B. Evidence That Hunter Did Not Violate Any Exchange Rules or Inject False Information into the Market Is Relevant to the Element of Manipulative Intent and Not Unduly Prejudicial to the CFTC**

The CFTC seeks to preclude Hunter from offering evidence that he violated no exchange rules and engaged in no deception of any kind. The CFTC appears to base its argument on the notion that because fraud or illegality (*i.e.*, deception or exchange rule violations) are not required elements of manipulation under the law of the case, it is by definition an irrelevant topic. This claim is without merit. The fact that Hunter violated no NYMEX exchange rules while conducting the at-issue trading and injected no false information into the market is relevant to an assessment of Hunter's intent (or lack thereof) to create an artificially lower price, as alleged in the Complaint, and such evidence is not unduly prejudicial to the CFTC.

It is perfectly reasonable for the jury to infer that if Hunter intended to create an artificial price, he would have made every effort to succeed, which the evidence will show would certainly include injecting false information into the market place, or trading at prices below prevailing market prices in violation of NYMEX rules. Indeed, one cannot seriously question that if Hunter had done either of these things, the CFTC would offer such evidence as relevant to proving intent. Yet, the CFTC appears to claim, without explanation, that the absence of such

evidence is irrelevant to Hunter's defense on the issue of intent.[4]  It thus follows that if such evidence is relevant if it existed, the absence of such evidence must also be relevant.

By way of analogy, even though the CFTC readily admits that motive is not "a necessary element of an attempted manipulation," the CFTC is offering evidence that Hunter had a profit motive to manipulate the settlement price because motive can be "evidence of intent."  *See* CFTC Pretrial Memorandum of Law [DE 109] at 12.  (And Hunter will of course offer contrary evidence that he did not have a profit motive, as evidence of his lack of intent.)  Similarly, just because violating exchange rules or injecting false information into the market is not an "element" of a manipulation claim, it does not make the proof of same (or absence thereof) irrelevant to the issue of intent.

Accordingly, the Court should deny the CFTC's motion to exclude evidence regarding the absence of deception or exchange rule violations as it is relevant to the element of manipulative intent, consistent with the case law and law of the case, and can hardly be considered to be overly prejudicial, or even prejudicial at all, to the Plaintiff.

**C.  Evidence That the Trades at Issue Could Not Predictably Lower Price and Did Not Ultimately Impact Price Is Relevant to the Element of Manipulative Intent**

The CFTC's expert's report and testimony is peppered with opinions as to how the allegedly manipulative trades on the two days in question impacted the settlement price or could have done so.  *See* PX 7.  Although its motion does not say as much, we assume for purposes of this response that the CFTC does not plan on offering such evidence at trial because it now seeks

---

[4] Indeed, it appears that a number of the CFTC's exhibits (e.g., PX 75, 77) are being offered to show purported position limit violations by Amaranth on days other than the days in question, presumably to show that Hunter was apt to violate exchange rules—even if it had nothing to do with the particular days in question.  We assume the CFTC does not take the position that Hunter should be prevented from offering evidence to rebut those purported violations; yet on the truly relevant days, the CFTC inexplicably seeks to prevent Hunter from offering evidence of full compliance with all rules.

to preclude Hunter from offering evidence that the trades at issue had no measurable impact on the settlement price.

However, even if the CFTC does not intend to offer evidence of price impact resulting from Hunter's alleged manipulative trades, Hunter must be allowed to offer evidence that: (1) as an experienced market participant, Hunter understood that the type of trading at issue (trading futures during the settlement period on an expiry day) could not predictably move the settlement price in a desired direction as alleged; (2) that Hunter was correct in his belief, which was shared by many market participants; and (3) that there was in fact no price impact despite uninterrupted trading, further corroborating that what Hunter believed as an experienced market participant was a sincere and reasonable belief.

Evidence of Hunter's understanding and belief that trading futures during the 30-minute settlement period of an expiry day (as opposed to the 2-minute settlement period every other day of the month) cannot be used as a tool to predictably move price in a particular direction is relevant to whether or not he "intended" to do just that, as alleged in the Complaint.  The jury is entitled to conclude that no rational market participant would act to bring about a result that could not possibly follow from the act.  Accordingly, Hunter will testify that he did not then (and still does not today) believe that the settlement price could be successfully manipulated in a particular desired direction based on the conduct alleged in the Complaint—the mere trading of futures (by a financial trader who cannot make or take delivery of gas) at prevailing market prices during the 30-minute settlement period on an expiry day.

Finally, it is also relevant that in fact there was no measureable price impact resulting from the allegedly manipulative trades directed by Hunter.  Although this has been brought as an attempt case, the Complaint alleges, and there is no dispute, that the trading Hunter directed was

fully completed without any interruption or modifications by the exchange, floor brokers, or anyone else.  The fact that expert analysis establishes that Hunter's trading nevertheless had no measurable impact on the settlement price is important confirmation and corroboration of Hunter's testimony that he never believed the trading at issue could successfully cause the price to move in a particular direction.  One would logically expect that if the trading at issue could have manipulated the price, it would have in this case.  Therefore, the jury is entitled to hear such evidence and find that Hunter's testimony that he did not believe that the trades at issue could predictably move the price down is credible, since the trading did not in fact move the price.  In turn, the jury could also reasonably conclude that he would not have attempted to do the impossible and must have traded for another business purpose, such as the legitimate, non-manipulative purposes set forth in the contemporaneous correspondence from 2006.

Accordingly, the Court should deny the CFTC's motion to exclude evidence regarding the absence of price impact due to Hunter's trading on February 24 and April 26, 2006.

*[Intentionally Left Blank]*

## CONCLUSION

For the foregoing reasons, Hunter respectfully requests that the Court deny the CFTC Manipulation Motion in all respects.[5]

Dated:  November 15, 2013
      New York, New York

 

Respectfully submitted,

KOBRE & KIM LLP

s/ Andrew C. Lourie

Michael S. Kim
Michael.Kim@kobrekim.com
Matthew I. Menchel
Matthew.Menchel@kobrekim.com
Zaharah R. Markoe
Zaharah.Markoe@kobrekim.com
Pamela Sawhney
Pamela.Sawhhey@kobrekim.com
800 Third Avenue
New York, New York 10022
Telephone: +1 212 488 1200
Facsimile: +1 212 488 1220

Andrew C. Lourie
Andrew.Lourie@kobrekim.com
Leanne A. Bortner
Leanne.Bortner@kobrekim.com
1919 M Street, NW
Washington, DC 20036
Telephone: +1 202 664 1900
Facsimile: +1 202 664 1920

*Counsel for Brian Hunter*

---

[5] The CFTC Manipulation Motion also requests relief related to Hunter's jury instructions.  Given that both parties filed joint and separate jury instructions noting objections to the other side's instructions, the issue of jury instructions is a separate one that Hunter expects to address at the charging conference.  Hunter thus requests that the Court reserve on all issues relating to the jury instructions.